**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                             :

SARAH EDMONDSON, et al.,          :
                             :

          Plaintiffs,        :
                             :  Case No.: 1:20-cv-00485-ERK-SMG

    v.                       :
                             :

                             :

KEITH RANIERE, et al.          :
                             :

         Defendants.      :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**EX PARTE MOTION FOR A PROTECTIVE ORDER**
**PERMITTING CERTAIN PLAINTIFFS TO PROCEED**
**PSUEDONYMOUSLY AND PROTECTING THEIR IDENTITIES**

Dated: February 5, 2020

Neil L. Glazer
William E. Hoese
Steven M. Steingard
Stephen H. Schwartz
Craig W. Hillwig
Zahra R. Dean
Aarthi Manohar
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

Aitan D. Goelman
ZUCKERMAN SPAEDER
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

ARGUMENT ................................................................................................................... 7

    A.    The Balance in This Case Strongly Supports Authorizing the Doe Plaintiffs to Proceed by Pseudonym. .......................................................................... 8

        1.    The Litigation Involves Highly Sensitive Matters of a Personal Nature. ... 9

        2.    The Doe Plaintiffs Justifiably Fear Retaliation. ....................................... 11

        3.    The Doe Plaintiffs Are Vulnerable to Exacerbation of Their Injuries. ...... 13

        4.    Any Prejudice to Defendants is Minimal and Outweighed by the Risk of Retaliation and Potential for Further Harm to the Doe Plaintiffs. ........ 14

        5.    The Remaining Factors Are Either Neutral or Support Pseudonymity. ... 15

    B.    The Court Should Enter The Protective Order *Ex Parte*, Subject to Defendants' Right to Object or Seek Modification of the Order as the Case Progresses. ...................................................................................... 16

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aslin v. University of Rochester*,
   No. 17-CV-06847, 2019 WL 4112130 (W.D.N.Y. Aug. 28, 2019) ........................................15

*Doe v. Smith*,
   105 F.Supp.2d 40 (E.D.N.Y. 1999) ..............................................................................13, 15

*Doe v. Vassar College*,
   No. 19-CV-09601, 2019 WL 5963482 (S.D.N.Y. Nov. 13, 2019).......................................8, 9

*EW v. New York Blood Center*,
   213 F.R.D. 108 (E.D.N.Y. 2003) ..................................................................................9, 14

*In re Dones*,
   No. 10-45608, 2011 WL 5079585 (Bkrtcy. W.D. Wash. Oct. 25, 2011) ...............................12

*Lawson v. Rubin*,
   No. 17-CV-6404, 2019 WL 5291205 (E.D.N.Y. Oct. 18, 2019).......................................7, 16

*NXIVM Corp. v. O'Hara*,
   241 F.R.D. 109 (N.D.N.Y. 2007) ..................................................................................12

*Osrecovery, Inc. v. One Groupe Intern., Inc.*,
   No. 02-CIV-8993, 2003 WL 23313 (S.D.N.Y. Jan. 3, 2003) ..................................................13

*Raniere v. Microsoft Corp.*,
   Nos. 15-0540 & 15-2298, 2016 WL 4626584 (N.D. Tex. Sept. 2, 2016) ...............................12

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
   253 F.3d 678 (11th Cir.2001) ....................................................................................7

*Sealed Plaintiff v. Sealed Defendant*,
   537 F.3d 185 (2d Cir. 2008)........................................................................................7

*United States v. Raniere*,
   No. 18-CR-204 (NGG) (ECF No. 85) (E.D.N.Y. Aug. 2, 2018).............................................5

*United States v. Raniere*,
   No. 18-CR-204 (NGG), 2019 WL 2775617 (E.D.N.Y. July 2, 2019)......................3, 6, 11, 12

*United States v. Raniere*,
   No. 18-CR-204 (NGG) (ECF No. 838) (E.D.N.Y. Jan. 14, 2020) ..........................................6

{00207947 }

**RULES**

Federal Rule of Civil Procedure 10(a) ............................................................................7

