# Kohn, Swift & Graf, P.C.

1600 Market Street, Suite 2500

Philadelphia, Pennsylvania 19103-7225

JOSEPH C. KOHN
ROBERT A. SWIFT
ROBERT J. LAROCCA
DOUGLAS A. ABRAHAMS *
WILLIAM E. HOESE
STEVEN M. STEINGARD *
STEPHEN H. SCHWARTZ †
CRAIG W. HILLWIG
BARBARA L. GIBSON †
NEIL L. GLAZER †
ZAHRA R. DEAN ⌘
AARTHI MANOHAR
ELIAS A. KOHN

(215) 238-1700
Telecopier (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
Web Site: www.kohnswift.com

Email: nglazer@kohnswift.com

HAROLD E. KOHN
1914-1999
BAYARD M. GRAF
1926-2015

OF COUNSEL
GEORGE W. CRONER
LISA PALFY KOHN

† ALSO ADMITTED IN NEW YORK
* ALSO ADMITTED IN NEW JERSEY
⌘ ONLY ADMITTED IN NEW YORK

February 10, 2022

**Via Electronic Filing**

Honorable Eric R. Komitee
United States District Court
  Eastern District of New York
225 Cadman Plaza East
Courtroom: 6G North
Brooklyn, New York 11201

Re: *Edmondson, et al. v Raniere, et al.* No. 1:20-cv-00485 (ERK)(CLP)

Dear Judge Komitee:

We write to request an emergency status conference, before Your Honor or Chief Magistrate Judge Pollack, to address an ongoing public campaign by several Defendants and a close associate to intimidate, threaten and harass Plaintiffs in this action. This letter supplements our February 4, 2022 letter (No. 136), with more recent developments highlighting the gravity and urgency of the situation. While the conduct described herein and in Plaintiffs' February 4 letter offer ample grounds for Plaintiffs to move for sanctions and injunctive relief, the three Defendants involved in these matters are *pro se*, their behavior is not conducive to any pre-motion meet and confer process, and we believe a conference with the Court may in the first instance be a more efficient route than motions that may require extensive briefing and possible evidentiary proceedings. *See, e.g., Potts v. Postal Trucking Co.*, No. 17-Civ-2386 (ARR) (VMS), 2018 WL 794550 (E.D.N.Y. Feb. 8, 2018) (decision by Magistrate Judge Scanlon after emergency status conference and evidentiary hearing on Plaintiff's "motion for sanctions pursuant to the Court's inherent power for allegedly intimidating, threatening and harassing behavior.").

On February 8, 2022, Defendant Brandon Porter posted a message to Plaintiff Sarah Edmondson's public Facebook page, asking why she is suing him, stating "[i]t looks like a joke, but this is very serious," and seemingly blaming her for the loss of his medical license. Ex. 1.

Kohn, Swift & Graf, P.C.                                                           Honorable Eric R. Komitee
Continuation Sheet No. 2                                                               February 10, 2022

Calling Ms. Edmondson out on social media is both appalling and impermissible – a Defendant cannot contact a Plaintiff who is represented by counsel to discuss any aspect of this litigation, N.Y.R.P.C. 4.2(a), and "[a] *pro se* [litigant] is not exempt from compliance with relevant rules . . . ." *O'Neal v. New York*, 465 F. Supp.3d 206, 216 (E.D.N.Y. 2020) (internal quotation marks and citations omitted).

      Mr. Porter's Facebook post occurs in the context of the ongoing campaign to threaten, disparage and harass Plaintiffs. Between Mr. Porter, his co-defendants Ms. Clyne and Ms. Roberts, and their associate, Ms. Hachette, there have been more than 100 tweets, retweets,[1] endorsements ("likes"),[2] and statements on other social media platforms and internet sites. Each of these three Defendants is publicly supporting and participating in this campaign fronted by Ms. Hachette, who, in a February 5, 2022 statement on Twitter, said that she is "fighting for the defendants who are my brothers and sisters who cannot defend themselves adequately" in the litigation.[3] Ex. 2, p. 1.[4] Mr. Porter endorsed Ms. Hachette's tweet linking to the written threat on the DOSsier Project website and he endorsed Ms. Clyne's retweet of the link to Ms. Hachette's threatening video statement. Ex. 3. On February 6, Ms. Clyne posted a tweet enthusiastically encouraging people to follow Ms. Hachette's stream of combative tweets, which was endorsed by, among others, Mr. Porter. Ex. 4. One day earlier, February 5, Ms. Roberts likewise encouraged people to follow that stream of tweets. Ex. 5. That there be no mistaking Mr. Porter's intent in posting the message to Ms. Edmondson's Facebook page, both Ms. Clyne and Mr. Porter endorsed Ms. Hachette's direct attacks on Ms. Edmondson (and, in several tweets, her husband, Plaintiff Anthony Ames). Ex. 6.

