UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
SARAH EDMONSON, et al., :
Plaintiff, : 20-CV-485 (EK)(CLP)
v. : February 17, 2022
: Brooklyn, New York
KEITH RANIERE, et al., :
Defendant. :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE ERIC R. KOMITEE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: NEIL GLAZER, ESQ.
Kohn Swift & Graf P.C.
1600 Market Street, Ste 2500
Philadelphia, PA 19103

For the Defendant: RONALD SULLIVAN, ESQ.
712 H Street, Suite 1354
Washington, DC 20002

JAMES WAREHAM, ESQ.
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006

BRANDON PORTER, PRO SE
DANIELLE ROBERTS, PRO SE
NICKI CLYNE, PRO SE

Court Transcriber: ARIA SERVICES, INC.
c/o Elizabeth Barron
274 Hovey Road
Milo, ME 04463
Aria@leinen.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: Civil cause for order to show cause, Edmonson, et al. v. Raniere, et al., docket number 20-CV-485.

Would you all please state your names for the record. And as a reminder, speak directly into the microphone, starting with the plaintiffs.

MR. GLAZER: Neil Glazer from the law firm of Kohn Swift & Graf for the plaintiffs. With me I have Zahra Dean, also an attorney with our firm.

THE CLERK: Thank you.

For the defendants?

MR. SULLIVAN: Ronald Sullivan on behalf of Clare Bronfman.

MR. WAREHAM: Good afternoon, your Honor. Jamie Wareham of Fried Frank on behalf of Ms. Sara Bronfman. Out of an abundance of caution, for purely listening purposes, despite having no role in any of these events, I've got Ms. Bronfman on the telephone.

THE COURT: Okay.

THE CLERK: Go ahead.

MS. ROBERTS: Danielle Roberts, defendant, representing myself pro se.

MR. PORTER: Brandon Porter, defendant.

MS. CLYNE: Nicki Clyne, representing myself.

THE COURT: Is that everybody?

THE CLERK: Yes, Judge.

THE COURT: All right. Thank you all for being here. We're here for a status conference this afternoon. We have a number of issues to work through but I wanted to start with the application made in the plaintiff's letter of February 10th describing what they call an ongoing public campaign to intimidate, threaten, and harass. Why don't we begin with plaintiff's counsel?

Let me just say by way of background, if you're more than six feet from anybody who you don't know is accepting or not of your being maskless, you can do that. If you know for example where your associate stands on the matter and you've been fully vaccinated, you can remove the mask when you're speaking, which I think will help with clarity and with the audio recording that we're making. People should otherwise please remain masked.

MR. GLAZER: Thank you, your Honor. For the most part, our letters speak for themselves. They lay out the facts and provide the exhibits that raised the concerns with us. I think it's important to make clear what this is not about. Defendants have for a number of years, as is their right, held various public

events, press conferences. They've got numerous websites that they maintain, where they provide written content. There's video content through those websites and through media platforms and Youtube. They've had television appearances. We don't have an issue with any of that.

Our clients may not agree with their perspective on things but that's not what our letters are about and that's not why we think we're here today. We're here today because of the escalation, the alarming events that started a couple of weeks ago with threats to disclose the identities of anonymous plaintiffs in this case, Jane and John Does, and indeed a demand in a video that if they don't disclose their identities, their identities will be disclosed for them.

THE COURT: Can we start by just having you tell me what relief you're seeking today?

MR. GLAZER: We have a protective order, which is very helpful. We refrained, as we stated in our letter, from filing a formal motion for any sanctions. I think it would just be important for purposes of these proceedings, both now and going forward, to get a clear understanding that defendants appreciate what their responsibilities are with respect

to confidential information, with respect to disclosure of identities of plaintiffs, some of whom are not going to be disclosed today pursuant to your protective order, and with respect to any discovery materials that may be subject to a protective order and confidentiality designations.

THE COURT: So you want me to explain my protective order to the defendants?

