**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SARAH EDMONDSON, et al.,

        Plaintiffs,

     v.

KEITH RANIERE, et al.,

        Defendants.

1:20-cv-00485-EK-CLP

**DEFENDANT CLARE BRONFMAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF HER**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 7

I.     THE FAC SHOULD BE DISMISSED WITH PREJUDICE IN ITS ENTIRETY
AS TO CLARE BRONFMAN UNDER RULE 8. ................................................. 8

II.    FIFTY-EIGHT PLAINTIFFS SHOULD BE DISMISSED WITH PREJUDICE
FOR LACK OF STANDING UNDER RULE 12(B)(1) AS TO CLARE
BRONFMAN. .......................................................................................................... 11

III.   PLAINTIFFS' RICO CLAIM (COUNT I) SHOULD BE DISMISSED WITH
PREJUDICE UNDER RULES 9(B) AND 12(B)(6). ....................................... 12

     A.    Plaintiffs Fail to Plead an Enterprise. ................................................. 13

           1.    Plaintiffs Have Not Identified The Alleged Enterprise. ........... 14

           2.    Plaintiffs Fail to Plausibly Allege that Defendants Shared a
Common Purpose. ...................................................................... 14

           3.    Plaintiffs Fail to Plausibly Allege that Defendants Acted as a Unit. ........ 15

           4.    Even Viewing the FAC as Two Alleged Enterprises, One Sex-
Based and Another Consumer-Based, Plaintiffs' RICO Claim Still
Fails. .......................................................................................... 17

     B.    Plaintiffs Fail to Plausibly Allege that Clare Bronfman Engaged in a
Pattern of Racketeering Activity Because Plaintiffs Have Not Plausibly
Alleged that Clare Bronfman Committed Two Predicate Acts. ......................... 18

           1.    Plaintiffs' Mail and Wire Fraud Claims Against Clare Bronfman
Do Not Satisfy Rule 9(b) Pleading Requirements. ................... 19

           2.    Plaintiffs Do Not Plausibly Allege Two Predicate Acts of
Extortion, Witness Tampering, Witness Retaliation, or Harboring
Aliens by Clare Bronfman. ....................................................... 21

     C.    Plaintiffs Lack Standing to Bring a RICO Claim Because They Have Not
Plausibly Alleged An Injury To Their "Business or Property." ...................... 22

IV.    PLAINTIFFS' RICO CONSPIRACY CLAIM (COUNT II) SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(B)(6)........................................... 23

V.    PLAINTIFFS' CHAPTER 77 CLAIMS (COUNT III) AGAINST CLARE BRONFMAN SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(B)(6).................................................................................................. 25

    A.    Plaintiffs' Sex Trafficking Claim (Count III(A)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ............................... 25

    B.    Plaintiffs' Forced Labor Claims (Count III(B)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ............................... 27

        1.    Forced Labor Claims of Sixty Plaintiffs Do Not Adequately Allege Performing Forced Labor or An Injury Traceable to Clare Bronfman. ............................................................................. 28

        2.    DOS Plaintiffs' Forced Labor Claims Do Not Implicate Clare Bronfman. ............................................................................. 28

        3.    Plaintiffs Who Participated in NXIVM Psychological Studies Do Not Adequately Allege that They Performed Labor. ................................ 29

        4.    Plaintiffs Daniela, Camila, and Adrian's Forced Labor Claims Do Not Implicate Clare Bronfman. ................................................... 30

        5.    Exo/Eso Plaintiffs' Forced Labor Claims Do Not Plausibly Allege that Clare Bronfman Engaged in Forced Labor. ....................................... 31

        6.    Other Plaintiffs' Forced Labor Claims Lack Support. .............................. 32

    C.    Plaintiffs' Human Trafficking Claim (Count III(C)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ............... 33

    D.    Plaintiffs' Peonage Claim (Count III(D)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ............................... 34

    E.    Plaintiffs' Unlawful Conduct With Respect To Documents In Furtherance of Trafficking, Peonage, or Forced Labor Claim Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ............................... 34

VI.    PLAINTIFFS' STATE LAW CLAIMS AGAINST CLARE BRONFMAN SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(B)(6). .................. 36

    A.    Count IV Fails To State A Claim For Negligence Per Se..................................... 37

    B.    Plaintiffs' Malicious Abuse of Legal Process Claim (Count V) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule

12(b)(6). ................................................................................................................... 38

    C.    Plaintiffs' Aiding and Abetting, Acting In Concert, and Conspiring With Respect To Unauthorized Human Research Claim (Count IX) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ................................................................................................................... 39

    D.    Plaintiffs' Gross Negligence and Recklessness Claim (Count X) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6). ................................................................................................................... 41

CONCLUSION ................................................................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC,*
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ...................................................................13

*Abbott Labs. v. Adelphia Supply USA,*
    No. 15-CV-5826 (CBA)(LB), 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ........................16, 17

*Aguirre v. Best Care Agency, Inc.*
    961 F. Supp. 2d 427 (E.D.N.Y. 2013) ...................................................................32

*Albano v. DiggDejected,*
    No. 19-CV-3048-RRM-JO, 2021 WL 101111 (E.D.N.Y. Jan. 11, 2021) ............................13

*Alfie's Original Souliers, Inc. v. Fleet Bank,*
    No. 95-CV-8741-RPP, 1996 WL 263004 (S.D.N.Y. May 17, 1996) ...................................18

*All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.,*
    436 F.3d 82 (2d Cir. 2006) ......................................................................7, 11

*Am. Transit Ins. Co. v. Bilyk,*
    514 F. Supp. 3d 463 (E.D.N.Y. 2021) ...................................................................19

*Am. Tel. & Tel. Co. v. City of New York,*
    83 F.3d 549 (2d Cir. 1996) ...........................................................................42

*Arboleda v. Microdot,*
    No. 154165/14, 2016 WL 881185 (N.Y. Sup. Ct. Mar. 8, 2016) ...................................37

*Aschroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................7, 17

*Atuahene v. City of Hartford,*
    10 F. App'x 33 (2d Cir. 2001) .........................................................................8, 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................7, 15

*Bigio v. Coca-Cola Co.,*
    675 F.3d 163 (2d Cir. 2012) ...........................................................................41

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) ..........................................................13, 19, 20

*Carlone v. Lamont,*
  2021 WL 5049455 (2d Cir. Nov. 1, 2021) ..............................................................11, 12

*Carney v. Adams,*
  141 S. Ct. 493 (2020) .....................................................................................................11

*Cedar Swamp Holdings, Inc. v. Zaman,*
  487 F. Supp. 2d 444 (S.D.N.Y. 2007), 487 F. Supp. 2d at 451 ................................17

*Cisneros v. Petland, Inc.,*
  972 F.3d 1204 (11th Cir. 2020) ...................................................................................15

*Clyatt v. U.S.,*
  197 U.S. 207 (1905) .......................................................................................................34

*Coastline Terminals of Conn., Inc. v. USX Corp.,*
  156 F. Supp. 2d 203 (D. Conn. 2001) .........................................................................37

*Cohen v. Ne. Radiology, P.C.,*
  No. 20-CV-1202-VB, 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ...........................37

*Com–Tech Assocs. v. Comput.er Assocs. Int''l, Inc.,*
  753 F. Supp. 1078 (E.D.N.Y. 1990) .............................................................................24

*Com. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.,*
  271 F.3d 374 (2d Cir. 2001)..........................................................................................23

*Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC,*
  No. 11-CV-7801-PAE, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012).......................16

*Crabhouse of Douglaston, Inc. v. Newsday, Inc.,*
  801 F. Supp. 2d 64 (2011) ............................................................................................14

*D. Penguin Bros. v. City Nat'l Bank,*
  587 F. App'x 663 (2d Cir. 2014), 587 F. App'x at 668 .............................................14

*DeFalco v. Bernas,*
  244 F.3d 286 (2d Cir. 2001)..........................................................................................13

*DeFina v. Latimer,*
  79 F.R.D. 5 (E.D.N.Y. 1977).............................................................................................8

*DeMartino v. New York,*
  No. 12-CV-3319-SJF- AKT, 2013 WL 3226789 (E.D.N.Y. June 24, 2013),
  *aff'd*, 586 F. App'x 68 (2d Cir. 2014)........................................................................38

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006)..........................................................................................22

*DLJ Mortg. Cap. Inc. v. Kontogiannis,*
    594 F. Supp. 2d 308 (E.D.N.Y. 2009) ..................................................................19

*Doe v. Uber Techs., Inc.,*
    No. 20-CV-8446-LJL, 2021 WL 3193166 (S.D.N.Y. July 28, 2021) .....................42

*Edo v. New York City,*
    No. 16-CV-4155 (KAM)(VMS), 2016 WL 5874996 (E.D.N.Y. Oct. 7, 2016) .....................11

*Elsevier Inc., W.H.P.R., Inc.,*
    692 F. Supp. 2d 291 (S.D.N.Y 2010), 692 F. Supp. 2d 291 (S.D.N.Y 2010).........................17

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.,*
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) ................................................................24

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004)...........................................................................19, 24

*Flexborrow LLC v. TD Auto Fin. LLC,*
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ...............................................18, 19, 20, 21

*Franzone v. City of New York,*
    No. 13-cv-5282 (NG), 2015 WL 2139121...........................................................19

*Gonzalez de Fuente v. Preferred Home Care of New York LLC,*
    No. 18-CV-06749-AMD-PK, 2020 WL 5994957 (E.D.N.Y. Oct. 9, 2020).........................11

*Hadami, S.A. v. Xerox Corp.,*
    272 F. Supp. 3d 587 (S.D.N.Y. 2017).................................................................42

*Hammer v. Am. Kennel Club,*
    304 A.D.2d 74, aff'd, 1 N.Y.3d 294 (2003)........................................................40

*Hecht v. Com. Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990)............................................................................12, 24

*Hinterberger v. Cath. Health Sys., Inc.,*
    536 F. App'x 14 (2d Cir. 2013) ........................................................................13

*Hoatson v. N.Y. Archdiocese,*
    No. 05-cv-10467, 2007 U.S. Dist. LEXIS 9406 (S.D.N.Y. Feb. 8, 2007), *aff'd*
    208 F. App'x 88 (2d Cir. 2008) ........................................................................16

*Holmes v. Allstate Corp.,*
    No. 11-CV-1543-LTS-DF, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) .................9

*Hudson v. Delta Kew Holding Corp.,*
    No. 16425–12, 992 N.Y.S.2d 158, 2014 WL 1924324 (Sup. Ct. 2014)................39

*Josephine v. Columbia Univ.,*
   4 Misc. 3d 1023(A), 798 N.Y.S.2d 345 (Sup. Ct. 2004) ........................................40

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996) .........................................................................13

*Lawson v. Rubin,*
   No. 17-CV-6404-BMC, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ..................23

*Lopez v. Ctpartners Exec. Search Inc.,*
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)....................................................................43

*Mallela v. Cogent Infotech Corp.,*
   No. 19-CV-01658-NR, 2020 WL 2541860 (W.D. Pa. May 19, 2020).............34, 35

*Maloney v. Meadowbrook Care Ctr., Inc.,*
   No. 10359/07, 2009 WL 1574113 (N.Y. Sup. Ct. May 15, 2009) .........................39

*McCall v. Chesapeake Energy Corp.,*
    509 F. App'x 62, 64 (2d Cir. 2013), 509 F. App'x at 64.......................................11

*McGee v. State Farm Mut. Auto. Ins. Co.,*
   No. 08-CV-392-FB-CLP, 2009 WL 2132439 (E.D.N.Y. July 10, 2009)................18

*McGrath v. United Hosp.,*
   97 A.D.2d 46 (1990) ...........................................................................................42, 43

*McGuire v. City of New York,*
   2013 WL 325359 (E.D.N.Y. Jan. 28, 2013) .........................................................7

*Mendez v. Draham,*
   182 F. Supp. 2d 430 (D.N.J. 2002) ......................................................................9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,*
   No. 91 CV-2923-CSH, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ......................9

*Miles v. City of Hartford,*
   445 F. App'x 379 (2d Cir. 2011) ..........................................................................39

*Moss v. BMO Harris Bank, N.A.,*
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ..................................................................17

