# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH EDMONDSON, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 20-CV-485 |
| v. | |
| KEITH RANIERE, et al., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Pursuant to this Court's order, ECF No. 201, and Fed. R. Civ. P. 15(a)(2), Plaintiffs have filed a Motion For Leave to File an Amended Complaint. A clean version of the proposed Third Amended Complaint (the ""Proposed Complaint" or "TAC") is attached hereto as Exhibit A. As discussed at the February 1, 2023, hearing on the motions to dismiss, Plaintiffs are not submitting a blackline of the Proposed Complaint against the Second Amended Complaint (the "SAC") because the proposed changes are so substantial that a blackline would be difficult to read. Plaintiffs are prepared, however, to submit a blacklined version at the Court's request.[1]

### INTRODUCTION AND SUMMARY OF ARGUMENT

The Court has allowed Plaintiffs the opportunity to revise their Complaint in light of the issues the Court has raised and the motion to dismiss briefing. Plaintiffs respectfully submit a Proposed Complaint which has been fundamentally reworked and substantially shortened. The Proposed Complaint specifies each Defendant's conduct, groups and identifies the facts giving

---

[1] Transcript of Hearing ("Hr'g Tr.") before the Honorable Eric R. Komitee, February 1, 2023, at 90, lines 18-25, and 91, lines 4-6.

rise to their liability for each count, and contains no inappropriate group or "shotgun" pleading. In addition, the TAC eliminates Plaintiffs' peonage claim under 18 U.S.C. § 1581.[2] Given these changes — and that the TAC is supported by the numerous, criminal proceedings based on the same facts—each Defendant has fair notice of the basis for the Plaintiffs' claims.

The Rule 15 standard for amendment is liberal and permissive. Denial of leave to amend is proper only where there is a showing of undue delay, bad faith, dilatory motive, or futility. None of those grounds exists here. Moreover, this Court has not yet ruled on any allegation or cause of action in any iteration of the Complaint.

The Proposed Complaint remains fairly long and complex. That is partially a function of the number of Plaintiffs and Defendants. It is also because Defendants' scheme was long running and involved many different illegal acts, which implicate myriad causes of action and predicate legal violations. But the length and complexity of the Proposed Complaint is no basis to deny leave to amend. The Proposed Complaint provides Defendants fair notice of the claims they face, and amendment would not be futile. For these reasons, this Court should allow Plaintiffs to file the Proposed Complaint.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed the initial complaint on January 28, 2020. ECF No. 1. On June 24, 2020, the Court stayed the case, on the parties' joint motion, pending final adjudication of the related criminal proceeding: *United States v. Raniere*, 18-cr-00204 (NGG). ECF Nos. 54, 55. That stay was required by law. 18 U.S.C. § 1595(b)(1). On August 13, 2021, Plaintiffs filed the First Amended Complaint. ("FAC") ECF No. 64. The purpose of that amendment was primarily to

---

[2] Plaintiffs who were not recruited into DOS or exo/exo plaintiffs, except Adrian, Camila and Daniela, also dismissed sex trafficking claims and forced labor claims against all Defendants. Additionally, the sex trafficking count against Defendant Sara Bronfman has been dropped.

add Plaintiff Camila and related counts on her behalf and to include facts revealed during the *Raniere* criminal proceeding. *Id.* On October 15, 2021, the Court lifted the stay and instructed the parties to file letters discussing, among other things, issues bearing on amendment or dismissal of the Complaint. October 15, 2021 Hr'g Tr. at 19; ECF No. 92. That exchange of letters concluded on November 19, 2021, with Defendant Clare Bronfman's filing of a reply letter.

