**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RECEIVED IN PRO SE
MAY 10 2023 @ 10:55 PM
VIA BOX.COM

SARAH EDMONDSON, et al.,

            Plaintiffs,

        v.

KEITH RANIERE, et al.,

            Defendants.

CIVIL ACTION
NO. 20-CV-485

## DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

I, NICKI CLYNE, Defendant *pro se*, in the above-captioned matter, declares the following under the penalties of perjury set forth in Title 18 of the U.S. Code:

### PRELIMINARY STATEMENT

1. The Plaintiffs' proposed "Third Amended Complaint" (TAC) fails to allege predicate facts that would survive a Rule 12(b)(6) motion to dismiss – and fails to specify, with any particularity, the frauds they claim I perpetrated. There is no clear delineation of which claims, if any, are being asserted against me by each specific Plaintiff. The Plaintiffs' ongoing "shotgun approach" should not be tolerated.

2. Given that the Plaintiffs have now failed three times to coherently allege any viable claims against me, because there are no such cognizable claims under federal law, any further attempts at amendment by the Plaintiffs would be futile.

### PLAINTIFFS' THIRD AMENDED COMPLAINT

**The Third Amended Complaint Is Rife With Non-Specific, Tortured Language That Does Not Meet FRCP Rule 9(b)'s Heightened Pleading Standard for Fraud, Misrepresentation, and Mistake**

1



3. The TAC incorporates the findings in <u>*U.S. v. Raniere*</u>, and the legal doctrines of *res judicata* and collateral estoppel. But, unlike other Defendants in this matter, I was not indicted and, as a result, I was never convicted of wrongdoing with respect to my involvement with NXIVM.

4. The memorandum states that "The Proposed Complaint, as requested by the Court, more precisely sets forth the claims against Defendant Clyne on behalf of certain Plaintiffs. *See* TAC, Count III." It doesn't, in fact, do that at all. Firstly, there is no Plaintiffs plural where any specificity is alleged. To the contrary, ¶ 262 of the TAC represents classic shotgun pleadings.

5. The Plaintiffs' drafting is tortured concerning my status in the scheme alleged. Paragraph 3 states:

   > 3. NXIVM's leadership included current Defendants Raniere, Clare Bronfman, Sara Bronfman, Allison Mack, Nicky Clyne [sic], and Kathy Russell, as well as former Defendants Nancy Salzman and Lauren Salzman. These individuals were referred to as Raniere's "Inner Circle," and they all knew each other personally and were intimately involved in all aspects of the NXIVM enterprise.

6. This statement is wholly inconsistent with the findings in <u>*U.S. v. Raniere.*</u>

7. The claim that I was part of NXIVM's leadership is false. I held a rank below Plaintiffs Sarah Edmondson, Mark Vicente, Bonnie Piesse, Anthony Ames, and Ariella Menashy; below Defendants Keith Raniere, Clare Bronfman, Sara Bronfman, and Kathy Russel; and below former Defendants Nancy Salzman, Lauren Salzman, and Karen Unterreiner. Unlike Plaintiff Vicente, who was on the Executive Board, I had no authority in NXIVM operations.

8. Again, paragraph 6 states:

   > 6. NXIVM began to collapse in 2017, after Raniere, Mack, Clyne, Roberts, and leaders of a NXIVM subgroup, "DOS," defrauded, extorted, sexually abused, and branded DOS recruits (so-called "slaves") with Raniere's initials. Those events led to several defections from NXIVM, which were reported by *The New York Times.*

9. Raniere and Mack have been convicted for their involvement in DOS. I was neither indicted nor convicted of any crimes, nor was I mentioned in the *The New York Times article.*

2

10. Paragraph 6 of the TAC claims sexual abuse and branding. Nowhere does the TAC specify one instance where I was involved in sexual contact, branding, or physical contact.

11. Paragraph 6 alleges fraud and extortion. These claims require a higher pleading standard. See F.R.C.P. Rule 9(b). The TAC fails to allege the content, date, place, or intent of any alleged misrepresentation I allegedly made.

12. Nowhere in the TAC do the Plaintiffs adequately specify statements it claims I made that were allegedly false or misleading, give particulars of any of my alleged statements and how they were fraudulent or misleading, or indicate when and where I made the allegedly false and misleading statements.

13. Where multiple Defendants are asked to respond to allegations of fraud, the complaint must inform each Defendant of the nature of his alleged participation in the fraud. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). The TAC falls well short of this standard with respect to me.

14. Plaintiffs are required to "plead facts that describe each defendant's involvement in the fraud," *see LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 587 (S.D.N.Y. 2017), *aff'd*, 922 F.3d 136 (2d Cir. 2019), but the TAC does not describe my involvement with any particularity. Plaintiffs simply refer generically to my conduct. See, e.g., TAC. ¶¶ 3, 6, 13, 24, 38-39, 55, 57, 91, 107-118, 125, 150-154, 225-227, 243, 261-262, 285-286, 305-307. The allegations contained in these paragraphs are insufficient.

