UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SARAH EDMONDSON, et al.,

        Plaintiffs,

    v.

KEITH RANIERE, et al.,

        Defendants.

CIVIL ACTION NO. 20-CV-485

---

**OMNIBUS REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

# INTRODUCTION

Defendants Sara Bronfman, Brandon Porter, Nicki Clyne, and Danielle Roberts (the "Opposing Defendants") fail to demonstrate that Plaintiffs' motion for leave to amend should be denied.[1] Plaintiffs have fundamentally reworked the operative complaint, and no iteration of the complaint has been the subject of a substantive ruling. Although Sara Bronfman attempts to incorporate by reference her motion to dismiss briefing—which targeted a different version of the complaint—into her opposition brief, the Court has never concluded that Plaintiffs have failed to state a claim, and the Opposing Defendants do not even attempt to demonstrate the futility of numerous claims in the Third Amended Complaint ("TAC"). Further, denying leave to amend would not conclude this case but instead transport everyone back to where they were before the last hearing and require the Court to adjudicate Defendants' pending motions to dismiss the First Amended Complaint ("FAC").

The Court should grant leave to amend and assess the sufficiency of the TAC's allegations after full briefing on its merits.

# ARGUMENT

**I. The Opposing Defendants fail to demonstrate that leave to amend should be denied for bad faith, undue delay, dilatory motive, or undue prejudice.**

Sara Bronfman (like Clare Bronfman) does not argue that this Court can or should deny Plaintiffs' motion for leave to amend for bad faith, undue delay, dilatory motive, or undue prejudice. ECF No. 205 (Sara Bronfman's Br.). Indeed, no such basis for denying leave to amend exists. *See* ECF No. 202-1 at 5–9 (Pls.' Br.).

---

[1] Clare Bronfman does not oppose Plaintiffs' motion for leave to amend. ECF No. 203.

Nevertheless, Defendants Roberts, Clyne, and Porter, proceeding *pro se*, assert bad faith, undue delay, and dilatory motive. Their arguments, however, boil down to (i) complaints that facts alleged in the TAC are irrelevant, prejudicial, or "outright lies," *e.g.*, ECF No. 212 at 13–15, 18–19 (Roberts' Br.); (ii) disagreement with the TAC's allegations, *e.g.*, ECF No. 212 at 14 (Roberts' Br.); ECF No. 206 at 12–13 (Porter's Br.); and (iii) expressions of a desire to add context that they think will help their cases, *e.g.*, ECF No. 212 at 15–16 (Roberts's Br.), ECF No. 210 at 19–20 (Clyne's Br.); ECF No. 206 at 10–11 (Porter's Br.). None of these points is properly made in a motion to dismiss, much less an opposition to a motion for leave to amend. And none of these points satisfies their burden to demonstrate bad faith, undue delay, or dilatory motive. *See Bensch v. Estate of Umar*, 2 F.4th 70, 81 (2d Cir. 2021) (magistrate judge erred by finding bad faith where the record did not demonstrate that the plaintiff was "either engaged in delay and imposing unnecessary additional litigation costs or inventing non-existent 'facts' for which there was no good faith basis," even though the plaintiff pressed "incorrect" legal positions).[2]

## II. The Opposing Defendants fail to demonstrate that Plaintiffs' request for leave to amend should be denied for futility.

### A. The Opposing Defendants fail to show that the TAC violates Federal Rule of Civil Procedure 8.

The TAC describes how Defendants operated collectively as a racketeering organization and trafficking venture, detailing each of the Defendants' roles in the organization. *See, e.g.*, TAC ¶¶ 28–36, 58–86, 107–126. It also carefully delineates which claims each Plaintiff is asserting

---

[2] Defendant Porter makes an unsubstantiated accusation with respect to one Plaintiff's claim against him. He provides no basis for the accusation, and it is incorrect. He charges that Plaintiffs' counsel have acted unethically in asserting certain claims against him on Camila's behalf. ECF No. 206 at 12–13. That charge is predicated on nothing more than his baseless speculation, which he acknowledges: "Of course, I might be wrong." *Id.* Indeed, he is wrong. Plaintiffs' counsel have complied with their ethical obligations and have communicated with their clients throughout this litigation, including during the drafting and filing of the TAC.

against each Defendant, *id.* ¶¶ 196-332 (counts section); which predicate acts underlie those claims, *id.* ¶¶ 201–230 (identifying predicate acts defendant-by-defendant); which acts by each Defendant give rise to the tortious and predicate acts alleged, *e.g.*, *id.* ¶¶ 63–71, 203–213; and, where applicable, which acts by each Defendant evidence his or her agreement to facilitate the RICO enterprise, *id.* ¶¶ 239–247. The TAC thus complies with Rule 8 by putting Defendants on notice of the claims asserted against them and the factual predicates of those claims. *See Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) (complaint satisfied Rule 8's "extremely permissive" pleading standard by satisfying its "key" requirement of "adequate notice").

