Clerk's Office
Filed Date: 7/13/2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

**DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

_____
SARAH EDMONDSON, *et al.*

       Plantiffs,

  v.

Keith Raniere, *et al.*

       Defendants.
_____

1:20 - cv - 00485-EK-CLP

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DANIELLE ROBERTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS:

TABLE OF AUTHORITIES……………………………………………………………………..iv

PRELIMINARY STATEMENT……………………………………………………………………1

ARGUMENT: PLAINTIFFS' TAC SHOULD BE DISMISSED WITH PREJUDICE AS IT FAILS TO COMPLY WITH RULE 8, RULE 12(C) AND RULE 12(B)(6)…………..…………….................2

    I.    COUNT II: RICO CONSPIRACY PLEADING FAILS ………………………………..….2

        A.  Fails to meet elements

        B.  Violates Rule 8 - group pleading

        C.  Counts III and V hinge upon Count II and therefore fail

    II.   COUNT III: TVPRA PLEADINGS FAIL…………………………………………………...4

        A.  Count III(A) and (C) are predicated upon Count I and therefore fail………………..4

        B.  Count III (B) and (D) alleging conspiracy fail …………………………………….....4

        C.  Count III (A) The TAC Fails to Plead Sex Trafficking and Attempted Sex Trafficking……………………………………………………………………….....5

        D.  Count III (C) The TAC Fails to Plead Forced Labor and Human Trafficking..……..5

    III.  COUNT V: THE BATTERY CLAIM FAILS …………....................................................6

        A.  Fails to meet the elements

        B.  Predicated on Count II, and Count II fails

CONCLUSION ………… ……………………………………………………………………………10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Mathon v. Marine Midland Bank, N.A.*
875 F. Supp. 986, 1001 (E.D.N.Y. 1995)………………………………………...……………2

*Limtung v. Thomas, 2021*
WL 4443710, at *8-9 (E.D.N.Y. Sept. 28, 2021)…………………………………………...2

*Moss v. U. S. Secret Serv.*
572 F3d 962, 970 (9th Cir. 2009)…………………………………………………………...2

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*
869 F3d 381, 385 (5th Cir. 2017)…………………………………………………………...2

*Ashcroft v. Iqbal*
556 U.S. 662, 678-679 (2009)………………………………………………………………2

*Erickson v. Pardus*
551 U.S. 89, 93 (2007)……………………………………………………………...……..2

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 555-556 & n.3 (2007)…………………………………………….…………2

*Doe v. Columbia-Brazoria ISD*
855 F. 3d 681, 685-86 (5th Cir. 2017)………………………………………………………2

*Foley v. Wells Fargo Bank*
772 F. 3d 63, 71-72 (1st Cir. 2014)………………………………………………...……..2

*Abbott Labs. v. Adelphia Supply USA, 2017*
WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017)………………………………………..………3

*Allen v. New World Coffee, Inc., 2001*
WL 293683, at *9 (S.D.N.Y. Mar. 26, 2001)………………………………………………3

*Baumer v. Pachl*
8 F.3d 1341, 1346 (9th Cir. 1993)……………………………………………………...…3

*United States v. Fernandez*
388 F.3d 1199i, 1229-30 (9th Cir. 2004)……………………………………………………3

**Other Authorities**

O'Connor' federal rules, Civil trials 2022

Manual of Model Civil Jury Instructions:
https://www.ce9.uscourts.gov/jury-instructions/model-civil

Battery:
https://www.findlaw.com/injury/torts-and-personal-injuries/battery-basics.html

This Civil Rico lawsuit: Case 1:20-cv-00485-EK-CLP Document 211 Filed 05/11/23 Page 1 of 19 PageID #: 2380; DEFENDANT DANIELLE ROBERTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE SECOND AMENDED COMPLAINT, hereafter referred to as Doc. 211

State of NY Department of Health State Board for Professional Medical Conduct: In Matter of Dr. Danielle Roberts, D . O . , Hearing Transcripts, VOL. 1-13

