# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- :
SARAH EDMONDSON, et al.,              :
                                     :
          Plaintiffs,        :
                                     :
          v.                  :   CIVIL ACTION NO. 20-CV-485
                                     :
KEITH RANIERE, et al.,               :
                                     :
          Defendants.      :
------------------------------------------------------- :

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON THEIR MOTIONS TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

    I.      Plaintiffs state RICO conspiracy claims against SB and CB (Count II) ................. 1

    II.     Plaintiffs state substantive RICO claims against CB and SB (Count I) ................. 4

          A.     Plaintiffs plausibly allege a RICO enterprise ............................................... 4

          B.     Plaintiffs adequately allege that CB and SB each engaged in a
                 pattern of racketeering activity ................................................................... 5

          C.     Plaintiffs' RICO claims do not fail for lack of proximate
                 causation ................................................................................................... 9

    III.    Plaintiffs state TVPRA claims against SB and CB (Count III) ........................... 10

          A.     Plaintiffs adequately allege that SB committed forced labor
                 and forced labor conspiracy and is additionally liable as
                 a beneficiary ............................................................................................ 10

          B.     Plaintiffs adequately allege CB committed forced labor and sex
                 trafficking ............................................................................................... 11

    IV.    The Court should not dismiss Plaintiffs' gross negligence or malicious
          prosecution claims (Counts IV and VII) .......................................................... 14

    V.     The Court should not dismiss Plaintiffs' claims against the *pro se*
          Defendants ...................................................................................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525 (S.D.N.Y. 2014) .................. 8, 10

*Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674 (S.D. Tex. 2009) ...................................... 11

*Aguilera v. Aegis Commc'ns Grp., LLC*, 72 F.Supp.3d 975 (W.D. Mo. 2014) .......................... 15

*Aguirre v. Best Care Agency, Inc.*, 961 F.Supp.2d 427 (E.D.N.Y. 2013) ............................. 15, 16

*Angermeir v. Cohen*, 14 F. Supp. 3d 134 (S.D.N.Y. 2014) ....................................................... 3, 4

*Anora v. Oasia Prof'l Mgmt. Grp. Ltd.*, 2021 WL 11114539 (S.D.N.Y. Aug. 31, 2021) ........... 13

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, Case No. 93-CIV-6876-LMM,
 2000 WL 1694322 (S.D.N.Y. 2000) ........................................................................................ 11

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neditch v Palazzolo*,
 346 F. Supp. 3d 432 (S.D.N.Y. 2018) .................................................................................... 2, 3

*Beck v. Prupis*, 529 U.S. 494 (2000) ................................................................................... 5, 12

*Boyle v. United States*, 556 U.S. 938 (2009) ............................................................................. 5

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ................................................ 9, 11

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342 (S.D.N.Y. 2014) .......... 6

*Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) ..... 10

*Chen v. Cai*, Case No. 19-cv-05387 (PMH), 2022 WL 917575 (S.D.N.Y. Mar. 28, 2022)......... 13

*Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) ........................................................... 11

*Cleft of the Rock Found. v. Wilson*, 992. F. Supp. 574 (E.D.N.Y. 1998) .................................... 14

*Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990 (7th Cir. 2004) .............................. 7

*Cruz v. Cinram Intern., Inc.*, 574 F. Supp. 2d 1227 (N.D. Ala. 2008) ........................................ 7

*Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. Case
 No. 91-CIV-2050 (LLS), 1995 WL 43669 (S.D.N.Y. Feb. 2, 1995)........................................ 11

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005)............................................................................. 11

*Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2:19-CV-1194, 2020 WL 1244192
 (S.D. Ohio Mar. 16, 2020) ...................................................................................................... 13

*Engel v. CBS, Inc.*, 961 F. Supp. 660 (S.D.N.Y. 1997) .................................................................. 18

*Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386 (S.D.N.Y. 2014) ............................................ 11

*First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10 (D.D.C. 1998)................................................. 11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ........................ 5

*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022).................................. 14, 17

*Franco v. Diaz*, 51 F. Supp.3d 235 (E.D.N.Y. 2014) ............................................................. 15, 16

*Guobadia v. Irowa*, 103 F. Supp.3d 325 (E.D.N.Y. 2015) ........................................................... 15

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ......................................... 4

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011)................................................... 10

*In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132 (D. Conn. 2014)............................................... 10

*J.C. v. Choice Hotels Int'l, Inc.*, Case No. 20-CV-00155-WHO, 2020 WL 6318707
    (N.D. Cal. Oct. 28, 2020)................................................................................................. 13

*J.M. v. Choice Hotels Int'l, Inc.*, Case No. 222CV00672KJMJDP, 2022 WL 10626493
    (E.D. Cal. Oct. 18, 2022)................................................................................................. 13

*Kriss v. Bayrock Group, LLC*, 2016 WL 7046816 (S.D.N.Y 2016)............................................. 11

*Levy v. Maggiore*, 48 F. Supp. 3d 428 (E.D.N.Y. 2014) ............................................................... 8

*Lilakos v. New York City*, Case No. 14-CV-5288 (PKC)(LB), 2016 WL 11395018
    (E.D.N.Y. Jan. 21, 2016) ................................................................................................. 18

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992).............................................................. 10

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, Case No. 20-CV-5428 (JMF),
    2022 WL 4448621 (S.D.N.Y. Sept. 23, 2022)......................................................... 3, 5

*New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268
    (S.D.N.Y. 2013) ............................................................................................................... 4

*Noble v. Weinstein,* 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................ 15

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011) .......... 16

*Oak-Jin Oh v. Soo Bok Choi*, 2016 WL 11430442 (E.D.N.Y. 2016) .......................................... 11

*Pinkerton v. U.S.*, 328 U.S. 640 (1946*)* ..................................................................................... 14

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ........................................................ 19

*Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239 (S.D.N.Y. 2022) .............................. 15

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ........................................................ 11

*Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182 (D. Mass. 2019) ......................................... 12

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) ..................................................... 15

*Rosemond v. United States*, 572 U.S. 65 (2014) ....................................................... 9

*Ross v. Jenkins*, 325 F. Supp. 3d 1141 (D. Kan. 2018).................................................. 14

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) .............................. 13

*S.Y. v. Best W. Int'l, Inc.*, Case No. 2:20-cv-616-JES-MRM, 2021 WL 2315073
  (M.D. Fla. June 7, 2021) ........................................................................ 14

*Salinas v. United States*, 522 U.S. 52 (1997)................................................... 2, 5, 12

*Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421 (E.D.N.Y. 2016) ........... 9

*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) .............................................. 11

*Stephen v. State*, 19 N.Y.S.3d 585 (App. Div. 2015)................................................... 17

*Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993) .............................. 10

*Succession of Wardlaw v. Whitney Nat'l Bank*, No. Case No. 94-2026, 1994 WL 577442
  (E.D. La. Oct. 17, 1994).......................................................................... 11

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994)..................................... 7

*United States v. Alvarez*, 601 Fed. App'x 16 (2d Cir. 2015).......................................... 15

*United States v. Blackmon*, 839 F. 2d 900 (2d Cir. 1980) ............................................. 14

*United States v. Clare Bronfman*, Case No. 1:18-cr-00204-NGG-VMS (Sept. 30, 2020)............. 2

*United States v. Gersham*, 31 F.4th 80 (2d Cir. 2022)................................................. 5

*United States v. Guadagna*, 183 F.3d 122 (2d Cir. 1999) ............................................. 9

*United States v. Mack*, Case No. 1:18-cr-00204-NGG-VMS (June 30, 2021)...................... 2, 6, 7

*United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS (June 19, 2019) ............... 2, 6, 10

*United States v. Sabhnani*, 539 F.Supp.2d 617 (E.D.N.Y. 2008), *aff'd*, 599 F.3d 215
(2d Cir. 2010) ................................................................................................ 15

*United States v. Weaver*, Case No. 13-CR-120 (SJF)(AKT), 2014 WL 173489
(E.D.N.Y. Jan. 10, 2014) ................................................................................ 9

*United States v. Zemlyansky*, 908 F.3d 1 (2d Cir. 2018) ...................................... 2, 5

*United States v. Zichettello*, 208 F.3d 72 (2d Cir. 2000) ...................................... 3

*Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) .............................. 8

## **Statutes**

18 U.S.C. § 1028 .................................................................................................. 7, 10

18 U.S.C. § 1589(a) ............................................................................................. 13

18 U.S.C. § 1595(a) ............................................................................................. 12

18 U.S.C. § 1961(1) ............................................................................................. 2

18 U.S.C. § 1961(1)(B) ....................................................................................... 10

18 U.S.C. § 2 ....................................................................................................... 10

8 U.S.C. § 1324 ................................................................................................... 6, 7, 8, 9

8 U.S.C. § 1512 ................................................................................................... 7

## **Other Authorities**

Securities and Exchange Act of 1934 § 10(b) ...................................................... 11

## **Rules**

Federal Rule of Civil Procedure Rule 9(b) .......................................................... 7, 8

**INTRODUCTION**

Defendants' motion to dismiss briefing makes two fundamental errors. First, Defendants ignore facts alleged in the complaint and resist reasonable inferences that must be drawn in Plaintiffs' favor. Second, they urge the Court to compartmentalize each piece of the complaint rather than examine those pieces in context. But the complaint, and Defendants' conduct, must be examined holistically. Defendants were not independent actors who committed disconnected offenses; they operated a wide-ranging criminal organization and combined to commit numerous interconnected wrongs. DOS merely continued the conspiracy led by Raniere, Clare Bronfman ("CB"), and Sara Bronfman ("SB") that for years committed racketeering, immigration, and trafficking offenses. This case falls within the heartland of RICO and the TVPRA.

The Third Amended Complaint ("TAC") adds substantial facts bolstering Plaintiffs' claims. It describes each Defendant's conduct underlying each claim and details NXIVM's structure and objectives. Moreover, no Defendant has answered, much less rebutted, Plaintiffs' argument that the Court should consider the public materials referenced by, and incorporated into, the TAC. *See* ECF No. 202-1 at 10–11. Indeed, many Defendants ask the Court to draw inferences from those materials in their favor. Based on those materials, the TAC's allegations, and reasonable inferences drawn therefrom, the Court should deny Defendants' motions to dismiss.[1]

**ARGUMENT**

I.  **Plaintiffs state RICO conspiracy claims against SB and CB (Count II).**

A RICO conspiracy requires (i) a scheme that "involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering;"

---

[1] Plaintiffs do not repeat their prior briefing. Where Defendants recycle arguments or rely on their prior briefing, Plaintiffs request that the Court refer to Plaintiffs' prior briefing, which they incorporate herein. *See* ECF Nos. 169-3, 202-1 & 214.

(ii) the defendant's "agreement to join" that scheme; and (iii) the defendant's "knowing engagement in the scheme with the intent that its overall goals be effectuated." *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018). The defendant need not have "committed or agreed to commit two predicate acts [herself]," *id.* (quotation omitted), or any "overt act" furthering the conspiracy, *Salinas v. United States*, 522 U.S. 52, 63–65 (1997) (RICO conspiracy "is even more comprehensive than the general conspiracy offense"). Plaintiffs plausibly allege those elements.