{00207947 }

Plaintiffs Jane Doe 1-13, 15-39, and 41-60 and John Doe 1-17 and 19-20 (collectively, the "Doe Plaintiffs") respectfully move *ex parte* for an initial protective order: (1) authorizing them to proceed in this litigation under pseudonyms; and (2) ordering the parties not to publicly identify them by their real names in filed documents or elsewhere.  Defendants have a documented history of retaliatory and abusive litigation and other practices against their perceived opponents and those who spoke out (or who they thought might speak out) about what was going on behind the scenes at NXIVM.  That history, combined with the sensitive nature of the Plaintiffs' claims and the personal information about the Plaintiffs that Defendants compiled and may still have access to, provides good cause to enter the requested order now, on an *ex parte* basis, which will protect the Doe Plaintiffs from the threat of embarrassment, harassment and retaliation while the Defendants are being served.[1]  Since this motion only addresses allowing the Doe Plaintiffs to bring their claims anonymously, they reserve their rights to file an additional motion for a comprehensive protective order after the Defendants are served.

## BACKGROUND

The Plaintiffs are victims of illegal acts committed by Defendant Keith Raniere ("Raniere") and by the Individual Defendants who comprised Raniere's "inner circle", who all conspired to and did operate the NXIVM enterprise and venture ("NXIVM").  As alleged in the Complaint in this action, ECF No. 1, the NXIVM enterprise and venture overall functioned as a pyramid scheme and coercive community.  In the course of operating NXIVM, Defendants are alleged to have, among other things, committed sex trafficking, peonage, forced labor and human trafficking, unlawful human experimentation, mail and wire fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act. Complaint ¶¶ 819-928.

---

[1] Plaintiffs are currently serving the Defendants.

One of the aspects of NXIVM that has drawn the most attention is the grooming of women to have sexual relations with Defendant Raniere, including through what was known as "The Vow" or "DOS."  DOS was a subgroup within NXIVM, surreptitiously run by Defendant Raniere, that subjugated women by, among other means, demanding the submission of and then threatening to release highly personal "collateral."  Plaintiffs were lured into DOS by Defendants through false representations, and then cowed into submission by means of, among other things, the collection and threat of the release of embarrassing or harmful collateral, such as sexually explicit photos and videos.  *E.g. id.* ¶¶ 19-31; 78-83 (Jane Doe 2); 89-93 (Jane Doe 3); 124-127 (Jane Doe 7); 744-793.  As Defendant Allison Mack stated in connection with her guilty plea: "I obtained . . . labor and services from Jane Doe 5 and Jane Doe 8 through, among other things, being part of a scheme, namely DOS, designed to make them believe that if they did not perform the requested acts of care, they could suffer serious harm. The serious harm in this case would be the specter of the release of their collateral, which they had pledged in order to join the organization." *Id.* ¶ 808.  Despite pleas from DOS recruits, no collateral has ever been returned by the Defendants, and the collateral of one DOS member was released because she spoke out against the Defendants. *Id.* ¶ 792.

Certain Plaintiffs were also branded (as it was later revealed) with Raniere's initials as part of a perverse DOS initiation ceremony conducted by Defendants. *E.g. id.* ¶¶ 34; 108-110 (Jane Doe 5); 779-783. After Raniere was arrested hiding out in Mexico with actress and co-Defendant Allison Mack, there was sensational coverage about NXIVM from the tabloid press. In the nearly two years since Raniere's arrest, that sensationalism has not subsided, existing not only on the sites of numerous established media in the United States, Mexico and Canada, but also blogs, YouTube channels and other online publications and outlets.

2

The federal criminal investigation uncovered a massive racketeering enterprise engaged in, among other things, sex and labor trafficking, unsanctioned human experimentation, forced labor, extortion, malicious prosecution, and fraud.  *Id.* ¶¶ 799-801; 805-806.  After a closely watched 6-week trial in this Court, Raniere was convicted of, among other things, racketeering, racketeering conspiracy, wire fraud conspiracy, forced labor conspiracy, sex trafficking, sex trafficking conspiracy, and attempted sex trafficking. *Id.* ¶¶ 815-817.  Defendants Clare Bronfman, Nancy Salzman, Lauren Salzman, Allison Mack, and Kathy Russell pleaded guilty for their roles in operating the NXIVM enterprise. *Id.* ¶¶ 802-804; 807-814.