      Defendants are acting in concert with Ms. Hachette as their stalking horse. Their "fight" isn't about fairness or due process, it's about contempt for these proceedings and retribution. They are railing against both named and unnamed Plaintiffs, and there is absolutely no reason to believe that they will stop even if Plaintiffs accede to their demands. To the contrary, in an interview published on February 5, 2022, Ms. Hachette stated "Even if they decide to drop out now, I think they should have to answer for their claims and be held responsible for the damage they've caused." Ex. 7.[5] In that interview, she also reiterates her demand: "This is not a matter of *if* this is going to happen, it's a matter of who will say it. This is not a threat; it is a promise." *Id.* (Emphasis in original). Ms. Hachette's offensive statements in that interview about certain

---

[1] A retweet is a re-posting of a tweet to share it with the retweeting person's followers. Twitter FAQ at https://help.twitter.com/en/using-twitter/retweet-faqs. It is a strong endorsement of the original tweet.
[2] A like is "used to show appreciation for a Tweet." Twitter FAQ at https://help.twitter.com/en/using-twitter/liking-tweets-and-moments. It is likewise an endorsement of the tweet or retweet.
[3] Mr. Porter and Ms. Clyne have both served motions to dismiss on Plaintiffs' counsel.
[4] Ms. Hachette's bellicose twitter stream also declares Plaintiffs to be "straight up lying," and "[L']iars and crooks . . ." Ex. 2. This is outrageous. "[T]o claim an individual has made false accusations of . . . sex abuse would expose that individual to public contempt, ridicule, aversion, and disgrace in the minds of right-thinking persons." *Giuffre v. Maxwell*, 165 F. Supp.3d 147, 154 (S.D.N.Y. 2016) (denying motion to dismiss defamation lawsuit).
[4] Retrieved from https://frankreport.com/2022/02/05/hatchette-denies-bronfman-money-prompts-reveal-of-raniere-victims-names/
[5] Retrieved from https://frankreport.com/2022/02/05/hatchette-denies-bronfman-money-prompts-reveal-of-raniere-victims-names/

Kohn, Swift & Graf, P.C.                                                                                                        Honorable Eric R. Komitee
Continuation Sheet No. 3                                                                                                                           February 10, 2022

Plaintiffs speak volumes for the real intent, to publicly shame and intimidate Plaintiffs, and the three Defendants' continued social media activity clearly demonstrates their encouragement.

        The Court has inherent power to control the proceedings and parties before it. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum . . . and submission to their lawful mandates. . . . These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks and citations omitted); *see also id.* at 58-59 ("Some elements of that inherent authority are so essential to 'the judicial Power,' U.S. Const., Art. III, § 1, that they are indefeasible, among which is a court's ability to enter orders protecting the integrity of its proceedings.") (Scalia, J., dissent). Among a court's inherent powers is "[t]he power to punish contempts . . . [which] reaches both conduct before the court and that beyond the court's confines . . . ." *Id*. at 44. Indeed, Congress vests in federal courts the "power to punish" not only disobedience of a court's orders, 18 U.S.C. § 401(3), but also "[m]isbehavior of any person in its presence *or so near thereto* as to obstruct the administration of justice[.]" *Id*. § 401(1) (emph. added). Intimidating and harassing Plaintiffs is serious misconduct and it is sanctionable with or without a prior order. In *Potts*, witnesses testified that the circumstances were innocuous, leading the court to conclude that because the Defendant's intent was ambiguous, and his actions were not "so beyond the pale," sanctions were not warranted. 2018 WL 794550 at *3. There is no such ambiguity here. Defendants intent is transparent, and public threats to disclose the identity of Plaintiffs while their motion for a protective order is pending are clearly beyond the pale. So, too, are malicious statements inconsistent with the decorum and dignity of court proceedings, which may continue "[e]ven if [Plaintiffs] decide to drop out" of the litigation. Ex. 7

        This conduct is terrorizing some Plaintiffs and it must stop. Ordinarily, Plaintiffs' counsel would meet and confer with opposing counsel before contemplating motions or requesting a conference. But Defendants are unrepresented parties, their behavior is quite volatile, and Plaintiffs' counsel are extremely reluctant to directly engage with them to discuss these matters and inform them of our opinions regarding their legal duties, which is treacherous territory under the rules of professional responsibility. Plaintiffs respectfully request that the Court schedule a conference at its earliest convenience or refer this matter to Chief Magistrate Judge Pollack for her immediate attention.

                                                                                                      Respectfully submitted,

                                                                                                      Neil L. Glazer

NLG/yr

cc:     All counsel and pro se defendants via ECF