MR. GLAZER: I think that would be a helpful place to start. I don’t -- we’re not asking for particular sanctions but we do have grave concerns for the way the pro se defendants, in concert with certain other very close associates of theirs, who support them and Mr. Raniere, have kind of escalated this campaign. We’re concerned for where it looks like it might be heading. We have clients who were traumatized in the past and these kinds of threats have very dire effects on them. We’re concerned about other highly confidential materials that may be --

THE COURT: Can I just interrupt you there? When you say threats, are you referring to communications from any of the actual defendants in this case or are you referring to actions by third parties?

MR. GLAZER: Referring to actions by third

parties that were endorsed publicly by these defendants on social media.

THE COURT: Okay. Yeah, it was a little -- let me say two things just by way of sort of locating us at a starting point on these topics. On the one hand, I understand the very serious allegations, some of them proven in the criminal case, about serious crimes, including sexual assault, that were perpetrated on some of the plaintiffs in this case. I can imagine, without even needing to delve too deeply into the declarations of some of those plaintiff, that those harms could be compounded by public communications of one kind or another. I do not want the parties in this case, including unrepresented parties, to be engaging in a back and forth with the actual plaintiffs. I'll talk in a moment about what that means specifically when I say that.

But at the same time, I found your letter a little bit hard to parse in terms of understanding exactly what remedies you were seeking and exactly what legal basis exists for those remedies. You talked a lot about this conduct being sanctionable but now you're not asking for sanctions. You talked about contact by pro se defendants directed at the plaintiffs but you don't cite any law dealing with the subject of

whether a court can order a non-lawyer pro se defendant to refrain from contact with represented parties on the other side. You cite the disciplinary rule and then you have this very general cite on page 2 that says just because you're pro se, it doesn't excuse your compliance with the rules, but that case is about the pleading rules of civil procedure, not rules of disciplinary -- the disciplinary rules that apply to lawyers. So I found that to be kind of beside the point at best and maybe a confusing or misleading statement of the law at worst.

So I'm going to say something to the defendants in a moment about what I want them to do and not do going forward, but I'm going to say to you also at the same time, I'd like the -- I understand you feel like you had to respond on the fly here and that this letter may have been fired off with less time to perform legal research than you might otherwise have desired. I do want you going forward to be more specific about what it is you're asking for and to try to identify case law that is actually responsive to the remedies you're seeking. We did some of that research. My law clerk found cases in the Southern and Eastern Districts of New York dealing with a court's power to order non-lawyer parties to have no contact with

represented parties on the other side, but it shouldn't be us having to do that research in the first instance.

MR. GLAZER: Understood, your Honor. We were both acting on the fly and acting under a three-page limit that we struggled with. The specific issue that we really want to focus on that we think is very concerning conduct that could be subject to sanctions, but these are pro se parties and so that's why we explained in our letter we're not going there just yet. But this front running when a motion for a protective order is pending and the Court hasn't ruled, and the plaintiffs are still Jane Does or John Does --

THE COURT: Right. That problem I think we've solved, and I understand that may have been a substantial part of what your letter was designed to achieve. Yes, that I understand.

Turning to the defendants, you have all seen by now that I've issued a protective order in this case, right, a protective order that restricts the parties' ability to use the full names or in some cases even any part of the names of some of the plaintiffs in this case in public, in legal filings, in comments in open court, on social media, or elsewhere. That protective order doesn't bind third parties who are not before me in this case but it binds the parties to this

case including with respect to their actions outside of court.

That does not mean that the defendants will be litigating against plaintiffs who are unknown to them. I know there was some communication of concern about that issue, that it would be unfair to have to defend a case where you don't know who is making the accusations. That will not be the case here. You will be apprised by plaintiffs' counsel of who these parties are, first name and last name, in every instance with respect to plaintiffs who have elected to go forward here, and the Court will know those full names as well. But because of the sensitive allegations that they're making, including with respect to sexual assault, including in some cases sexual assault that occurred as minors or other misconduct that transpired while these people were minors, I'm going to allow them for the moment to proceed either pseudonymously or on a first-name-only basis.