*Muchira v. Al-Rawaf,*
   No. 1:14-CV-770-AJT/JFA, 2015 WL 1787144 (E.D. Va. Apr. 15, 2015),
   *aff'd,* 850 F.3d 605 (4th Cir. 2017), *as amended* (Mar. 3, 2017) ...........................35

*Nat'l Grp. for Commnc'ns Ltd. and Computs. v. Lucent Techs. Inc.,*
   420 F. Supp. 2d 253 (S.D.N.Y. 2006)...................................................................15

*Oka v. Cty. of Suffolk,*
    No. 11-CV-2578-SJF, 2015 WL 918762, at *9 (E.D.N.Y. Mar. 2, 2015)...............................39

*Petroff Amshen LLP v. Alfa Rehab PT PC,*
    No. 19-CV-1861-MKB-RML, 2020 WL 9209278 (E.D.N.Y. Dec. 14, 2020)......................16

*In re Platinum & Palladium Commodities Litig.,*
    828 F. Supp. 2d 588 (S.D.N.Y. 2011).................................................................................18

*Roberto's Fruit Mkt., Inc. v. Schaffer,*
    13 F. Supp. 2d 390 (E.D.N.Y. 1998) .......................................................................................8

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,*
    84 F.3d 629 (2d Cir. 1996)....................................................................................................19

*Sackin v. TransPerfect Glob., Inc.,*
    278 F. Supp. 3d 739 (S.D.N.Y. 2017)....................................................................................37

*Salahuddin v. Cuomo,*
    861 F.2d 40 (2d Cir. 1988).......................................................................................................8

*Silverboys, LLC v. Skordas,*
    No. 653874/2014, 2015 WL 5222871 (N.Y. Sup. Ct. Sept. 4, 2015).....................................38

*Stein v. World-Wide Plumbing Supply, Inc.,*
    71 F. Supp. 3d 320 (E.D.N.Y. 2014) .....................................................................................13

*Targum v. Citrin Cooperman & Co., LLP,*
    No. 12-Civ-6909-SAS, 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013).....................................12

*Turner v. Unification Church,*
    473 F. Supp. 367 (D.R.I. 1978)...............................................................................................34

*U.S. v. Cambio Exacto, S.A.,*
    166 F.3d 522 (2d Cir. 1999)....................................................................................................11

*U.S. v. Garcia,*
    No. 02–CR–110S–01, 2003 WL 22956917 (W.D.N.Y. Dec. 2, 2003) .....................................31

*U.S. v. Shackney,*
    333 F.2d 475 (2d Cir. 1964)....................................................................................................34

*Velez v. Sanchez,*
    693 F.3d 308 (2d Cir. 2012)....................................................................................................25

**Statutes**

18 U.S.C. § 1581.............................................................................................................34, 35

18 U.S.C. § 1589 .................................................................................... *passim*

18 U.S.C. § 1590 ...............................................................................33, 35

18 U.S.C. § 1591 ..........................................................................25, 27, 35

18 U.S.C. § 1592 ...............................................................................34, 35

18 U.S.C. § 1593A ............................................................................27, 34

18 U.S.C. § 1595 ....................................................................................25

18 U.S.C. § 1961 ...............................................................................13, 18

18 USC § 1962 ..................................................................................22, 23

N.Y. Child Victims Act .........................................................................6, 7

N.Y. Education Law § 6512 ...............................................................37, 38

N.Y. Public Health Law §§ 2442 and 2443 ......................................39, 40

N.Y. Social Service Law § 240 ................................................................7

New York Education Law §§ 8405(2) and 8402(2) ................................37

Pub L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003) .................25

Trafficking Victims Protection Act ("TVPA") .................................25, 34

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................. *passim*

N.Y. C.P.L.R. § 213-c............................................................................6, 7

Fed. R. Civ. P. 9 ..........................................................................7, 19, 20

Fed. R. Civ. P. 12 .............................................................................. *passim*

# INTRODUCTION

Plaintiffs' lawsuit seeks monetary compensation for alleged injuries related to their participation in (i) a personal improvement program known as NXIVM and (ii) a separate entity known as DOS. Plaintiffs' allegations fly in the face of their long-time participation in NXIVM—indeed, many Plaintiffs engaged in the same conduct which they now allege caused them harm. The crucial fact that distinguishes most Plaintiffs from Defendants is a purported change of heart and, most obviously, a desire to seek monetary gain from Defendants perceived to have significant financial resources. Plaintiffs therefore seek to downplay the fact that NXIVM was a 20-year-old company with more than 17,000 past students from 33 countries, which sought to inspire joy in people's lives independent of religion or politics. Plaintiffs likewise omit to mention that NXIVM's goal was to help people live more ethical lives and create a more humanitarian society. All of that is ignored in service of Plaintiffs' goal of converting their own participation and leadership in NXIVM into a claim for money damages. The First Amended Complaint ("FAC") seeks to construct this distorted narrative to obfuscate the fact that it is legally deficient in numerous respects set forth in this motion to dismiss.

The 217-page FAC is a sprawling mass of allegations that, as this Court noted, might charitably be read as potentially two different cases: a sexual assault case and consumer-fraud case. *See* Oct. 15, 2021 Hearing Transcript at 4:8–22. Plaintiffs rely on a "throw everything against the wall and see what sticks" approach in an attempt to stitch together a variety of RICO, Chapter 77,[1] and state law claims against fifteen different Defendants. The result is a confusing, overcomplicated—and therefore inadequate—FAC. Even where Defendants are able to untangle

---

[1] Chapter 77 is a collection of criminal statutes in the U.S. Code that target sex and human trafficking, involuntary servitude, slavery, and forced labor. *See* 18 U.S.C. §§ 1581, 1589, 1590, 1591, 1592, 1593A, 1595(a).

the many narrative threads to make sense of Plaintiffs' many claims, Plaintiffs do not meet their burden to survive a motion to dismiss. Regrettably, Plaintiffs declined this Court's suggestion to consider repleading, *see* Nov. 30, 2021 Hearing Transcript at 6:18–9:17, so Defendants are left to address these deficiencies in this motion.

For her part, Clare Bronfman had little to nothing to do with most of the accusations leveled in the FAC. Associating her with the oftentimes unsavory and salacious allegations is a thinly veiled effort to intimidate and pressure a woman from a family well known in the national and international community. Simply put, Plaintiffs perceive Clare Bronfman as a deep pocket, and hope to use this litigation to obtain a windfall. Such strategic (or, at best, careless) pleading should not be rewarded. The FAC does not state cognizable claims against Clare Bronfman and should be dismissed with prejudice.

## BACKGROUND

The FAC alleges that Defendants Keith Raniere and Nancy Salzman founded NXIVM and the professional development training program, Executive Success Programs, Inc. ("ESP"). FAC ¶¶ 1–2. Over time, certain individuals who participated in NXIVM and ESP formed other organizations to serve a variety of goals. For example, the FAC alleges that NXIVM Executive Board member Plaintiff Mark Vicente was part of the men's group called "Society of Protectors" ("SOP"). FAC ¶ 280. The alleged purpose of SOP was to "build character through taking responsibility and confronting adversity." FAC ¶ 669.

Plaintiffs allegedly participated—and in some cases, occupied leadership roles—in certain of these entities. The rambling nature of the FAC, however, makes it difficult to offer more than a general description of the various Plaintiffs. Indeed, this case hosts a seemingly ever-changing number of mostly anonymous Plaintiffs—58 Doe Plaintiffs, 8 partially named Plaintiffs, and 10

named Plaintiffs appear to remain as of this filing.[2] *See* Ex. B. Further stymying an accurate count of the current Plaintiffs is that the FAC sometimes mentions individual Plaintiff names that are not among the named Plaintiffs listed in the caption, *see, e.g.*, FAC ¶¶ 552–56 (discussing "Kayla"), and attributes conflicting facts to the same Plaintiff, *compare* FAC ¶ 69 (stating Jane Doe 8 is a DOS slave under N. Clyne), *with* FAC ¶ 850 (stating Jane Doe 8 is a DOS slave under A. Mack).

Each of the 76 Plaintiffs alleges one or more of a variety of forms of participation and leadership within NXIVM.[3] One Plaintiff makes no factual allegations at all; nine Plaintiffs allege in identical boilerplate allegations only that they enrolled in and paid for NXIVM curriculum; 35 Plaintiffs allege in identical boilerplate allegations only that they enrolled in and paid for NXIVM curriculum and performed (unspecified) uncompensated labor; only 31 Plaintiffs bring at least some modicum of individualized allegations, *see, e.g.,* John Doe 3 alleging he enrolled his children in RCG, FAC ¶ 297.[4] *See* Ex. C.

Defendants are 11 individuals and four entities (NXIVM Corporation, Executive Success Programs, First Principles, and Ethical Science Foundation). FAC ¶¶ 70–75. The FAC alleges Defendants Keith Raniere and Nancy Salzman created NXIVM, the ESP curriculum, and scientific medical experiments. FAC ¶¶ 1, 52, 56, 57. Raniere is alleged to have been the head of NXIVM and related entities, and of DOS, and to have directed a trafficking venture that engaged in, among other things, acts of peonage, forced labor, and sex trafficking. FAC ¶ 53, 55. The FAC alleges

---

[2] Seventy-nine fully-anonymous Plaintiffs signed onto the original complaint. Dkt. 76. When the FAC was filed nearly one year later, it listed only 70 fully-anonymous Plaintiffs. Dkt. 64. Since that time, several of those anonymous Plaintiffs have voluntarily withdrawn from the case. Dkt. 113–114, 125–132. Plaintiffs have not submitted a further amended complaint with an updated list of Plaintiffs.

[3] Confusingly, although the FAC states that the alleged RICO enterprise is "NXIVM," FAC ¶ 865, Plaintiffs also use the term "NXIVM" to describe the organization of which they admit they were a part. *See, e.g.*, FAC ¶ 100 (Plaintiff "Sarah Edmondson became a NXIVM 'Coach'").

[4] Numbers may not be fully accurate given the lack of clarity on the number and identities of Plaintiffs.

that N. Salzman was a member of the NXIVM and ESP executive boards. FAC ¶ 56. The FAC goes on to allege that Defendants Lauren Salzman, Allison Mack, and Nicki Clyne were high-ranking leaders of and helped to run DOS. FAC ¶¶ 63–64, 69. Defendant Danielle Roberts allegedly branded multiple DOS members. FAC ¶ 68. Defendant Brandon Porter, a then-licensed physician, allegedly conducted medical experiments on members of the NXIVM community. FAC ¶ 67. Defendant Kathy Russell was allegedly the "Enterprise's" bookkeeper, FAC ¶ 65, and Defendant Karen Unterreiner was allegedly a head ESP trainer and involved in NXIVM finances. FAC ¶ 66. Defendant Sara Bronfman allegedly donated money to NXIVM and served on the NXIVM Board. FAC ¶ 62. Defendants NXIVM Corporation, Executive Success Programs, Ethical Science Foundation, and First Principles were allegedly "instrumentalities" through which Defendants "carr[ied] out unlawful acts." FAC ¶¶ 70–75.

Plaintiffs allege that Clare Bronfman provided funds to NXIVM and NXIVM entities, *see, e.g.*, FAC ¶¶ 255, 701, 708, 962, paid for attorneys who may have provided advice regarding visas or sent threatening letters, *see, e.g.*, FAC ¶¶ 118, 727, 732, made or caused to be made false statements to legal authorities, *see, e.g.*, FAC ¶ 106, and helped Raniere select women to run exo/eso, *see* FAC ¶ 223. None of these factual allegations provide support for the myriad claims Plaintiffs levy against Clare Bronfman. For example, Plaintiffs do not plead any sexual relationships or sexual conduct related to the women involved in exo/eso whom Clare Bronfman allegedly assisted in recruiting to be sexual partners for Raniere.