During the November 30, 2021 status conference, the Court asked Plaintiffs whether they wanted to amend the complaint in light of Defendants' letters or proceed to brief motions to dismiss. Nov. 30, 2021 Hr'g Tr. at 6–10. Plaintiffs informed the Court that they were prepared to brief motions to dismiss. At that conference, the Court also instructed Plaintiffs to submit a letter concerning which Plaintiffs, if any, should be entitled to proceed in this action pseudonymously. *Id.* at 19–21. Plaintiffs did so. ECF No. 133. On February 11, 2022, the Court entered a preliminary protective order setting forth naming conventions that would govern the use of Plaintiffs' names in the complaint, and on February 17, 2022, the Court instructed Plaintiffs to file an amended complaint that (i) dropped certain plaintiffs who were unwilling, for fear of reprisal, to proceed in the case if they had to disclose their identities, and (ii) referred to Plaintiffs by naming conventions delineated by the Court. The Court also instructed Plaintiffs to file under seal a chart disclosing to the Court and Defendants the full, unredacted names of Plaintiffs who had been granted the right to proceed pseudonymously or by first name only. Feb. 17, 2022 Hr'g Tr. at 8–11, 21; ECF No. 152. Plaintiffs thereafter filed the SAC. ECF No. 159. In April 2022, the parties completed briefing Defendants' motions to dismiss the First Amended Complaint, the briefing for which had begun before the SAC was filed. As the Court recognized, the SAC's purpose was "housekeeping and clean up." Feb. 1, 2023 Hr'g Tr. at 119.

3

On February 1, 2023, the Court heard argument on Defendants' motions to dismiss. At that hearing, the Court did not rule on the merits of Defendants' arguments or decide whether to dismiss all or part of the complaint. Rather, the Court ordered Plaintiffs to file a motion for leave to amend, accompanied by a proposed Third Amended Complaint.

## LEGAL STANDARD

The party opposing an amendment under Rule 15 bears "the burden of demonstrating that [a motion to amend] should be denied." *Qanouni v. D&H Ladies Apparel LLC*, 2021 WL 9036182, at *8 (S.D.N.Y. March 23, 2021). Under Fed. R. Civ. P. 15(a)(2), a court must grant plaintiffs leave to amend "freely . . . when justice so requires." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quoting Fed. R. Civ. P. 15(a)(2)). This "liberal and permissive standard" applies until the District Court "issues a scheduling order setting a date after which no amendment will be permitted" and that date has passed—at which point amendments are permitted for "good cause." *Id.* Under the permissive standard that applies here, "the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility." *Id.* (internal quotation omitted; alteration adopted); *see also Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 189–90 (2d Cir. 2015) ("As we have explained, the permissive standard of Rule 15 is consistent with our strong preference for resolving disputes on the merits" (internal quotation omitted; collecting cases)).[3]

---

[3] Defendants may suggest that Plaintiffs' decision to stand on their First Amended Complaint after the premotion exchange of positions and conference is an important factor in connection with the Court's consideration of Plaintiffs' motion. It is not. A District Court may not deny amendment for the reason that the plaintiff declined at a premotion conference to "cure deficiencies not yet fully briefed and decided"—even if the District Court determines that the plaintiff was put on "fair warning" of the defendants' arguments by premotion letters and the premotion conference. *Loreley Financing (Jersey) No. 3 Ltd.*, 797 F.3d at 169, 189–90 (reversing denial of leave to amend because District Court cannot "treat[] Plaintiffs' decision to stand by the complaint after a preview of Defendants' arguments—in the critical absence of a definitive ruling—as a forfeiture of the protections afforded by Rule 15");

4

# ARGUMENT

## I. None of the grounds for denying leave to amend exists here.

### A. Plaintiffs have not exhibited bad faith.

Evidence of bad faith is cause to refuse a plaintiff leave to amend. But there has been no allegation of bad faith here. *See, e.g.*, ECF No. 167 at 53 (Clare Bronfman asserting the complaint should be dismissed without prejudice but nowhere mentioning bad faith); ECF No. 168 at 30 (same). And for good reason: Plaintiffs have complied with each of this Court's orders throughout the litigation, and the Proposed Complaint demonstrates that Plaintiffs are willing and able to make revisions consistent with this Court's instructions. *See Qanouni*, 2021 WL 9036182, at *7 (explaining that bad faith requires "something more than mere delay or inadvertence" and that "a court may not infer bad faith solely from the fact that a party may have had evidence to support a proposed amendment earlier in the litigation" (alteration adopted)).

### B. There is no indicia of undue delay or dilatory motive.

Leave to amend should not be denied on dilatory grounds where there "is no indication in the record of any dilatory motive on [the plaintiff's] part." *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69–70 (2d Cir. 1998) (dilatory motive ground did not favor denial of leave to amend where plaintiff "professed interest in the litigation" was to achieve relief sought "as soon as possible," even though his motion to amend "came nearly nine months late according to the scheduling order").

---

*see also Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. July 12, 2019) (granting leave to amend "[b]ecause Plaintiffs have not yet had an opportunity to amend in response to a Court order pointing out the deficiencies in their pleading"); *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *12 (E.D.N.Y. Sept. 14, 2020) (same).