15. Second, the Plaintiffs fail to identify any fraudulent communications by me, nor do they provide any detailed description of my activity underlying the alleged NXIVM scheme.

16. Likewise, the Plaintiffs provide no "detailed description" of my relationship to the underlying alleged NXIVM scheme. *Curtis & Assocs., P.C. v. L. Offs. Of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 176-77 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman,*

*Esq.*, 443 F. App'x 582 (2d Cir. 2011); *see also, e.g., A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 500 (S.D.N.Y. 1998) (allegations of threats and abusive conduct do not constitute a scheme to defraud).

17. The complaint uses "buzz words" and terms without defining them, creating circular statements that are meaningless. See ¶ 13: "Defendant Nicki Clyne…worked directly with Raniere to create and operate DOS. She was a DOS 'First Line Master' and wielded substantial power over Plaintiff Jane Doe 8 and her other slaves. She was a member of Raniere's Inner Circle, who continued to recruit for DOS until March 27, 2023."

18. Terms like "create and operate," "First Line Master," "wielded substantial power," and "Inner Circle" are not defined, nor is my relationship with them. See TAC ¶ 38: "Defendants Raniere, Clare Bronfman, Sara Bronfman, Mack, Russell, and Clyne knew of the content of NXIVM materials because they were in the Inner Circle, and because each had firsthand experience with the NXIVM curricula."

19. The TAC does not detail what "Inner Circle" means. Consequently, how can that form a predicate to knowledge? All the Plaintiffs had "firsthand experience with the NXIVM curricula." What does that prove? Plaintiffs fail to mention that, unlike Plaintiffs Edmondson, Vicente, Piesse, and others, I was not a NXIVM salesperson or involved in recruitment efforts.

20. NXIVM is described as a "pyramid operation," but my relationship to that alleged pyramid operation is not detailed. See TAC ¶ 24:

> In 1998, Raniere and his collaborator, Nancy Salzman, formed NXIVM, which was operated and managed by Defendant ESP. NXIVM was another pyramid operation designed to induce enrollees (so-called Nxians) to recruit others and form downstream sales organizations within NXIVM. Enrollees were told they would benefit financially from selling curricula and other NXIVM products and recruiting others to do the same.

21. The "pyramid scheme" is further described in paragraphs 55 and 57:

> 55. In addition to using the pyramid scheme to collect revenue, the Inner Circle also used the pyramid scheme to target and prime NXIVM's victims for abuse....
> ******
> 57. Similarly, the Inner Circle pressured enrollees to become indebted to NXIVM and its leadership. This indebtedness was later used to exploit them. When enrollees were unable to purchase more classes, the Inner Circle would encourage them to "pay for" the courses with uncompensated labor. Desperate to escape debt and fearful of disobeying, enrollees, including many Plaintiffs, performed uncompensated labor for NXIVM's leaders, including Clare Bronfman, and were credited a small hourly rate toward the cost of the courses. For example, Plaintiffs... Anthony Ames, ... Sarah Edmondson,... India Oxenberg, Bonnie Piesse... Mark Vicente... became trapped in a cycle of indebtedness because of (i) false representations by the Inner Circle that more courses were needed to progress through the program...

22. Having been recruited by Plaintiffs Edmondson and Vicente, they profited financially from every class I took, and made persistent efforts to persuade me to take more NXIVM classes. I accrued tens of thousands of dollars in debt because of my involvement with the organization.

23. The imprecise drafting of the TAC does not separate out, specifically delineate, or provide me with notice of how I acted wrongfully and in violation of the law, amounting to my liability.

24. If the TAC's allegations are taken as true, I did more uncompensated labor than any Plaintiff over the 12 years of my involvement with ESP.

25. Plaintiffs fall back on conclusions. The TAC says next to nothing specific about my participation in the *modus operandi* of the alleged NXIVM fraud.

26. The misrepresentations the Plaintiffs point to as allegedly false statements about DOS were those attributed to Raniere and those admitted to by Allison Mack and others in guilty pleas in the criminal case. The TAC does not specifically state that I misrepresented anything, when I did it, or what words I used. See TAC ¶ 113.

27. The TAC makes a false comparison between me and Allison Mack, who was indicted, admitted guilt, and was convicted. I was never indicted, never admitted guilt or fault. I am not "like Allison Mack" for purposes of Rule 9(b)'s higher pleading standard:

> 150. Like Mack, Clyne, a member of the Inner Circle and a DOS First Line Master, used collateral to extort and exploit several slaves. Clyne lured Jane Doe 8 to DOS by describing it as a woman's group, separate from ESP. Clyne knew these statements were false when she made them. Clyne demanded that Jane Doe 8 supply nude photographs of herself as a warranty that she would keep DOS a secret and assured her that no one else would see the images—a statement Clyne knew was false and materially misleading when she made it because she knew the images were provided to Raniere for his sexual gratification. Clyne and Raniere had a master-slave and sexual relationship, so Clyne knew or should have known that when she recruited Jane Do 8 into DOS that she was procuring Jane Doe 8 for commercial sex acts with Raniere.
> *****
> 225. *State Law Extortion*: As alleged herein, Defendant Clyne committed multiple acts of extortion based on the same collateral scheme employed by Defendant Mack, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(v), 155.05(2)(e)(ix), and 20.00.
> *****
> 227. *Mail/Wire Fraud (DOS-related Fraud):* As alleged herein, Defendant Clyne committed multiple acts of mail and wire fraud based on the same false-representation scheme employed by Defendant Mack.[emphasis added]