**1. The TAC does not group plead defendants.**

Despite the foregoing, Sara Bronfman argues that Plaintiffs violate Rule 8 by alleging that Sara Bronfman is a member of the Inner Circle and by using the term "Inner Circle" to refer to a group of the defendants. ECF No. 205 at 8–9. That argument is meritless. The TAC refers to Sara Bronfman by name repeatedly and recounts her involvement and role in the NXIVM racketeering enterprise and trafficking venture, thus explaining why she is plausibly alleged to have been a member of the Inner Circle. *See, e.g.*, TAC ¶¶ 11, 28–36, 38–40, 48, 58–67, 82, 249. That the TAC sometimes refers to the "Inner Circle"—which Plaintiffs allege operated as a single group that committed RICO violations—is no ground to conclude that Plaintiffs violate Rule 8. *See* Second Superseding Indictment, at 1–2, *United States v. Raniere et al.*, 1:18-cr-00204-NGG-VMS (E.D.N.Y. March 13, 2019) (indictment similarly using term "Inner Circle" to denote NXIVM's leadership). Sara Bronfman knows exactly which claims Plaintiffs bring against her, *e.g.*, TAC Count I (naming Sara Bronfman as defendant), which predicate acts Plaintiffs allege she committed, *id.* ¶¶ 214–218 ("Defendant Sara Bronfman's Predicate Acts"); and which acts

3

Plaintiffs allege evince her agreement to facilitate the RICO enterprise, *id.* ¶ 241 ("Defendant Sara Bronfman's Acts Evincing Her Knowing Agreement to Facilitate the Enterprise").

Indeed, Sara Bronfman's own authorities, ECF No. 205 at 9, undermine her group pleading argument. In *Atuahene v. City of Hartford*, the Second Circuit affirmed a district court's dismissal of a complaint because—even after the district court "accorded [the plaintiff] several opportunities to correct [the complaint's] manifest flaws"—the complaint "still fail[ed] to identify which defendants were alleged to be responsible for which alleged violations." 10 F. App'x 33, 34 (2d Cir. 2001) (complaint "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct"). And in *Oyarzun v. President/CEO of Exchange Place Preservation Partners, LLC*, the complaint failed to "specify what acts each particular defendant did" and failed to give the defendant fair notice of the plaintiff's claim and its grounds. 2021 WL 6197081, at *3 (D. Conn. Dec. 31, 2021). The defects that doomed the complaints in those cases are absent here, and the TAC amply satisfies Rule 8. *See Feldman v. Comp. Trading LLC*, 2021 WL 930222, at *3 (E.D.N.Y. March 11, 2001) (explaining that Rule 8 does not even necessarily require "separat[ing] out claims against individual defendants" because "[t]he question is ultimately whether the complaint gives each party notice of the substance of the claims against him") (collecting cases); *Wynder*, 360 F.3d at 77 (Rule 8 does *not* require plaintiffs to identify their legal theories or "separate claims as to each defendant"); *Manchanda v. Navient Student Loans*, 2020 WL 5802238, at *2 ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each.") (quotation omitted).

Sara Bronfman's backup argument, ECF No. 205 at 9 n.6, that the TAC impermissibly groups defendants because it treats her and her sister "as a unit" also fails. The TAC distinguishes

4

between Sara and Clare Bronfman both when it makes factual allegations and when it asserts claims against each of them. TAC ¶¶ 28–36 (identifying the sisters' different roles and powers within the enterprise), ¶¶ 62–80, 180 (identifying sisters' different actions giving rise to liability), ¶¶ 203–218 (organizing sisters' predicate acts in different sections); ¶¶ 240–241 (same as to facts evidencing their culpability for the RICO conspiracy). True, the TAC sometimes discusses Sara and Clare Bronfman in the same sections and references each in the same sentences. But that is not "group pleading," and it should not be surprising: Sara encouraged Clare to join NXIVM, they rose to prominence within the Enterprise around the same time, and they contributed to the Enterprise's efforts in some of the same ways (for example, by financially backing it). Plaintiffs may make allegations against multiple defendants in a single sentence without violating Rule 8. *E.g.*, *id.* ¶¶ 32–36 (alleging that *both* Sara and Clare Bronfman provided Raniere and his entities with substantial funds). The TAC does not impermissibly treat Clare and Sara Bronfman "as a unit."