This Civil Rico lawsuit: Case 1:20-cv-00485-EK-CLP Document 169-1 Filed 04/11/22 PageID #: 1521, MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SARA BRONFMAN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; hereafter referred to as Doc. 169

*United States v. Raniere et al*, 1:18-cr-00204-NGG-VMS (E.D.N.Y.) (hereafter, "District Court Docket")

*United States v. Raniere et al*, 20-3789 (2d Cir.) (hereafter, "Appellate Court Docket")
Find this for my medical hearing as well

**Statutes:**

Title 18 U.S.C. § 1962(d)

18 USC 1591 (sex trafficking)

18 USC 1592 (a) (attempted sex trafficking)

18 USC 1594 attempted sex trafficking

Fed. R. Civ. P 8

Fed. R. Civ. P 8(a)(2)

Fed. R. Civ. P 8(d)(1)

Fed. R. Civ. P 9(b)

Fed. R. Civ. P 12(b)(6)

Fed. R. Civ. P 1

# PRELIMINARY STATEMENT

There are 70 Plaintiffs left, listed in the exhibit, claiming harm and need for reparations. Only four of whom are stated to have had any direct contact with me related to the RICO enterprise alleged in these pleadings. The only **act** the Plaintiffs claim I committed in furtherance of this "RICO enterprise" is Battery (Count V) - by way of providing a brand to these four women. In order for the branding to meet the elements of an act of Battery, my action would have had to have "been offensive in nature (TAC ¶ 302, 303)" i.e.: non-consensual.[1] Agreement between consenting adults (myself and these four women) to engage in this endeavor is not disputed by the Plaintiffs. Instead, they claim these women weren't informed by **others** when they were invited, and that I was aware of that, however, there are indisputable facts to the contrary (p9 below). Acts of physical force and/or violence are also not alleged. Instead, Plaintiffs allege my **intentional and willing** participation in coercion and deceit to trick these women, rendering the consent they clearly gave me at the time, meaningless. However, their allegations of trickery hinge upon my "knowledge and agreement" to participate in coercion and deceit, which they fail to plead. I can't be deceiving them or coercing them into sexual slavery and forced labor if I am unaware it exists. The only other hail Mary they throw is to insinuate that a formal Medical Informed Written Consent is needed to establish consent between two adults in an endeavor in order for it to not be considered a Civil Battery offense. Again they state no facts to substantiate this. To defeat the claim of Battery, consent is needed, not formal written medical consent. As such, it becomes clear, their Count V (Battery) claim is dependent upon, meeting the elements of Count II (Conspiracy), namely my "knowledge and agreement" to some criminal conspiracy, which they have failed to do.

Similarly, in relation to Count III (Human Trafficking and Forced Labor) the Plaintiffs make no claims that I directly sex trafficked or human trafficked anyone (or committed any other acts outside of branding). Accordingly, the only way I could be guilty of any part of Count III is if I "had knowledge of the criminal plan and agreed" to further it through the act of branding. Therefore, in relation to me,

---

[1] https://www.findlaw.com/injury/torts-and-personal-injuries/battery-basics.html

1

Count III is also based on meeting the elements of Count II. As such, if the Plaintiffs fail to meet the elements of Count II, then both Count III and V also fail and should be dismissed.[2]

The Plaintiff's indeed fail to meet the elements of Count II, even after this fourth attempt to do so in their TAC. As a result, all counts should be dismissed with prejudice.[3]

**ARGUMENT**

**COUNT II**: Plaintiffs mention my name or branding in 23 of the 332 paragraphs written in the TAC. They have still failed to cure the deficiencies of Count II with particularity (FRCP 9(b), FRCP 12(b)(6)). In these 23 paragraphs, they allege facts for which I will assume, **only** for the purposes of this dismissal, are true in order to illustrate that even under that gracious assumption, the Plaintiffs still fail to effectively plead any of the charges. I make this assumption of truth only when it is based on some foundation.[4] In ruling on an FRCP 12(b)(6) motion, the court must: (1) identify allegations that, because they are merely conclusions, are not entitled to an assumption of truth, and (2) consider the factual allegations to determine if they plausibly suggest a claim for relief.[5] "The Court should dismiss under the FRCP 12(b)(6) if the plaintiff has not provided… plausible factual allegations to support the claim.[6]