*First*, Plaintiffs allege NXIVM's Inner Circle, led by Raniere, functioned as a RICO enterprise[2] and that multiple members of the Inner Circle committed racketeering acts.[3] Raniere was convicted of more than fourteen predicate acts and RICO conspiracy, and CB pled guilty to personally committing two RICO predicates for the enterprise.[4]

*Second*, Plaintiffs allege SB and CB agreed to facilitate the scheme. Both led the enterprise and wielded their substantial power to further its racketeering.[5] Those allegations alone suffice. *See Bd. of Managers of Trump Tower at City Ctr. Condo. by Neditch v Palazzolo*, 346 F. Supp. 3d 432, 463 (S.D.N.Y. 2018) (agreement to join RICO conspiracy "can be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of wrongdoing"); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 154–55 (S.D.N.Y. 2014) (same). Plaintiffs have alleged more. SB and CB, for their own benefit, committed racketeering acts to help the enterprise evade

---

[2] TAC ¶¶ 7–8, 23–26, 30–31, 37–80, 106–60, 169–72, 180, 191–95.

[3] *Id.* ¶¶ 193–95; *see also* ECF No. 735, *United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS (June 19, 2019) (Raniere verdict sheet); ECF No. 1053 at 4, *United States v. Mack*, Case No. 1:18-cr-00204-NGG-VMS (June 30, 2021) (Court's sentencing memorandum for Mack). The Court should consider facts arising from the criminal proceedings and the sources of those facts. *See* ECF No. 202-1 at 10–11; TAC ¶ 7 n.2.

[4] TAC ¶¶ 8, 194–195; *see also* ECF No. 936, *United States v. Clare Bronfman*, Case No. 1:18-cr-00204-NGG-VMS (Sept. 30, 2020) ("CB Sentencing Memo."); ECF No. 946 (judgment); CB Plea Allocution (Apr. 19, 2019); 18 U.S.C. § 1961(1).

[5] TAC ¶¶ 28–36; *see also* CB Sentencing Memo. at 2 ("[E]vidence presented at the trial of Ms. Bronfman's co-defendant, Keith Raniere, suggested that [Clare] Bronfman also participated in conspiracies to conceal and harbor five additional non-citizens").

justice.[6] *See Bd. of Managers*, 346 F. Supp. 3d at 463–65; *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, Case No. 20-CV-5428 (JMF), 2022 WL 4448621, at *17–18 (S.D.N.Y. Sept. 23, 2022) (allegations stated RICO conspiracy claim even though they were "admittedly thin" and the complaint failed to allege a substantive RICO violation against that defendant).

**Third**, Plaintiffs adequately allege SB's and CB's knowing engagement in the conspiracy because both knew its "general contours." *United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000) (RICO conspiracy defendant need not "know of certain acts of the RICO enterprise," "all the other conspirators," or "all the details of the conspiracy").[7] Based on the facts alleged— including each of their attempts to conceal the enterprise's sex trafficking and protect it from prosecution—it is reasonable to infer that both SB and CB knowingly agreed to join the racketeering conspiracy. *Angermeir*, 14 F. Supp. 3d at 154–55 (liberal pleading standard applies to RICO conspiracy allegations) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)); *see New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 282–83 (S.D.N.Y. 2013) ("concealing" and "cover[ing] up" wrongdoing "le[d] to plausible inference" of knowledge sufficient for RICO conspiracy).

SB says Plaintiffs' allegations "do not suggest a meeting of the minds sufficient to allege a RICO conspiracy or are conclusory." SB Mem. 10. But she ignores Plaintiffs' allegations of her roles in NXIVM, financing of it, direction of RCG (NXIVM's labor trafficking operation which she operated and financed), and efforts to render Adrian unavailable at Raniere's trial.[8] It is reasonable to infer from those allegations that she knew of and agreed to further the enterprise.

---

[6] *See* TAC ¶¶ 38, 48, 51–52, 57, 59, 63–73,75–80, 86, 92, 95–99, 107, 124, 142, 161–66, 168–79, 182–90, 240 (Clare); *see also* CB Sentencing Memo. at 5–7 (explaining that CB's criminal conduct was not "isolated incident[s]" but must be understood "in the larger context of the crimes committed by her co-defendants, including Keith Raniere," and NXIVM); TAC ¶¶ 38, 48, 51–52, 59–62, 82, 107, 180–81, 241 (Sara).
[7] *Supra* notes 4, 5 & 6.
[8] TAC ¶¶ 3, 5, 11, 28–36, 59, 62, 180, 214; *see also supra* note 6.

Likewise, CB says the TAC does not allege that she knew of and agreed to facilitate the enterprise's racketeering. CB Mem. 7. But she too ignores the facts alleged, including her leadership and financing of NXIVM; her role exploiting foreign nationals for the enterprise; her direction of NXIVM's legal operations; that she personally committed predicate acts on NXIVM's behalf (two of which she pled guilty to); and Judge Garaufis' finding that she worked "hand-in-hand with Raniere to intimidate and silence" the enterprise's victims.[9]

Last, CB (but not SB) says the conspiracy claim against her fails if Plaintiffs' substantive RICO claim against her fails. *See* CB Mem. 7. Not so. A defendant "may be liable for conspiracy even though he was incapable of committing the substantive offense." *Salinas*, 522 U.S. at 64; *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000) (RICO conspiracy provision, § 1962(d), is not "superfluous" because "a plaintiff [can], through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962."); *Zemlyansky*, 908 F.3d at 9–10; *Nastasi*, 2022 WL 4448621, at *18.[10]

## II. Plaintiffs state substantive RICO claims against CB and SB (Count I).

### A. Plaintiffs plausibly allege a RICO enterprise.

Plaintiffs have amply alleged that the Count I Defendants formed a RICO enterprise because they (i) shared a common purpose, (ii) had personal relationships with one another, and (iii) acted together with longevity sufficient to permit them to pursue the enterprise's purpose. *United States v. Gersham*, 31 F.4th 80, 96 (2d Cir. 2022); *see also Boyle v. United States*, 556 U.S. 938, 944 (2009) (RICO enterprise is "expansive" concept; it does not require "hierarch[y]," a

---

[9] *Supra* note 6; TAC ¶¶ 167–76, 240.