While not every Doe Plaintiff suffered in the same way that the DOS members suffered from Defendants' operation of the NXIVM enterprise and venture, all of them share the same good reason for approaching this lawsuit with trepidation. The Defendants are notorious for harshly retaliating against defectors and other perceived enemies of NXIVM, including through false criminal complaints and vexatious litigation campaigns directed and funded by Defendant Clare Bronfman. *Id.* ¶¶ 13; 36-39; 696-712; 786-787.

Evidence at Raniere's criminal trial detailed how "Raniere's associates would go to great lengths to antagonize his perceived enemies, including through the use of private investigators to obtain sensitive personal information." *United States v. Raniere*, No. 18-CR-204 (NGG), 2019 WL 2775617, at *2 (E.D.N.Y. July 2, 2019).  One episode that graphically illustrates why good cause exists to protect the Doe Plaintiffs is that a DOS victim's branding video "was released during trial and published by the Mexican media, suggesting that **Raniere's alleged criminal enterprise may continue to exist notwithstanding his incarceration**."  *Id.* (emphasis added). The Court was so concerned for the safety of the jurors at Raniere's criminal trial that it took the extraordinary step of refusing to release their names to the press even after the verdict. *Id.*

{00207947 }

Defendants' history of targeting defectors and retaliating against critics was well-known within NXIVM. The Defendants routinely engaged in baseless and vexatious litigation, malicious prosecution, immigration document fraud, computer hacking, private surveillance, witness intimidation, and more. Complaint, *e.g.* ¶¶ 36-39; 696-712; 804. Indeed, one or more of the Defendants or their co-conspirators caused false criminal charges to be filed against several of the Doe Plaintiffs and others and hired attorneys to send several of them cease and desist letters threatening additional action against them if they came forward. *E.g. id.* ¶¶ 72; 82-83; 92-9; 110; 230; 235; 258; 527; 696-697; 786-787; 794-797.

Many of the Doe Plaintiffs were victimized by serious crimes and intentional torts, including peonage, forced labor and human trafficking, fraud, immigration document fraud, unlicensed medical experimentation, sex trafficking, battery, and more. *Id.* ¶¶ 819-928. Accordingly, the Doe Plaintiffs—many of whom have already been traumatized by their experiences in NXIVM—are justifiably concerned that suing under their real names puts them at risk of potentially humiliating and damaging retaliation. As noted above, several of the Doe Plaintiffs have already been targeted with fraudulent criminal charges and civil litigation in efforts to ruin them financially and intimidate them from coming forward. The other Doe Plaintiffs have every reason to fear similar retaliation for bringing this litigation, especially considering  reports that Defendant Clare Bronfman, who directed and financed these campaigns for the NXIVM enterprise, set up a legal defense fund for Raniere and others.[2]

---

[2] Dareh Gregorian, "Seagram heiress paying NXIVM co-defendants' lawyers is 'conflict of interest,' prosecutors argue," https://www.nbcnews.com/news/us-news/seagram-heiress-paying-nxivm-co-defendants-lawyers-conflict-interest-prosecutors-n943191

4

**Protection of the Identities of Victims and Trial Witnesses in the Criminal Proceedings**

In light of Defendants' track record and the sensitive and often shocking evidence of sexual predation, the Government and the Court took steps to protect the identities of the victims and many of the trial witnesses during the criminal proceedings. The Government's criminal complaint and subsequent indictments used "Jane Doe" pseudonyms to refer to the victims. The Court entered a stipulated protective order prohibiting public disclosure of victim-identifying information and highly sensitive discovery materials.[3] The Court also required that certain witnesses and victims be referred to by first name only in open Court during the trial.