I was a little bit hamstrung in responding to the plaintiffs' motion for a protective order in that I didn't have full briefing in response by the defense, and the reason we didn't have full briefing in response from the defense is that they -- since the documents were preliminarily sealed, you aren't privy

to plaintiffs' submission in its entirety. They're going to get that now, right, now that the protective order is in place, and it may be that the defendants will see things in the plaintiffs' briefing that they take issue with as a matter of fact, or that the defendants have additional information that they think is relevant to the question of the protective order that you want to bring to my attention.

If that's the case, you can -- even though I've decided the protective order, I did it on a preliminary basis so that you can now, once you're privy to the plaintiffs' filing that led to the protective order in the first place, challenge that if you see fit. There may also be challenges from the news media. I don't have any reason to believe at this point that that's the case but these are reasons why I called my protective order a preliminary protective order. Circumstances may change. The public interest, as we all know, in access to litigation documents get stronger as cases get closer to trial than it would be for example in the discovery stage of proceedings like this, so the preliminary order is just that.

The plaintiffs are going to file a new version of the complaint presumably that includes names according to the rules we've decided and drops the

names of plaintiffs who have elected not to proceed, right?

MR. GLAZER: Yes, your Honor, we can do it that way. If I may just, since we seem to be moving that direction, address the December 17th filing.

THE COURT: Please.

MR. GLAZER: The preliminary order of protection suggests that we show cause why some or all of it should not be disclosed in one manner or another. What we're proposing with respect to the letter brief, the twelve-page document that was the actual motion, docket number 133, is that it be put on the public docket with two redactions. We tried to submit this via ECF under seal with a short letter explaining what those are, but I'll just explain them here now.

On page 5 of that document, we list a large group of plaintiffs who have decide they're going to move forward under their full names. Two of them have voluntarily dismissed their claims in the last couple of days, so we're going to propose redacting their names. The Jane Doe designations will be in there but their names will not. It's kind of recent events --

THE COURT: Yeah. If those parties are not going forward with the case, I think it's fair to redact their --

MR. GLAZER: Those are the only two redactions so the rest of that document, which contains an extensive amount of information, will be available both to the public and to defendants, who can review --

THE COURT: Not the attached declarations.

MR. GLAZER: No, I'm only addressing the twelve-page motion document. I'll get to the supplemental materials in a moment. But we believe that that contains considerable information that will assist the defendants in deciding whether they have any concerns that they may want to raise in terms of lifting the portion of the protective order that covers the twelve plaintiffs going forward.

The supplemental materials, my declaration and the documents supporting it, according to your Honor's order are going to remain under seal, and the issue before the Court is whether those documents, in whole or in part, should be submitted to produce to the defendants. We would respectfully suggest that at this point, the answer be no, that they first be able to review the twelve-page letter, which indicates the kinds of materials that are there and provides some amount of facts about each of the plaintiffs who are at least preliminarily going to go forward under first names or in two cases --

THE COURT: What's the legal basis for keeping the declarations sealed not only vis a vis the public but from your opposition in this case?

MR. GLAZER: The only -- the basis that we have is, there's a lot of incredibly sensitive information there and the preliminary order of protection only governs disclosure of identities. We would at least want the ability to meet and confer with the defendants to negotiate a more comprehensive protective order that would cover what would ordinarily be discovery materials in terms of designating, handling, and disclosure of confidential and highly confidential information. Ordinarily, these materials would be -- defendants will be free to seek these materials in discovery when the discovery phase is lifted.

THE COURT: But the defendants have to have a meaningful opportunity to challenge the terms of the protective order as it's currently preliminarily constituted. And I understand they're going to get your letter brief that says, look, Judge, there are sensitive details of sexual assault and other things like that that merit sealing, but those details are not in your brief, they're all just referred to in the supplemental filings. So if they're going to be able

to meaningfully engage in litigation on the protective order, which they may not even want to do -- they may be happy with the protective order as it stands now. But if they want to litigate it, they probably need to see the underlying factual basis.