Beyond these generic characterizations, it is difficult—and sometimes impossible—to ascertain what conduct the FAC alleges as to particular Plaintiffs and Defendants.[5] The FAC spans

---

[5] Perhaps to blame for the confusion is Plaintiffs' attempt to combine into one action multiple disparate claims. As the Court observed in the October 15, 2021 hearing, even a generous reading of the FAC suggests that Plaintiffs seek to bring at least two distinct categories of claims: consumer fraud claims and sexual

217 pages and contains 1,020 numbered paragraphs, setting forth a labyrinth of often vague and conclusory legal allegations lacking factual support. It brings 16 counts, several of which, in turn, encompass multiple kinds of conduct. *See, e.g.*, Count III(B) for forced labor, conspiracy to commit forced labor, and benefitting from forced labor. Most allegations are levied against undefined or undifferentiated "Defendants," the "Individual Defendants," the "Inner Circle," "NXIVM," or the "Enterprise"—making it impossible to discern which facts are alleged against whom and by whom. *See, e.g.*, FAC ¶ 4 ("the Defendants continually manipulated the program requirements"). The FAC includes personal narratives unrelated to any Plaintiffs or Defendants, *see, e.g.*, FAC ¶ 724 (alleging facts about "B," who does not appear to be a Plaintiff in this action), and various portions of the FAC are highly repetitive, *see, e.g.*, FAC ¶ 220–25 & 766–74 (duplicative allegations regarding Jane Doe 17); FAC ¶¶ 19–33 & ¶¶ 788–830 (duplicative allegations regarding DOS).

Particularly relevant to this Motion, the FAC is bereft of allegations tying Clare Bronfman to the bulk of the alleged events in question. Plaintiffs nonetheless levy a multitude of claims against her, lumping her in with "all Defendants" for certain claims and a subset of Defendants for others. Certain claims are brought on behalf of "all Plaintiffs," while others are brought on behalf of one or more named Plaintiffs, one or more unnamed (Jane or John Doe) Plaintiffs, and various permutations thereof:

| Count | Claim | Plaintiff(s) | Defendant(s) |
|-------|-------|--------------|--------------|
| I | RICO | All Plaintiffs | Individual Defendants |
| II | RICO Conspiracy | All Plaintiffs | Individual Defendants |
| III | Section 1595 "Venture" | | |
| III-A | Sex Trafficking | Daniela, Camila, S. Edmondson, J. Salazar, Souki, Nicole, Audrey, I. | All Defendants |

---

assault claims. *See* Oct. 15, 2021 Hearing Transcript at 4:8–22.

| | | Oxenberg, A. Stiles, B. Piesse, T. Chapman, A. McLean, Kayla, Jane Does 6–11, 15, 17, 19, 20–21, 25, 28–32, 34, 36, 39, 42–45, 47–48, 50, 52–54, 56, 59–60 | |
|---|---|---|---|
| III-B | Forced Labor | All Plaintiffs | All Defendants |
| III-C | Human Trafficking | All Plaintiffs | All Defendants |
| III-D | Peonage | All Plaintiffs | All Defendants |
| III-E | Unlawful Conduct Re: Documents In Furtherance Of Trafficking, Peonage, or Forced Labor | Daniela | K. Raniere, C. Bronfman, L. Salzman, N. Salzman, K. Unterreiner, K. Russell |
| IV | Negligence Per Se – Unauthorized Practice of Counseling; Aiding & Abetting, Conspiracy, Acting In Concert | All Plaintiffs | All Defendants |
| V | Malicious Abuse of Legal Process | Natalie, Jane Doe 19, S. Edmondson, J. Salazar, Souki, Audrey | K. Raniere, C. Bronfman, S. Bronfman, N. Salzman |
| VI | Battery | S. Edmondson, Nicole, Audrey, Jane Doe 7, I. Oxenberg | D. Roberts |
| VII | Aiding & Abetting, Acting In Concert, Conspiring With Respect To Battery | S. Edmondson, Nicole, Audrey, Jane Doe 7, I. Oxenberg, Amanda, Camila | K. Raniere, L. Salzman, A. Mack, N. Clyne |
| VIII | Negligence Per Se– Unauthorized Human Research | Camila, Jane Does 19–22 | B. Porter |
| IX | Aiding & Abetting, Acting In Concert, Conspiring With Respect To Unauthorized Human Research | Camila, Jane Does 19–22 | K. Raniere, N. Salzman, L. Salzman, C. Bronfman, S. Bronfman |
| X | Gross Negligence & Recklessness | Jane Does 20–22 | K. Raniere, B. Porter, N. Salzman, C. Bronfman, S. Bronfman |
| XI | N.Y. Child Victims Act Claim | Camila | K. Raniere |
| XII | N.Y. C.P.L.R. § 213-c (action by victim of sexual offenses) | Camila | K. Raniere |

| XIII | Battery, Intentional Inflection of Emotional Distress Pursuant to N.Y. Child Victims Act | Camila | K. Raniere |
|------|------|------|------|
| XIV | Battery, Intentional Inflection of Emotional Distress Pursuant to N.Y. C.P.L.R. § 213-c | Camila | K. Raniere |
| XV | Negligence | Camila | N. Salzman |
| XVI | N.Y. Social Service Law § 240 | Camila | N. Salzman |

As the above chart demonstrates, Plaintiffs do not bring claims against Clare Bronfman in relation to Counts VI, VII, VIII, XI, XII, XIII, XIV, XV, or XVI. Nor is there any count naming Clare Bronfman as the sole defendant. Rather, each count of the FAC that (at least nominally) targets Clare Bronfman does so as part of a group of all 15 defendants, all 11 individual defendants, 6 individuals, 2 different combinations of 5 individuals, and 4 individuals. The result is a morass.

## ARGUMENT

Each of Plaintiffs' claims against Clare Bronfman fails to satisfy multiple requirements set forth in Rules 8, 9, and 12. First, the entirety of Plaintiffs' claims should be dismissed for impermissible group pleading and failure to plead a "short and plain statement" under Rule 8. Second, a large majority of Plaintiffs should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction because they have not alleged a traceable injury to establish Article III standing. *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(1). Third, all of Plaintiffs' claims against Clare Bronfman—RICO-based claims, Chapter 77 claims, and state law claims—also fail to "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" as required by Rule 12(b)(6). *McGuire v. City of New York*, 2013 WL 325359, at *3 (E.D.N.Y. Jan. 28, 2013) (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

# I.    THE FAC SHOULD BE DISMISSED WITH PREJUDICE IN ITS ENTIRETY AS TO CLARE BRONFMAN UNDER RULE 8.

The FAC should be dismissed as to Clare Bronfman because it is not "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it engages in impermissible group pleading. These are not mere technical requirements, because "a complaint [must] give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (internal quotation marks omitted). A complaint that "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be, and which imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments*, generalizations and rumors*, violates the rule and is subject to dismissal." *DeFina v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y. 1977) (emphasis added) (citations omitted). Courts in this Circuit do not hesitate to dismiss complaints for being overly lengthy and lacking clarity. *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 41–43 (2d Cir. 1988) (dismissing 15-page complaint naming 22 defendants and setting forth 23 causes of action for failure to comply with Rule 8); *Roberto's Fruit Mkt., Inc. v. Schaffer*, 13 F. Supp. 2d 390, 395–96 (E.D.N.Y. 1998) (dismissing 71-page RICO complaint for excessive length, redundancy, and inclusion of irrelevant, inflammatory matters).

These examples of dismissed complaints are models of brevity and restraint compared to the FAC here. It is difficult to imagine how Clare Bronfman—or the other Individual Defendants— could mount a coherent defense to the sprawling allegations here, which also include inflammatory statements irrelevant to the allegations against Defendants generally, *see, e.g.*, FAC ¶ 724 (discussing conduct related to non-party, "B"), and against Clare Bronfman specifically, *see, e.g.*, FAC ¶¶ 788–824, 883 (describing DOS without any allegations that Clare Bronfman was part of

or even knew of DOS until after news of DOS became public, yet still including Clare Bronfman in Plaintiffs' sex trafficking count); *see Mendez v. Draham*, 182 F. Supp. 2d 430, 433 (D.N.J. 2002) (granting motion to strike the complaint because "[o]nly through superhuman patience, effort, and insight, could any attorney review the allegations of the Complaint and make paragraph-by-paragraph responses.").

Moreover, actions brought against multiple defendants "must clearly specify the claims with which each particular defendant is charged." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CV-2923-CSH, 1994 WL 88129, at *18 (S.D.N.Y. Mar. 15, 1994). "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Holmes v. Allstate Corp.*, No. 11-CV-1543-LTS-DF, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012). "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," Plaintiffs fail to satisfy the minimum pleading standards of Rule 8. *Atuahene*, 10 F. App'x at 34.

The FAC also engages in group pleading as to Plaintiffs, which is likewise prohibited by Rule 8. *See Holmes*, 2012 WL 627238, at *25–26 (prohibiting group pleadings as to plaintiffs as well as to defendants). This, along with other pleading deficiencies, makes it difficult to ascertain which Plaintiffs are making which allegations. Seventy-six Plaintiffs remain in this action, 58 of whom remain identified only as Jane or John Doe.[6] Ex. B. Various, shifting combinations of these Plaintiffs bring claims against various combinations of one or more of the 15 Defendants. The

---

[6] *See* Dkt. 64 (FAC); Dkt. 113 (Voluntary Dismissal of Ana Cecelia); Dkt. 114 (Voluntary Dismissal of Jane Doe 51); Dkt. 125 (Voluntary Dismissal of Jane Doe 13); Dkt. 126 (Voluntary Dismissal of Jane Doe 23); Dkt. 127 (Voluntary Dismissal of Jane Doe 26); Dkt. 128 (Voluntary Dismissal of Jane Doe 33); Dkt. 129 (Voluntary Dismissal of Jane Doe 55); Dkt. 130 (Voluntary Dismissal of John Doe 2); Dkt. 131 (Voluntary Dismissal of John Doe 16); Dkt. 132 (Voluntary Dismissal of John Doe 17).

numbers of Doe Plaintiffs are constantly changing, and even Plaintiffs cannot seem to keep the parties straight.[7]

In addition, Plaintiffs casually use terms such as "Defendants," "the Individual Defendants," the "Inner Circle," or "NXIVM" to lump Clare Bronfman in allegations related to activities in which she played no part and of which she had no knowledge. More specifically, Plaintiffs include Clare Bronfman as a Defendant in 9 of the 15 counts. The FAC, however, fails to substantiate Clare Bronfman's involvement in the alleged misconduct with specific factual allegations. For example, 35 Plaintiffs allege identical boilerplate claims based on enrollment in NXIVM or uncompensated labor "for the benefit of the Defendants," with no mention of Clare Bronfman. Ex. D. Plaintiffs also devote more than 60 paragraphs of the FAC to detailing the history and inner workings of the highly secret organization DOS. *See* ¶¶ 19–33, 788–830. While Plaintiffs attempt to rope Clare Bronfman into their sex-based claims in Counts I, II, and III, they do not allege that Clare Bronfman was a part of DOS or even knew about its existence before it became public, nor do Plaintiffs allege that Clare was involved in or aware of any sexual activities related to Camila, Daniela, or any other Plaintiff.[8]

In sum, the FAC's massive length and persistent vagueness as to Clare Bronfman—coupled with its repeated reliance on group pleading—leave it far short of the minimum pleading standards

---

[7] Plaintiffs occasionally, and inconsistently, replace a party identified as Jane/John Doe in the caption of the FAC with their real name in the text of the FAC. *See, e.g.*, FAC ¶¶ 552–56 (discussing "Kayla"). In addition, Plaintiffs seem to confuse the Does. *Compare, e.g.*, FAC ¶ 69 (describing Jane Doe 8 as a DOS slave under Defendant Clyne), *with* FAC ¶ 850 (describing Jane Doe 8 as a DOS slave under Defendant Mack). This makes it impossible to ascertain the exact number of Plaintiffs or keep the Plaintiffs straight.

[8] Plaintiffs limit discussion of their sex-based claims to discussions about the "highly secret organization known as DOS," FAC ¶ 788, and its participants, the JNESS curriculum, and the particular experiences of Plaintiffs Camila and Daniela. Although Plaintiffs baldly assert that One Asian, TEN C, and exo/eso were intended to be used to "recruit and groom suitable female candidates for sexual servitude to Raniere," *see, e.g.*, FAC ¶ 751, Plaintiffs do not allege that any sexual relationships, acts, abuse or servitude occurred in the context of these entities or its recruits. *See generally* FAC.

of Rule 8. *See Edo v. New York City,* No. 16-CV-4155 (KAM)(VMS), 2016 WL 5874996, at *3 (E.D.N.Y. Oct. 7, 2016) (stating that, despite a lengthy complaint, plaintiff failed to allege sufficient facts to put defendant on notice). The FAC therefore should be dismissed with prejudice as to Clare Bronfman in its entirety.