There is plainly no undue delay or dilatory motive here. Plaintiffs' intention is to achieve relief as soon as possible, and that intention is not just "professed"—Plaintiffs have demonstrated it through their conduct. After the parties' jointly moved for the stay required by 18 U.S.C. § 1595, ECF No. 34, the Court stayed the action on that ground and instructed Plaintiffs to file a notice one day after the final adjudication of the last defendant in the criminal proceedings, ECF Nos. 51 & 55. Plaintiffs timely did so, in compliance with the Court's order and in their interest to move this case forward as quickly as possible. ECF No. 87; Oct. 15, 2021 Hr'g Tr. at 4–6 (Plaintiffs requesting lift of stay). Plaintiffs have neither breached this court's scheduling orders nor sought undue extensions. Put simply, Plaintiffs have pressed this litigation forward; there has been no undue delay and there is no indicia of dilatory motive.[4]

### C. The Proposed Complaint is not futile.

The party opposing leave to amend "bears the burden of establishing that an amendment would be futile." *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. Oct. 18, 2012) (collecting cases). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Wallace v. Warden of M.D.C.*, 2016 WL 6901315, at *2 (S.D.N.Y. Nov. 23, 2016) ("A proposed amended complaint is futile when it fails to state a claim") (collecting cases). When a party moves for leave to amend and attaches to that motion a proposed amended complaint, courts do not deny such motions for futility unless it is "[apparent] beyond doubt that Plaintiffs can plead no set of facts that would

---

[4] Defendant Clare Bronfman's observation that the complaint is "[t]hree-year[s] old," Feb. 1, 2023 Hr'g. Tr. at 122 ignores the critical context that (i) the parties and the Court agreed that a stay of the case was mandated by federal law, ECF Nos. 34, 51, 55, and (ii) the mandatory stay was effective for more than 20 months from the time Plaintiffs filed the initial complaint.

6

entitle them to relief" and thus that the proposed amendments are "on their face, entirely futile." *Gordon v. Tecnent Music Entertainment Grp.*, 2021 WL 6113263 (E.D.N.Y. Dec. 27, 2021) (quotation omitted).

Defendants cannot demonstrate that the proposed amendments fail to state any claim against them, much less that the Proposed Complaint is entirely futile beyond doubt. This is not the time for Plaintiffs to brief the merits of each claim in the Proposed Complaint, but none of the bases that Defendants argued justified wholesale dismissal of the FAC (namely, group or shotgun pleading) applies to the Proposed Complaint. The Proposed Complaint (i) alleges additional facts not included in the prior complaints that support Plaintiffs' claims and (ii) clarifies Plaintiffs' legal theories. Many of Plaintiffs' claims are, moreover, strongly supported by the criminal proceedings. See Ex. A, ¶ 202 (alleging Raniere liable under RICO for same conduct underlying his RICO conviction). Finally, Plaintiffs have addressed several legal and factual issues raised by the Court at the hearing, further demonstrating that amendment is not futile. *See infra* Part II.

### D. Plaintiffs have not repeatedly failed to cure deficiencies by amendments previously allowed and permitting amendment now would not cause Defendants undue prejudice.

Although the Second Circuit explained in *Sacerdote v. New York University* that the foregoing grounds (undue delay, bad faith, dilatory motive, or futility) are the "only grounds on which denial of leave to amend has long been held proper." 9 F.4th at 115 (quotation omitted), other cases suggest that two other bases may exist to deny leave to amend: (1) "repeated failure to cure deficiencies by amendments previously allowed," and (2) "undue prejudice to the opposing party by virtue of the allowance of the amendment." *Dluhos*, 162 F.3d at 69 (quotation omitted). Those considerations do not justify denying Plaintiffs leave to amend.

As to the "repeated failure to cure deficiencies by amendments previously allowed," *id.*, Plaintiffs have not previously attempted to substantively rework the complaint to address possible pleading deficiencies, and the Court has not yet ruled that Plaintiffs' complaint is deficient in any respect.