28. At paragraph 151, the TAC claims: "Clyne directed Jane Doe 8 to be branded at an upcoming NXIVM event and described the brand as a small mark like a tattoo, even though she knew what the brand truly was." The Plaintiffs fail to describe how this alleged statement is false. The description the Plaintiffs claim was allegedly offered substantially describes the mark received by some of the DOS Plaintiffs as alleged by ¶ 123 of the TAC.

29. Jane Doe 8 never received a brand. It's implausible to allege that false statements were made about the nature of something that didn't happen.

30. By the language of the TAC, there is no misrepresentation here because the Plaintiffs fail to state how the actual mark that was never received was dissimilar to the mark described, which are essential elements of fraud and misrepresentation.

31. Moreover, the TAC tries to bootstrap findings in *U.S. v. Raniere*, but does not specifically state how I, a non-party to that case, am related to a very specific "forced labor conspiracy offense" with which I was never charged:

> 152. Clyne also forced Jane Doe 8 to perform labor and services for her, including menial tasks and 24/7 readiness drills, as well as reporting to Clyne on the goings-on at the Vancouver NXIVM Center. Clyne coerced Jane Doe 8 into resigning from her high-paying job so that she could work for ESP. When ESP shut down, Jane Doe 8 had no job and no income from ESP. She was diagnosed with PTSD and remained out of work for months. The District Court found that Jane Doe 8 was a victim of a forced labor conspiracy offense.

32. None of these allegations against me are sufficiently particularized to meet Rule 9(b)'s higher pleading standard.

33. According to the TAC, Jane Doe 8 worked for ESP. She lived in Vancouver and performed her labor and coaching duties at the Vancouver Center owned by Plaintiff Edmondson. I lived in New York the entire time. Jane Doe 8 constantly complained about her "high-paying" corporate job. I thought she quit to pursue her "dream job" as a pre-natal yoga teacher. I received no benefit either way. The complaint fails to allege any motive for allegedly coercing her to quit her job. I thought we were friends and I tried to support her in furthering her goals.

34. If it's true that the District Court found that Jane Doe 8 was a victim of a forced labor conspiracy offense, I was not the perpetrator because I was never charged.

### While A Defendant Can Be A Victim And A Co-Conspirator, The Third Amended Complaint Does Not Properly Identify Me As a Co-Conspirator But Does Identify Me As a Victim

35. Paragraph 150, stated fully *supra.*, states: "Clyne and Raniere had a master-slave and sexual relationship[.]"

36. Plaintiffs allege I was a slave and Keith Raniere was my master. This singular allegation renders the entirety of the Plaintiffs' allegations in the TAC implausible and legally insufficient.

37. The Plaintiffs allege:

114. Expert testimony adduced by the government in the criminal proceedings described how coercive control (physical abuse, sexual violence, psychological aggression, stalking and surveillance behaviors, economic abuse, shaming, humiliation, and isolation) is used to entrap women in abusive relationships and prevent their efforts to leave the situation. The expert also testified that age and power differential in an organization can strengthen coercive control if the perpetrator is powerful in the community, and that compliance can be enforced through intimidation and fear of a credible threat, even in the absence of an express threat. Women selected for DOS depended on NXIVM for their income, had taken misogynistic curriculum, were subjected to restrictive diets and sleep deprivation, and isolated from their families and friends.

38. According to the TAC and expert testimony adduced by the U.S. Attorney in *U.S. v. Raniere*, I am a victim. Plaintiff Edmondson introduced me to Raniere in 2005, when I was 22 years old and he was 45. Plaintiffs Edmondson and Vicente promoted Raniere as the smartest, most ethical man in the world. Their claims led to me being "entrap[ed] in [an] abusive relationship" with an "age and power differential in an organization" with "coercive control" where "the perpetrator is powerful in the community, and that compliance can be enforced through intimidation and fear of a credible threat" for 16 years, beginning eight years before DOS was created by Raniere. If I am a perpetrator or co-conspirator, the Plaintiffs have not detailed how in the TAC.

39. Until very recently, I remained in an abusive and self-destructive relationship with Keith Raniere. I have since, however, terminated that relationship – and renounced my involvement with Raniere and NXIVM. See *"Nicki Clyne Leaves Keith Raniere: Her Statement,"* THE FRANK REPORT, (March 27, 2023), available at: https://frankreport.com/2023/03/27/nicki-clyne-leaves-keith-raniere-her-statement/. (See the attached **EXHIBIT "A"**)

40. If the Plaintiffs have pleaded that I am Raniere's slave and he was my master, how are any of their claims plausible? If I do not have power over my own labor, how can I be the perpetrator of a labor conspiracy? All claims made against me are derivative claims against Raniere because the TAC reads: "Clyne and Raniere had a master-slave and sexual relationship[.]"