### 2. The TAC does not group plead Plaintiffs.

Sara Bronfman also says the TAC inappropriately group pleads Plaintiffs. ECF No. 205 at 10. But the only example she cites is paragraph 57 of the TAC, which identifies 29 plaintiffs by name. Like each paragraph of a complaint, that paragraph must be read in context. The context surrounding paragraph 57 alleges that: (i) Defendants Raniere, Clare Bronfman, Sara Bronfman, Mack, and Russell knew of the content of NXIVM's materials because of their specific experiences with that curricula and roles in the organization, TAC ¶¶ 37–38; (ii) Raniere, Clare Bronfman, and Sara Bronfman knew representations made in NXIVM materials to recruits were false, *id.* ¶¶ 38–57; (iii) all Plaintiffs (other than Camila, Daniela, and Adrian) relied on the false representations

when they purchased NXIVM curricula, *id.* ¶ 53; and (iv) Camila, Daniela, and Adrian relied on the false statements when they exchanged their labor for NXIVM curricula, *id.* ¶ 54.

As an example of purported lack of clarity in the TAC, Sara Bronfman points to Plaintiff Philip Akka. But the TAC clearly sets forth that Mr. Akka brings two claims against Sara Bronfman (Counts I and II); that Sara Bronfman committed multiple RICO predicate acts, at least one of which injured Mr. Akka, namely mail and wire fraud, TAC ¶¶ 214–218; that Sara Bronfman's mail and wire fraud caused his injury because he relied on misleading representations for which she is legally responsible, *id.* ¶¶ 38–53; and that his reliance caused him a RICO injury, namely financial harm such as payments for NXIVM tuition and courses, *id.*, Schedule A (Akka, Philip).

Put simply, the TAC alleges that each Plaintiff relied on false statements promulgated in NXIVM materials and that Sara Bronfman is legally responsible for the promulgation of those statements. *Id.* ¶¶ 30–54. Sara Bronfman may disagree with that legal theory, but the TAC does not impermissibly group Plaintiffs.[3]

### B. The Opposing Defendants fail to show that the Plaintiffs are incapable of stating any claim against them.

The Opposing Defendants have also failed to "demonstrate[]" that it is "beyond doubt" that Plaintiffs "can plead no set of facts that would entitle them to relief" and the proposed amendments are "on their face, entirely futile." *Gordon v. Tencent Music Ent. Grp.*, 2021 WL 6113263, *9–10

---

[3] Sara Bronfman's suggestion, ECF No. 205 at 5 n.2, that the TAC's length justifies denying leave to amend is also incorrect. A complaint contravenes Rule 8 for length when it is "incoherent, unintelligible and [] bereft of any facts in support of [its] claims." *Carmen of the Fam. Skrine v. 42 U.S.C. § 654(3) Child Support Enf't Bureau*, No. 18-CV-3953(JS)(AYS), 2019 WL 1748602, at *3 (E.D.N.Y. Apr. 18, 2019); *Abreu v. Merson*, No. 07-CV-6491L, 2007 WL 4440903, at *2 (W.D.N.Y. Dec. 13, 2007) (similar). The TAC is readable, cogent, and puts Defendants on notice of Plaintiffs' claims. Its length is due to the scale of Defendants' tortious conduct and the complexity of Plaintiffs' legal claims.

(E.D.N.Y. Dec. 27, 2021) (alteration adopted; quotation omitted). Even if the Opposing Defendants made such a showing as to *some claims* in the TAC, the Court should still grant leave to amend: a district court cannot deny a motion for leave to amend for futility if a complaint "is, with respect to some claims, sufficient to withstand a motion to dismiss under Rule 12(b)(6)." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that the district court erred in denying a motion to amend for futility at the same time it dismissed the operative complaint because—even though some of the plaintiffs' claims failed as a matter of law—the operative complaint and the proposed complaint sufficiently pled "some claims"); *see also Optigen, LLC v. Int'l. Genetics, Inc.*, 777 F. Supp. 2d 390, 399 (N.D.N.Y. March 8, 2011) ("With regard to the futility prong, the proposed amended complaint need only be sufficient as to some claims for the request to not be futile.") (alteration adopted; quotation omitted); *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 111 (S.D.N.Y. Sept. 29, 2016) (same).