Plaintiff's claim a violation of 18 U.S.C. §1962(d). 1962(d) makes it "unlawful for any person to conspire to violate any of Section 1962's other provisions. Plaintiffs are required to demonstrate that

---

[2] "[A]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." (See Doc 169 pg 15, 16)

[3] Defendant Danielle Roberts' Opposition to Plaintiffs Leave to Amend their SAC pg. 6, hereafter Doc 211). I was dropped from Count I during Oral Arguments February 1st, 2023. Without two predicate acts, there was no basis for this RICO charge against me. Charge IV: Negligence Per Se also failed. The Plaintiffs dropped it, amongst other frivolous charges. The remaining Charges being alleged in the TAC are the same as originally purported in the FAC; Count II (RICO Conspiracy), Count III (a,b,c,and d) (Human Trafficking and Forced Labor), and Count V (Battery); III and V of which are predicated upon Count II.

[4] Merely repeating the buzzword "conspiracy" is insufficient. See Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 1001 (E.D.N.Y. 1995) (complaint's use of phrases such as "conspiratorial acts" and "conspiratorial pattern" insufficient to plead a RICO conspiracy); Limtung v. Thomas, 2021 WL 4443710, at *8-9 (E.D.N.Y. Sept. 28, 2021) (same).

[5] Iqbal, 556 U.S. at 679; Moss v. U. S. Secret Serv., 572 F3d 962, 970 (9th Cir. 2009); See Body by Cook, Inc., v. State Farm Mut. Auto. Ins., 869 F3d 381, 385 (5th Cir. 2017).

[6] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Erickson v. Pardus, 551 U.S. 89, 93 (2007)' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-556 & n.3 (2007); Doe v. Columbia-Brazoria ISD, 855 F. 3d 681, 685-86 (5th Cir. 2017); Foley v. Wells Fargo Bank, 772 F. 3d 63, 71-72 1st Cir. 2014).

"each defendant knew about and agreed to facilitate a pattern of racketeering activity." [7] [8] In TAC ¶ 245, the Plaintiffs state [my] "**actions evincing [my] knowledge** of the conspiracy and agreement with co-conspirators to facilitate it, include branding DOS victims' pubic regions without their informed consent; continuing to promote DOS well-after the details of DOS-related crimes came to light." However, nowhere do they state any facts that I did the branding with the "knowledge and agreement" that this was furthering a sex trafficking or human trafficking endeavor, nor do they state with particularity how, why, what aspects of DOS I was supporting, or when.[9] They allege I knew KR's initials were included in the meaning of the brand. This certainly doesn't illustrate why I would assume his initials were a sign of criminal activity or that I was supporting sex trafficking, human trafficking or any crime whatsoever (more in Count V).

The Plaintiffs often make sweeping statements of conclusion attempting to lump me into the "conspiracy" without particularity (Doc 211 p. 9, point 2). "She [me] **knew or should have known** that DOS First Line Masters and Defendant Raniere were engaged in sex trafficking because (1) she was a member of DOS (2) 'specially deputized' by Keith Raniere to brand DOS members with his initials—(3) a mark of their sexual servitude and Defendant Raniere's predation" (TAC¶265). There is not one clear statement of fact that I knew, was informed or agreed to any criminal endeavor. "[Raniere] specifically deputized/commissioned Roberts…" is this "proof" of a "meeting of the minds."[10] In his "special commissioning," did he or others tell me the branding was to "exert his control over our bodies (TAC ¶ 119)" and further a plan to forcefully get sex or labor for himself or others? When was I told this, by whom, where and when did I agree? There is no plausible connection (FRCP 12C), or

---

[7] I adopt and incorporate citations in Document 169-1, pg. 12,11 in this case. Abbott Labs. v. Adelphia Supply USA, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017); Allen v. New World Coffee, Inc., 2001 WL 293683, at *9 (S.D.N.Y. Mar. 26, 2001) (dismissing RICO conspiracy claims where plaintiffs' allegations were "devoid of factual assertions concerning the nature of the agreement")