[10] CB's lone authority on this point, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004), is consistent with these cases. There the court rejected a RICO conspiracy claim because none of the defendants committed or agreed to commit acts that would qualify as a substantive RICO violation. *Id.* at 182. It did not hold that a RICO conspiracy against a defendant requires that defendant to have committed a substantive RICO violation— which would conflict with binding precedent. *First Capital* thus does not apply here where it is it is beyond reproach that at least some members of the enterprise committed RICO offenses. *See* TAC ¶¶ 193, 195.

"chain of command," "fixed roles," a "name," "established rules," "disciplinary procedures," or "ceremonies") (quotation omitted). The Second Circuit rejected Raniere's argument that the evidence was insufficient to support the jury's finding that there was a RICO enterprise. *United States v. Raniere*, Case No. 20-3520-cr (L), 2022 WL 17544087, at *4 (2d Cir. Dec. 9, 2022) (summary order). The grand jury and Judge Garaufis also found that a RICO enterprise existed.[11]

CB ignores those rulings and findings. Instead, she cherry-picks a paragraph of the TAC providing the legal standard and labels its conclusory.[12] Her chief authority, moreover, explains why Plaintiffs *have* alleged an enterprise. *See* CB Mem. 2. In *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359–60 (S.D.N.Y. 2014), the plaintiffs failed to allege a RICO enterprise because they "failed to provide any information whatsoever regarding the Defendants' respective roles in the enterprise," attributed all the conduct in the complaint to "'Defendants' as a group," described the nature of the enterprise with only a "bare allegation," "provide[d] no concrete information on the group's organization or hierarchy," and failed to include "any mention of the roles each Defendant played and the actions they took." None of that is true here.

**B. Plaintiffs adequately allege that CB and SB each engaged in a pattern of racketeering activity.**

CB conflates whether the TAC alleges that she committed a pattern of racketeering activity with proximate causation. *See* CB Mem. 4–7. Plaintiffs address those issues in turn.

CB's Predicate Acts: CB was convicted of conspiring to harbor an alien for financial gain, 8 U.S.C. § 1324, and fraudulent use of identification, 18 U.S.C. § 1028. Both are RICO predicates

---

[11] ECF No. 430, Case No. 1:18-cr-00204-NGG-VMS (March 13, 2019); Plea Hr'g., *United States v. Mack*, Case No. 1:18-cr-00204-NGG-VMS (April 8, 2019).

[12] *Compare* CB Mem. 2–3 (criticizing paragraph 199 as "insufficient" and "vague" but grappling with no other allegations in the TAC), *with* TAC ¶¶ 28–32, 34–36, 38, 40–43, 47, 59–61, 68–69, 73–74, 79, 82, 107–10, 119 (alleging facts showing interpersonal relationships between Count II Defendants; that they functioned as unit; and their common purpose to promote Raniere, expand NXIVM, cultivate foreign laborers for NXIVM, and groom women for abuse by Raniere); *see also Raniere*, 2022 WL 17544087, at *4.

and were committed for the enterprise, so the pattern requirement is satisfied on that ground alone.[13] The TAC alleges that she also violated: (i) 8 U.S.C. § 1324 as to Sylvie and B, as well as Plaintiffs MacInnis, Adrian, Camila, Daniela, and Miljkovic; (ii) 8 U.S.C. § 1512 as to Plaintiffs Salazar, Medhaoui, Edmondson, and Camila; (iii) mail and wire fraud as to each of the Plaintiffs; (iv) aiding and abetting and conspiracy to commit state law extortion as to Plaintiff Jaspeado; and (v) TVPRA violations as to the exo/eso Plaintiffs and DOS Plaintiffs, as well as Camila, Daniela, and Adrian.[14] CB is wrong that Plaintiffs have failed to allege these predicates.

*First*, she says Plaintiffs' § 1324 allegations must satisfy Rule 9(b)'s heightened pleading standard. CB Mem. 5. She cites nothing to support that proposition, and it is wrong. Plaintiffs' § 1324 allegations concern inducing persons to come to the U.S. and concealing or harboring them, not the use of knowingly false statements to engender reliance by a victim and defraud her of funds—so Rule 9(b) does not apply. *See Cruz v. Cinram Intern., Inc.*, 574 F. Supp. 2d 1227, 1232 (N.D. Ala. 2008) (§ 1324 predicate does not "expressly involve[] fraud" and does not implicate Rule 9(b) unless it is based on the same facts that comprise a RICO predicate that does sound in fraud); *Cunningham v. Offshore Spec. Fabrications, Inc.*, 543 F. Supp. 2d 614, 627–28 (E.D. Tex. 2008) (refusing to apply 9(b) pleading standard to § 1324 RICO predicate).[15]

*Second*, CB overlooks substantial allegations supporting Plaintiffs' curriculum-related mail and wire fraud claims. The TAC "detail[s] the specific statements that are false or fraudulent,

---

[13] *Supra* note 4. Even predicate acts that do not injure any plaintiff can be considered for RICO's pattern element. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1347 (2d Cir. 1994); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1004 (7th Cir. 2004).

[14] *See* TAC ¶¶ 205–06; *id.* ¶¶ 66 (attempted to induce Sylvie to come to U.S. through investor visa scheme), 67 (induced B to reside in U.S. through student visa scheme), 68–71 (encouraged Adrian to reside in U.S. without lawful status), 72–73 (aided Inner Circle members in encouraging Camila to reside in the U.S. without lawful status); 75 (Daniela); 76–77 (MacInnis); 78–80 (Miljkovic); ECF No. 922 at 3–15, 1:18-cr-00204-NGG-VMS (government detailing Clare's immigration-related conduct); *id.* ¶¶ 173, 213 (threatening letters); ¶¶ 37–57 (fraud); *infra* Part III.B.