The good cause for these protections became even more clear when the Government discovered a NXIVM "enemies list," and dossiers of purported financial information on federal judges and other high profile targets.[4] Despite these protections, a Mexican television station aired leaked video footage of Plaintiff Sarah Edmondson's unclothed DOS branding ceremony during Defendant Raniere's criminal trial, a leak obviously intended to retaliate against her for going public. Complaint ¶ 73. Judge Garaufis was so concerned by these developments that he denied a post-trial press motion to identify the jurors, citing the both sensitive nature of the evidence and concern for their safety:

> First, jurors' privacy interests are heightened here, where the trial involved highly sensitive evidence (including child pornography, nude photographs, and graphic sexual testimony) and generated worldwide media coverage, some of which was salacious, contained errors or mischaracterizations, or appeared intended to embarrass or harass. **For example, the Government indicates that several Mexican media outlets published the last**

---

[3] Stipulation & Order (ECF No. 85), *U.S. v. Raniere*, No. 18-CR-204 (NGG) (E.D.N.Y. Aug. 2, 2018).

[4] Robert Gavin, "FBI agent: NXIVM lawyers knew about efforts to get enemies' bank info," https://www.timesunion.com/news/article/FBI-agent-NXIVM-lawyers-knew-about-efforts-to-14038742.php

5

> **names of victims that were specifically withheld by the court to protect their privacy.**
>
> Second, the court is concerned for the jurors' security. As the Government notes, **evidence at trial suggested that Raniere's associates would go to great lengths to antagonize his perceived enemies**, including through the use of private investigators to obtain sensitive personal information. Additionally, the Government has informed the court that **a Nxivm defector's collateral was released during trial and published by the Mexican media, suggesting that Raniere's alleged criminal enterprise may continue to exist notwithstanding his incarceration**.

*Raniere*, 2019 WL 2775617 at *1 (citations omitted) (emphasis added).

The Court in the criminal proceedings has continued to shield the identities of NXIVM victims.  Recently, the Court ordered, over the opposition of Defendant Raniere, that "victims who provide victim impact statements either by letter or in open court [could] do so without publicly revealing their names or other identifying information; and 2) …the parties [are] to treat victims' identities, impact statements, and declarations of loss as 'Victim Discovery material' within the scope of the protective order entered on August 2, 2018."  *United States v. Raniere*, ECF 838, No. 18-CR-204 (NGG) (E.D.N.Y. Jan. 14, 2020).  The same concerns that animated the protections ordered by the Court in the criminal matter apply here.

Further, each of the Doe Plaintiffs is well aware of Defendants' history of retaliation. Many of them are frightened that their collateral or other personally sensitive information in the possession of the Defendants and their followers could be released. They fear a lifetime of repercussions and lost opportunities as a result of their association with NXIVM, which has now become synonymous with DOS and Defendants' most serious crimes in the public eye.  Many of them suffer from post-traumatic stress disorder and related problems due to their abuse by the

{00207947 }

Defendants, and this lawsuit and the accompanying press coverage will require them to revisit those traumatic events.

A procedure similar to the one proposed by the Doe Plaintiffs here was recently employed by Judge Cogan of this Court in another sex trafficking case, *Lawson v. Rubin*, No. 17-CV-6404 (BMC) (SMG), 2019 WL 5291205, at *1 (E.D.N.Y. Oct. 18, 2019) (entering *ex parte* protective order allowing plaintiffs to proceed pseudonymously, subject to reconsideration if defendants or any interested party objects). For the reasons set forth below, the Court should enter similar relief here.

## ARGUMENT

Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). Courts have, however, "carved out a limited number of exceptions to the general requirement of disclosure [of the names of parties], which permit plaintiffs to proceed anonymously." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir.2001). The Second Circuit has adopted a test that seeks to balance "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). To that end, the Second Circuit has prescribed a non-exhaustive list of factors that might be relevant, stressing that "district courts should [also] take into account other factors relevant to the particular case under consideration…." The factors are:

> "(1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously, or to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

7

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190 (internal citations omitted).  Since "no one factor is dispositive … the Court need only consider applicable factors." *Doe v. Vassar College*, No. 19-CV-09601, 2019 WL 5963482, at *2 (S.D.N.Y. Nov. 13, 2019).