I understand your concern that it could be problematic perhaps for your clients if the declarations were made public even with names redacted because some enterprising reporter or other interested party could reverse engineer perhaps which declaration goes with which plaintiff, maybe reference to testimony in the criminal case or otherwise, and that the declarations could get out and then subsequently be associated with plaintiffs, even though the names have been redacted from the face of the declarations themselves.

That does seem like a problem worth solving at this stage, and I think the best way to solve that is as you propose, which is meet and confer immediately after this with defense counsel and if necessary pro se defendants, if the pro se defendants desire. Let me know if you all come to a reasonable solution, which I hope and believe you can, that protects the interests that I just described but otherwise gives the defendants a meaningful opportunity to engage on the

subject of a protective order if they want to litigate it, and come back to me only if you get stuck on that issue. Does that make sense?

MR. GLAZER: That makes sense, your Honor. We really are only concerned with protecting the sensitive information, the confidential information. And if defendants feel they need to see it in order to raise challenges, then we can work out with them a proposed protective order that would cover the handling and protection of those documents.

THE COURT: Okay. I think that is -- we've established the way forward on the sealing issues. There was also a motion to compel from Ms. Clyne, asking the plaintiffs to reveal the names of the individuals who no longer wish to proceed anonymously. That we've established is going to happen by virtue of a revised complaint, amended complaint to be filed by the plaintiffs.

One issue I wanted to also note -- this is a pretty minor thing but we got indications from some of the plaintiffs who are here in person today that they were traveling far away -- traveling from far away and therefore wished to appear telephonically. Pro se parties have to have address information on file with the Court so that the Court can get filings to you. We

may be able to exempt you from that if you commit to receive filings by ECF. I don't know the rule on that question as I sit here.

If the address you're otherwise going to receive mail at would be a personal address, I could see some reasons why you might not want to include that on the docket here, given some of the notoriety associated with this case. But let me know, you know, is it the case that whatever address the Court has on file for you is no longer accurate and if so, whether you're comfortable providing a current mailing address, which might or might not be a residential address, and any other concerns you have on that subject. You can let me know now or by letter.

MS. CLYNE: I believe we're able to get the filings electronically.

THE CLERK: I'm sorry. Just do me a favor and say your name for the record.

MS. CLYNE: Nicki Clyne.

THE CLERK: Thank you.

MS. CLYNE: Thank you, your Honor, for your concern about that but I believe we can all get them electronically, the filings.

THE COURT: Ms. Guy, do you have any more background than I do here about why the Court might

need current address information beyond just the need to get filings to the parties.

All right, I'm not going to order -- I'm not going to order anybody to update address information at this time assuming that all three defendants and not just Ms. Clyne agree that they are logged into the ECF system and receiving information and filings from the Court electronically.

MR. PORTER: This is Brandon Porter and I can receive them. I also have a P.O. box there.

THE COURT: Okay. If you have a P.O. Box, that should be your current address if it's something you're comfortable you're providing, but thank you for that confirmation.

Ms. Roberts?

MS. ROBERTS: Yes, Danielle Roberts, and I also can receive them electronically.

THE COURT: Okay. Let me sum up on where I think we are on these various issues. With respect to the contact with represented parties issue, I'll call it, the plaintiffs have indicated that they believe that certain communications made by certain defendants to certain plaintiffs were intimidating or harassing or otherwise, and they cited a rule of professional responsibility that governs the conduct of lawyers in

New York, that says that lawyers are not supposed to reach out and communicate with individual clients on the other side of a litigation, that rule existing for the obvious reason that there would be unfairness in a trained lawyer who can see some of the strategy implications of communications in litigation communicating directly with a plaintiff -- a non-lawyers on the other side who would not.

There is a little bit of case law that says that courts have the inherent power -- even though those rules of professional responsibility don't apply, courts have the inherent power to direct non-lawyer pro se plaintiffs not to have direct contact with parties on the other side. For that proposition, I'm going to cite a couple of cases.