## II. FIFTY-EIGHT PLAINTIFFS SHOULD BE DISMISSED WITH PREJUDICE FOR LACK OF STANDING UNDER RULE 12(b)(1) AS TO CLARE BRONFMAN.

A majority of Plaintiffs have failed to establish Article III standing. "[T]he proper procedural route" to challenge a lack of Article III standing is a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(1). "Standing is 'the threshold question in every federal case,' and determines 'the power of the court to entertain the suit.'" *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, No. 18-CV-06749-AMD-PK, 2020 WL 5994957, at *2 (E.D.N.Y. Oct. 9, 2020) (quoting *U.S. v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue." *Carlone v. Lamont*, 2021 WL 5049455, at *1 (2d Cir. Nov. 1, 2021). To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *All. For Env't Renewal*, 436 F.3d at 85. "An injury in fact 'must be concrete and particularized, as well as actual or imminent,' rather than 'conjectural or hypothetical.'" *Carlone*, 2021 WL 5049455, at *2 (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)). A plaintiff "only ha[s] standing to bring claims against the defendants to whom she [can] attribute an individual injury." *McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 64 (2d Cir. 2013).

Although no Plaintiffs have adequately alleged that they were injured by Clare Bronfman, 58 of the FAC's 76 Plaintiffs do not even mention Clare Bronfman in any of their factual

allegations. *See* Ex. D. One Plaintiff makes no factual allegations at all. *See* Ex. C. Nine of these Plaintiffs assert only, in word-for-word identical allegations, that they enrolled in and paid for NXIVM based on allegedly false representations that the NXIVM curriculum was a scientific, patent-pending technology. *See id.*; *see, e.g.*, FAC ¶¶ 327–28. They then claim, in conclusory fashion, that they were "emotionally and financially harmed." *See, e.g.*, FAC ¶ 329. But none of these Plaintiffs mentions anything about Clare Bronfman, much less identify an injury caused by her.

An additional 35 Plaintiffs allege those same three identical paragraphs but add one additional identical paragraph asserting that they also performed uncompensated labor for the benefit of the Defendants. *See* Ex. D. But these Plaintiffs fail to identify which Defendants allegedly benefited. These 35 Plaintiffs do not mention anything about Clare Bronfman or offer anything more than generic assertions of harm unconnected to Clare Bronfman. An additional 13 Plaintiffs make individualized allegations (such as to DOS or RCG) but never mention Clare Bronfman. *See* Ex. D.

Accordingly, none of these 58 Plaintiffs' alleged injuries was proximately caused by Clare Bronfman.

## III. PLAINTIFFS' RICO CLAIM (COUNT I) SHOULD BE DISMISSED WITH PREJUDICE UNDER RULES 9(b) AND 12(b)(6).

Plaintiffs fail to plausibly allege a RICO violation. RICO is not designed to be an "instrument against all unlawful acts." *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). "A Plaintiff's burden is high when pleading RICO allegations," *Targum v. Citrin Cooperman & Co., LLP*, No. 12-Civ-6909-SAS, 2013 WL 6087400, at *5 (S.D.N.Y. Nov. 19, 2013), and "courts should strive to flush out frivolous RICO allegations at an early stage of the

litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotation marks omitted).

To state a civil claim under RICO, a plaintiff must allege seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Albano v. DiggDejected*, No. 19-CV-3048-RRM-JO, 2021 WL 101111, at *3 (E.D.N.Y. Jan. 11, 2021) (quoting *Hinterberger v. Cath. Health Sys., Inc.*, 536 F. App'x 14, 16 (2d Cir. 2013)). The plaintiff must establish each of these elements "as to each individual defendant." *DeFalco v. Bernas,* 244 F.3d 286, 305–06 (2d Cir. 2001); *see also 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 537 (S.D.N.Y. 2014) (stating that a plaintiff must allege, at a minimum, that *each* "defendant personally committed or aided and abetted the commission of two predicate acts").

### A.  Plaintiffs Fail to Plead an Enterprise.

Plaintiffs do not adequately plead the existence of a RICO enterprise. An "enterprise" is a legal entity or a group of people that are "associated in fact." 18 U.S.C. § 1961(4). The association-in-fact enterprise must have: 1) a *common purpose shared by all* members of the enterprise, 2) *relationships* among the members of the enterprise, and 3) longevity sufficient to permit those associates to pursue the enterprise's purpose. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 361 (S.D.N.Y. 2014); *Stein v. World-Wide Plumbing Supply, Inc.*, 71 F. Supp. 3d 320, 325 (E.D.N.Y. 2014). Further, all members of the association-in-fact enterprise must *function as a unit*. *BWP Media,* 69 F. Supp. 3d at 361. The FAC fails this test in multiple respects.

### 1. Plaintiffs Have Not Identified The Alleged Enterprise.

"Any principled analysis of a RICO claim . . . must begin from an understanding of what enterprise is alleged." *Crabhouse of Douglaston, Inc. v. Newsday, Inc.*, 801 F. Supp. 2d 64, 74 (2011). Plaintiffs, however, have not clearly identified the alleged enterprise at the foundation of their RICO claims. Plaintiffs variously state that the alleged RICO enterprise is "under the NXIVM umbrella" FAC p. 1, but later refer to the enterprise as "the Enterprise or NXIVM." FAC ¶ 865. Defendants are left to guess whether the alleged enterprise is NXIVM itself, some undefined association that exists "under the NXIVM umbrella," or something else entirely. Clare Bronfman thus lacks sufficient notice as to what enterprise she allegedly agreed to assist, participated in, and furthered through her actions.

### 2. Plaintiffs Fail to Plausibly Allege that Defendants Shared a Common Purpose.

Plaintiffs fail to plausibly plead a shared common purpose among all Defendants. Plaintiffs' claim that the enterprise sought "to enrich the Individual Defendants (both monetarily and psychologically) at the expense of Plaintiffs and many other victims"[9] FAC ¶ 866[10] is insufficient because it is "little more than a naked assertion devoid of further factual enhancement." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (internal quotation marks omitted) (rejecting allegation that the "goal of the purported association-in-fact enterprise was 'to purchase the favor and influence of political leaders and government officials'"). Nowhere do Plaintiffs provide any basis for their conclusion that *all* fifteen Defendants shared this *same* purpose. Further, Plaintiffs do not support their allegation that all fifteen Defendants had the goal

---

[9] The FAC fails to identify these alleged "other victims."

[10] Plaintiffs elsewhere allege in the FAC that the purpose of the Enterprise was "to entice Plaintiffs to join NXIVM" FAC p. 1.

of acting *at the expense of Plaintiffs* "as opposed to the 'obvious alternative explanation' . . . that they were simply" promoting a program they believed beneficial to personal growth. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211–12 (11th Cir. 2020) (quoting *Twombly*, 550 U.S. at 567) (holding that failure to plead facts showing defendants acted to make money from pet sales *by fraud*, as opposed to simply making money from pet sales was fatal to RICO claim).

Indeed, the FAC's allegations suggest that there were *multiple* purported purposes at play. Plaintiffs name over 10 different entities, groups, or projects,[11] each with different stated objectives, and Plaintiffs allege different participation from different Defendants. For example, Plaintiffs allege that Brandon Porter was focused on scientific experimentation related to Tourette Syndrome FAC ¶ 67, whereas Allison Mack led the highly secret society of DOS. FAC ¶ 64. Logically, these entities, and therefore the Defendants who supported them, do not share a singular purpose. There are no allegations that Clare Bronfman shared any of those purposes.

### 3. Plaintiffs Fail to Plausibly Allege that Defendants Acted as a Unit.

The FAC also fails to "set forth facts to support the conclusion that all . . . defendants were actually working with one another or associated together in a single ongoing organization or continuing unit where members worked together to accomplish a common purpose." *Nat'l Grp. for Commnc'ns Ltd. and Computs. v. Lucent Techs. Inc.,* 420 F. Supp. 2d 253, 271 (S.D.N.Y. 2006) (holding that plaintiffs failed to adequately allege an enterprise when plaintiffs did not provide support for allegation that 17 defendants worked as a unit). It is not enough to allege Defendants knew each other, Plaintiffs must make "concrete factual assertions as to the mechanics of the

---

[11] These include DOS, NXIVM, the "Inner Circle," JNESS, Society of Protectors, One Asian, Ten C, Ethical Science Foundation, exo/eso, Rainbow Cultural Garden, the film "My Tourette's," and The Knife. FAC ¶¶ 654–676, 705–721, 731, 750–780.

interactions among defendants, including facts indicating that the disparate defendants functioned as a unit." *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, No. 11-CV-7801-PAE, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012).

Plaintiffs' conclusory allegation that Defendants "organized their Enterprise into a cohesive group with specific and assigned responsibilities and a command structure," FAC ¶ 870, unsupported by the requisite factual support, does not satisfy this requirement. *Hoatson v. N.Y. Archdiocese*, No. 05-cv-10467, 2007 U.S. Dist. LEXIS 9406, at *10 (S.D.N.Y. Feb. 8, 2007), *aff'd* 208 F. App'x 88 (2d Cir. 2008) (dismissing RICO claim when other than "wholly conclusory allegations, Plaintiff does not allege any facts that the defendants functioned 'as a continuing unit,' or were 'an entity separate and apart' from their alleged illegal activities"). Indeed, without an explanation of each Defendant's "role in the alleged course of fraudulent or illegal conduct, there is no basis to support the conclusion that [the Defendants—both individual persons and entities] were associated together for a common purpose of engaging in a course of conduct." *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861-MKB-RML, 2020 WL 9209278, at *5 (E.D.N.Y. Dec. 14, 2020) (internal quotation marks omitted). Here, Plaintiffs have not explained each Defendant's role in the alleged enterprise or how all fifteen Defendants – who were allegedly involved in work ranging from teaching fitness programs to scientific experimentation to recruiting women into a highly secret society – worked together as a singular unit. Further, the FAC alleges no unifying tie among the Defendants that would not also apply to many – or all – Plaintiffs.

Defendants' individual connections to Raniere are insufficient; Defendants must also be connected to one another. *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA)(LB), 2017 WL 57802, at *5 (E.D.N.Y. Jan. 4, 2017). That is, Defendants must act in a collaborative, not merely a parallel, manner in order to form a RICO enterprise, and they must have acted for the

benefit of others, not just themselves. *See Boyle*, 556 U.S. at 946; *see also Elsevier Inc., W.H.P.R., Inc.,* 692 F. Supp. 2d 291, 306-07 (S.D.N.Y 2010); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) (holding there was no RICO enterprise because "no participant is alleged to have acted for the benefit of any other participant" and rejecting the suggestion that independent acts of fraud constituted "a smaller 'implementing scheme' that formed part of a single 'master scheme'"). Indeed, a "hub-and-spoke" entity cannot be a RICO enterprise – the spokes must all be connected by a rim. *Abbott Labs.*, 2017 WL 57802, at *5. Accordingly, an enterprise in which Raniere is the hub and the various Defendants are the spokes—which is all that even a charitable reading of the FAC would suggest—is not an enterprise under RICO. *Id.; see also Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301–03 (E.D.N.Y. 2017) ("At best, the SAC asserts a rimless 'hub and spokes' relationship between [defendants] that courts have consistently found insufficient to state a RICO claim.").

> **4. Even Viewing the FAC as Two Alleged Enterprises, One Sex-Based and Another Consumer-Based, Plaintiffs' RICO Claim Still Fails.**

As the Court noted at the October 15, 2021 hearing, the FAC might be read to describe *at least* two different types of disparate claims: (1) sexual-assault based claims and (2) consumer-based claims. *See* Oct. 15, 2021 Hearing Transcript at 4:8–22. With respect to the former, Plaintiffs have not pleaded any facts that Clare Bronfman was even *aware* of any coercive sexual conduct. As such, the FAC fails to allege that Clare Bronfman participated in any purported coercive sex enterprise, and a RICO claim operating under this theory fails as to her.

Nor have Plaintiffs adequately pleaded an enterprise based on consumer-fraud claims because the FAC does not allege that Defendants shared a common goal of defrauding Plaintiffs through a particular course of conduct. To the contrary, Plaintiffs' factual allegations suggest that

Defendants' actions involved a multitude of disparate goals and courses of conduct. *Compare, e.g.*, FAC ¶ 67 (alleging Brandon Porter engaged in scientific experimentation), *with, e.g.*, FAC ¶ 64 (alleging Allison Mack pressured women to join DOS, a "highly secret organization)."