Nor would there be "undue prejudice" to Defendants if the Proposed Complaint takes effect. "The non-moving party bears the burden of demonstrating that substantial prejudice would result" from allowing the proposed amendment. *Agerbrink v. Model Service LLC*, 155 F.Supp. 3d 448, 454 (S.D.N.Y. 2016); *Amaya*, 285 F.R.D. at 253 (same; collecting cases). Undue prejudice is "unlikely" when litigation "[does] not appear to be anywhere near substantive resolution" *Dluhos*, 162 F.3d at 69-70. "That a proposed amendment would necessitate additional discovery or merely the expenditure of money and time, alone, is not a sufficient basis for denying leave to amend." *S.E.C. v. Rio Tinto plc*, 2020 WL 2504008 (S.D.N.Y. 2020) ("likelihood of undue prejudice arises when discovery is nearly or already complete and/or the cost of additional discovery would be significant"); *Huber v. Nat'l R.R. Passenger Corp.*, 2012 WL 6082385, at *7–*8 (S.D.N.Y. Dec. 4, 2012) (permitting amendment and rejecting defendant's argument that amendment was prejudicial—even though amendment came *after* the defendant had deposed the plaintiff).

Granting this motion would not cause Defendants undue prejudice because discovery has not yet commenced and the Court has not yet ruled on any iteration of the complaint. That permitting Plaintiffs to amend might subject Defendants to civil suit for longer and cause Defendants additional expense is no basis to deny this motion. A defendant faces such costs every time a plaintiff moves to amend, and courts frequently grant motions to amend when doing so causes defendants far more prejudice than Defendants would suffer here. *See, e.g.*, *Alvarado*

8

*v. 58 West LLC*, 2021 WL 9793332, at *1–*2 (S.D.N.Y. May 28, 2021) (plaintiff satisfied the more onerous "good cause" standard under Rule 16 "even assuming that Defendants [would] incur increased discovery costs" because "allegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice") (quotation omitted); *Computer Assoc. Int'l v. Simple.com, Inc.*, 2006 WL 8441407, at *1–*7 (similar). For example, in *American Medical Ass'n v. United Healthcare Corp.*, 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006), the court granted the plaintiffs leave to amend the *third* amended complaint so they could assert *fifteen* new antitrust and RICO claims after (i) the Court had "already considered multiple motions to dismiss in this action"; (ii) the Court had ruled on the motion to dismiss the Third Amended Complaint; (iii) the motion for leave to amend was filed 2.5 years after the Third Amended Complaint was filed; (iv) merits discovery had commenced; (v) the new claims would "require additional discovery"; and (vi) a summary judgment motion had been filed. Whether Plaintiffs should be permitted to amend now is not a close question.

  The Proposed Complaint is lengthy because of the nature of Defendants' scheme—which required three separate indictments and a six-week trial against just one of the Defendants to this action. Plaintiffs' case is at least as complex as the government's case, and maybe complex, because here there are (i) more defendants; (ii) more claims asserted; and (iii) Plaintiffs seek full relief for dozens of plaintiffs, which entails satisfying legal requirements not at issue in the criminal case.

9

## II.     The Proposed Complaint remedies issues identified by this Court at the February 2023 Hearing.

The Court should grant this motion for the foregoing reasons. But to satisfy the Court that Plaintiffs have addressed its concerns, and demonstrate that Defendants cannot bear their burden as to futility, Plaintiffs briefly address issues raised by the Court at the February hearing. *See* Feb. 1, 2023 Hr'g Tr. at 38, 91 (suggesting such a list may be helpful):[5]

Group Pleading: The Court raised the issue of group pleading. *Id.* at 43–44. Neither the "Statement of Facts" nor the "Count" sections of the Proposed Complaint groups Plaintiffs or Defendants.

Shotgun Pleading: The Court raised the issue of shotgun pleading. Feb. 1, 2023 Hr'g Tr. at 81–82. The Proposed Complaint's "Count" section carefully delineates what causes of actions (and predicate acts) Plaintiffs allege against each Defendant.

Relevance of the Criminal Case: The Court asked whether it can consider various aspects of the criminal case in resolving Defendants' motions to dismiss. Feb. 1, 2023 Hr'g Tr. at 9–10. The answer is yes, there is no bar to the Court considering (i) facts arising from Defendants' indictments, convictions, or sentencing proceedings, or (ii) the source material of those facts, through judicial notice or incorporation by reference. *See Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 319, 323 (2d Cir. 2010) (considering *the mere fact of pending government investigations* when assessing whether complaint stated a plausible claim); *see also Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 766–67 (2d Cir. 2016) (reversing dismissal of complaint where "vast majority of allegations follow[ed] directly from evidence collected in governmental investigations"). Allegations with "factual content" must be assumed true, *New*

---

[5] Plaintiffs would make fuller arguments in response to future motions to dismiss if the Court grants this Motion.

*Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp. PLC*, 709 F.3d 109, 121 (2d Cir. 2013) (quotation omitted), and there is simply no basis to conclude that Plaintiffs need to regurgitate all facts from incorporated criminal proceedings (which are a matter of public record and of which Defendants are familiar) to enjoy the benefit of that legal rule.

Whether certain materials from the criminal proceedings will be *admissible* and whether certain conclusions from those proceedings will be *preclusive* are questions distinct from whether Plaintiffs have stated a claim; those questions need not be resolved now. There is no doubt that some portions of the criminal record will be admissible, *see* Fed. R. Evid. 803(22), and that some conclusions from that record will deserve preclusive effect, *United States v. United States Currency in Amount of $119,984.00 More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) ("We have long held that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent criminal proceeding as to those matters determined by the judgment in the criminal case."); *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987) ("party other than government may assert collateral estoppel against convicted defendant with respect to fact necessarily determined in criminal proceeding" (quoting *Gelb v. Royal Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986)). Indeed, even some of Judge Garaufis's sentencing findings may deserve preclusive effect—the Second Circuit has expressly rejected a "*per se* rule barring the application of collateral estoppel to sentencing findings." *United States Currency in Amount of $119,984.00 More or Less*, 304 F.3d at 173. In any event, the District Court's findings and legal conclusions as to Defendants and the NXIVM enterprise can certainly be considered when assessing whether the complaint satisfies the *Twombly* standard.

Clare Bronfman Pled Guilty to Harboring Aliens *For Financial Gain*: Regarding the Court's question about "financial gain," Plaintiffs direct the Court to Clare Bronfman's plea

11

colloquy, where she testified that she harbored Jane Doe 12 to "obtain Jane Doe 12's labor and services for [C.] Bronfman, and for one of the NXIVM organizations in which Bronfman held a financial interest without paying Jane Doe 12." 18-CR-204 (NGG), April 19, 2019 Hr'g Tr. at 14. That the crime was committed for financial gain was an essential element of the offense. *Id.* at 12–14, 22–23, 32. Clare Bronfman testified that the crime was for financial gain, *id.* at 34 ("[s]he did work for me and businesses I was affiliated with"; "her work was a financial benefit to me"), and this Court (Judge Garaufis) accepted her plea, thereby finding that she committed the crime for financial gain. *Id.* at 36–37.

*Harboring* under 8 U.S.C. § 1324: The Court requested more information on what "harboring" means under 8 U.S.C. § 1324. Feb. 1, 2023 Hr'g Tr. at 23–24. Harboring under the statute is exceptionally broad: it "encompasses conduct tending substantially to facilitate an alien's remaining in the United States illegally and to prevent government authorities from detecting his unlawful presence . . . including providing illegal aliens housing, transportation, arranging sham marriages, assisting them in getting employment, teaching them to hide their illegal identity, and sheltering [them] from the immigration authorities." *Nichols v. Mahoney*, 608 F. Supp. 2d 526 (S.D.N.Y. Apr. 2, 2009), *overruled on other grounds* (quotation and citation omitted). As such, "harboring" encompasses the conduct alleged in the relevant counts in the Proposed Complaint, including employing and promising to employ immigrants (¶¶ 76-77), executing schemes to pay immigrants through fraudulent means (¶¶ 68-71), sheltering them (¶¶ 72-73), transporting them to and across international borders (¶ 74), encouraging sham marriages (¶¶ 78-79), deceiving immigration authorities in correspondence (¶ 80) and using corporate entities to pay or promise money to them (¶ 71).

A plaintiff can recover under RICO for a RICO injury that is caused by the violation of 8 U.S.C. § 1324: The Court asked whether a plaintiff can recover under RICO for a violation of § 1324 or whether "the victim of the immigration fraud is the United States government." Feb. 1, 2023 Hr'g. Tr. at 39. Because it is a RICO predicate a plaintiff may recover for an injury caused by a violation of § 1324. *Sedima, S.P.L.R. v. Imrex Co., Inc.*, 472 U.S. 479 (1985) ("If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)"); *see also Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 280 (1992) (O'Connor, J., concurring) (explaining that RICO does not incorporate the standing requirements of predicate acts because "[i]f standing were to be determined by reference to the predicate offenses, a private RICO plaintiff could not allege as predicates many of the acts that constitute the definition of racketeering activity").