41. The TAC ¶ 114 alleges that *U.S. v. Raniere* established the facts that slaves are abused, through the U.S. Attorney's allegations that were accepted by the jury's verdict in the matter.

42. The Plaintiffs cannot have it both ways. They have not explained how I am a co-conspirator or a perpetrator when they allege I am a slave of Raniere. The TAC does not state facts that form a plausible basis for my liability.

## APPLICABLE LAW

43. The Court has now afforded Plaintiffs two opportunities to amend their complaint. Leave to amend again should not be granted as repleading could not remedy the fatality of Plaintiffs' complaint, making any such amendment futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (noting where amendment would be futile, denial of leave to amend is proper); *DeJesus v. Sears, Roebuck & Co. Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (holding that the district court did not abuse its discretion by refusing plaintiff an additional opportunity to amend his pleadings).

44. Federal Rule of Civil Procedure 15(a) provides that courts ordinarily should grant leave to amend in the absence of bad faith by the moving party, undue prejudice, or futility. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993) (*citing Foman*, 371 U.S. at 182)).

45. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to" Federal Rule of Civil Procedure 12(b)(6). *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

46. Generally, on a motion to amend, the court accepts the factual allegations in the proposed amended complaint as true and does not consider any evidence except that which is included in or incorporated by reference in the amended complaint. *See Nettis v. Levitt*, 241 F.3d

186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."); _Seemann v. Coastal Envtl. Grp., Inc._, 219 F.Supp.3d 362, 367 (E.D.N.Y. 2016); _Cano v. DPNY, Inc._, 287 F.R.D. 251, 257 (S.D.N.Y. 2012).

47. A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## ARGUMENT

### The Third Amended Complaint Fails the _Twombly-Iqbal_ Standard

48. To survive a motion to dismiss, a plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," id., or "speculative," Twombly, 550 U.S. at 555. Instead, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

49. If a plaintiff does not "nudge[] [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

50. Here, the Plaintiffs' claims are nowhere near the goal line. The fraud and misrepresentation claims are implausible as a matter of law because they fail the F.R.C.P. Rule 9(b) standard.

51. The factual allegations are not well-pleaded under the _Twombly-Iqbal_ standard. The claims are implausible because the factual allegations are not specific as to how I was allegedly involved.

52. I am in a class separate from every Defendant in this case. I was never convicted like Defendants Raniere, Mack, Clare Bronfman, and Russell, and former Defendants Nancy Salzman and Lauren

Salzman. Nor was I ever adjudged to be involved in professional misconduct like Brandon Porter and Danielle Roberts. And I was never part of NXIVM's leadership like Sara Bronfman, who was part of the Executive Board.

53. Under *Twombly* and *Iqbal*, Plaintiffs have the obligation to explain why it is plausible I am liable for anything. They have had three shots to do so, and all three times they missed the mark.

54. The Plaintiffs' incorporation and reference to extraneous materials, including *U.S. v. Raniere,* only strengthen the implausibility of the TAC against me because I was not implicated in the criminal case, or disciplined by any government authority.

### Further Amendment Would Be Futile

55. The TAC poorly identifies any conceivable claims against me. Further amendment would only continue down the rabbit hole. What will the Plaintiffs amend away or fabricate to focus their claims?

56. How will the Plaintiffs distinguish Raniere's "Inner Circle" in a way that does not include Plaintiffs? How is it plausible that Plaintiff Vicente, who was on NXIVM's Executive Board, was not part of Raniere's "Inner Circle?" At the 2019 trial of *U.S. v. Raniere*, former Defendant Lauren Salzman named Plaintiffs Vicente and Camila as part of Raniere's "Inner Circle."

57. What will Plaintiffs say to claim I defrauded, extorted, sexually abused, or branded any DOS Plaintiffs when the only DOS Plaintiff I recruited does not allege she was ever branded or had sexual contact with Raniere. The Plaintiffs claims against Defendants Raniere, Mack, Clare Bronfman, and Russell in the TAC cannot be used as *res judicata* against me. Yet I was never found guilty of anything.

58. The Plaintiffs talk about a "pyramid scheme" perpetrated by Raniere's "Inner Circle." How are Plaintiffs Edmondson, Vicente, Piesse, and Ames not part of this "pyramid scheme"? Plaintiffs Ames and Vicente were founders of Society of Protectors. Plaintiffs Piesse and Vicente were

founders of The Source. Plaintiff Edmondson was a founder of Ten C. Plaintiffs Vicente and Miljkovic were founders of The Knife. The Plaintiffs should explain this in their Reply.