Further, any doubt about futility should be resolved in favor of granting leave to amend, so the parties can fully brief the proposed complaint's merits. *See Intercloud Sys., Inc. v Integration Partners Corp.*, 2017 WL 11570456, at *1–*2 (S.D.N.Y. July 31, 2017) (joining numerous courts by "declin[ing] to conclude" at motion to amend stage that a proposed complaint would be futile, even though a motion to dismiss the prior complaint had been "fully briefed," because "the wiser course" was to rule on the proposed complaint's sufficiency "in the context of a fully briefed motion to dismiss that complaint").

        **1.**      **Sara Bronfman fails to demonstrate that the TAC does not state a claim against her.**

Sara Bronfman does not clearly articulate which of the TAC's claims against her she thinks fail under Rule 12(b)(6). Rather, she criticizes some of the TAC's new allegations while attempting to incorporate by reference "all arguments previously raised in her motion to dismiss briefing,"

7

which was aimed at the FAC. ECF No. 205 at 12 n.9.[4] Permitting Sara Bronfman to incorporate *60 pages* of her prior briefing on the FAC when examining whether the TAC is futile would require the Court to weigh the parties' arguments in the FAC briefing in light of the fundamentally-reworked TAC, and it would deprive Plaintiffs of the opportunity to identify instances where the TAC strengthens or clarifies Plaintiffs' claims. *See Biedermann v. Ehrhart*, 2021 WL 1061794, at *1 (N.D. Ga. March 19, 2021) (explaining that briefs cannot incorporate other filings to "circumvent" court-ordered page limits and "foist[]" upon courts the burden of "sifting through irrelevant materials") (quotation omitted; collecting cases). On this ground alone, the Court should conclude that Sara Bronfman has not satisfied her burden to demonstrate futility and reserve analysis of the TAC's merits until the parties have briefed the sufficiency of the TAC's allegations.[5]

Further, Sara Bronfman's futility arguments do not, on their own terms, demonstrate that all of the TAC's claims against her are inviable. First, she says nothing of Plaintiffs' Trafficking Victims Protection Reauthorization Act ("TVPRA") claims against her, aside from asserting that Counts III(C) and III(D) of the TAC require allegations that she "had knowledge of, agreed to, or recklessly disregarded others' actions." ECF No. 205 at 16. That remark does not come close to carrying her burden.

Plaintiffs allege that Sara Bronfman provided and obtained Plaintiff Camila's labor and services with knowledge, TAC at ¶ 278, and that she is liable for forced labor and human trafficking offenses against Camila under a beneficiary theory. That theory requires Plaintiffs to

---

[4] For example, she says nothing about the TAC's state law claims against her, and thus presents no argument that those claims fail as a matter of law.

[5] If the Court prefers to assess the TAC's futility by relying on the parties' briefing as to the FAC and permits Sara Bronfman to incorporate her prior motion to dismiss arguments, Plaintiffs request the same treatment as to their motion to dismiss briefing.

8

allege that Sara Bronfman (i) knowingly benefitted financially or received "anything of value," from (ii) participating in the venture, which (iii) she knew or should have known committed a forced labor or trafficking violation. 18 U.S.C. § 1595(a); *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 793 (E.D. Mich. Jan. 12, 2021).

The TAC's allegations satisfy each of those elements. Sara Bronfman, by participating in the venture,[6] knowingly benefitted financially and by receiving free labor, as well as enhanced status, power, and prestige within NXIVM. *Id.* ¶¶ 30, 59–63, 72, 278–279; *see United States v. Cook*, 782 F.3d 983, 988 ("The phrase 'anything of value' [under the statute] is extremely broad"); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. Aug. 14, 2018) (the statutory term demands "liberal reading" and includes intangibles); *United States v. Rivera,* 2012 WL 6589526, at *5 (M.D. Fla. Dec. 18, 2012) (term encompasses "ordination as a prophet"), *aff'd*, 551 F. App'x 531 (11th Cir. 2014). Plaintiffs allege that Sara Bronfman knew or should have known that the venture committed forced labor and trafficking violations, generally, and as to Camila, specifically, because Sara Bronfman not only financed but also "operated" RCG—a NXIVM "trafficking operation," which exploited Camila among others—and "directed" RCG's titular head to "maintain multiple sets of books to hide the existence of foreign nationals and mask RCG's finances." TAC ¶¶ 30, 32, 59–80, 278–279; *see Reyes-Trujillo*, 513 F. Supp. 3d at 793 ("[T]he relevant state-of-mind inquiry . . . focuses on whether the defendant knew or should have known of [the violations] by the venture in which he allegedly participated.") (quotation omitted); *Doe #1 v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2022 WL 407147, at *11 (N.D. Ala. Feb. 9, 2022) ("constructive knowledge" suffices for civil liability); *Ricchio v. Bijal, Inc.,* 424 F. Supp. 3d 182, 193-194 (D. Mass. Nov. 22, 2019) ("The phrase 'knew or should have known,' echoes