[8] Plaintiffs "must prove the conspirator was "aware of the essential nature and scope of the enterprise and intended to participate in it." Id. (citing Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993)). The evidence must show that he or she "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." United States v. Fernandez, 388 F.3d 1199i, 1229-30 (9th Cir. 2004). (Manual of Model Civil Jury Instructions)

[9] I incorporate arguments from Doc 211 p. 8, 9 here

[10] Additionally, I adopt and incorporate the arguments established in Doc 169, pg.17, "The TAC does not allege that [I] had any "meeting of the minds" with anyone to commit a RICO violation," a RICO conspiracy claim fails."

particularity beyond speculation (FRCP 12(b)(6)). They mention an audio between Raneire and Mack (TAC¶119), but nothing about me. This is typical in the TAC. This violates Rule 8 for group pleading.[11]

Lastly, and perhaps most important, the Plaintiffs fail to meet the elements of Count I and have no RICO standing.[12] "[A]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."

The Plaintiffs fail to allege any facts showing my knowledge of and agreement to further a Criminal Rico Enterprise. Instead they engage in non-specific group pleading and even fail to plead the existence of a legitimate criminal enterprise. Count II fails. As such, Counts III and V also fail.[13]

**COUNT III: Plaintiff's claim a violation of 18 U.S.C. § 1595.** Charges III(A)[14] and III(C)[15] are plead on the exact same basis as Count I, which was already dropped. Without predicate acts or a pattern of racketeering activity to establish that I was part of a criminal enterprise, and no direct allegations of count III's acts, there is no way to plead I committed these acts. They fail.[16]

The remainder of Count III includes parts B and D, which pertain to "conspiracy." To plead a claim for conspiracy under the TVPRA, a complaint must allege an **agreement** to violate the prohibitions on sex trafficking, forced labor, human trafficking, or peonage (Stein, 71 F. Supp. 3d at 330). In particular, a plaintiff must allege facts that "**plausibly** show that [the defendant] and other alleged co-conspirators entered into a joint enterprise with consciousness of its general nature and extent" (Document 169 p. 23). The TAC failed at this (Count II); Count III (B) and (D) must also fail. [10]

Count III(A): 18 U.S.C. § 1591 and 18 U.S.C. § 1594(a).

---

[11] I adopt and incorporate the group pleading arguments from Ms. Sara Bronfman's 1st Motion to Dismiss Memorandum Document 169 pg. 5 (hereafter known as, Doc. 169). Also see [my] Opposition to Plaintiffs' Motion for leave to Amend the SAC pg. 6-8 (hereafter referred to as Doc. 211).
[12] Even with the additions in the TAC, the arguments in Section IIIC Doc. 169 apply and are preserved. I adopt and incorporate the arguments in this section and their substantive arguments in Section V and apply them to Count II here.
[13] "[A]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." (See Doc 169 pg 15, 16)
[14] SEX TRAFFICKING—18 U.S.C. § 1591 and ATTEMPTED SEX TRAFFICKING – 18 U.S.C. § 1594(a
[15] FORCED LABOR—18 U.S.C. § 1589 and HUMAN TRAFFICKING - 18 U.S.C. § 1590 and ATTEMPTED FORCED LABOR AND HUMAN TRAFFICKING - 18 U.S.C. § 1594(a)
[16] "[A]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." (See Doc 169 pg 15, 16)

**Pertaining to Perpetrator liability**, prong (1): The TAC contains no facts suggesting that I knowingly "recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person to engage in a commercial (or any other) sex act." Branding is the only act they allege in regards to my participation. I never enrolled a woman into DOS and had no slaves that I coached.[17] The TAC not only fails to state any facts to support this allegation, in fact, everything they assert suggests that, as a second line,[18] I would have also been deceived and coerced myself, and therefore, would not have access to the criminal knowledge they are alleging I have. For this reason, prong 2 and 3 also fail.