[15] SB relies on two cases to assert that Rule 9(b) applies to § 1324 allegations. *See* SB Mem. 8. Neither concerned § 1324 or supports her argument.

identif[ies] the speaker, state[s] when and where the statements were made, and explain[s] why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124–25 (2d Cir. 2018); *see 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 538 (S.D.N.Y. 2014) ("[T]he particularity requirement is not a mechanical formula demanding exacting precision but must instead be applied in view of its express purposes and the facts of each case."); TAC ¶¶ 37–52. CB made misrepresentations on the Ethical Humanitarian website from at least April 2010 to May 2018 and on her blog (www.clarebronfman.com) from at least April 2009 to April 2013 that were intended to (and did) deceive individuals, yielding recruitment and sales for NXIVM. *Id.*

CB is also legally responsible for the misrepresentations in NXIVM doctrine, curricula, and sales materials given her knowledge of, and control over, those materials. *See 4 K& D*, 2 F. Supp. 3d at 538 (statements of corporate entity were attributable to two executives for RICO predicate wire fraud analysis where those individuals "controlled marketing" and were responsible for the statements' dissemination); *Levy v. Maggiore*, 48 F. Supp. 3d 428, 448–49 (E.D.N.Y. 2014). The scheme relied on use of the wires (namely the internet) and mailings, including CB's use of mail to obtain labor for NXIVM.[16] And the false and misleading statements alleged are concrete fact assertions not puffery. *See, e.g., Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 444 (E.D.N.Y. 2016). Whether the statements are actionable or were materially misleading is an issue for the jury or at least this Court at summary judgment. *United States v. Weaver*, Case No. 13-CR-120 (SJF)(AKT), 2014 WL 173489, at *2 (E.D.N.Y. Jan. 10, 2014) (citing *United States v. Guadagna*, 183 F.3d 122, 130–32 (2d Cir. 1999)). Plaintiffs have pled enough for discovery.

---

[16] TAC ¶¶ 40–50, 76, 80, 171, 213, 240. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

SB's Predicate Acts: SB committed a pattern of racketeering activity. She committed witness tampering as to Adrian, *see* ECF No. 202-1 at 14; TAC ¶ 180, and aided and abetted violations of, and conspired to violate, 8 U.S.C. § 1324. Plaintiffs' § 1324 claims need only satisfy Rule 8's liberal pleading standard and, given Plaintiffs' factual allegations regarding SB's role in the enterprise and RCG, it is reasonable to infer she took at least one "affirmative act" to further Raniere and CB's immigration offenses with the "intent of facilitating" those offenses. *See Rosemond v. United States*, 572 U.S. 65, 70 (2014); *see also* TAC ¶¶ 58–62. The Court should decline SB's invitation to read these allegations in the light most favorable to her.

SB is also wrong that aiding and abetting a RICO predicate can never constitute a predicate act. "[R]acketeering activity" under RICO includes "any act which is indictable under" various federal statutory provisions. 18 U.S.C. § 1961(1)(B). As a textual matter, aiding and abetting violations of those federal statutory provisions is plainly conduct "indictable under" those provisions. *See* 18 U.S.C. § 2 (aider and abettor "punishable as a principal"). For example, when one is indicted for aiding and abetting identity theft (a RICO predicate) he is indicted under 18 U.S.C. § 2 *and* 18 U.S.C. § 1028, which work together. *See, e.g.*, ECF No. 430 at 11, *United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS (March 13, 2019). He is therefore "indictable under" § 1028 and has thus committed a RICO predicate. *See McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir. 1993); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 141 (D. Conn. 2014); *4 K & D Corp.,* 2 F. Supp. 3d at 538–40; *see also* ECF No. 214 at 12–13 (collecting authorities). Even if doubt existed about this straightforward textual analysis, it should be resolved in favor of an expansive interpretation of RICO. *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 322 (2d Cir. 2011).[17]

---

[17] SB is wrong that *Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) alters the analysis. *Central Bank* held that the text of § 10(b) of the Securities and Exchange Act of 1934 did not extend

### C. Plaintiffs' RICO claims do not fail for lack of proximate causation.

CB is wrong that the predicate act must be "directed at the plaintiff." *See* CB Mem. 4. A plaintiff can be directly injured by a violation of 18 U.S.C. § 1962(c) even when misrepresentations are directed to third parties. *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).[18] Plaintiffs adequately allege that at least one of CB's and SB's RICO predicates proximately caused each of their injuries. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).[19]

Specifically, each Plaintiff alleges an 18 U.S.C. § 1964(c) injury from the mail and wire fraud scheme for which SB and CB are liable. *Id.* That fraud deprived Plaintiffs of their money or labor, or both. Plaintiffs MacInnis, Adrian, Camila, Daniela, and Miljkovic allege CB's predicate acts deprived them of compensation for their labor. *Id.* Plaintiffs Edmondson, Salazar, Medhaoui, and Camila allege that they suffered injury to their property, namely expenses associated from responding to threatening letters and false allegations, caused by Clare Bronfman's tampering predicate acts. *Id.* As to state law extortion, Plaintiff Jaspeado alleges that CB's commission of

---

private civil liability to aiders and abettors. It did not concern RICO or the predicate acts at issue here. And RICO's relevant text is nothing like the text of § 10(b). Numerous courts have thus rejected the overstretched interpretation of *Central Bank* that SB urges. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, Case No. 93-CIV-6876-LMM, 2000 WL 1694322, at *4–6 (S.D.N.Y. 2000); *Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. Case No. 91-CIV-2050 (LLS), 1995 WL 43669, at *4 (S.D.N.Y. Feb. 2, 1995); *First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 23–24 (D.D.C. 1998); *Succession of Wardlaw v. Whitney Nat'l Bank*, No. Case No. 94-2026, 1994 WL 577442, at *6 (E.D. La. Oct. 17, 1994). SB's only other authority—*Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 396–97 (S.D.N.Y. 2014)—is unpersuasive here because it concerned whether treating aiding and abetting *securities fraud* as a RICO predicate would "create an unwarranted loophole to [*Central Bank*]."