### A.   The Balance in This Case Strongly Supports Authorizing the Doe Plaintiffs to Proceed by Pseudonym.

Considering all of the relevant factors, the balance tilts strongly toward permitting the Doe Plaintiffs to proceed pseudonymously. First, the Doe Plaintiffs have highly sensitive claims against a group of Defendants who have a documented history of retaliating against their perceived enemies by, among other things, engaging in abusive litigation tactics. Second, , while this case will no doubt be intensely watched by the media due to the involvement high profile Defendants such as actresses Allison Mack and Nicki Clyne, the public interest in this litigation does not extend to the Doe Plaintiffs' real names. Finally, any additional prejudice to the Defendants is negligible, given the amount of news coverage previously devoted to the

8

prosecution and conviction of Defendants Raniere, Clare Bronfman, Nancy Salzman, Lauren Salzman, Allison Mack, and Kathy Russell.

### 1.     The Litigation Involves Highly Sensitive Matters of a Personal Nature.

The first factor strongly supports pseudonymity, particularly for Jane Does 1-13, 15-21, 23, 25-34, 36, 39, 41-45, 47-48, 50-56, and 58-60 who are asserting sex trafficking claims. "Allegations of sexual assault are generally inherently sensitive and private in nature." *Vassar College*, 2019 WL 5963482 at *2.  Accordingly, "many courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm." *EW v. New York Blood Center*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003).  Jane Does 1-13, 15-21, 23, 25-34, 36, 39, 41-45, 47-48, 50-56, and 58-60 easily satisfy this standard.

For example, Raniere began grooming Jane Doe 1 when she was 16 years old, and ultimately lured her into a sexual relationship. Complaint ¶¶ 54-59.  When she tried to leave, she was imprisoned against her will in a bedroom with virtually no human contact, and during her time at NXIVM was forced to perform labor for NXIVM without any compensation. *Id.* ¶¶ 59; 57.

Other examples are Jane Doe 2-12, 15, and 50, who were recruited into DOS and coerced into giving increasingly compromising "collateral," which varied by victim but typically consisted of sexually explicit photos and videos, and/or personally devastating or incriminating confessions.  The DOS branding episodes were videotaped.

The allegations concerning these victims necessarily include extremely sensitive details of victim grooming, coercion and reluctant submission to Raniere's manipulation, including

9

sexual exploitation, psychological abuse, and demanding graphic photos and videos as collateral that could be used against the DOS victims (Jane Does 2-12, 15, and 50).  Complaint ¶¶ 19-34; 172-176; 451-457; 744-787.  Under these circumstances, this factor weighs strongly in favor of protecting the identities of Jane Doe Plaintiffs who are asserting sex trafficking claims.

Plaintiffs who are not asserting sexual trafficking claims nevertheless have similar concerns.  The media have relentlessly focused on the sexual aspects of NXIVM, frequently including mentions of a so-called "sex cult" in their stories and headlines.  This may lead to the misapprehension that every NXIVM member was involved in lurid sexual abuse. No one should have to risk being tainted with that inaccurate and scandalous label, in order that they might pursue a valid claim to vindicate his or her rights.

The Doe Plaintiffs all purchased NXIVM curriculum and were injured as a result, but they did not merely pay for worthless curriculum  — they were all exposed and subjected to NXIVM's harmful "Rational Inquiry" process, which among other things required them to record their innermost thoughts and personal failings in response to surveys, questionnaires, and in one-on-one "exploration of meaning" or "EM" sessions that functioned as a sort of dangerous, unlicensed psychotherapy. *E.g.* Complaint ¶¶ 8-10; 558-599.  Responses to personal questions were often recorded and retained by the Defendants and consist of extremely private information that is every bit as candid, searching and sensitive as the notes of any licensed therapist, which would qualify for a limited privilege from disclosure. *Id.* ¶¶ 650; 659.  Unlike licensed therapists, however, the Defendants have no ethical constraints or professional scruples, *id.* ¶¶ 871-891, and they have demonstrated that they have no compunction about using the Doe Plaintiffs' private and sensitive information against them. Protection of this information should

10

{00207947 }

be part of a comprehensive protective order that can be submitted to the Court for its consideration after the Defendants are served.