A 2017 decision by Judge Nathan in the Southern District, where she affirmed a magistrate judge's order directing a non-lawyer plaintiff to contact the City of New York, which was the party on the other side, only through counsel to the city. That case is Shim Larkin v. City of New York, 2017 W.L. 4862790. From this District, Judge Seybert's 2005 decision in Hammer v. Amazon, 392 F.Supp.2d 423 at page 434, directing a pro se plaintiff who was on the other side of Amazon to refrain from directly contacting

Amazon concerning matters related to the action, including even Amazon's legal department. She said if plaintiff wishes to communicate with Amazon, he must do so -- he must talk to Amazon's attorneys who have entered appearances in that case.

So I'm not sanctioning anybody but I am going to ask the individual plaintiffs in this case -- I'm going to direct the individual, excuse me, defendants in this case not to have direct communications with individual plaintiffs, directly or indirectly. That goes for communications that might be construed as harassing, it goes for communications you might think are more innocuous as well. If you want to be in touch with the plaintiffs about any subject in this case, reach out to Mr. Glazer or his law firm.

My order does not do either or both of two other things. My order does not restrict your ability to speak publicly about this case. If you want to make statements that are otherwise within your First Amendment rights to make in this country, you should for the moment feel free to do so. There are certain limits on that principle. If we get close to a jury trial in this case, we have to start worrying about public statements that might impeded the Court's ability to empanel a fair and impartial jury, and you

should keep that concern in the back of your mind. But for the moment, I'm not restricting anybody's ability to speak publicly on matters of importance in your life, including with respect to this case.

The other thing I'm not going to because I don't see a legal basis to do it is cabining the First Amendment activities of any person who is not a party to this case. I've said I don't want the defendants here to do indirectly through any other person that which you are not allowed under my order to do directly, and you would have just as much of a problem if you violated the order through some third party as you would if you violated it directly. But I don't see a basis in your letter or otherwise, especially at this point, to restrict the ability of any third party to communicating about this case. It would be unfortunate if a third party were to seek to embarrass people in this case for no reason other than spite but, again, I'm not seeing a basis in your letter or even a request in your letter for me to take action on that front.

MR. GLAZER: That's correct, your Honor, we didn't ask that. We just want the defendants to constrain themselves.

THE COURT: Okay. So that's the no-contact issue. On the show-cause issue and my order, the

plaintiffs will file an amended complaint that updates the names of the plaintiffs in the caption and otherwise and maybe deletes paragraphs that relate to plaintiffs who will no longer be part of the case. But plaintiffs will file their letter brief in support of the protective order with the two redactions that you described, namely the identities of two then plaintiffs who are no longer proceeding. And on the associated declarations, you will meet and confer with the defense to agree as reasonable humans on a path forward.

Anything else on that front?

MR. GLAZER: The only thing I can think of, your Honor, is the mechanics -- defendants have a right also to know the full identifies of the twelve plaintiffs who are going to be able to go forward.

THE COURT: Yes. You're going to file a chart under seal, I would think, that says, here are the full, unredacted names of anybody who has been granted the right to proceed pseudonymously or by first name only, and the defense will see that filing, I will see that filing, but the public will not see that filing, right?

MR. GLAZER: We can do it that way, your Honor.

THE COURT: I'm getting a head shake no. I

just mis-described the way the electronic filing system works and I appreciate the correction. When you file -- you're going to file a chart under seal that shows in the left column the names by which these people are appearing in the caption, and in the right column the full names, or vice versa. That filing under seal will be visible only to me, to the Court, just given the way ECF works, and so you will have to provide under whatever separate cover you choose a sealed copy to the defendants. You'll obviously mark it prominently that this is a sealed document and should not be shared with any third party.