**B.      Plaintiffs Fail to Plausibly Allege that Clare Bronfman Engaged in a Pattern of Racketeering Activity Because Plaintiffs Have Not Plausibly Alleged that Clare Bronfman Committed Two Predicate Acts.**

Plaintiffs have also failed to plausibly allege that Clare Bronfman engaged in a pattern of racketeering activity. "Racketeering activity" is also referred to as "predicate acts." *See McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-392-FB-CLP, 2009 WL 2132439, at *4 (E.D.N.Y. July 10, 2009). A "pattern of racketeering activity" is statutorily defined as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Two predicate acts alone are not enough to establish a pattern of racketeering activity; the acts must also be related. *Alfie's Original Souliers, Inc. v. Fleet Bank,* No. 95-CV-8741-RPP, 1996 WL 263004, at *4 (S.D.N.Y. May 17, 1996). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Flexborrow LLC v. TD Auto Fin. LLC,* 255 F. Supp. 3d 406, 418 (E.D.N.Y. 2017).

Plaintiffs allege generally that the "Individual Defendants" committed "multiple, related acts of racketeering activity" that included peonage, forced labor, sex trafficking, extortion, witness tampering, witness retaliation, harboring aliens, and mail and wire fraud." FAC ¶ 867–68. However, Plaintiffs have not identified *which* Defendant allegedly committed which predicate act, and plaintiffs that "rely impermissibly on group pleading to allege the existence of predicate acts" and "do nothing to differentiate the conduct of the various Defendants" fail to sufficiently plead predicate acts. *In re Platinum & Palladium Commodities Litig.,* 828 F. Supp. 2d 588, 602

(S.D.N.Y. 2011); *see also DLJ Mortg. Cap. Inc. v. Kontogiannis,* 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009).

Indeed, "RICO allegations must be evaluated 'with respect to each defendant individually.'" *Franzone v. City of New York*, No. 13-cv-5282 (NG), 2015 WL 2139121, at *8 (quoting *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 181 (2d Cir. 2004)). Allegations that do not specify which actions were taken by which defendant do not satisfy this standard. *Id.* Further, even if these predicate acts were properly alleged as to a particular individual Defendant, Plaintiffs have not plausibly alleged that Clare Bronfman committed two predicate acts.

### 1. Plaintiffs' Mail and Wire Fraud Claims Against Clare Bronfman Do Not Satisfy Rule 9(b) Pleading Requirements.

Plaintiffs rely on mail and wire fraud as predicate acts, but fail to plead all elements of their mail and wire fraud claims with sufficient particularity as to Clare Bronfman. "The Second Circuit has instructed that RICO claims premised on mail or wire fraud must be particularly scrutinized." *BWP Media*, 69 F. Supp. 3d at 362 (internal quotation marks omitted). Plaintiffs must allege "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, [and] (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 474 (E.D.N.Y. 2021) (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)). Plaintiffs must also satisfy the "particularity" requirement of Fed. R. Civ. P. 9(b) because mail fraud and wire fraud are claims of fraud. A mail fraud claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Flexborrow*, 255 F. Supp. 3d at 420. "[S]weeping and general allegations of mail and wire fraud directed at all the defendants rather than connecting

19

the alleged fraud to the individual defendants" do not meet the requirements of Rule 9(b). *Id.* at 421. Instead, "[i]f there are multiple defendants involved, the plaintiff must connect the allegations of fraud to each individual defendant." *Id.* at 420.

Plaintiffs allege "the Individual Defendants" engaged in mail and wire fraud but fall far short of Rule 9(b) with respect to Clare Bronfman. FAC ¶ 873. First, Plaintiffs do not "identify the speaker" because Plaintiffs allege that "the Individual Defendants," and not any particular individual, engaged in mail and wire fraud. *See id.*; *see also BWP Media,* 69 F. Supp. 3d at 363 (holding that mail and wire fraud claims were insufficient when "the complaint provides no specific claim[s] as to each Defendant's involvement in the fraud"). Second, Plaintiffs do not state any times or dates when the allegedly fraudulent statements were made. FAC ¶ 873. Third, Plaintiffs do not specify any allegedly fraudulent statements, stating only that emails, text messages, and court papers contained "false and misleading statements." *Id.* at ¶ 873.

Nor do Plaintiffs "provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent" as to Clare Bronfman. *Flexborrow,* 255 F. Supp. 3d at 421. Plaintiffs must "either (1) alleg[e] a motive for committing fraud and a clear opportunity for doing so" (although allegations that a defendant was motivated by economic gain are insufficient) "or (2) identify[] circumstances indicating conscious behavior by the defendant." *Id.* Plaintiffs have not provided a factual basis for conclusory allegations that Clare Bronfman acted with any fraudulent intent. In fact, as Plaintiffs note, Clare Bronfman continues to stand by Raniere. FAC ¶ 835. Clare Bronfman's sincere belief in NXIVM illustrates that she did not and could not have had any fraudulent intent. Further, Plaintiffs' allegations that Clare Bronfman donated millions to NXIVM and NXIVM-related entities, FAC ¶ 59, further belies any suggestion of an intent to defraud.

Moreover, Plaintiffs do not "identify any statements made by [Clare Bronfman] that were fraudulent, much less the dates and the times those statements were made or the identities of the recipients." *Flexborrow,* 255 F. Supp. 3d at 422. In the absence of "some minimal factual basis" that Clare Bronfman had any fraudulent intent as to any of her actions, *id.* at 421, mail and wire fraud cannot be predicate acts allegedly committed by Clare Bronfman.

### 2. Plaintiffs Do Not Plausibly Allege Two Predicate Acts of Extortion, Witness Tampering, Witness Retaliation, or Harboring Aliens by Clare Bronfman.

Plaintiffs include extortion, witness tampering, witness retaliation, and harboring aliens among the laundry list of predicate acts listed in Count I. FAC ¶ 867–68. Plaintiffs allege that "the Individual Defendants" engaged in this conduct, but it is unclear which, if any, of these acts Plaintiffs are alleging that Clare Bronfman committed.

Plaintiffs do not make any allegations of witness tampering or witness retaliation as to Clare Bronfman. Plaintiffs mention witness tampering five times, FAC ¶¶ 37, 733, 868, 877, and 883, and some kind of retaliation up to 16 times without any specification whatsoever. FAC ¶¶ 37, 46, 59, 74, 107, 108, 216, 225, 232, 246, 248, 293, 497, 724, 741, 821, 829, 868, 877, and 883.[12] Three of Plaintiffs' references to witness tampering and witness retaliation are simply included among a laundry list of offenses they allege "Defendants" or the "Individual Defendants" committed as part of Counts I-III. FAC ¶¶ 868, 877, and 883. In paragraphs 74, 216, 232, 497, 724, some Plaintiffs allege that they were scared of retaliation by "Defendants," by "NXIVM," or Plaintiffs do not allege who will engage in the retaliation of which they purport to be afraid. Paragraph 741 describes Raniere's alleged interference in Plaintiff Natalie's bankruptcy

---

[12] Paragraph 240 also mentions fear or retaliation, but it concerns Jane Doe 20 who has voluntarily withdrawn from the case.

proceeding as retaliation by an ex-boyfriend, and Paragraphs 821 and 829 allege retaliation by DOS, specifically by L. Salzman, Mack, and Raniere in the case of Paragraph 829. None of these allegations of purported witness retaliation or witness tampering plausibly implicate Clare Bronfman. Further, Plaintiffs' blanket allegation that the criminal court found Clare Bronfman had engaged in witness retaliation, even though witness retaliation was not among the charges to which Clare Bronfman pleaded guilty, is unsupported and should be disregarded.

In paragraphs 37, 59, 107, 248, 293, and 733, Plaintiffs may be attempting to paint their claims related to vexatious litigation or filing of police reports as either witness tampering or witness retaliation or both.[13] However, the list of what conduct can constitute a predicate act under RICO is limited to a defined universe of listed claims. *See* 18 USC § 1962. Neither the filing of allegedly false police reports nor vexatious litigation is among these predicate acts. *See id*.

The only predicate act that Plaintiffs come close to alleging as to Clare Bronfman is an allegation of harboring an alien. Even assuming, solely for purposes of this motion, that Clare Bronfman is alleged to have harbored Jane Doe 17 (the only Plaintiff who attempts to allege facts that Clare Bronfman harbored her), that would only be one predicate act. And one predicate act is not sufficient.

## C.    Plaintiffs Lack Standing to Bring a RICO Claim Because They Have Not Plausibly Alleged An Injury To Their "Business or Property."

Further, Plaintiffs lack standing to bring a RICO claim. "RICO standing is a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 266 (2d Cir. 2006). Plaintiffs must plead facts to support (a) a RICO violation; (b) an injury to their business

---

[13] Plaintiff Sarah Edmondson has admitted to engaging in the conduct that caused Clare Bronfman to instigate a police report.

or property; and (c) a proximate causal connection between their injury and the defendant's substantive RICO violation. *Com. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 380 (2d Cir. 2001); *Lawson v. Rubin*, No. 17-CV-6404-BMC, 2018 WL 2012869, at *9 (E.D.N.Y. Apr. 29, 2018). Plaintiffs fail to establish these requirements.

Plaintiffs have not plausibly alleged an injury to their "business or property." "Personal injuries—and damages flowing from them—are simply not injuries to 'business or property' under RICO." *Lawson,* 2018 WL 2012869, at *9. Accordingly, alleged emotional harm, psychological injury, or pecuniary losses flowing from such injuries do not qualify under RICO. While Plaintiffs generically allege that they were "financially harmed" because ESP courses were expensive and many ESP students were not able to ascend the Stripe Path and earn commissions because Defendants kept changing the requirements, FAC ¶ 3, Plaintiffs also allege that many students did earn income and some even "received substantial earnings," *id*. ¶ 4. Because Plaintiffs assert no additional facts related to any alleged financial losses by any particular Plaintiff, the FAC does not support the inference that all Plaintiffs baldly asserting "financial harm" lost, rather than earned, money. If Plaintiffs intend to allege that Plaintiffs lost money, while others made money, they must say so and face the consequence that the latter group could not maintain a RICO claim.

## IV. PLAINTIFFS' RICO CONSPIRACY CLAIM (COUNT II) SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6).

Plaintiffs' attempt to allege a conspiracy to violate RICO under 18 U.S.C. § 1962(d) must be dismissed because (1) Plaintiffs have not properly pleaded a substantive RICO violation and (2) Plaintiffs do not plausibly allege that there was an agreement to violate RICO. As established above, Plaintiffs have failed to plead a substantive RICO claim because they have not adequately alleged a RICO enterprise. Because Plaintiffs have not properly pleaded a substantive RICO

violation, no claim of RICO conspiracy can succeed. *See Satinwood,* 385 F. 3d at 182 (dismissing RICO conspiracy claim because Plaintiffs did not allege a substantive RICO violation).

Plaintiffs' RICO conspiracy claim must be dismissed for the additional reason that Plaintiffs do not allege facts that Defendants, especially Clare Bronfman, *agreed* to commit at least two predicate acts. "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht*, 897 F.2d at 25. A RICO conspiracy allegation "should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. U.S. Traffic Corp*., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002). "Bare or conclusory allegations of participation in a conspiracy under 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy." *Com-Tech Assocs. v. Comput. Assocs. Int'l, Inc.,* 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990).

Plaintiffs offer only the conclusory allegation that "Defendants agreed to conduct or to participate in the conduct of the affairs of the Enterprise and that they or others would commit at least two racketeering acts." FAC ¶ 877. Plaintiffs do not allege any facts that would make such an agreement plausible, such as how or when an agreement came about. Indeed, it is difficult to allege that Defendants agreed to further an enterprise that Plaintiffs have not even identified or plausibly alleged that Defendants were aware of. Thus, because Plaintiffs have not alleged that there was a meeting of minds by Defendants, Plaintiffs' RICO Conspiracy claim fails and should be dismissed.

## V. PLAINTIFFS' CHAPTER 77 CLAIMS (COUNT III) AGAINST CLARE BRONFMAN SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6).