Clare Bronfman's Forced Labor Predicate Acts:[6] The Court requested clarification on Clare Bronfman's commission of forced labor predicate acts. Feb. 1, 2023 Hr'g Tr. at 12–19. The Proposed Complaint clarifies these allegations. Clare Bronfman committed forced labor violations as to the Exo/Eso Plaintiffs because she provided and obtained their uncompensated labor and services (the establishment of a company, administrative and menial work, and personal assistant work) by means of serious harm (sleep-deprivation, psychological, and verbal abuse) and in some cases by means of the abuse or threatened abuse of law or legal process (the threat of deportation). TAC, Count III(B).

---

[6] Clare Bronfman's sex and human trafficking predicate acts are also clarified in this iteration of the Complaint. *See* TAC, Counts I, II and III.

13

She committed forced labor violations as to the DOS Plaintiffs because she knowingly benefited by receiving things of value, including enhanced status, power, and prestige within NXIVM, from participation in the Venture, which she knew or should have known forced these Plaintiffs to perform uncompensated labor and services, including but not limited to commercial sex acts and menial tasks. *Id.*

She committed forced labor violations as to Adrian, Camila, and Daniela because (i) she obtained Adrian's uncompensated labor and services (in connection with a t-shirt company), by means of the abuse or threatened abuse of law or legal process (threat of deportation) or by means of a scheme, pattern, or plan, which caused Adrian to believe he would be deported to Mexico should he fail to obey her every command, and (ii) Clare Bronfman knowingly benefited by receiving things of value, including enhanced status, power, and prestige within NXIVM, from participation in the Venture, which she knew or should have known forced Camila and Daniela to perform uncompensated labor, such as administrative work, and commercial sex acts.

Sara Bronfman's witness tampering of Adrian: Plaintiffs have alleged further details in the TAC. *See* Ex. A ¶ 180. Sara Bronfman relies on *The Homeless Patrol v. Joseph Volpe Family*, 2010 WL 2899099, at *16 (S.D.N.Y. June 29, 2010), but in that case, unlike here, the allegation of witness tampering was "wholly conclusory." Sara Bronfman's argument, Feb. 1, 2023 Hr'g Tr. at 61, that "some dollar amount" needs to be alleged is risible: Sara Bronfman would have committed witness tampering even if she had only offered Adrian the vague promise of money or if she merely encouraged him to flee the country so he could not be called as a witness with no promise of money at all. *See United States v. LaFontaine*, 210 F.3d 125, 132–33 (2d Cir. 2000); 18 U.S.C. § 1512(b) (nowhere requiring that the tampering must be accomplished by the promise of money, much less a specific dollar amount).

14

<u>The Proposed Complaint alleges that Defendant Clyne committed Sex Trafficking, Forced Labor, and Human Trafficking violations</u>: The Proposed Complaint, as requested by the Court, more precisely sets forth the claims against Defendant Clyne on behalf of certain Plaintiffs. *See* TAC, Count III.

<u>Defendant Roberts' branding of Plaintiffs Sarah Edmondson, Nicole, Paloma Pena, and India Oxenberg was battery</u>: The Proposed Complaint states a claim against Roberts for battery. *See* TAC, Count V; *see also Tirado v. Koritz*, 156 A.D.3d 1342, 1343 (NY. Ct. App. 2017) (plaintiff stated battery claim by alleging defendant physician knew she was exceeding scope of plaintiff's consent when she performed a medical procedure).

## CONCLUSION

For the above reasons the Court should grant Plaintiffs' Motion.

Dated:  April 3, 2023

                                              */s/ Zahra R. Dean*
                                              Neil L. Glazer
                                              William E. Hoese
                                              Stephen H. Schwartz
                                              Craig W. Hillwig
                                              Zahra R. Dean
                                              Aarthi Manohar
                                              Elias Kohn
                                              KOHN, SWIFT & GRAF, P.C.
                                              1600 Market Street, Suite 2500
                                              Philadelphia, PA 19103
                                              (215) 238-1700

                                              Aitan D. Goelman
                                              Bryan M. Reines
                                              ZUCKERMAN SPAEDER
                                              1800 M Street NW, Suite 1000
                                              Washington, DC 20036
                                              (202) 778-1800

                                              Attorneys for Plaintiffs