59. If the Plaintiffs argue that I have varying degrees of "victimhood" and "exposure" as a co-conspirator and perpetrator, doesn't that mean many of the Plaintiffs have varying degrees of exposure, including but not limited to Plaintiffs Edmondson, Vicente, Ames, Piesse, Miljkovic, Oxenberg, and Camila?

60. The TAC, in conclusory fashion, alleges that by taking collateral, any Defendant who recruited a "slave" into DOS automatically engaged in fraud, extortion, sexual abuse, and branding. How will Plaintiffs explain the four Plaintiffs who recruited "slaves"? Edmondson recruited three slaves. Oxenberg recruited two slaves and one grand-slave. Jessica Joan recruited one slave. Presuming the allegations in the TAC are true, then Camila, a "First-line Master," is guilty of the exact conduct alleged against me because she also recruited a slave. Lauren Salzman, also a "First Line Master," whom the Plaintiffs chose to dismiss as a Defendant, had 28 slaves, grand-slaves, and grand-grand-slaves. The confusion between so-called victims and perpetrators is baffling, without logic, reason, or supportable legal argument. Does that mean the Plaintiffs' attorneys, KOHN, SWIFT & GRAF, P.C., and ZUCKERMAN SPAEDER, are laboring under textbook conflicts of interest and divided duties owed to their clients in violation of Rules 1.7 and 1.8 of the Rule of Professional Conduct? The Plaintiffs should explain this in the Reply.

61. It appears by the choice of language used in the TAC that the Plaintiffs' attorneys are aware of this conflict. When referring to India Oxenberg within a context where she could, according to the TAC, be held culpable for sex trafficking, forced labor, and other alleged DOS-related crimes, she is referred to only as "a DOS 'slave' extorted by Mack"; however, she is referred to by her full name when she is alleged to be a victim. TAC ¶ 145. "Mack and a DOS "slave" extorted by Mack recruited Rachel into DOS. Mack told Rachel that DOS was a special program and directed

12

her to provide damaging collateral to learn more." India recruited Plaintiff Rachel into DOS in February 2017, when she was well aware of Raniere's sexual proclivities and his role in DOS.

### The RICO Claims Would Not Survive a Rule 12(b)(6) Motion to Dismiss

62. To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)).

63. A RICO plaintiff has two pleading burdens. First, a plaintiff "must allege that the Defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To plead such a violation, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)-(c)).

64. These seven elements must be adequately alleged "before turning to the second burden, *i.e.*, invoking RICO's civil remedies." *Id.*

65. As to the second burden, a civil plaintiff must allege "that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (emphasis omitted) (quoting 18 U.S.C. § 1964(c)).

66. In addition, the alleged RICO pattern must be pled with specificity and, in the case of fraud, particularity. *See Moore v. PaineWebber*, 189 F.3d 165, 173 (2d Cir. 1999). A defect in pleading any of the complex RICO elements may render a RICO claim futile. *Cf. Moss*, 719 F.2d at 17 (setting forth the elements required to allege a civil RICO claim).

67. Plaintiffs' civil RICO claim fails for several reasons. For starters, the ambiguity as to Plaintiffs Edmondson, Ames, Vicente, and Piesse's participation in NXIVM and DOS raises questions about what Plaintiffs allege the "enterprise" is in the TAC.

68. Additionally, the Plaintiffs' pleading of the predicate acts fails as a matter of law. The RICO predicate acts alleged against me are as follows:

> **Defendant Clyne's Predicate Acts**
>
> 225. *State Law Extortion:* As alleged herein, Defendant Clyne committed multiple acts of extortion based on the same collateral scheme employed by Defendant Mack, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(v), 155.05(2)(e)(ix), and 20.00.
>
> 226. *Forced Labor, Sex Trafficking, and Human Trafficking:* Clyne committed several forced labor, sex trafficking, and human trafficking violations that are predicate acts under 18 U.S.C. § 1961(1). Those allegations are articulated below, *infra* ¶¶ 261-262, and incorporated herein by reference.
>
> 227. *Mail/Wire Fraud (DOS-related Fraud):* As alleged herein, Defendant Clyne committed multiple acts of mail and wire fraud based on the same false-representation scheme employed by Defendant Mack.

### State Law Extortion

69. The "State Law Extortion" predicate act fails because it is described as "based on the same collateral scheme employed by Defendant Mack." As a matter of law, Mack's "collateral scheme" is different from anything I was alleged to have done because Mack was criminally charged, pleaded guilty, and was convicted based upon the said collateral scheme. I was never charged in Federal Court, New York State, or anywhere else based on a "collateral scheme." Moreover, the Plaintiffs fail to spell out what my alleged "collateral scheme" was.

70. Given the Plaintiffs' incomplete and speculative method of implausible pleading, we can look at the New York Penal Law Section 155.30(6) which states: A person is guilty of grand larceny in the fourth degree when he steals property and when the property, regardless of its nature and value, is obtained by extortion. Grand larceny in the fourth degree is a class E felony.

(e) By extortion.

A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:

(v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule.

71. Here, Plaintiffs failed to plead many of the elements of extortion under New York law, which is the predicate for their RICO claim against me. Plaintiffs fail to claim that any item was taken, obtained, or withheld wrongfully.