---

[6] The TAC clearly identifies and defines the venture. *See, e.g.*, ¶ 249 & n.81.

common language used in describing an objective standard of negligence.") (collecting authorities).[7]

Sara Bronfman likewise does not demonstrate that the TAC's TVPRA conspiracy claim against her fails. A TVPRA conspiracy requires "an agreement to violate the prohibition on forced labor. There need not be proof of an explicit agreement, but the evidence must be sufficient to permit the jury to infer that the defendant and other alleged coconspirators entered into a joint enterprise with consciousness of its general nature and extent." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, No. 17-CV-1302 (NG) (JO), 2019 WL 4647648, at *20 (E.D.N.Y. Sept. 24, 2019), *aff'd in part, appeal dismissed in part*, 827 F. App'x 116 (2d Cir. 2020) (citation and quotation omitted). It is reasonable to infer that Sara Bronfman was engaged in a conspiracy with the trafficking venture given Plaintiffs' detailed allegations of the NXIVM scheme in which she took part. TAC ¶¶ 28–36, 38–40, 58–72, 82, 180–181, 241, 292.

Second, Sara Bronfman argues that Plaintiffs' RICO conspiracy claim (Count II) against her fails because the TAC insufficiently alleges Sara Bronfman's knowledge of the conspiracy and facts evidencing her agreement to facilitate the enterprise. She is wrong. As an initial matter, even if Sara Bronfman were correct that the TAC does not adequately allege that she committed two or more RICO predicates (which she is not, *see infra*), that would not suggest that Count II of the TAC is futile as to her: a defendant may be liable for RICO conspiracy under 18 U.S.C. § 1962(d) even if she has not committed or agreed to commit a single predicate act—or even an overt act in furtherance of the conspiracy. *Salinas v. United States*, 522 U.S. 52, 54–66 (1997). Liability for

---

[7] To plausibly allege Sara Bronfman's civil beneficiary liability under the TVPRA, Plaintiffs are *not* required to plead that Sara Bronfman directly committed forced labor or trafficking violation as to Camila or anyone else, or that Sara Bronfman had the *mens rea* necessary for criminal TVPRA liability. *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d at 193–194; *Doe #1*, 2022 WL 407147, at *11–*12.

RICO conspiracy requires the defendant to have (i) joined a racketeering scheme that involved or by agreement was intended to involve two or more predicate acts; and (ii) knowingly engaged in the scheme with the intent that its overall goals be effectuated. *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018); *see also United States v. Zichetello*, 208 F.3d 72, 100 (2d Cir. 2000) ("knowledge of only the general contours of the conspiracy" suffices); *Board of Managers of Trump Tower at City Center Condo. By Neiditch v. Palazzolo*, 346 F.Supp. 3d 432, 463 (S.D.N.Y. Sept. 28, 2018) ("[A] defendant's agreement to join a conspiracy can be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of wrongdoing"—allegations which are reviewed under the liberal pleading requirements of Rule 8(a), not Rule 9) (quotation omitted). Plaintiffs' allegations amply satisfy those elements. *See, e.g.*, TAC ¶ 241 (collecting litany of facts alleged in TAC that demonstrate Sara Bronfman's knowing participation in, and furtherance of, the enterprise).

Third, Sara Bronfman argues that Plaintiffs' Count I against her fails because they have failed to adequately plead a pattern of racketeering activity. That argument is also meritless. The TAC alleges that Sara Bronfman engaged in witness tampering as to Adrian. TAC ¶¶ 180–181; *see also* ECF No. 202-1 at 14 (Plaintiffs' opening brief explaining why witness tampering allegations suffice). And the TAC alleges that Sara Bronfman committed numerous other predicate acts, including TVPRA violations—which Sara Bronfman does not demonstrate are inadequately alleged in the TAC. ECF No. 205 at 12–17; *see also* 18 U.S.C. § 1961(1) (identifying RICO predicates). Sara Bronfman's witness tampering of Adrian plus the additional predicate acts the TAC alleges she engaged in establish a pattern of racketeering activity.