*Pertaining to Beneficiary liability*:[19] The TAC contains no allegations of knowledge of any person engaging in sex trafficking (Count II). Second, the only paragraph the Plaintiffs mention any benefit I may have received is in TAC||265 "Defendant Roberts is liable for sex trafficking the DOS Plaintiffs because she knowingly benefited by receiving things of value, including enhanced status, power, and prestige within NXIVM from participation in the Venture." They mention no compensation for this alleged "medical procedure." I had no "slaves" that I could have "extorted" slave labor from. I wasn't a First line member or Inner circle member, and I was an apprentice coach in "NXIVM," basically a student who gathered papers for classes, read a few questions to other students, and received feedback on my ability to do so… hardly a high status, or prestigious position. Count IIIa fails.

      Count III(C): The TAC Fails to Plead a Forced Labor Claim.

***Perpetrator Liability is Not Alleged***:[20] The TAC contains no allegations that I knowingly obtained the labor or services of any person at any time or by any means, let alone by means of force, threats of force, physical restraint, or any other harm. I wasn't even paid for the branding I performed. ***Beneficiary Liability Is Not Alleged:*** TAC fails to demonstrate that I knew of or recklessly disregarded the existence of any venture engaged in obtaining labor or services through prohibited means. The TAC suggests, as a

---

[17] The allegations in the TAC concerning the alleged recruitment of sexual partners make no mention of me. TAC||36. The TAC accuses the "Inner Circle" (TAC||37), The "First-Line" (TAC||41), Masters (TAC||42), yet makes it clear I was not any of these.
[18] TAC ¶ 107, "…Raneire, his "Inner Circle," "1st line," and Defendant Roberts…" I find this interesting. I was never indicted.
[19] I adopt and incorporate arguments from Doc. 169 p. 18, "Beneficiary Liability Is Not Alleged."
[20] I adopt and incorporate the arguments in Doc. 169 p.20, 21.

second line, I would have also been "deceived and coerced," certainly this can't qualify as "reckless disregard." The only mention of benefit (TAC¶265), lacks particularity and plausibility.

***The FAC Fails to Plead Human Trafficking:*[21]** The TAC contains no allegations that I induced any of the plaintiffs to secure their labor or services in a manner that violates the TVPRA. Branding was not used as a means of force or threat if they didn't perform "work." It was merely an initiation into a Society they chose to join. Whether they did or didn't do their agreed upon practices had no relation to branding. Without knowledge of the criminal enterprise there was no trafficking or conspiracy to traffic.

**COUNT V: BATTERY:** In civil personal injury cases, the Plaintiffs must prove (1) Intent (…to commit the act), (2) Contact (**non-consensual**), (3) Harm. Non-consensual touching is all that is required to assert a viable personal injury lawsuit.[22] The key word here is non-consensual.

***Plaintiff's claim consent was not viable secondary to coercion by means of collateral:*** They allege in their TAC ¶ 124 "No DOS slave gave voluntary, informed consent to being branded. No slave could have consented…because each slave was branded under threat of the release of their collateral…" Under whose threat to release collateral? The TAC states no facts that I was in charge, knew about, or held anyone's collateral. Plaintiffs claim no facts alleging that I had knowledge that the collateral was being used coercively for sex trafficking or forced labor (Count II). Secondly, what threat? (1) At the time of the branding in 2017, no one's collateral had been released, (the only alleged "release of collateral" (TAC ¶ 124) was aired well **after** the brandings were completed).[23] [24] (2) Some women didn't join DOS once they heard what it was, and they were never punished. Their collateral was never released.[25] (3) Some joined and didn't get a brand, they chose not to and weren't punished. No collateral was