[18] The financial loss and lack of compensation that Plaintiffs suffered from CB's and SB's predicate acts are RICO injuries. *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) (money is  property); *Chevron Corp. v. Donziger*, 833 F.3d 74, 135 (2d Cir. 2016) ("imposition of wrongful debt," legal fees, and other invasions of property rights constitute RICO injuries"); *Kriss v. Bayrock Group, LLC*, 2016 WL 7046816, at *19-20 (S.D.N.Y 2016) (lost income or contracts); *Oak-Jin Oh v. Soo Bok Choi*, 2016 WL 11430442, at *1-2, 8 (E.D.N.Y. 2016) (unpaid wages); *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 690–91 (S.D. Tex. 2009) (reduction in promised wages, compelled fees paid to defendants, and being prevented from obtaining alternative employment constitute financial loss under RICO); *Diaz v. Gates*, 420 F.3d 897, 898-903 (9th Cir. 2005) (lost employment opportunities).

[19] *See, e.g.*, TAC ¶¶ 37–57, 68–72, 73, 75–80, 95–103, 107, 162–66, 171, 173, 175, 234; Schedule A.

that act caused her financial harm. Plaintiffs do not have to be harmed by every predicate act committed or aided and abetted by CB and SB. Harm from only one suffices.[20]

## III. Plaintiffs state TVPRA claims against SB and CB (Count III).

The TAC plausibly alleges Defendants perpetrated TVPRA offenses, were co-conspirators, and were beneficiaries of the NXIVM trafficking venture. Beneficiary liability attaches when a defendant knowingly benefited from participation in a venture, where the defendant knew or was negligent[21] as to whether the venture was committing trafficking offenses. 18 U.S.C. § 1595(a).

### A. Plaintiffs adequately allege that SB committed forced labor and forced labor conspiracy and is additionally liable as a beneficiary.

SB (along with Raniere) operated RCG to recruit foreign nationals to the U.S. under false premises to extract their labor under threat of deportation. *See, e.g.*, TAC ¶¶ 30, 58–63, 67, 72, 215–16. SB thereby obtained Plaintiff Camila's uncompensated labor (childcare for RCG) by causing Camila (a minor abused by Raniere, *id.* ¶¶ 88, 104, 106) to believe she would be deported if she failed to provide NXIVM with uncompensated labor. TAC ¶ 278; 18 U.S.C. § 1589(a).

SB says she is not liable as a beneficiary because Plaintiffs do not allege she knew of Camila's exploitation. SB Mem. 6. But at minimum it is reasonable to infer that she should have known about the venture's offenses against Camila and others.[22] SB was a leader of the venture;

---

[20] Even if the Court concluded that Clare and Sara were not liable for a specific predicate act that harmed certain Plaintiffs (e.g., mail and wire fraud), those Plaintiffs should not be dismissed from this case because Plaintiffs have adequately alleged that Clare and Sara are liable under RICO conspiracy, they have suffered RICO injuries caused by RICO predicates committed by (at minimum) Clare and Sara's co-defendants, and Plaintiffs may recover under RICO conspiracy against a defendant for injuries caused by the defendant's co-conspirators in furtherance of the conspiracy. *Beck v. Prupis*, 529 U.S. 494, 506–07; *Salinas*, 522 U.S. 52, 64.

[21] CB and SB incorrectly assert that knowledge/reckless disregard is necessary. *See Ricchio v. Bijal, Inc*., 424 F. Supp. 3d 182, 193 (D. Mass. 2019) ("[T]he civil provision of the TVPRA requires only that [the defendant] … *knew or should have known* … language used in describing an objective standard of negligence.").

[22] *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2:19-CV-1194, 2020 WL 1244192, *6 (S.D. Ohio Mar. 16, 2020) (awareness of trafficking within organization suffices for 1595(a) liability); *cf. S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153–54 (E.D.N.Y. 2020) (dismissing beneficiary claims where complaint failed to allege defendants were aware of any indicia of trafficking on their franchisee's properties). SB relies on *Chen v. Cai*, Case No. 19-cv-05387 (PMH), 2022 WL 917575 (S.D.N.Y. Mar. 28, 2022). But unlike the defendants there, here SB played an important role in the venture and knew of its purposes and means, including its efforts to subject Plaintiffs to forced labor.

in frequent contact with other Inner Circle members; and directly involved in creating and operating RCG and using ESF to facilitate RCG's forced labor offenses. TAC ¶¶ 3, 5, 11, 28–36, 38, 59–64, 215–16. SB also contends that the TAC does not allege that she benefited from the venture's offenses *against Camila*.[23] But that is unnecessary: SB need only have known she was benefiting from her participation in the venture generally.[24] The TAC satisfies that requirement.[25]

The TAC also alleges SB committed forced labor conspiracy. SB and other members of the Inner Circle agreed to commit forced labor offenses against members of NXIVM through ESF and RCG, both of which SB led. TAC ¶¶ 30, 59–64, 215–16.[26] And SB ratified the conspiracy just days before Raniere's trial when she committed witness tampering as to Adrian. She is thus liable for all the offenses committed by her co-conspirators in furtherance of the conspiracy.[27]

### B. Plaintiffs adequately allege CB committed forced labor and sex trafficking.

<u>Exo/eso Forced Labor</u>: The TAC alleges CB committed forced labor through exo/eso, NXIVM's purported wellness program. CB and Raniere created exo/eso to obtain free labor from women in NXIVM and recruit and groom candidates for Raniere's sexual gratification. TAC ¶¶ 92–94. After luring women into exo/eso by promising them lucrative careers, CB compelled them to work without pay: she subjected them to emotional and verbal abuse and sleep deprivation, and invoked NXIVM doctrines to assert that they had to work off debts to NXIVM and herself. *Id.* ¶¶

---

[23] Unlike the defendant in *Anora v. Oasia Prof'l Mgmt. Grp. Ltd.*, 2021 WL 11114539, at *2 (S.D.N.Y. Aug. 31, 2021), SB was not a third-party paid fees for providing ordinary services to a client.