Thus, the need for pseudonymity extends beyond the claims of the sex trafficking victims and human research victims to the other Doe Plaintiffs. Each of these Plaintiffs was traumatized by their experiences in NXIVM and will be forced to relive their trauma in order to prosecute this litigation. The Court can mitigate that harm through entry of an appropriate protective order that, at least before trial, permits the Plaintiffs to undergo those experiences in something other than a fully public setting.

### 2. The Doe Plaintiffs Justifiably Fear Retaliation.

The Defendants' demonstrated history of severe retaliation against NXIVM defectors such as the Doe Plaintiffs weighs most strongly in support of pseudonymity. Each of the Doe Plaintiffs has been conditioned to fear that the Defendants could go to great lengths and expense to inflict maximum mental anguish (or other harm) on them for filing this lawsuit. As Judge Garaufis noted after Raniere's criminal trial, "a Nxivm defector's collateral was released during trial and published by the Mexican media, suggesting that Raniere's alleged criminal enterprise may continue to exist notwithstanding his incarceration." *Raniere*, 2019 WL 2775617 at *2. As alleged in the Complaint, the defector at issue was Plaintiff Sarah Edmondson, and the Defendants' intentional publication of her branding video was calculated to cause her, and did cause her, severe emotional damage and mental harm. Complaint ¶ 71. The message to other Nxians was clear—if you challenge Raniere or tell anyone about what was done to you, Raniere's supporters are still at large and will try to destroy you.

Several of the Plaintiffs have already been subjected to retaliation. *Id.* ¶¶ 36-39; 892-898. Defendants Raniere and Clare Bronfman, along with others, caused certain law enforcement

{00207947 }

agencies to open investigations into, and caused certain attorneys to send letters to, numerous victims and witnesses including Plaintiffs Sarah Edmondson, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 19, Jane Doe 23, John Doe 2 and Toni Natalie, threatening them with criminal and civil legal actions in order to silence and intimidate them so that they would not report to or cooperate with authorities concerning Defendants' conduct. Complaint ¶¶786-787; 793-797; 855. News about these and other retaliatory actions spread rapidly throughout the NXIVM community, which had the intended effect of intimidating other victims from coming forward, including several of the Doe Plaintiffs. Complaint ¶¶ 36-39; 21.

Moreover, Raniere and NXIVM have a long history of vexatious and bad faith litigation tactics. Complaint ¶¶ 696-712. *See In re Dones*, No. 10-45608, 2011 WL 5079585, at *18 (Bkrtcy. W.D. Wash. Oct. 25, 2011) (calling NXIVM's interference in a defecting member's bankruptcy "deplorable"); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 133 (N.D.N.Y. 2007) (detailing "the improper and probably illegal manner" in which NXIVM's private investigator collected a critic's banking and telephone information"). *See also Raniere v. Microsoft Corp.*, Nos. 15-0540 & 15-2298, 2016 WL 4626584 (N.D. Tex. Sept. 2, 2016) (describing Raniere's "clear history of delay and contumacious conduct" including "false and misleading representations to Defendants and the Court").