MR. GLAZER: Which I guess raises the only remaining concern we have, which is that the defendants are using mailboxes or post office boxes and in some cases, those are apparently not located in the states where they reside. So our concern would be, who is picking the confidential document up for them and whether we can get assurance that it's not going to be opened and it's just going to go directly to the defendants. We would prefer to deliver it directly to them but I can --

THE COURT: I think we're going to put this -- I understand what you're saying. We're going to put this concern also in the bucket of things you're going

to confer with the defendants about and come to a reasonable agreement rather than me dictating a particular method of transmission one way or the other.

MR. GLAZER: Okay, your Honor.

THE COURT: Okay, so that -- I'm going to make sure that I'm not missing anybody else's agenda items before we leave here but let me just get through my agenda to make sure I'm not missing anything. I think that's everything on the show-cause question with respect to the protective order. Is that right from the plaintiffs' perspective?

MR. GLAZER: That's correct, your Honor.

THE COURT: Does any defendant have any -- we'll sort of go clockwise, starting with Mr. Sullivan -- any defendant have any further questions or concerns regarding the protective order?

MR. SULLIVAN: No. On behalf of Ms. Clare Bronfman, not on that particular piece, your Honor. And at the appropriate time, there may be some other issues.

THE COURT: I'm here after we resolve my agenda.

Mr. Wareham?

MR. WAREHAM: No, your Honor, nothing else.

THE COURT: Ms. Roberts?

MS. ROBERTS: I just wanted to clarify. If we don't have access to the names of those twelve people, if we reach out to them, we don't know if we're reaching out to them, just to have that be clear.

THE COURT: I think what you're saying and if so, I agree, is that Mr. Glazer should be in touch with you sooner rather than later to reveal the names of those twelve people in that sealed document that we were just talking about a moment ago as it relates to the manner of transmission so that you can know whose names it is you're not supposed to be speaking publicly about. In the meantime, err on the side of caution obviously with respect to somebody you might believe to be a party to this case. But yes, that's a good question.

MS. ROBERTS: Yes, of course, just to clarify. There may be people I'm communicating that I don't know are privy to this action.

THE COURT: Yeah. Nobody is going to hold you in contempt for communicating with somebody who you haven't been ordered by name to avoid communication with.

Mr. Porter?

MR. PORTER: I have nothing at this time.

THE COURT: Okay. I don't know if the mic

picked that up but Mr. Porter said he has nothing at this time.

Ms. Clyne?

MS. CLYNE: I'm also good, your Honor, thank you.

THE COURT: You're welcome.

We heard from the plaintiffs already.

Mr. Sullivan, you mentioned that you have some items that you might want to take up.

MR. SULLIVAN: Just very briefly just to close the circle. Obviously no position on the anti-contact rule because Ms. Bronfman is represented so we take no position there. I just wanted to point out an issue that the Court is going to deal with that has to do with the question before it that the Court raised sua sponte about potentially bifurcating matters. Because the defendants have both divergent and convergent issues and divergent and convergent allegations, it continues to be an issue that when the Court says defendants generally -- so to be clear, Ms. Clare Bronfman was not subject to any claims or allegations in either of plaintiffs' filings, and rightly so. I have no further representations on that but just to point out that he's not subject and should not have been subject, and she was not subject to any

claims.

Similarly, one of the reasons that putatively justifies the protective order are allegations of sexual assault. I will just point out that in the criminal case, the federal judge has stated orally and written that Ms. Bronfman had nothing to do with DOS or any of that and didn't know about it. The United States via the U.S. Attorney in the criminal case, court filing 928 --

THE COURT: Can I just ask you --

MR. SULLIVAN: Yes.

THE COURT: -- to foreshadow for me which of two or maybe ways you're going with this. Is it that you think this dictates that we should bifurcate the case at this time, or is it just that you have some maybe more nebulous concern that some of the defendants are being tainted atmospherically by allegations in Mr. Glazer's letter that don't really apply to them? If it's the latter, I don't think we really need to worry about it at all, at least from my perspective.