Plaintiffs bring Chapter 77 claims under 18 U.S.C. § 1595, which provides a private right of action for "[a]n individual who is a victim of a violation of this chapter." 18 U.S.C. § 1595(a). A plaintiff can bring a Chapter 77 claim against a "perpetrator" or against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *Id.* In Count III, Plaintiffs bring substantive, conspiracy, and beneficiary claims for (A) sex trafficking, (B) forced labor, (C) human trafficking, (D) peonage, and (E) document servitude. These claims fail as to Clare Bronfman under both perpetrator and beneficiary liability theories.[14]

### A. Plaintiffs' Sex Trafficking Claim (Count III(A)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Plaintiffs do not allege any facts supporting an inference that Clare Bronfman participated in, conspired to engage in, benefited from, or even knew of any alleged coercive sexual activity in violation of 18 U.S.C. § 1591. Section 1591(a) prohibits anyone from knowingly engaging in a venture in which a minor will be caused to engage in a commercial sex act or in which force or coercion will be used to cause a person to engage in a commercial sex act. Because Plaintiffs bring Count III(A) against all Defendants and do not attribute any particular actions to any particular

---

[14] This collection of statutes is also sometimes referred to as the Trafficking Victims Protection Act ("TVPA") or the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The FAC is unclear as to when the alleged conduct occurred and the specific predicate statute(s) underlying these claims. Timing matters because the TVPA was passed in 2000 and the TVPRA was passed and amended in 2003, 2005, 2008, and 2013, and each new iteration changed the law. For example, the 2003 version of the TVPRA provided that trafficking claims could be brought only against the perpetrator. *See* Pub L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003). Plaintiffs thus have no cognizable legal theory against Clare Bronfman as a beneficiary for conduct that occurred prior to 2008. *See Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) ("Nothing in the language of the TVPRA or its legislative history indicates that Congress intended retroactive application.").

Defendant, it is unclear whether Plaintiffs are alleging liability against Clare Bronfman as a perpetrator or as a beneficiary. However, because Defendants do not plausibly allege that Clare Bronfman was involved in any of their sex-based claims, Plaintiffs' claims as to Clare Bronfman fail under either a perpetrator or beneficiary theory of liability.

Indeed, Plaintiffs do not specifically name Clare Bronfman in any of their factual allegations purportedly supporting their sex-trafficking allegations. Plaintiffs do, however, name other individual Defendants in those factual allegations, supporting the logical inference that any sex trafficking claims are limited to those particular named Defendants. For example, Plaintiffs individually name several other Defendants multiple times in allegations related to coercive sexual activity, *see, e.g.*, FAC ¶¶ 115, 663, but do not plead such facts as to Clare Bronfman. Plaintiffs also allege that "Raniere and his Inner Circle" spent two years grooming Daniela to have sex with Raniere, *id.* ¶ 78, but make no allegations as to Clare Bronfman in any of Daniela's allegations.[15] *See id.* ¶¶ 76–83. In addition, there are no factual allegations that Clare Bronfman was involved in or *even knew about DOS*, the "highly secret organization," *id.* ¶ 788, through which the sex trafficking allegedly occurred, until after "news of DOS was emerging," *id.* ¶ 749.

Plaintiffs' singular mention of Clare Bronfman in Count III(A) is completely unrelated to any sexual activity and, in fact, refers to Clare Bronfman's *attorney,* not Clare Bronfman herself. FAC ¶ 728. Plaintiffs allege that "Defendants Raniere, and Clare Bronfman, along with others in the United States and Mexico, by false pretenses caused certain law enforcement agencies to open investigations on, and caused certain attorneys to send letters to, victims and witnesses including Plaintiffs Sarah Edmondson, Jessica Joan Salazar, Souki, Audrey, Jane Doe 19, Jane Doe 23, John

---

[15] Daniela mentions Clare Bronfman only to allege that Clare Bronfman's attorneys did not assist Daniela. FAC ¶ 728.

Doe 2 and Toni Natalie,[16] or threatening them with criminal prosecutions and civil legal actions in order to silence and intimidate them so that they would not report to or cooperate with authorities concerning Defendants' violations of 18 U.S.C. § 1591." FAC ¶ 884. This allegation is problematic for myriad reasons. First, Plaintiffs plead no facts that Clare Bronfman had any reason to think coercive sexual activity was occurring, so any allegation that she acted with the intention of preventing people from disclosing any purported sex trafficking violations is implausible. Second, Plaintiffs do not allege that, even if Clare Bronfman knew that anyone was engaging in coercive sexual activity, she knew that the particular Plaintiffs named in Paragraph 884 were involved in or aware of such coercive sexual activity.

**B.      Plaintiffs' Forced Labor Claims (Count III(B)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).**

Plaintiffs bring claims for forced labor under 18 U.S.C. § 1589, conspiracy to violate § 1589, and benefitting from forced labor under § 1593A. A person violates § 1589 if they "knowingly provide[] or obtain[] the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. §1589(a). The statute also punishes "[w]hoever knowingly benefits . . . from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means

---

[16] Plaintiffs do not include John Doe 2 or Toni Natalie among the Plaintiffs bringing Count III(A), so it is unclear why they were included in this laundry list of individuals. Further, Jane Doe 23 and John Doe 2 were dismissed from the case on December 15, 2021. Dkt. 126; Dkt. 130.

described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." *Id.* § 1589(b).

### 1. Forced Labor Claims of Sixty Plaintiffs Do Not Adequately Allege Performing Forced Labor or An Injury Traceable to Clare Bronfman.

As a threshold matter, while Count III(B) is brought "against all Defendants on behalf of all Plaintiffs." FAC p. 182, not all Plaintiffs even allege that they performed forced labor. Eleven Plaintiffs, Plaintiffs Edmondson; Natalie; Jane Does 35, 42, 45, 54, 57, and 62; and John Does 10, 12, and 20, make no allegations that they performed any uncompensated labor whatsoever. For this reason, their forced labor claims against Clare Bronfman should be dismissed with prejudice. In addition, as discussed in Part II *supra*, 58 Plaintiffs do not specifically mention Clare Bronfman anywhere in the FAC and thus have not sufficiently alleged an injury traceable to her in order to have standing to assert claims against her. Ex. D. Thus, altogether 60[17] of the FAC's 76 Plaintiffs cannot assert forced labor claims against Clare Bronfman as a matter of law. The forced labor claims for the remaining 16 Plaintiffs must be dismissed for the following reasons:

### 2. DOS Plaintiffs' Forced Labor Claims Do Not Implicate Clare Bronfman.

Four Plaintiffs—Jessica Joan Salazar, Souki, Audrey, and Jane Doe 50—allege performing unpaid work in the context of DOS, but do not plausibly connect this work to Clare Bronfman because they do not allege that Clare Bronfman participated in, or even knew about, DOS. Salazar alleges she was required to do unpaid work for Defendants Mack and Raniere. FAC ¶¶ 113, 725.

---

[17] There is some overlap between the Plaintiffs who do not state an injury caused by Clare Bronfman and those who do not allege performing uncompensated labor. Jane Does 35, 42, 45, 54, 57, 59, and 62 and John Does 10, 12, and 20 fall into both categories. Thus, 58 Plaintiffs lack standing and an additional two (Plaintiffs Edmondson and Natalie) do not allege uncompensated labor, bringing the total to 60 Plaintiffs who cannot state a claim for forced labor against Clare Bronfman under Count III(B).

Souki alleges she was required to do unpaid work for "Mack and others." *Id.* ¶ 124. Jane Doe 50 alleges she was required to perform unpaid work for the DOS slave who recruited her and Defendant L. Salzman. *Id.* ¶ 489. Audrey does not provide any facts substantiating her claim that she performed uncompensated labor. *Id.* ¶ 147. Because the FAC does not allege that Clare Bronfman knew about or was a part of DOS and because none of these Plaintiffs implicate Clare Bronfman, Plaintiffs Salazar, Souki, Audrey, and Jane Doe 50's forced labor claims against Clare Bronfman should be dismissed.

### 3. Plaintiffs Who Participated in NXIVM Psychological Studies Do Not Adequately Allege that They Performed Labor.

Four Plaintiffs—Jane Does 19, 20, 21, and 22—allege participation in NXIVM psychological studies, not performance of labor. Jane Doe 19 was asked to participate in the "Human Fright Experiment" conducted by Defendant Porter. FAC ¶¶ 238, 714. Jane Doe 20 participated in a study for obsessive compulsive disorder administered by Defendants Raniere, N. Salzman, and Porter. *Id.* ¶ 245. Jane Does 21 and 22 participated in studies for Tourette Syndrome administered by Defendants Porter and N. Salzman. *Id.* ¶¶ 254–55, 261. None of these Plaintiffs can state a forced labor claim against Clare Bronfman.

First, these Plaintiffs do not provide any facts substantiating their claims that they performed any labor at all, especially not labor that was uncompensated or forced labor, nor do Plaintiffs allege that participation in alleged psychological studies qualifies as forced labor. They also do not allege that any Defendant forced them to participate in these studies by any of the means enumerated in § 1589. Second, these Plaintiffs do not allege sufficient facts regarding Clare Bronfman to sustain a forced labor claim. The FAC alleges only that "Defendants Clare Bronfman and Sara Bronfman provided the funds for the rent of the premises and the purchase of the equipment used in the unauthorized human research through ESF." *Id.* ¶ 962. Jane Doe 21 also

alleges that Defendant N. Salzman told her she would be in a film about the Tourette's study "produced and financed by Clare Bronfman" and Jane Doe 22 alleges the Tourette's studies she participated in were financed by Clare Bronfman. *Id.* ¶¶ 255, 261. None of these allegations is sufficient to plausibly suggest that Clare Bronfman obtained, provided, or benefited from the labor of these four Plaintiffs by the means enumerated in § 1589, especially since they have not shown that they performed any forced labor in the first place.

### 4. Plaintiffs Daniela, Camila, and Adrian's Forced Labor Claims Do Not Implicate Clare Bronfman.

Plaintiffs Daniela, Camila, and Adrian allege that Clare Bronfman advised them to overstay their visas and they "were then preyed upon by Defendants, who exploited their lack of legal immigration status." FAC ¶ 59. Daniela alleges she "devoted all of her time to working for *Raniere* and several of his *Inner Circle of co-conspirators*, including *Individual Defendants*." *Id.* ¶ 77 (emphasis added). She "worked for *NXIVM entities* and the *Individual Defendants* without ever receiving compensation . . . frequently under the supervision of *Defendants Raniere, Karen Unterreiner, Nancy Salzman, and Lauren Salzman*." *Id.* ¶ 79 (emphasis added). Daniela makes no allegations that *Clare Bronfman* knowingly provided, obtained, or benefited from her labor or services by any of the means enumerated in § 1589(a) and her forced labor claim against Clare Bronfman should therefore be dismissed.

Camila and Adrian also make no allegations that they worked for Clare Bronfman directly or that Clare Bronfman benefited from the labor she allegedly obtained from them. Camila alleges that she worked for Defendants Raniere, N. Salzman, *id.* ¶ 87, and Porter, *id.* ¶ 91, as well as for Raniere and S. Bronfman as part of the Rainbow Cultural Garden. *Id.* ¶ 89. Adrian alleges that "Raniere offered him 'an opportunity' to build his own company," but, even though he generated substantial revenues, "Raniere, Bronfman, and [Pamela] Cafritz refused to compensate him (or

reimburse him for the money he had invested)," and "because Adrian did not have the proper immigration status to be operating the company, he was unable to do anything about their refusal to pay him." *Id.* ¶ 725. However, Adrian does say that "[e]ventually, Clare Bronfman worked out a plan with the owner of a business in Mexico" to sponsor Adrian for a work visa so he could be paid for his work. *Id.* ¶ 726. Camila and Adrian thus do not allege that Clare Bronfman provided or obtained their labor or services by means of force, serious harm, or threats thereof. While they attempt to claim Clare Bronfman abused the legal process, they fall short of alleging that Clare Bronfman engaged in "[t]he improper and tortious use of a legitimately issued court process" with the "objective . . . to intimidate and coerce [them] into 'forced labor.'" *U.S. v. Garcia*, No. 02–CR–110S–01, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003). In addition, to the extent Camila and Adrian are bringing claims against Clare Bronfman as a perpetrator (which is not at all clear from the FAC), they fail to allege that she personally benefited from the labor she obtained from them, which is required by the statutory scheme in § 1589(a) and (b).