72. Additionally, the claim that I compelled anyone to deliver any property by fear is not alleged in the TAC, which specifically only alleges fear on behalf of the Plaintiffs after the property was delivered [not before] based upon unspecified misrepresentations. See ¶ 108: "In DOS, women were told they had to provide collateral as the price of learning more about DOS, and if they joined DOS (based on misrepresentation and material omissions discussed below) they were required to provide more 'collateral' so Raniere and the DOS 'masters' could maintain power over [the 'slaves'] and have leverage to direct them to do [what Raniere and the other masters] wanted."

73. The allegations related to collateral, as defined in the TAC define the crime of "larceny by trick," which is under New York Penal Law Section 155.05(2)(a): 2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

(a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses;

74. New York Penal Law Section 155.05(2)(a) is not pleaded by Plaintiffs as a RICO predicate.

75. Additionally, my situation is separate and distinct from that of Mack, who was indicted, charged, plead guilty, and convicted in the incorporated *U.S. v. Raniere* case.

76. The RICO claim fails on the paragraph 225 prong.

**Forced Labor, Sex Trafficking, and Human Trafficking**

15

77. The second RICO predicate, styled "Forced Labor, Sex Trafficking, and Human Trafficking," similarly fails. Plaintiffs claim "Clyne committed several" of these RICO predicate federal crimes.

78. I was never indicted, charged, or convicted of any federal crime.

79. Additionally, the allegations made, as pleaded, are vague and implausible because I was never the subject of a federal prosecution like other Defendants.

80. Plaintiffs fail to allege this predicate act with requisite specificity. Plaintiffs fail to plausibly allege my involvement in this predicate act.

### Wire Fraud and F.R.C.P. Rule 9(b)

81. As stated *supra.*, the Plaintiffs fail to meet the heightened pleading requirement for fraud. Since the Plaintiffs are alleging wire fraud as a predicate act, the RICO claims must satisfy the heightened pleading standards of Rule 9(b). *Targum v. Citrin Cooperman & Co., LLP*, 2013 U.S. Dist. LEXIS 164585, 2013 WL 6087400, at *4 (S.D.N.Y. Nov. 19, 2013) ("All claims sounding in fraud including those under RICO must comply with Rule 9(b)'s heightened pleading standard. Under Rule 9(b)…a party must state with particularity the circumstances constituting fraud.") (citations omitted).

82. Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).

83. Allegations based on "information and belief," without more, will not suffice. Nor may the plaintiffs "rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." *Holmes v. Allstate*, 2012 U.S. Dist. LEXIS 24883, 2012 WL 627238 at *23 (S.D.N.Y. 2012) (citing *Trustees of Plumbers*, 896 F.Supp 342, 347 (S.D.N.Y. 1995). Thus, a plaintiff must allege that "each

16

[d]efendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme." *Id.*

84. Plaintiffs fail to specifically plead and give notice as to my alleged involvement in the claimed predicate wire fraud.

85. Accordingly, the RICO claim against me fails.

### The Forced Labor, Sex Trafficking, and Human Trafficking Claims Would Not Survive a Rule 12(b)(6) Motion to Dismiss

86. Plaintiffs have attempted to circumvent the statute of limitations in claims against me by pleading under 18 U.S.C. § 1595, which provides a civil cause of action for victims of 18 U.S.C. § 1591 (the "Sex Trafficking Act" or "TVPA").

87. The TVPA was designed to target organized sex-trafficking rings that profit from the illicit sex trade and human trafficking for commercial gain; it was not designed to give a right of action for the circumstances alleged here. In their misguided attempt to state a claim under the TVPA, the Plaintiffs cannot rely on the non-binding decision in *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. Aug. 14, 2018) ("*Noble*"), which denied a motion to dismiss a Section 1595 claim against Harvey Weinstein. *Noble* was "an extension of . . . of [the TVPA] on which there is little to no prior authority." 335 F. Supp. 3d at 520. However, none of the claims alleged here are supported by any reasonable reading of the TVPA and any reliance on *Noble* to support these claims is misplaced.

88. Section 1591 is traditionally applied only to the conduct of "an individual directly and substantially involved in an underlying sex trafficking scheme." *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 171 n.7 (E.D.N.Y. 2014) (collecting cases where defendants accused of sex trafficking prostituted women and children). To state a claim the Plaintiffs must adequately plead that I knowingly and in interstate commerce: "(1) recruited, enticed, harbored, transported,

provided, obtained, or maintained by any means a person; (2) knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud . . . or any combination of such means will be used; (3) to cause the person to engage in a commercial sex act." *Noble*, 335 F. Supp. 3d at 515.

89. The core *actus reus* of the crime of sex trafficking is "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], or maintain[ing]" victims of sex trafficking. See *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 447 (E.D.N.Y. 2013) ("Plaintiff has failed to demonstrate or explain how Defendant recruited, harbored, provided or obtained her services, a necessary element to prove trafficking under this statute ... Without this element, Plaintiffs' trafficking claim under this statute is nothing more than her forced labor claim restated.").