Sara Bronfman is wrong that aiding and abetting a RICO predicate act does not constitute a predicate act. *Dayton Monetary Assocs. v. Donaldson, Lufkin Jenrette Sec. Corp.*, 1995 WL

43669, at *4 (S.D.N.Y. Feb. 2, 1995) (aiding and abetting a predicate act constitutes a predicate act because RICO's definition of racketeering activity turns on "whether one is criminally liable for a given act" and federal law treats those who aid or abet federal crimes as principals); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2000 WL 1694322, at *6 (concluding that aiding and abetting a violation of one of the federal offenses enumerated in 18 U.S.C. § 1961(1) is a "cognizable predicate offense under RICO"); *United States v. Rastelli*, 870 F.2d 822, 832 (2d Cir. 1989) (similar). Further, she is wrong that the TAC fails to sufficiently allege that she possessed the requisite fraudulent intent for immigration fraud and mail and wire fraud. *See* ECF No. 205 at 14–15. The TAC alleges facts giving rise to a "strong inference" of Sara Bronfman's fraudulent intent, which is all that is required. *See Burke v. Dowling*, 944 F. Supp. 1036, 1056 (E.D.N.Y. Nov. 6, 1995) (explaining Rule 9's "relax[ed]" particularity requirement "with respect to allegations of malice, intent, and knowledge"); *see also* TAC ¶¶ 28–36, 38–56 (facts supporting strong inference that Sara Bronfman had fraudulent intent as to deceptive representations); *id.* ¶¶ 59–62 (facts supporting strong inference that Sara Bronfman had fraudulent intent as to immigration scheme).

### 2. Defendant Porter fails to demonstrate that the Plaintiffs cannot state a claim against him.

Defendant Porter offers three meritless arguments that the claims against him fail as a matter of law. First, he says that the TAC's allegations fail to establish his knowledge of, and agreement to further, the conspiracy. ECF No. 206 at 8–9. But the TAC alleges that Porter was a paid agent of ESF who performed psychotherapeutic experiments on NXIVM enrollees that were approved by Raniere and intended to "bolster Raniere's reputation and the credibility of the NXIVM program and demonstrate that its teachings could cure physical and psychiatric maladies." *See* TAC ¶¶ 81–86, 246. Given that Porter ignored his professional responsibilities as a physician

12

and performed these human experiments without approval, professional oversight, or voluntary, informed consent, it is reasonable to infer that he was aware of the "general contours" of the conspiracy and agreed to join the operation. *Zichetello*, 208 F.3d at 100; *Board of Managers of Trump Tower*, 346 F. Supp. 3d at 463 (S.D.N.Y. Sept. 28, 2018). That is especially true given Defendant Porter's judicial admissions detailing his proximity to Camila, confirming his involvement in the Tourette's studies, and conceding that he was a "coach who designed experiments so that we [NXIVM's leaders] could figure out how to measure the subjective results that people were experiencing." ECF No. 206 at 6, 9–10; *see Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2d Cir. 1994) (explaining that it is appropriate to treat factual statements made in legal memoranda as "binding judicial admissions of fact," even if the memorandum's author is an attorney without personal knowledge of the facts).

Second, Defendant Porter says Counts III(C) and III(D) fail to state a claim against him because he did not know or have reason to know that Camila "was being human trafficked and forced to labor." ECF No. 206 at 9–10. But Plaintiffs bring claims against Defendant Porter under a beneficiary theory, alleging that he knew or should have known about the venture's offenses against Camila because of the nature and extent of his involvement in the venture, his close relationship with members of the venture, and his proximity to and employment of Camila. TAC ¶¶ 72–73, 88, 104–106, 178–179, 290; *see also* ECF No. 206 at 6 (admitting that Camila cared for his children, was like a "second mother" to them, and a "central figure" in his family's life). Indeed, Defendant Porter's brief (which he authored) is rife with factual admissions confirming that he knew or should have known that the venture trafficked Camila. ECF No. 206 at 6, 12; *see Purgess*, 33 F.3d at 143–44.

13

Third, Defendant Porter says that Count VII fails to state a claim because it is likely barred by the statute of limitations. But that argument is, at minimum, premature. A plaintiff "is not required to plead that [] her claims are timely because nonadherence to statutes of limitations is an affirmative defense." *Jones v. City of New York*, 2021 WL 5562694, at *5 (S.D.N.Y. Nov. 29, 2021); Fed. R. Civ. P. 8(c)(1). Dismissal on statute of limitations grounds at this stage would be "appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see Santos v. Distr. Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of Am., AFL-CIO*, 619 F.2d 963, 967 n.4 (critical question is whether "it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations").