---

[21] I adopt and incorporate the arguments in Doc 169 p. 22, 23 Section on "Perpetrator Liability is Not Alleged."
[22] https://www.findlaw.com/injury/torts-and-personal-injuries/battery-basics.html
[23] District Ct. Docket: Collateral was left in Mexico (6-14). Edmondson was making misrepresentations publicly. LS contemplated release to expose this, not to punish. Decided against.2200, 17-25, 2201; 1-15, 2202; 1-13. Edmondson said publicly (and is still saying) she didn't know she would be branded.
[24] Plaintiffs allege TAC¶40 "DOS recruits were bound by their collateral and blackmailed…if they failed to abide by their "commitment." It's clear I was not First-Line. No facts stated that I was aware that collateral was being used in this way.
TAC¶ 124 "Defendant Mack and other Inner Circle members…history of retributive actions" This allegation makes it clear any fear (even if unsubstantiated) was not a result of me or my actions, or in reference to me.
[25] Med. Hearing Tr. Vol 2 p164: DR testimony: some choose not to join. p 156, no consequence for those that didn't want to join.

released.²⁶ (4) Those that did decide to get the brand knew about it when they were first invited and were not threatened in any way. Sworn testimony from 6 DOS members in my medical hearing is consistent and clearly states all knew of the brand in advance and consented to it willingly. ²⁷ (5) I was never forced or threatened in any way. Considering all of this, why would I have any reason to believe women were being coerced and were not genuine in their expressed desire to get the brand while we were together? The Plaintiffs fail to illustrate any coercive intent.

***Coercion by physical restraint:*** Plaintiffs claim "To exert control over the bodies of his slaves, Raniere executed a plan to brand DOS slaves with his initials in their pubic regions… while the *victims were held down.* Plaintiffs…*were forced to participate in this process"* (TAC ¶119). How were they forced? They insinuate "being held down" was physically coercive, but don't state that, and certainly don't state I was forceful in any way. By whom? For what purpose? Being held was consensual and requested by the women for security, to prevent jumps, mess ups and injury.²⁸ The "trickery" seems to be all theirs.

***Plaintiffs claim consent wasn't informed***: "As a member of DOS, Roberts knew that DOS members were not told that they would be branded when they were recruited into DOS…" (TAC 46/47). This is categorically false as a matter of public record, and basic well-known background facts.²⁹ There was clear consent between me and the participants when they arrived, and no facts alleged to the contrary.

---

²⁶ District Ct. Docket: Women can joined and not get branded. 2243; 3-10. They were not forced. No collateral was released.
²⁷ In the Med. Hearing Tr., testimony from 6 DOS members is consistent; all knew of the brand in advance and consented to it willingly. MH Testimony - VOL 9. "I knew in advance… (p. 139)," "I was told explicitly it would be a brand (p. 140)," "it was in no way against my will" p. 141, MH talks about all of them helping each other place the stencil (p 144), "I was not held down against my will" "did not feel coerced because of collateral" (p. 150), "AM insisted when MH invited someone that she MUST tell them about the brand" p. 180), SH Comments: VOL 10. p. 12 - She knew of the brand in advance. p. 17 - she did not feel obligated. Jane Doe 2, Vol 10. p64, Knew in advance it would be a brand. It was meaningful to her, like her c- section scar. p. 69 - Did not feel coerced, the "choice" made her feel very potent. p. 70 This was a "chosen scar" - very meaningful. p73 - what others said it meant didn't matter to her, she put the meaning on it. Jane Doe 3 VOL 11. p 10-11 Very clearly knew she would get brand when invited. Realized it was KR's initials during the ceremony but went through with it because she had given her word even though she wasn't crazy about the idea, p. 18 We held each other down for support. p. 19 it was consensual, p 21 the brand is a reminder of how strong I am. Jane Doe 4, p. 67 She knew she would be getting a brand, p. 74 I asked for their help (to be held down), p. 81 I never felt forced. Jane Doe 5 (NC – First line member), p 144 She explains the brand had different meanings for even those who created it, p. 146 It was connection to our fellow sisters, p 156, no consequence for those that didn't want to join.
²⁸Med. Hearing Tr: Vol 2 p 91, Prof. scarification artists often have others support/hold people so they don't jump/move. Vol. 11 p 161, NC asked someone to hold her while she was branded so she wouldn't flinch. Vol 11 p. 74, Jane Doe 4 asked friends to help hold her down. Vol 11 p 18 - Jane Doe 3, "We held each other down for support." VOL 9 - MH "I was not held down against my will." p. 67 Jane Doe 4, she knew she would be getting a brand, p 74 I asked for their help (to be held down).
²⁹Also, see Doc 211, p. 10, Members knew about the brand before agreeing to join and consented.