[24] *See J.C. v. Choice Hotels Int'l, Inc.*, Case No. 20-CV-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020); *J.M. v. Choice Hotels Int'l, Inc.*, Case No. 222CV00672KJMJDP, 2022 WL 10626493, at *3 (E.D. Cal. Oct. 18, 2022).

[25] TAC ¶¶ 30, 58–59, 215–16, 279.

[26] The TAC's references to NXIVM's Inner Circle are not impermissible group pleading. Plaintiffs allege SB's leadership of the venture, her knowledge of NXIVM's crimes, and her involvement in them. TAC ¶¶ 3, 28–30, 32–33, 38, 40, 47, 51–52, 59–62, 82, 180–181; *see also S.Y. v. Best W. Int'l, Inc.*, Case No. 2:20-cv-616-JES-MRM, 2021 WL 2315073, at *2 (M.D. Fla. June 7, 2021); ECF No. 214 at 4–6.

[27] *See Pinkerton v. U.S.*, 328 U.S. 640, 646-48 (1946*); Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1162 (C.D. Cal. 2022) (TVPRA conspiracy); *Cleft of the Rock Found. v. Wilson*, 992. F. Supp. 574, 584 (E.D.N.Y. 1998); *U.S. v. Blackmon*, 839 F. 2d 900, 911 (2d Cir. 1980).

92–100. CB forced Plaintiff MacInnis to work in violation of the terms of her visa and under threat of exposure, knowing she lacked recourse. TAC ¶¶ 76–77, 96.

CB is wrong that none of this entailed "serious harm" under § 1589(a). CB Mem. 12. "Serious harm" is considered from the victim's subjective viewpoint, and it encompasses emotional, psychological, and financial abuse.[28] CB punished the exo/eso Plaintiffs physically and psychologically and exploited MacInnis's compromised immigration status and fear of deportation. TAC ¶¶ 76–77, 92–99; *Aguirre v. Best Care Agency, Inc.*, 961 F.Supp.2d 427, 444 (E.D.N.Y. 2013); *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 257 (S.D.N.Y. 2022). That some eventually left exo/eso is irrelevant. *Franco v. Diaz*, 51 F. Supp.3d 235, 247 (E.D.N.Y. 2014); *Guobadia v. Irowa*, 103 F. Supp.3d 325, 335 (E.D.N.Y. 2015).

Exo/eso Sex Trafficking: CB contends that Plaintiffs fail to allege "any sexual relations or attempted sexual relations with Raniere or anyone else." CB Mem. 9. But "[t]he sex act itself is not an element of the offense," *United States v. Alvarez*, 601 Fed. App'x 16, 18 (2d Cir. 2015), and the offense "is complete when the defendant recruits, entices, harbors, etc. the victim with knowledge that the prohibited means will be used in the future to cause them to engage in commercial sex acts." *Noble v. Weinstein,* 335 F. Supp. 3d 504, 519 (S.D.N.Y. 2018).[29] CB and Raniere used falsities to recruit and entice these Plaintiffs to join exo/eso—one of many DOS precursors—to groom them for sex with Raniere. TAC ¶¶ 90–100, 107, 257–58, 274, 280. And the scheme was based on NXIVM teachings that normalized subjugation. *Id.* ¶¶ 88–89.

DOS Plaintiffs' Forced Labor and Sex Trafficking: Like exo/eso and other NXIVM groups, DOS was created to recruit and subject women in the NXIVM community to forced labor and sex

---

[28] *See* ECF No. 169-3 at 62; *see also Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018); *Aguilera v. Aegis Commc'ns Grp., LLC*, 72 F.Supp.3d 975, 977–78 (W.D. Mo. 2014); *United States v. Sabhnani*, 539 F.Supp.2d 617, 629 (E.D.N.Y. 2008), *aff'd*, 599 F.3d 215 (2d Cir. 2010).
[29] *See also Ricchio v. McLean*, 853 F.3d 553, 558 (1st Cir. 2017).

trafficking. *Id.* ¶¶ 57, 107–66. CB knew or should have known that women in the NXIVM community, including those in DOS, were subjected to forced labor and sex trafficking.[30] She was Raniere's second-in-command and chief enforcer, and she oversaw NXIVM's operations.[31] She helped design and run NXIVM to exploit its members for labor and sex. *E.g.*, *id.* ¶¶ 92–100. Indeed, when DOS members requested their collateral, they went to CB, who not only ignored those requests but also, as Judge Garaufis observed, "work[ed] hand-in-hand with Raniere to intimidate and silence [these] victims of Raniere's brutal campaign of sexual abuse and exploitation." TAC ¶ 108, 112, 172; *see also id.* ¶¶ 182–90. It is thus reasonable to infer CB knew or should have known the venture was committing forced labor and sex trafficking.