In sum, the Doe Plaintiffs have every reason to share Judge Garaufis' concerns "that Raniere's alleged criminal enterprise may continue to exist notwithstanding his incarceration." *Raniere*, 2019 WL 2775617 at *2. Accordingly, all of the Doe Plaintiffs have good cause to be worried that, absent an order protecting their identities from public disclosure, the Defendants will resort to what they have always done—intimidate the Plaintiffs from seeking justice, using Plaintiffs' sensitive personal information in order to cause them additional harm, and otherwise

{00207947 }

abuse the litigation process in retaliation for bringing this lawsuit. This factor weighs strongly in favor of pseudonymity. *See Osrecovery, Inc. v. One Groupe Intern., Inc*., No. 02-CIV-8993, 2003 WL 23313, *2 (S.D.N.Y. Jan. 3, 2003) ("When these explicit threats are added to the claims of witness tampering already made in open court and to other Internet postings that are less explicit but arguably construed reasonably as threats, the Court is satisfied that there is a genuine risk of retaliation involving economic and physical harm to plaintiffs who are identified").

### 3.     The Doe Plaintiffs Are Vulnerable to Exacerbation of Their Injuries.

The third and fourth factors also favor pseudonymity. The Court should consider the extent to which a public airing of the evidence in this case could exacerbate the Doe Plaintiffs' existing emotional trauma, and the extent to which the Doe Plaintiffs are particularly vulnerable to such exacerbation. For example, in *Doe v. Smith*, 105 F.Supp.2d 40, 42 (E.D.N.Y. 1999), the Court permitted a plaintiff to sue her psychiatrist anonymously where proceeding publicly would "cause her to decompensate [psychologically] to a point at which she could not ... pursue the current legal process and would suffer severe risk to her safety and to her survival."

Many of the Doe Plaintiffs suffer from post-traumatic stress disorder and other mental injuries as a result of their exposure to NXIVM's Rational Inquiry curriculum. *E.g.* Complaint ¶¶ 10, 855. Many are presently in therapy and may have not fully healed from what was done to them, and they remain susceptible to being traumatized further. While they will have to relive some of those traumas in connection with pursuing this litigation, they can be spared further injury if their identities are not made public.  The Court can thus ameliorate some of the risk of re-traumatization for Plaintiffs by allowing them to proceed by pseudonym.  Thus, factors 3 and 4 both strongly favor the requested protective order.

{00207947 }

    **4.**     **Any Prejudice to Defendants is Minimal and Outweighed by the Risk of Retaliation and Potential for Further Harm to the Doe Plaintiffs.**

In assessing the prejudice to Defendants from proceeding pseudonymously (factor 6), "courts look at the damage to a defendant's reputation caused by the anonymous proceeding, the difficulties in discovery, as well as at the fundamental fairness of proceeding in this manner." *New York Blood Center*, 213 F.R.D. at 112. Here, the potential additional reputational risk to Defendants from allowing the Doe Plaintiffs to proceed through the use of pseudonyms is small or non-existent, and the use of pseudonyms will not create insurmountable difficulties in discovery and pretrial proceedings.

The reputational risk to Defendants is small, because the national media has already covered the criminal proceedings and Raniere's trial extensively. Moreover, Defendants Raniere, Clare Bronfman, Nancy Salzman, Lauren Salzman, Allison Mack, and Kathy Russell have all been convicted of crimes for their roles in the NXIVM enterprise and face prison time. Defendant Porter lost his medical license in New York State for engaging in the NXIVM medical experiments, which were described in great detail in a publicly available opinion.  The involvement in NXIVM of every single Defendant named in the Complaint is a matter of public record, having been disclosed in the criminal proceedings in filings and at trial.  "As such, any additional prejudice to the defendant[s'] reputation[s] or ability to operate merely by the pursuit of the action under a pseudonym appears minimal." *New York Blood Center*, 213 F.R.D. at 112 (finding that due to substantial press about the defendant's misconduct, any additional reputational damage was slight and weighed in favor of proceeding by pseudonym).

Moreover, the Defendants will not be unfairly limited in their defense. Under Plaintiffs' proposed Order, the Defendants will know the real identities of the Doe Plaintiffs and the parties

need only substitute their Doe pseudonyms for their real names and/or redact identifying

information from documents filed in the case.  Defendants will still have full discovery rights.