MR. SULLIVAN: It's principally foreshadowing the former with some concern about the latter. I hope it's not too nebulous but these sorts of associations can be real. Just to complete my thought, it's docket entry 928 in the criminal case

where the government stated -- this is about as good as I think we're going to get from a prosecutor. The government has not argued that DOS victims disclose their membership in DOS to Clare Bronfman. I am putting a finer point on there, that there's no evidence that they did because they did not.

For Ms. Bronfman, Clare Bronfman -- I forget there are two -- to have to defend with respect to issues of DOS and sexual assault generally is not an economic use of the Court's resources. So I think that it's an issue that the Court might want to consider sooner rather than later but it's an issue that we certainly are going to press.

THE COURT: If you're talking about bifurcation, I'm not going to remember offhand exactly which defendants are named in which claims, but I think most defendants are named in most claims if not all. So even if I bifurcated the more -- even if I bifurcated the sexual assault allegations from the multi-level marketing fraud allegations, your client would still be a defendant on both sides.

MR. SULLIVAN: We think that we presented a compelling set of papers on the motion to dismiss, your Honor, so that's --

THE COURT: You'd have to do that

regardless.

MR. SULLIVAN: So that may not be the case in accord with the resolution of those motions. I think it could be cleaner. The Court invited plaintiffs in fact to think about rewriting the complaint in a way that provided more evidence. But my strong belief is that at some point in this litigation, those issues are not going to be pled against Ms. Bronfman, and it just makes sense in terms of court economy to with Ms. Clare Bronfman -- I'll let Sara's counsel speak for Sara. But I don't think it's an economic use of the Court's resources for a set of issues that Ms. Clare Bronfman simply had absolutely nothing to do with, and we're confident that plaintiff cannot prove otherwise. We've got federal courts and the U.S. Attorney saying the same. This obviously is not the forum to argue it substantively.

THE COURT: Agreed.

MR. SULLIVAN: But I do want to raise it with the Court that this is going to continue to be an issue as long as that penumbra continues to encroach over on Ms. Clare Bronfman. So I wanted to just tee it up again for the Court.

THE COURT: Okay.

MR. SULLIVAN: I'm not asking for any relief

but it’s coming.

THE COURT: I understand what you’re saying. I think we’re probably better served, everybody here, by sort of holding the arguments in reserve until they actually ripen, and I’ll just leave it at that.

MR. SULLIVAN: Okay.

THE COURT: I raised this question myself. Reading the complaint, are we talking about one case or two cases, where the complaint has got a slew of extremely salacious sexual assault-related allegations on the one hand and then some allegations that sound more in the nature of kind of garden-variety, multilevel marketing consumer fraud and on the other hand, not to diminish the seriousness of fraud. If somebody wants to brief that issue with a specific remedy that they’re seeking in mind, tell me and we’ll hold a pre-motion conference about that. Otherwise, I’m aware of the tension because I was the one who flagged it in the first instance.

MR. SULLIVAN: Very well, your Honor, we definitely will brief it. Thank you for the consideration and the time.

THE COURT: Okay. Mr. Wareham?

MR. WAREHAM: Jamie Wareham for Ms. Sara Bronfman. I just want to repeat something I said the

very moment I met your Honor, which is we want this motion decided as soon as possible. This defendant --

THE COURT: If one side of the case gets dismissed, obviously you don't have to worry about bifurcating one side from the other.

MR. WAREHAM: She had nothing to do with any of the events in the complaint, had nothing to do with the criminal case, nothing to do with DOS. But I do agree with Mr. Sullivan that it is hanging over her head in a grossly unfair way, but it is what it is. We just hope that you can find time in your calendar to hear and resolve the motion dismiss as soon as you can.

THE COURT: Yeah. I haven't seen any of it because of the bundling rules that say that you all are exchanging briefs with one another until the motions are fully briefed, and only then do they come to me. But I'll see them soon enough and we'll deal with them in due course.

MR. WAREHAM: Thank you, your Honor.

THE COURT: Okay. Ms. Roberts, anything else you want to take up before we adjourn today?