### 5. Exo/Eso Plaintiffs' Forced Labor Claims Do Not Plausibly Allege that Clare Bronfman Engaged in Forced Labor.

Three Plaintiffs—Adrienne Stiles, Bonnie Piesse, and Jane Doe 17—allege that they were assigned by Raniere to develop and run exo/eso, "work for which [they] w[ere] never fully compensated." FAC ¶¶ 215, 223, 231. They "had to meet with [Raniere] when and where he commanded" but "were never paid what they were promised," compensated "just enough to keep them on the hook, believing better days were just around the corner." *Id.* ¶¶ 754, 759. Stiles allegedly "report[ed] to Clare Bronfman," "was not compensated for the first year of work," and "work[ed] as a personal assistant for Clare Bronfman." *Id.* ¶ 776. Piesse does not mention Clare Bronfman directly at all, alleging that "[s]he was expected to be on call for *Defendants* twenty-four hours a day, . . . was not paid for her first nine months of work, and when she finally began

receiving compensation, the payments soon stopped." *Id.* ¶ 775 (emphasis added); *see also id.* ¶ 231. Even if Stiles and Piesse performed labor for which they were not adequately compensated, however, they do not allege that they were in any way coerced by means of force, physical restraint, serious harm, abuse of legal process, or threats thereof, as required by § 1589. For these reasons, Plaintiffs Stiles and Piesse's forced labor claims against Clare Bronfman should be dismissed.

Jane Doe 17 further alleges that Clare Bronfman helped her secure a business consultant's visa under "false pretenses." *Id.* ¶¶ 222, 766. "[T]he sophisticated business consulting work she was promised turned out to be an underpaid job in exo/eso and a second underpaid job providing services to Clare Bronfman as a personal assistant." *Id.* ¶ 768. "After several months of persistently reminding Clare Bronfman that she had been promised a certain income, Clare Bronfman begrudgingly began to pay her the promised sums. *Id.* ¶ 769. Later, however, Clare Bronfman informed Jane Doe 17 that those funds were not salary but a loan, and that she was obligated to continue providing services until she paid it back." *Id.*; *see also id.* ¶ 223.

Jane Doe 17's allegations fail to plausibly show that Clare Bronfman knowingly provided or obtained Jane Doe 17's labor by force, serious harm, abuse of legal process, or threats thereof. Rather, the allegations merely establish that Clare Bronfman helped Jane Doe 17 get a visa, provided her with work, paid her for that work, and ultimately agreed to provide Jane Doe 17 with additional funds to help Jane Doe 17 keep her immigration status. *See id.* ¶¶ 766–69. Courts have declined to conclude that nearly identical allegations qualified as abuse or threatened abuse of legal process. *See Aguirre v. Best Care Agency, Inc.* 961 F. Supp. 2d 427, 432–34, 445 (E.D.N.Y. 2013).

### 6. Other Plaintiffs' Forced Labor Claims Lack Support.

Plaintiff Mark Vicente's forced labor claim against Clare Bronfman also fails. Vicente is a filmmaker and alleges that he "overs[aw] video production for NXIVM." FAC ¶¶ 271, 279. He

was a "NXIVM Coach" and later "Procter" and "Senior Proctor," was a member of NXIVM's Executive Board, and had a position in NXIVM's "Society of Protectors" group. *Id.* ¶¶ 275, 277, 278, 280. As a Procter, Vicente could "earn commissions on recruitment and teach curriculum." *Id.* ¶ 275 n.8. Through Society of Protectors, "he was entitled to receive commissions for enrollments and trainings." *Id.* ¶ 280. His only factual allegation that is tangentially related to forced labor is that "Raniere would often refuse to conduct the [Society of Protectors] trainings and refuse to pay Mark his commissions." *Id.* This is far from enough to state a forced labor claim under § 1589 and does not implicate Clare Bronfman in any way. If anything, it is not difficult to imagine a world in which Vicente was named as a defendant in this case.

Plaintiff Jane Doe 28 alleges that she was selected by Defendant Raniere to be a leader in the NXIVM group "One Asian." *Id.* ¶¶ 672, 674. As part of One Asian, Jane Doe 28 "was frequently summoned to Albany for meetings with Raniere." *Id.* ¶ 674. She alleges "Clare Bronfman took Jane Doe 28 on walks" and encouraged her to move to Albany to work more closely with Raniere. *Id.* Jane Doe 28 refused and resigned from One Asian. *Id.* ¶ 675. While Jane Doe 28 alleges that "the mounting pressure to move to Albany and enter into a relationship with Raniere became overwhelming," it was Raniere's advances, like kissing her on the lips and trying to hold her hand during business meetings, that drove her to leave. *Id.* ¶¶ 675, 674. She does not allege that she was forced into providing labor or services by any of the means enumerated in § 1589.

## C. Plaintiffs' Human Trafficking Claim (Count III(C)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Plaintiffs bring claims for human trafficking under 18 U.S.C. § 1590, which requires Plaintiffs to allege that Clare Bronfman (a) knowingly recruited, harbored, transported, provided, or obtained by any means, any person for labor or services; or (b) obstructed, attempted to obstruct,

or in any way interfered with or prevented the enforcement of § 1590. Proving this claim "depends on a predicate TVPRA offense" existing. *Mallela v. Cogent Infotech Corp.*, No. 19-CV-01658-NR, 2020 WL 2541860, at *3 (W.D. Pa. May 19, 2020). As discussed throughout this section, the Chapter 77 offenses brought against Clare Bronfman—forced labor, sex trafficking, peonage, and unlawful conduct with respect to documents in furtherance of trafficking—all fail as to her.

### D. Plaintiffs' Peonage Claim (Count III(D)) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Plaintiffs bring claims for peonage under 18 U.S.C. § 1581, conspiracy to violate § 1581, and benefitting from peonage under § 1593A. "Peonage" refers to involuntary servitude to a master in payment of a debt. *See U.S. v. Shackney*, 333 F.2d 475, 481 (2d Cir. 1964); *Clyatt v. U.S.*, 197 U.S. 207, 215 (1905); *Turner v. Unification Church*, 473 F. Supp. 367, 375 (D.R.I. 1978).

Count III(D) alleges peonage "against all Defendants on behalf of all Plaintiffs." FAC p. 182. However, the FAC identifies no specific Plaintiff who allegedly had a debt nor specific Defendants to whom such debt was allegedly owed such that the Plaintiff was forced to work to pay off. The only Plaintiff to even allege providing services in payment of a loan or debt is Jane Doe 17. *Id*. ¶ 273. Because 75 of the 76 Plaintiffs fail to allege the basic elements of a peonage claim against any Defendant, and specifically against Clare Bronfman, their peonage claims should be dismissed as a matter of law. Jane Doe 17's allegations also fail to allege that her work for exo/eso or Clare Bronfman was "involuntary" and thus also falls short of pleading a peonage claim. Count III(D) should therefore be dismissed in its entirety.

### E. Plaintiffs' Unlawful Conduct With Respect To Documents In Furtherance of Trafficking, Peonage, or Forced Labor Claim Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Count III(E) fails as to Clare Bronfman because Plaintiffs have not alleged any actions that Clare Bronfman took in relation to the only Plaintiff for this count, Daniela. To successfully plead

a claim of unlawful conduct with respect to documents ("document servitude") in violation of 18 U.S.C. § 1592, Plaintiffs must plead sufficient facts to show that Clare Bronfman knowingly destroyed, concealed, removed or possessed a passport, immigration document, or government identification document belonging to Daniela in the course of violation of or intent or attempt to violate §§ 1581 (peonage), 1589 (forced labor), 1590 (human trafficking), or 1591 (sex trafficking).

With respect to Daniela and documents, Plaintiffs do not plausibly plead any actions taken by Clare Bronfman. In Paragraph 81 of the FAC, Plaintiffs mention Defendants N. Salzman, L. Salzman, Unterreiner, and Raniere as confining Daniela to a room. In the following sentence, Plaintiffs allege that "Defendants eventually sent [Daniela] back to Mexico with . . . no identity papers." Common sense dictates that the "Defendants" in this instance refers to N. Salzman, L. Salzman, Unterreiner, and Raniere. Likewise, Paragraph 662 of the FAC again mentions these same Defendants (N. Salzman, L. Salzman, Unterreiner and Raniere) when stating that Daniela's "passport and other papers were confiscated." Neither of these paragraphs mentions Clare Bronfman. The only time Clare Bronfman is named in relation to Daniela is the allegation that Clare Bronfman's *attorneys* ignored Daniela's request for help. FAC ¶ 728.

What is more, Plaintiffs have not sufficiently pleaded that Clare Bronfman violated or intended or attempted to violate § 1581 (peonage), § 1589 (forced labor), § 1590 (human trafficking), or § 1591 (sex trafficking). Section 1592 prohibits conduct related to documents "in the course of violation of or intent or attempt to violate" other sections of Chapter 77. Because, as shown above, Plaintiffs fail to sufficiently plead that Clare Bronfman violated other sections of Chapter 77 as to any Plaintiff, including Daniela, Daniela's document servitude claim as to Clare Bronfman must fail. *See Mallela v. Cogent Infotech Corp.,* No. 2:19-CV-01658-NR, 2020 WL

2541860, at *6 (W.D. Pa. May 19, 2020); *see also Muchira v. Al-Rawaf*, No. 1:14-CV-770-AJT/JFA, 2015 WL 1787144, at *8 (E.D. Va. Apr. 15, 2015), *aff'd,* 850 F.3d 605 (4th Cir. 2017), *as amended* (Mar. 3, 2017).

Daniela's claims that Clare Bronfman conspired to commit document servitude and that Clare Bronfman benefited from document servitude also fail due to Plaintiffs' failure to plead any facts connecting Clare Bronfman and Daniela's documents. The FAC contains no factual allegations that would support an inference that Clare Bronfman made an agreement with any other person related to Daniela's documents. Plaintiffs also fail to plead any facts showing that Clare Bronfman benefited from document servitude as to Daniela. The FAC alleges that Daniela performed uncompensated labor, but the only specific Defendants she mentions related to that labor are Raniere, Unterreiner, N. Salzman, and L. Salzman. FAC ¶¶ 77–83.

## VI. PLAINTIFFS' STATE LAW CLAIMS AGAINST CLARE BRONFMAN SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6).

Plaintiffs employ the "kitchen sink" method to assert a hodgepodge of state law claims against Clare Bronfman. These consist of a negligence per se claim (Count IV), a malicious abuse of process claim (Count V), an aiding, abetting, and acting in concert claim with respect to unauthorized human research (Count IX), and a gross negligence claim (Count X). These claims are all based on gross mischaracterizations of Defendants' actions relating to Plaintiffs' participation in case studies or legal processes that Defendants initiated in good faith. Even viewing these allegations through Plaintiffs' distorted lens, all fail under Rule 12(b)(6).[18]

---

[18] Plaintiffs' state law claims should be dismissed under Rule 8, discussed in *supra* Part I. A number of Plaintiffs bringing state law claims should also be dismissed due to lack of standing, discussed in Part II, *supra* Part II.

## A. Count IV Fails To State A Claim For Negligence Per Se.

Count IV fails to state a claim for negligence per se based on a violation of New York Education Law §§ 8405(2), 8402(2), and 6512 for the unauthorized practice of the counseling professions because the statute creates no private right of action.

"Under the rule of negligence *per se*, if (1) a statute is designed to protect a class of persons, (2) in which the plaintiff is included, (3) from the type of harm which in fact occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated." *Cohen v. Ne. Radiology, P.C.*, No. 20-CV-1202-VB, 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021) (internal quotation marks and citation omitted). However, "[t]he issue of whether a plaintiff can assert a cause of action based on negligence per se is closely related to the question of whether a private cause of action exists under a statute." *Id.* In the absence of an express private right of action, plaintiffs can seek civil relief based on a violation of the statute "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 752 (S.D.N.Y. 2017). Where a statute does not allow for recovery of damages or civil penalties, allowance of a negligence per se action based on violation of the statute "would contravene the clear legislative intent of the statute." *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 210–11 (D. Conn. 2001).