90. Moreover, the TVPA's purpose is to compensate victims for the value of their forced labor, not to transform mere social relationships into sources of tort liability. *Noble*, 335 F. Supp. 3d at 515.

91. Notwithstanding the fact that the only Plaintiff I recruited into DOS never alleges she had any sexual contact with Raniere or anyone, nor specifies any labor directed by me for which I benefitted. Absent sexual conduct, allegations of sex trafficking cannot be sustained. Absent any benefit gained or specific labor performed, allegations of forced labor cannot be sustained.

92. Plaintiffs fail to identify with any plausibility or specificity how they allege I extracted forced labor from any of them. Indeed, Paragraph 292 of the TAC is a blanket, conclusory, mishmash that makes no specific allegations of my involvement in a forced labor conspiracy.

93. Accordingly, the Forced Labor, Sex Trafficking, and Human Trafficking Claims against me all fail.

### The Aiding and Abetting, Acting in Concert, and Conspiring with Respect to Battery Claim Would Not Survive a Rule 12(b)(6) Motion to Dismiss

94. Under New York Law, to establish a claim of civil conspiracy, the Plaintiff "must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties;

(2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012), *Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491-SJB, 2020 WL 1908557, at *67 (E.D.N.Y. Apr. 17, 2020); *Guy v. Auto. Ins. Co. of Hartford Conn.*, No. 118CV02620RJDRLM, 2020 WL 364194, at *4 (E.D.N.Y. Jan. 22, 2020).

95. In Count VI the Plaintiffs fail to plead the requisite elements; fail to identify my agreement; fail to identify my overt act; fail to identify my participation in the furtherance of a plan or purpose.

96. Additionally, the claim is outside the applicable statute of limitations. I was not a Defendant in *U.S. v. Raniere*. No equitable toll applies to my alleged activity.

97. Accordingly, the Aiding and Abetting, Acting in Concert, and Conspiring with Respect to Battery Claim fails.

## Further Amendment Should Not Be Permitted Because of Undue Delay and Substantial Prejudice

98. In evaluating undue delay, "most courts require a showing not merely of the passage of time, but also of some prejudice to the other party or bad faith by the movant." *Visual Word Sys., Inc. v. CPT Corp.*, No. 83-CV-2130, 1985 U.S. Dist. LEXIS 20570, 1985 WL 567, at *7 (S.D.N.Y. Apr. 19, 1985).

99. Undue prejudice speaks to "whether the amendment will require the opposing party to expend significant resources in discovery and whether resolution of the dispute will be delayed." *Kirkland-Hudson v. Mount Vernon City School District*, No. 21-CV-695, 2022 U.S. Dist. LEXIS 87974, 2022 WL 1555606, at *2 (S.D.N.Y May 16, 2022) (quoting *E.E.O.C. v. Morgan Stanley & Co.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002)).

100. The opposing party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citation omitted).

101.  The conduct complained of against me occurred over six (6) years ago, and over three (3) years before the filing of the initial complaint.

102.  I was not a Defendant in *U.S. v. Raniere*. I was not indicted or convicted. Based on the allegations in the TAC, I am a victim of Keith Raniere, NXIVM, and several Plaintiffs.

103.  The TAC does not detail or allege why I should be "lumped in" with Defendants who were convicted, further evidencing the Plaintiffs' bad faith.

### CONCLUSION

104.  For the reasons stated above, I respectfully request that the Court not allow the Plaintiffs to file and serve the proposed TAC.

105.  I reserve my right to move to dismiss the operative complaint – as well as my right to assert appropriate counterclaims, cross-claims, and/or third-party claim.

Dated: May 10, 2023                                Respectfully submitted,

                                                   */s/ Nicki Clyne*
                                                   Nicki Clyne

# EXHIBIT "A"



# Nicki Clyne Leaves Keith Raniere: Her Statement

March 27, 2023



Nicki Clyne has left Keith Raniere.

**By Nicki Clyne**

I have changed my position on Keith Raniere. I no longer believe he is a man of noble character, as I once did.

I also do not believe he considered my best interests or helped me achieve the goals for which I sought his guidance.

I have come to certain realizations about my past decisions and views, which leave me with no choice but to renounce the man who influenced them. I will no longer publicly support or try to free him for these and many other reasons.

I do not believe my intentions were false or impure, but the methods I followed were misguided.

From a young age, I have felt that what we perceive in a material sense is only a fraction of what we can experience spiritually. I read about spiritual quests in books, and men and women who seemed to have attained a higher state of consciousness.

I knew I wanted that, but had no idea how to attain it — or where to start.

When I first met Keith Raniere, at 23 years old, through his educational programs and as the leader of an organization, I perceived him to have a knowledge of humanity and spirituality that could help me on my quest to find my higher self.

He quickly convinced me he knew better than anyone how to achieve or become what I sought.

He once asked me what single question I would ask an omniscient being if I could, to which I replied: "Who am I?"