Defendant Porter does not demonstrate that Count VII is clearly barred by the statute of limitations based on the face of the TAC. He offers no argument that the Court should consider at this stage of the proceeding portions of the 2019 order of the New York Department of Health and State Board for Professional Misconduct that are not discussed in the TAC.[8] But even if the Court were to consider that order, its contents undermine his argument. The order establishes that Defendant Porter "performed human subject research" without Institutional Review Board approval through NXIVM *at least through 2017*. Department of Health Order at ¶¶ 3–7 (August 20, 2019). Plaintiffs filed their initial complaint alleging the claim against Defendant Porter on January 28, 2020, which is only approximately 25 months after 2017 concluded. Plaintiffs' claim would thus fall within the 30-month statute of limitations that Defendant Porter says applies. *See*

---

[8] Plaintiffs did not attach the order to the TAC or incorporate it into the TAC by reference. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("limited quotation does not constitute incorporation by reference"). And Defendant Porter did not attach the order to his brief.

ECF No. 206 at 7–8 (citing N.Y.C.P.L.R. § 214-a). Moreover, the order does not definitively resolve when Defendant Porter's tortious conduct ceased.

### 3. Defendant Clyne fails to demonstrate that the Plaintiffs cannot state a claim against her.

Defendant Clyne—who admits in her brief that she in fact recruited at least one Plaintiff into DOS, ECF No. 210 at 18—argues that the TAC does not adequately allege that she committed state law extortion (a RICO predicate). ECF No. 210 at 14–15. But the TAC alleges that Defendant Clyne formed DOS with Defendants Raniere and Mack, TAC ¶ 107; threatened to release the collateral of DOS recruits if they revealed DOS's existence, *id.* ¶ 108; demanded collateral from Plaintiff India Oxenberg, *id.* ¶ 134; and extorted and abused her slaves, including Jane Doe 8, *id.* ¶¶ 150–154, through the collateral trap that Defendant Clyne helped design and which the TAC details, *id.* ¶¶ 107–118. The TAC leaves no doubt that Defendant Clyne's extortive efforts are materially identical to those found by Raniere's jury and this Court to qualify as criminal extortion. *Id.* ¶¶ 116, 193, 225. That Defendant Clyne was not indicted may bear on whether issue preclusion applies, but it does not bear on whether Plaintiffs have alleged a RICO predicate against her. The TAC plainly alleges state law extortion against Defendant Clyne by alleging that she used deception to obtain collateral, used the threat of releasing that collateral to obtain more collateral, threatened the release of that collateral if she was disobeyed, and used the threat of release of collateral to extract labor and services from her slaves. *Id.* ¶¶ 107–126, 150–154; *see also* Second Superseding Indictment, at 14–15, *United States v. Raniere et al.*, 1:18-cr-00204-NGG-VMS (E.D.N.Y. March 13, 2019) (indicting Clyne's co-conspirators for extortion based on same scheme).

Likewise, Defendant Clyne fails to demonstrate that the TAC does not state claims against her for DOS-related wire fraud, TVPRA violations, and aiding and abetting battery. As to wire

15

fraud, the TAC alleges that Clyne made false and materially misleading statements, including to Jane Doe 8, regarding the nature of DOS; made such statements to obtain property; knew those statements were false when she made them; and executed the scheme by using text messages and email. TAC ¶¶ 107–113, 150–154; *see also United States v. Raniere et al.*, 1:18-cr-00204-NGG-VMS (E.D.N.Y.), Trial Tr. at 1508:12–1509:23 (Defendant Clyne's co-defendant testifying that Defendant Clyne committed extortion based on giving DOS slaves "materially false information" in 2017); TAC ¶ 8 n.2.

As to the TVPRA violations, Plaintiffs plausibly allege that Defendant Clyne perpetrated sex trafficking, labor, and human trafficking violations against Jane Doe 8, and that Defendant Clyne knowingly benefitted from participating in the venture, which she knew or should have known was committing those offenses against Jane Doe 8 and the DOS Plaintiffs. TAC ¶¶ 261–262, 285–287, 292. Plaintiffs allege that she knowingly obtained benefits from her participation in the venture, including uncompensated labor from her slaves and enhanced status and power within the organization. *Id.* ¶¶ 262, 286. Plaintiffs further allege that she knew or should have known about the venture's offenses against the DOS Plaintiffs, and that she agreed and conspired to commit these offenses with the venture, because she was intimately involved with Raniere and the venture members and played a pivotal role in DOS's creation and maintenance. *Id.* ¶¶ 107–118, 150–154, 267, 292.