7

***Plaintiffs Claim Deceit: I "concealed" the alleged meaning of the brand:*** "DOS slaves did not willingly and knowingly join the organization that DOS turned out to be. Raniere and First-Line Masters… "misrepresented and obscured fundamental facts about [DOS] and the conditions of membership to coerce the slaves' participation" (TAC ¶ 111). Again, I was not part of the First line, nor alleged to be. They state no facts as to how I "obscured fundamental facts."

They fail to state how I would have known *their* meaning of KR's initials which is possessive in nature and tied to sex trafficking and forced labor. 1. They assume including Keith's initials in the brand implies a meaning of "sexual servitude… and predation" (TAC ¶ 265).[30] 2. They assume knowing the brand contained KR's initials implied I was told it was being utilized somehow to sex traffic and human traffic us. 3. They assume it was my responsibility to inform them of the meaning of the brand (or that I knew the meaning accurately). They ignore their Masters role, my role and their own role or option to ask the meaning[31] 4. They assume I was concealing information when not one of the 18 women I helped with their brand ever asked me the meaning. Why would not one woman ask me that if it were my role?[32] 5. They pretend the women who got their brands didn't know KR's initials were contained in the symbol.[33] They certainly didn't tell me this was a sex trafficking or human trafficking organization or that Raniere's initials were an "exertion of control and possession over my body (or theirs)," and the Plaintiffs state no facts to support this. Why on earth would I agree to receive the brand if that were the case? This is not plausible (fails 12C).[34] Needless to say, their pleading fails to allege facts that support I knew about or concealed anything criminal. As far as I could tell, this was an agreed upon endeavor.

***Plaintiffs claim there wasn't consent because there wasn't formal written medical consent:*** Formal

---

[30] Medical Hearing Tr: Jane Doe 5 (First line), Vol 11, p 144 She explains the brand had different meanings for even those who created it, p. 146 It was connected to our fellow sisters. p178 NC at first the fact that it had initials in it was just going to be a hidden meaning shared among the first line.
[31] District Court Docket, p 1712, Lauren Salzman "I was clothed because I was above Danielle in rank…",
[32] Medical Hearing Tr. Vol 9 MH p 157 - Didn't feel DR had an obligation to tell her "no she was the same level as me." Jane doe 3 (55 year old Mexican Insurance broker), p13-14 Didn't expect DR to explain the meaning of the symbol.
[33] Edmondson (and others) knew it was KR's initials before the branding District Court Docket, 2199; 25, 2200; 1-5. 2171; 17-22
[34] See my Opposition to Amended TAC pg 10.

medical written informed consent is not needed to establish consent between two adults.[35] In addition, at the time of the branding, branding was not considered a medical procedure. This is the first case in history where a precedent has been set to establish branding as such. Not one other doctor has ever done this as a medical procedure, there are ZERO clinical studies in PubMed (or the like) on branding. There is not one course taught in medical school, it is not part of residency or fellowship training, and every expert in my medical hearing admitted they had never been trained to do branding, nor know of any training that exists. There are no billing or procedure codes for branding, and there was no reason for me to believe this would have been deemed a medical practice before the OPMC's recent politically motivated decision to deem it so. Even the OPMC's first letter to Ms. Edmonson (before her public campaign) stated clearly that branding WAS NOT the practice of medicine (exhibit 1). If this precedent is not reversed by the NYS Court of Appeals (case pending), it was established 4 years *after* the branding took place. Medical informed consent couldn't have been predicted to have been needed to establish consent between adults that didn't have a patient physician relationship for a non-medical procedure, unless you assume the deep corruption that has taken place in my case (which I did not).