<u>Adrian's Forced Labor</u>: CB perpetrated, conspired to commit, and benefited from the venture's forced labor offenses against Adrian, whom she manipulated into staying in the country unlawfully with false promises of compensation. She then exploited his immigration status to cause him to work long hours for a t-shirt company, which generated substantial profits for NXIVM, for little or no pay. *Id.* ¶¶ 68–71. That Adrian entered the country or the working relationship voluntarily does not matter; he was not free to stop because he feared deportation.[32] CB knowingly benefited from his labor directly, which also benefited the venture.

<u>Camila's and Daniela's Forced Labor and Sex Trafficking</u>: The TAC plausibly alleges that CB should have known of the venture's forced labor and sex trafficking offenses against Camila and Daniela. *See* TAC ¶¶ 5, 72–75, 88, 104–105, 206–207, 229. Indeed, CB worked with Raniere to prevent Adrian and Daniela from assisting in Camila's escape to Mexico and arrange for Camila

---

[30] *See supra* note 22.
[31] TAC ¶¶ 5–10, 92–103, 112, 161, 166, 182, 190.
[32] *See Franco*, 51 F. Supp.3d at 247; *Aguirre*, 961 F.Supp.2d at 444; *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011).

to hire an attorney, paid for by CB, who lied to Camila to prevent her from speaking with the FBI until Raniere's trial concluded—acts by which CB ratified the venture. *Id.* ¶¶ 178–79.

Document Servitude: Even if, as CB argues, she did not confiscate or know that another co-conspirator confiscated Daniela's documents, she is still liable for the offense.[33] CB knew or should have known the venture was committing trafficking offenses against foreign nationals, and it was reasonably foreseeable that a co-conspirator would accomplish that end by unlawfully confiscating a foreign national's documents. TAC ¶¶ 75, 293–94.

**IV.    The Court should not dismiss Plaintiffs' gross negligence or malicious prosecution claims (Counts IV and VII).**

Gross Negligence: The TAC alleges that CB and SB owed the Count VII Plaintiffs a duty of care and recklessly disregarded that duty. *See Stephen v. State*, 19 N.Y.S.3d 585, 586 (App. Div. 2015) (when defendant has authority and ability to control tortfeasor's conduct duty arises to protect third parties). CB and SB created and operated ESF to advance the venture's objectives. ESF employed Porter to conduct human experiments on Plaintiffs Leviton, Constantino, and Cottrell to bolster NXIVM's claims of being a medical and scientific endeavor. TAC ¶¶ 25, 33, 50, 81–86. The experiments did not adhere to scientific or medical protocols and were performed without informed consent, and CB personally ignored at least one person who advised her that human medical research required strict compliance with scientific safeguards. *Id.* Given that the experiments were conducted under the direction of CB and SB, who possessed extraordinary control over NXIVM members like Porter owing to the nature of the organization and their leadership roles in it, CB and SB owed and breached duties to the Count VII Plaintiffs.

Malicious Prosecution/Use of Process: The Court should not dismiss this claim because Plaintiff Natalie suffered harm "considerably more cumbersome than the physical, psychological,

---

[33]*Fleites*, 617 F. Supp. 3d at 1162.

or financial demands of defending a lawsuit." *Engel v. CBS, Inc.*, 961 F. Supp. 660, 661 (S.D.N.Y. 1997). CB targeted her *for years*, including attempting to deny her bankruptcy discharge out of "revenge or retaliation" (according to the court), and targeted her mother. TAC ¶¶ 34, 182, 185, 240. Further, some baseless actions CB initiated against Plaintiff Natalie were criminal in nature. *Id.*; *see Lilakos v. New York City*, Case No. 14-CV-5288 (PKC)(LB), 2016 WL 11395018, *11 (E.D.N.Y. Jan. 21, 2016) (special injury element applies only when underlying action is "non-criminal"). The claim cannot be dismissed on statute of limitations grounds as it is not clear from the TAC's face when all the underlying conduct ceased and when each matter terminated, which bears on accrual of the claim. *Engel*, 961 F. Supp. at 662; ECF No. 169-3 at 49–50.

## V. The Court should not dismiss Plaintiffs' claims against the *pro se* Defendants.

Defendant Porter performed unauthorized human experiments sponsored by CB and ESF to bolster NXIVM's scientific credentials. Defendant Roberts played a key role in DOS: she was commissioned by Raniere to brand DOS's extorted victims. Plaintiffs' claims against each are plausibly alleged,[34] and indeed strengthened by Porter's and Robert's judicial admissions.[35]

Both resist this conclusion by disputing the factual allegations in the TAC and asking the Court to draw inferences in their favor. Porter also asserts that he is immune from civil liability because he was not indicted and accuses the government of falsifying evidence in the criminal case. Porter Mem. 3–4. None of these arguments is properly made on a motion to dismiss.

## CONCLUSION

For these reasons and those set forth in Plaintiffs' earlier filed briefs, the Court should deny Defendants' motions to dismiss and allow discovery to commence.

---

[34] TAC ¶¶ 16, 81–86, 107, 119–26, 245–46, 265, 267, 289–90, 292, 301–04; ECF No. 214 at 13–19; 169-3 at 67.
[35] *See* ECF No. 214 at 14 (citing *Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2d Cir. 1994)); *see also* Porter Mem. 3, 6; Roberts Mem. 5–6.

Dated: July 31, 2023                    Respectfully submitted,


                                        /s/     Neil L. Glazer
                                        Neil L. Glazer
                                        William E. Hoese
                                        Zahra R. Dean
                                        Aarthi Manohar
                                        Elias Kohn
                                        KOHN, SWIFT & GRAF, P.C.
                                        1600 Market Street, Suite 2500
                                        Philadelphia, PA 19103
                                        (215) 238-1700

                                        Aitan D. Goelman
                                        Bryan M. Reines
                                        ZUCKERMAN SPAEDER
                                        1800 M Street NW, Suite 1000
                                        Washington, DC 20036
                                        (202) 778-1800

                                        Attorneys for Plaintiffs