*See Doe v. Smith*, 105 F.Supp.2d at 45 (no prejudice to defendant where protective order did not

"hinder defendant's ability to pursue his legal defense in any way. . . . [T]he defendant retains

the right to depose any and all witnesses and to obtain any and all documents available to him" in

discovery and to "ask any and all questions necessary to his defense."). *Cf. Aslin v. University of*

*Rochester*, No. 17-CV-0684, 2019 WL 4112130, at *23 (W.D.N.Y. Aug. 28, 2019) ("if the

plaintiffs wish to use pseudonyms to protect the privacy of individuals referred to in the amended

complaint, they may do so if they provide the defendants with the real names of those

individuals").

### 5.  The Remaining Factors Are Either Neutral or Support Pseudonymity.

The other factors either do not apply or support the Doe Plaintiffs. For example, most of

the Doe Plaintiffs' identities have thus far been kept completely confidential from the public.

(Factor 7). This factor weighs in favor of pseudonymity.

Further, while the public interest in holding Defendants accountable and preventing

similar enterprises is no doubt strong (factors 8 and 9), that public interest would not be furthered

by requiring the Doe Plaintiffs to disclose their identity. The Doe Plaintiffs are not public

figures, and their identities are not germane to the public's interest in holding Defendants'

accountable or preventing similar criminal enterprises from victimizing others.

Finally, there are no other alternative mechanisms for protecting the Doe Plaintiffs'

privacy. Thus factor 10 supports the Doe Plaintiffs' request to proceed by pseudonym.

{00207947 }

**B.     The Court Should Enter The Protective Order *Ex Parte*, Subject to Defendants' Right to Object or Seek Modification of the Order as the Case Progresses.**

Plaintiffs request that the Court enter their proposed protective order on an *ex parte* basis while they attempt to serve the Complaint, without prejudice to Defendants' rights to object to the order once they have appeared. This procedure was recently adopted by Judge Cogan in another civil trafficking case, *Lawson v Rubin*, where "[t]he Court granted plaintiffs' motion, but noted that because defendants did not have an opportunity to respond to that motion, it would reconsider the order *de novo* if defendants or an interested party objected within 14 days." 2019 WL 5291205 at *1.  Ultimately, even without evidence of retaliation, the Court retained the protections during pretrial discovery and only lifted them on the eve of trial. *Id.*

The Court should adopt the same approach here and permit the Doe Plaintiffs to proceed pseudonymously, without prejudice to the Defendants' ability to object or seek modification of the order after they have been served and appear through counsel. Each Defendant will then be advised of the true identities of the Doe Plaintiffs (subject to compliance with the protective order) and have 30 days from their appearance in the litigation to raise objections, if any. And the Court always retains its discretion to amend or rescind the protective order as the litigation progresses.

## CONCLUSION

The Defendants' history of retaliation and the sensitivity of the Doe Plaintiffs' claims and the personal information they provided to Defendants justify permitting the Doe Plaintiffs to proceed by pseudonyms. For the reasons set forth above, the Doe Plaintiffs respectfully request the Court to order that they may proceed under pseudonyms in court filings and that their real names be protected from disclosure during pretrial proceedings and discovery. Moreover, they

16

{00207947 }

ask the Court to grant the order on an *ex parte* basis, before the Defendants are served and appear

in this case, without prejudice to Defendants' rights to object to it once joined and subject to later

modification in the Court's discretion as the circumstances of the litigation require.


Dated: February 5, 2020                          */s/ Neil L. Glazer*
                                                 Neil L. Glazer
                                                 William E. Hoese
                                                 Steven M. Steingard
                                                 Stephen H. Schwartz
                                                 Craig W. Hillwig
                                                 Zahra R. Dean
                                                 Aarthi Manohar
                                                 KOHN, SWIFT & GRAF, P.C.
                                                 1600 Market Street, Suite 2500
                                                 Philadelphia, PA 19103
                                                 (215) 238-1700

                                                 Aitan D. Goelman
                                                 ZUCKERMAN SPAEDER
                                                 1800 M Street NW, Suite 1000
                                                 Washington, DC 20036
                                                 (202) 778-1800

17