MS. ROBERTS: No, nothing right now, your Honor, thank you.

THE COURT: Mr. Porter?

MR. PORTER: No. Thank you for considering

our financial situation. I appreciate it.

THE COURT: I don't take lightly the decision to order pro se plaintiffs to appear in person, especially when there are extenuating personal circumstances like Ms. Roberts flagged and financial circumstances like other defendants flagged as well. Given the fact that some very serious-sounding allegations had been made by the plaintiffs here about certain individuals' conduct, and given the fact that I wanted to issue the order that I did about no contact, I thought we needed to be face to face in person today for that reason. You should not necessarily take that to be a sign that I need you in person for every status conference. We'll take it one appearance at a time. So thank you for saying so.

Ms. Clyne?

MS. CLYNE: Yes. Thank you for that. I have a quick question about the no-contact order and if that also applies plaintiffs contacting defendants due to the case law that you referenced. I've been contacted multiple times by plaintiffs. And also if that applies to Mr. Glazer himself saying harassing and threatening things to the media as he has in the past.

THE COURT: Let's take that one at a time. I hadn't heard an application before that moment to

make the no-contact order bilateral, but I don't see any reason not to do it.

MR. GLAZER: We agree fully, your Honor.

THE COURT: All individual plaintiffs in this case should refrain from contact with all defendants, and if your clients want to communicate with anybody on the other side, they should do so through you.

MR. GLAZER: We actually weren't aware of that until now but we will certainly convey to our clients and reinforce that communications need to go through counsel.

THE COURT: Okay.

MS. CLYNE: Thank you.

THE COURT: And if you -- the only way Mr. Glazer obviously can enforce that rule with his clients is if he knows which individual plaintiffs are contacting you, so you should feel free to reach out to Mr. Glazer if necessary to let him know that.

In terms of Mr. Glazer himself, lawyers on one side need to be able to speak to the other side in order to be able to litigate a case. I ordered today in fact Mr. Glazer to meet and confer with the other side on issues of sealing and protective orders. And if a defendant is unrepresented, the only way for him

to do that is by reaching out to the defendants themselves, so you may well get a phone call from Mr. Glazer or somebody in his office. If you engage counsel at some point, Mr. Glazer would call your lawyer but at the moment, he doesn't have that option.

In terms of Mr. Glazer speaking to the media, I didn't order anybody on the defense side not to speak to the media generally or to take to social media generally. I ordered something much more limited than that, which was for you not to contact individual plaintiffs, directly or indirectly. I'm not going to do -- I'm not going to issue the broader relief in the other direction, either. I'll just say what I alluded to earlier, which is that we're going to try this case in this courtroom, not in the courts of the media or Facebook. If it starts to appear at any point that we're going to have difficulty empaneling a fair, impartial jury because the media circus is getting away from us, we'll take up that issue if and when it metastasises. I think that answers your question.

MS. CLYNE: I appreciate that, thank you.

THE COURT: Anything, Mr. Glazer, from you before we adjourn?

MR. GLAZER: Nothing, your Honor.

THE COURT: Thank you all for being here.

I'm not supposed to leave the courtroom without saying by what date things will happen. You're going to be filing a new complaint and some unredacted documents or unsealed documents. Can you do that by close of business a week from tomorrow?

MR. GLAZER: I believe we can accomplish all of that by close of business next week. The unsealing of the December 17th letter we can probably accomplish tomorrow.

THE COURT: Let me give you through the end of next week because that way, you may be able to agree on whatever the resolution is with respect to the individual plaintiffs' declarations, and you can do everything at once. But if you need more time on the declarations because the parties are not being as reasonable as I hope and dream that they will be, you'll let me know you need more time for that.

MR. GLAZER: Yes, your Honor. We'll take care of the filings in that time and we'll commence the meet-and-confer process and hopefully, we can move that along, too.

THE COURT: All right, thank you, everyone. We'll be adjourned.

* * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



ELIZABETH BARRON February 22, 2022