Plaintiffs cite no case (nor are we aware of one) applying N.Y. Education Law § 6512 to the unlicensed practice of the counseling professions, psychology, psychiatry, etc. since the statute's amendment in 2003. And New York courts have rejected attempts to bring a private suit under § 6512. *See Arboleda v. Microdot*, No. 154165/14, 2016 WL 881185, at *6 (N.Y. Sup. Ct. Mar. 8, 2016) (dismissing plaintiffs' claims for unauthorized practice of medicine under § 6512

because the statute contains no private right of action). In fact, New York courts have explicitly held that "a violation of New York Education Law § 6512 does not constitute negligence per se." *Silverboys, LLC v. Skordas*, No. 653874/2014, 2015 WL 5222871, at *4 (N.Y. Sup. Ct. Sept. 4, 2015). Because the N.Y. Education Law is a licensing statute run by the state with licensing fees paid to the state, it is consistent with the legislative scheme that it also be enforced by the state. This is supported by the fact that the enforcement provision, § 6512, states that "[a]nyone not authorized to practice under this title who practices . . . or who aids and abets an unlicensed person to practice . . . shall be guilty of a class E felony." There is no provision for civil penalties or damages.

Because assuming the existence of a private right of action for the N.Y. Education Law would be inconsistent with its legislative scheme, Plaintiffs' negligence per se claim must be dismissed.

### B. Plaintiffs' Malicious Abuse of Legal Process Claim (Count V) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Plaintiffs Natalie, Jane Doe 19, Edmondson, Salazar, Souki, and Audrey's ("Count V Plaintiffs")[19] abuse of legal process claim fails because it is time-barred and not adequately pled.

*First,* "abuse of process is an intentional tort [so] any claim for abuse of process is also governed by a one (1)-year limitations period." *DeMartino v. New York*, No. 12-CV-3319-SJF-AKT, 2013 WL 3226789, at *14 (E.D.N.Y. June 24, 2013), *aff'd*, 586 F. App'x 68 (2d Cir. 2014). Plaintiffs filed their original complaint in January 2020, meaning that only claims for actions taken

---

[19] Plaintiffs Jane Doe 23 and John Doe 2 were voluntarily dismissed from the case on December 15, 2021. Dkt. 126; Dkt. 130.

after January 2019 are timely. Count V Plaintiffs have not alleged any acts by Clare Bronfman after January 2019 related to legal process, and thus count V is time-barred.

*Second*, Count V Plaintiffs do not allege any actions that Clare Bronfman took subsequent to the initiation of the legal process. This omission is fatal because "an abuse of process claim may only be based on events subsequent to initiation." *Miles v. City of Hartford*, 445 F. App'x 379, 383–84 (2d Cir. 2011). Count V Plaintiffs allegations all refer to actions allegedly taken *prior* to civil litigation or *to initiate* a criminal proceeding, not any "improper use of process *after* it is regularly issued." *Oka v. Cty. of Suffolk*, No. 11-CV-2578-SJF, 2015 WL 918762, at *9 (E.D.N.Y. Mar. 2, 2015) (emphasis added).

### C. Plaintiffs' Aiding and Abetting, Acting In Concert, and Conspiring With Respect To Unauthorized Human Research Claim (Count IX) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Count IX should be dismissed as to Clare Bronfman because Plaintiffs who bring Count IX—Jane Does 19, 20, 21, and 22—are (1) time-barred, (2) depend on a claim that is not properly pled (Count XIII – Unauthorized Human Research), and (3) do not allege plausible facts to support an aiding and abetting claim.

*First*, claims for aiding and abetting a tort are "governed by the same statute of limitations" as the underlying tort. *Hudson v. Delta Kew Holding Corp.*, No. 16425–12, 992 N.Y.S.2d 158, 2014 WL 1924324, at *4 (Sup. Ct. 2014). The underlying tort here, violations of N.Y. Public Health Law §§ 2442 and 2443, does not list a statute of limitations, but courts apply either a 30-month or three-year statute of limitations to other violations of N.Y. Public Health Laws. *See, e.g.*, *Maloney v. Meadowbrook Care Ctr., Inc.*, No. 10359/07, 2009 WL 1574113, at *4-6 (N.Y. Sup. Ct. May 15, 2009).

Here, the FAC alleges that Defendant Porter performed human subject research between

2010 and August 2017. FAC ¶ 711. The initial complaint in this case was filed in January 2020. This means that only conduct engaged in August 2017, the very last month Plaintiffs allege Defendant Porter was active, would fall within the 30-month statute of limitations. Plaintiffs do not allege what, if any, conduct occurred in August 2017 relating to Defendant Porter's conduct at issue. Thus their claims as to all Defendants must be dismissed as time-barred. Even if this court were to give Plaintiffs the benefit of a three-year statute of limitations, only conduct beginning from January 2017 would not be time-barred.

*Second*, Count IX relies upon Plaintiffs negligence per se claim against Defendant Brandon Porter for his alleged unauthorized human research in violation of N.Y. Pub. Health Law §§ 2442 and 2443 (Count VIII), which must be dismissed for failure to state a claim. New York courts have rejected similar claims brought under this statute because "this statute pertains to human research occurring in institutions or agencies under the jurisdiction of the Commissioner of Health of the State of New York." And because no defendant here has been alleged to be "such an agency or institution, this claim is insufficient as a matter of law." *Josephine v. Columbia Univ.,* 4 Misc. 3d 1023(A), 798 N.Y.S.2d 345 (Sup. Ct. 2004).

Also, there is no private right of action for violations of N.Y. Pub. Health Law §§ 2442 and 2443. As detailed above, absence of a provision providing a civil remedy demonstrates that there was no legislative intent to create a private right of action. *Supra* Part VI.A. Moreover, where the legislative scheme provides a complete enforcement mechanism, it "precludes the possibility that it intended enforcement by private individuals as well." *See Hammer v. Am. Kennel Club*, 304 A.D.2d 74, 80, (1st Dep't) aff'd, 1 N.Y.3d 294 (2003). Here, like Plaintiffs' negligence per se claim against Clare Bronfman (Count IV), N.Y. Pub. Health Law §§ 2442-43 do not provide for a civil remedy. Also, a private right of action for a violation of Section 2442

should not be implied because Sections 12 and 12-b of the Public Health Law already provide a comprehensive public enforcement mechanism. The Commissioner of Health and the Attorney General have primary responsibility for addressing violations of the statute, including the power to seek injunctive relief and the imposition of civil and criminal penalties. N.Y. Pub. Health Law §§ 12, 12-b (McKinney 2002). Accordingly, under *Hammer*, implying a private right of action would be inconsistent with the statutory scheme.

Last, even assuming the conduct giving rise to Plaintiffs' claim occurred over a single month in August 2017 (which is not plausible), and a private right of action exists (which it does not), Plaintiffs still do not credibly allege that Clare Bronfman herself "aided and abetted," "acted in concert," and "conspired" with Defendant Porter to perform unauthorized human research. Under New York law, to plead aiding and abetting, a plaintiff must plead (1) the existence of an underlying tort; (2) defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying tort's commission. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). The only allegation directed specifically at Clare Bronfman was that she provided funds to rent a space and buy equipment. FAC ¶ 962. But providing funds to rent a space and buy equipment does not demonstrate Clare Bronfman either knew that Defendant Porter was engaging in unauthorized human research or that her funds amounted to "substantial assistance" required for aiding and abetting.

### D. Plaintiffs' Gross Negligence and Recklessness Claim (Count X) Against Clare Bronfman Should Be Dismissed With Prejudice Under Rule 12(b)(6).

Count X should be dismissed as to Clare Bronfman because Plaintiffs who bring Count X—Jane Does 20, 21, and 22—fail to state a claim for gross negligence and recklessness. Jane Does 20, 21, and 22's gross negligence claim is related to their participation in a case study allegedly led by Defendants Nancy Salzman and Brandon Porter for Tourette Syndrome

("Tourette's") and Obsessive Compulsive Disorder ("OCD").[20] FAC ¶¶ 245–47, 254, 255, 261, 965–71.

Under New York law, a claim for gross negligence requires a plaintiff to establish: (1) the existence of a duty owed by the defendant to the plaintiff; (2) defendant's breach of that duty; (3) injury to the plaintiff caused by the defendant's breach; and (4) conduct by the defendant "that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *See Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996); *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 601 (S.D.N.Y. 2017).

Jane Does 20, 21, and 22 fail to establish a duty exists as to Clare Bronfman. Allegations of mere sponsorship are not sufficient to impart a duty of care. *See McGrath v. United Hosp*., 97 A.D.2d 46 (1990) (organization that sponsored and profited from event did not owe duty of care to plaintiffs bringing negligence claim for injuries arising out of event); *Vogel v. West Mountain Corp*., 97 A.D.2d 46 (N.Y. App. Div. 1983). In *Vogel*, a plaintiff injured at a ski event argued that, because the defendant-sponsor paid for the event and profited from it, the defendant-sponsor assumed a duty of care. *Id.* at 49. *Vogel* held that the relevant inquiry is whether the defendant had a special relationship with the entity that controlled and operated the ski slope. *Id.; see also Doe v. Uber Techs., Inc.*, No. 20-CV-8446-LJL, 2021 WL 3193166, at *10 (S.D.N.Y. July 28, 2021). The court held that because the sponsor "neither owned nor *controlled* the operation," the sponsor "was not realistically in a position to assume such control, [and] the existence of a duty [therefore] has not been established." *Vogel*, 97 A.D.2d at 50.

---

[20] The absence of factual allegations supporting harm stemming from Plaintiffs' participation in this case study is particularly problematic because Plaintiffs themselves were featured in a film documenting the incredible success of this program. https://www.youtube.com/watch?v=HId0uJd6MRs

Clare Bronfman's only alleged connection to Jane Does 20, 21, and 22's participation in the Tourette's and/or OCD study is that she agreed to sponsor it. *See* FAC ¶ 969. Like the plaintiffs in *McGrath* and *Vogel*, the FAC asserts that Clare Bronfman's mere sponsorship for Jane Does 20, 21, and 22's participation gave rise to a duty. *Id*. But the FAC does not provide any other allegations to support that conclusion and, as shown in *McGrath* and *Vogel*, mere sponsorship is not sufficient to create a duty of care.

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed as to Clare Bronfman pursuant to Rules 8, 9(b), 12(b)(1), and 12(b)(6). Plaintiffs were put on notice about the aforementioned pleading deficiencies through letters submitted to the Court. *See* Dkt. 101, 102, 119. Yet, despite an offer by the Court to amend their pleading, *see* Nov. 30, 2021 Court Transcript, Plaintiffs chose not to. Instead, Plaintiffs elected to unfairly burden Defendants and the Court "with the onerous task of combing through a [lengthy] pleading." *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing prejudice to courts and adverse parties in affirming dismissal of motion to amend). Accordingly, the FAC should be dismissed with prejudice as to Clare Bronfman. *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12 (S.D.N.Y. 2016) (granting motion to dismiss and denying leave to amend after plaintiff declined prior opportunity to amend).


Dated: January 28, 2022        Respectfully submitted,


                                */s/ Craig C. Martin*
                                Craig C. Martin
                                Sara T. Horton
                                WILLKIE FARR & GALLAGHER LLP
                                300 North LaSalle Street, Suite 5000

Chicago, Illinois 60654
Tel: (312) 728-9000
Fax: (312) 728-9199

Jeffrey B. Korn
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
Tel: (212) 728-8000
Fax: (212) 728-8111

Ronald S. Sullivan, Jr.
712 H. Street NE, Suite 1354
Washington, DC 20002
Tel: (212) 873-9120
Fax: (202) 863-1459

*Attorneys for Defendant Clare Bronfman*

# CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, Rule 5.2 of the Local Rules of the Eastern District of New York, and Rule III.C.2 of Judge Komitee's Individual Practices and Rules, the undersigned, an attorney of record in this case, hereby certifies that on January 28, 2022, a true and correct copy of **Defendant Clare Bronfman's Memorandum Of Law In Support Of Her Motion To Dismiss Plaintiffs' First Amended Complaint** was served electronically to pro se parties that have appeared in this litigation, and counsel of record for represented parties that have appeared in this litigation.

Dated: January 28, 2022

*/s/ Craig C. Martin*
Craig C. Martin (cmartin@willkie.com)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Street, Suite 5000
Chicago, Illinois 60654
Tel: (312) 728-9000

*Attorney for Defendant Clare Bronfman*