He then asked me what my biggest fear was concerning him. I said I feared that he would want to sleep with me.

So, when he inevitably encouraged our sexual union, I assumed it was to help me overcome my biggest fears and attachments.

Little did I know that this would lead to 16 years of suffering, self-rejection, and the sacrifice of my own wants, desires, and priorities. I say this not for sympathy, and I am not seeking retribution. I have no one to blame but myself and my myopic view that Keith was the ultimate guide for my spiritual advancement.

I persuaded myself that Keith's abusive treatment was part of the path to the freedom I was seeking. Instead, through calculated deception, he taught me to doubt myself, distrust my intuition, believe myself unworthy, and, most of all, he taught me to fear him unconditionally.

With more than a tinge of embarrassment, I'll admit that I thought Keith had supernatural powers. I thought my weaknesses and failures to meet his expectations were a constant burden for him, and for which I carried enormous guilt. All I could hope to do, in repentance, was subjugate my own

22

needs in an effort to repair my seemingly insurmountable "ethical breach." This often meant engaging in sex at his whim, supposedly for my spiritual benefit, only to be dismissed and disposed of immediately after his sexual gratification. Any discontent or lack of feigned enthusiasm was met with disapproval and the notion that I was a drain on his generous spirit — even going so far as suggesting that my negativity could be fatal for him.

I was meant to be "happy," so I put on a happy face. At least, I tried. I felt eternally indebted to what I perceived as his noble generosity and assumed I would spend my lifetime trying to make up for the misdeeds he was constantly bringing to my attention.

I am not writing this with anger or regret. For whatever reason, this was a path I chose.

My recent realizations were facilitated by a man I once feared, the person I considered my biggest enemy and the reason for my life's destruction, the author of the prolific blog, The Frank Report. Frank Parlato has been blamed and applauded for taking down Keith Raniere and NXIVM. For years, I resented and feared him.

I have come to see now that he was not my enemy, not even then. I believe he attacked Keith Raniere in part in self-defense and because he believed Keith was pretending to be good while wreaking havoc and harming innocent people, including and especially those who earnestly came to him for help.

Frank's motivation was not some conspiracy to ruin a good man, as I previously thought.

It's implausible to believe that the long trail of Keith's victims over several decades, many who had no connection to one another, were all lying and seeking illicit rewards.

Frank's rigorous investigation into Keith and NXIVM allowed me to re-evaluate my views and my own experience in such a way that it is irrefutable.

It is five years since Keith Raniere lost his worldly freedom. I was present for this event, and even being raided by heavily armed Mexican Federales was not enough to shake me from my delusion. Additionally, the personal betrayals by people I thought were my friends, and much of the exaggerated, and sometimes false, anti-NXIVM rhetoric, only led me to be more committed to my defense of Keith and my view that there was injustice.

Apart from Keith himself, I felt a moral obligation to a community of people I knew to be good and well-intended.

While I put on an outward appearance of strength and steadfast dedication, there was a part of me that secretly hoped Keith would never be released from prison.

I prayed that Keith would let me go in peace once all legal remedies were exhausted to free him. But, until now, I couldn't conceive of leaving him without a lifetime of guilt and shame.

During the five years since he was arrested. I was determined not to be swayed by any material interest: not money, not fame, not relief from prosecution, not salvaging my reputation, not even pleasing the people close to me.

In public, I was consistent in my message that Keith was a deeply misunderstood character and that the NXIVM community's intentions were good. Within myself, there were so many things I could not reconcile.

Despite my disillusionment with Keith, I am still concerned with some of the methods used by the prosecution in his case. Through my experiences these past years, I have gained insight into the inequities of the criminal justice system and the often inhumane conditions of incarceration in America. I intend to continue my advocacy for the humane treatment of people in prison and promote a fairer system of justice.

If it is true, as credible experts have claimed, that the FBI was complicit in fabricating evidence to convict Keith Raniere, I support its exposure and the holding of those responsible accountable.

However, I will not spend the rest of my days defending Keith and his choices, especially with the knowledge that so many have suffered due to his reckless conduct and selfishness.

I am grateful to everyone who has been a part of my life, most especially my mother, who has shown me unconditional love and support throughout the years, and who always trusted I would find the right path, on my terms.

I may or may not share the details of my 18 years under Keith Raniere's deceptive leadership, but I felt it was necessary to at least make my position clear.

I look forward to what's next and appreciate everyone who has stood by me. I hardly expect everyone to agree with my position, and that's okay. I believe there is a way to find the good even in the most challenging and detrimental circumstances, and we are far better doing that than lamenting the past and playing the victim.

I plan to share further thoughts on this soon.

**[A previous version of this statement was published saying Nicki Clyne was in a relationship with Keith Raniere for 18 years. It has since been updated to say 16 years because it was 18 years ago that she joined ESP, but she started a relationship with Raniere in 2007.)**

**https://frankreport.com/2023/03/27/nicki-clyne-leaves-keith-raniere-her-statement/**