With respect to the battery claim, the TAC's allegations more than suffice. Under New York law, the elements of aiding and abetting battery are: (i) "a wrongful act producing an injury"; (ii) the defendant's awareness of [her] role part of an overall illegal or tortious activity at the time [she] provides the assistance;" and (iii) the defendant's knowing and substantial assistance in the principal violation." *Scollo v. Nunez*, 2007 WL 2228771, at *4 (N.Y. Sup. Ct. 2007); *Bigio v.*

*Coca-Cola*, 675 F.3d 163, 172 (2d Cir. 2012) (similar). "Liability for concerted action rests upon the principle that all those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer . . . are equally liable with him." *Scollo*, 2007 WL 2228771, at *4 (quotation omitted; alteration adopted). Clyne was a founding member of DOS, and that entity's central purpose was to employ the collateral trap that leveraged collateral to extort DOS's victims into performing acts that they would not otherwise perform. TAC ¶¶ 107–118, 150–154, 305–307. She was also the "main repository" of DOS collateral. *Id.* ¶ 153. Moreover after obtaining collateral from Jane Doe 8, she used the threat of releasing that collateral to attempt to coerce Jane Doe 8 into being branded. *Id.* ¶¶ 107–126, 150–154, 305–307.[9] Further, after Plaintiff Oxenberg produced her initial collateral, Clyne successfully assisted Defendant Mack in extracting more collateral from Plaintiff Oxenberg—and that collateral was used to extort Plaintiff Oxenberg into being branded on tape. *Id.* ¶¶ 134–138. These were not isolated incidents: Clyne had other slaves and was a First Line Master in DOS, so using the collateral trap to aid and abet the branding battery was the core of her role in the scheme. *Id.* ¶¶ 13, 107–111, 115.

Last, Clyne's argument that the battery claim against her falls outside the statute of limitations does not satisfy her burden to demonstrate futility. ECF No. 210 at 19. It is nothing more than a bare assertion that neither identifies the statute of limitations nor explains why the TAC is time-barred on its face.[10] Defendant Clyne fails to demonstrate that the claims against her

---

[9] Defendant Clyne also led one of DOS's predecessor groups, TEN C, which stood for "The Emperor Has No Clothes" and was designed to procure young women for Raniere. *Id.* ¶ 91.

[10] Defendant Clyne does not challenge that Plaintiffs have adequately alleged the underlying battery. *See* ECF No. 210 at 18–19. For good reason: the branding of women's pubic regions through extortion and without consent is plainly battery. *See* TAC ¶¶ 119–126; *Tirado v. Koritz*, 156 A.D. 3d 1342, 1343 (N.Y. Ct. App. 2017); *VanBrocklen v. Erie County Med. Ctr.*, 96 A.D.3d 1394 (N.Y. Ct. App. 2012) (recognizing legal validity of battery claim where defendant

17

are futile, and she fails even to contest the validity of Count II—which is alone dispositive. *See Kassner*, 496 F.3d at 244.

### 4. Defendant Roberts fails to demonstrate that the Plaintiffs cannot state a claim against her.

Defendant Roberts' futility arguments amount to bare recitations of the Rule 12(b)(6) legal standard, ECF No. 212 at 17–18, and an attempt to dispute allegations in the TAC, *id.* at 14. She therefore plainly fails to demonstrate that the TAC states no viable claim against her. In any event, Plaintiffs have stated at least a valid RICO conspiracy claim against Defendant Roberts. TAC ¶¶ 16, 107, 119–126 (explaining that Roberts was integral to DOS, having been specially commissioned by Raniere to burn Raniere's initials into DOS slaves' pubic regions after they have been extorted and without informed consent or anesthesia); *supra* II(B)(1) (RICO conspiracy elements). Plaintiffs further state a viable sex trafficking claim against Defendant Roberts under a beneficiary theory, alleging she knowingly benefitted (by receiving enhanced status and power) from participation in the venture, which she knew or should have known sex trafficked the DOS Plaintiffs, given her close relationship with Raniere and his Inner Circle, and the specific role she played in branding DOS victims. TAC ¶¶ 16, 107, 119-126, 251, 265.

---

was doctor at a public hospital who ordered medical injections in a psychiatric unit after the plaintiff arrived at the hospital in an ambulance after suffering a severe panic act).

## CONCLUSION

The Opposing Defendants fail to show that the TAC is futile or that leave to amend should be denied on other grounds. Respectfully, the Court should grant the Plaintiffs' motion to amend and reserve ruling on the TAC's merits until after full briefing by all the parties on Defendants' forthcoming motions to dismiss.

Respectfully Submitted:

Dated: May 25, 2023

*/s/ Zahra R. Dean*
Neil L. Glazer
William E. Hoese
Craig W. Hillwig
Zahra R. Dean
Aarthi Manohar
Elias Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700


Aitan D. Goelman
Bryan M. Reines
ZUCKERMAN SPAEDER
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

Attorneys for Plaintiffs