      This is further illustrated by the concept of "Notice." "[P]rocedural due process rules are meant to protect persons… from the mistaken or unjustified deprivation of life, liberty, or property." Notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest.[36] Considering this ethic, a medical standard must be known to be the "Standard of Care" in order for the physician to be liable for its violation. The physician can't be liable for a standard that had never been set. The "Determination and Order" the Plaintiffs cite was the result of a political process that was immoral and abided by no precedence. This was a consensual act between adults. This does not constitute Battery. Formal Medical Informed Consent was irrelevant here.

---

[35] Also see, Doc 211, p. 9,10.
[36] https://law.justia.com/constitution/us/amendment-14/05-procedural-due-process-civil.html.

9

TAC ¶ 303. Oddly, Plaintiffs states "…consent is not conclusive as to whether contact constitutes battery because under New York Law it is only one factor to consider in determining whether the contact was offensive." Yet, they state no other facts to suggest any other way, that this was or could have been offensive.

TAC ¶ 304 states, "Plaintiffs suffered lasting physical and emotional injuries as a result of…battery upon their persons." What physical harm did I cause them? They received the scars that they wanted with no complications. TAC ¶ 121 alleges: "Roberts placed them at risk for…3rd and 4th degree burns and…PTSD or anxiety." The pain and 2nd degree burn were common knowledge we knew when going to get a brand, and was discussed beforehand. That was the point of the initiation. These were consented to. Separately, putting them at risk for something (ie: getting in a car) and causing it (ie: and accident) are two different things. NONE of the women I worked with had 3rd and 4th degree burns or anxiety or PTSD in the months following the brand (until Edmonson pushed her narrative and they were being publicly associated with a "sex cult"), and there are no facts that state they did.

As detailed above, there was no "coercion or deceit." Women were aware of the brand when they joined and, to my knowledge, without retaliation, could have declined. Those that joined, consented to their Master and to me. Medical informed consent was not needed and is irrelevant. Nothing in my process was non-consensual or "offensive". There are no grounds for Battery. Count V fails.[37]

## CONCLUSION

Plaintiffs fail to state any facts of my "knowledge and agreement" to any criminal conspiracy (Count II). Counts III and V are predicated upon Count II and fail as well. Plaintiffs fail to state a claim upon which relief can be granted (FRCP 12(b)(6)). For all the reasons above, those stated in my Opposition to Amend Plaintiff's SAC Doc. 211, and the collective arguments of the other Defendants in their previous motions, Counts II, III, and V should be dismissed with prejudice.

---

[37] I adopt and incorporate the lack of jurisdiction arguments from S. Bronfman's submission, Doc. 169 p. 24, 25; Because the federal claims (RICO and TVPRA) must be dismissed against me, the TAC's state law claims must be dismissed as well].

Respectfully submitted,
/s/ Danielle Roberts

Danielle Roberts
620 38th Street
Union City, NJ 07087
516.480.1700

# EXHIBIT 1



**NEW YORK STATE OF OPPORTUNITY. | Department of Health**

ANDREW M. CUOMO
Governor

HOWARD A. ZUCKER, M.D., J.D.
Commissioner

SALLY DRESLIN, M.S., R.N.
Executive Deputy Commissioner

July 11, 2017

OPMC # 17-07-4422

Dear Ms. Edmondson:

    In accordance with New York State Public Health Law Section 230, the Office of Professional Medical Conduct (OPMC) has reviewed your July 7, 2017 correspondence regarding Danielle Roberts, DO. This office is responsible for investigating allegations of professional misconduct by physicians, physician assistants and special assistants. We assessed the allegations you raised and the physician's actions in the context of New York State Education Law Section 6530 that defines the parameters of medical misconduct.

    The issues you describe did not occur within the doctor-patient relationship and should be reported to law enforcement in the area where the incident occurred. The issues you describe are not medical misconduct as defined in New York State Education Law Section 6530. The information that you have supplied will be retained in our confidential files and no further action will be taken.

    If you have further questions regarding the processing of your complaint, or this letter, you may contact this office at 1-800-663-6114. Thank you for bringing this matter to our attention.

Sincerely,

*R. Soulier*

R. Soulier
Central Intake Unit
Office of Professional Medical Conduct

Empire State Plaza, Corning Tower, Albany, NY 12237 | health.ny.gov