

Aitan Goelman
PARTNER
Zuckerman Spaeder LLP
agoelman@zuckerman.com
(202) 778-1999

ZUCKERMAN
SPAEDER

June 18, 2024

**VIA E-MAIL**

Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom: 6G North
Brooklyn, New York 11201

    Re:    *Edmondson, et al. v. Raniere et al.*, Case No. 1:20-cv-00485-EK-CLP

Dear Judge Komitee:

Plaintiffs' counsel submits this pre-motion letter in advance of its motion to order Nancy Salzman to comply with the Settlement Agreement that she entered into with Plaintiffs, or, alternatively, to amend the complaint and seek a default judgment against Nancy Salzman pursuant to that Settlement Agreement. The Settlement Agreement is attached hereto as Exhibit A. Alternatively, Plaintiffs request that the Court hold a Rule 16 conference to address the issues set forth herein.

Plaintiffs sued several Defendants, including Nancy Salzman, on January 28, 2020. Plaintiffs and Ms. Salzman, who was then represented by counsel, entered into the Settlement Agreement on September 20, 2022. Plaintiffs thereafter voluntarily dismissed their claims against Ms. Salzman without prejudice. *See* Ex. A § A(4).

The Settlement Agreement with Ms. Salzman had the effect of simplifying this case. But Ms. Salzman is now refusing to comply with its terms. The core of the bargain struck in the Settlement Agreement was that Plaintiffs would not pursue civil remedies against Ms. Salzman for her role in NXIVM if (i) she cooperated with Plaintiffs in providing information and testimony relevant to their claims against other Defendants in this action, *see id.* § C; and (ii) she conveyed the proceeds of the sales of three properties to Plaintiffs, *see id.* § B. Ms. Salzman has paid Plaintiffs some of the proceeds from the three property sales. But her payments are incomplete, and she is refusing to comply with the terms of the Settlement Agreement.

Specifically, the Settlement Agreement requires Ms. Salzman to transmit to Plaintiffs' counsel the "net proceeds" of the property sales. *Id.* § B(8). "Net proceeds" is defined in the Settlement Agreement as "the sale price paid by the purchaser" minus certain enumerated categories of costs, which are exhaustive: "real estate agent commissions, closing costs, real estate transfer taxes and reimbursement to Settling Defendant [Ms. Salzman] of security deposits returned or due to be returned to the tenants or lessees of the property sold (less costs for repairs and cleaning to the extent such deductions are permitted under applicable laws and regulations)." *Id.* Notwithstanding that clear-cut definition of "net proceeds," Ms. Salzman has informed Plaintiffs' counsel that she has directed the settlement clerk to withhold $116,189.19 of the proceeds of the sale of the third property to cover capital gains taxes for each of the three properties. Capital gains tax, however, is not one of the categories of costs that may be subtracted from the purchase price under the Settlement Agreement's definition of "net proceeds."

By withholding this money, Ms. Salzman is therefore refusing to cause the net proceeds of the property sales to be transmitted to Plaintiffs' counsel, in violation of Section 8 of the Settlement Agreement. The Settlement Agreement contemplates that in the event of such a breach, Plaintiffs may seek an order compelling her to comply with the terms of the Settlement Agreement and/or revive their claims against her and seek entry of a default judgment. *Id.* § A(4). Plaintiffs informed Ms. Salzman on May 30, 2024 that if she continued to refuse to pay the monies identified above Plaintiffs would seek judicial intervention. Ms. Salzman has since made clear that she will not pay the money absent judicial intervention.

Ms. Salzman's justification for refusing to convey the approximately $116,000 from the property sales is her counsel's statement that "[i]t is our position that 'net proceeds' includes capital gains," and his contention that forcing Ms. Salzman to pay the monies would "be unfair and a breach of the spirit of the agreement." *See* Ex. B (correspondence between counsel). Ms. Salzman relies for that latter proposition on a supposed "understanding" between her counsel and one of Plaintiffs' attorneys. *Id.*

But Ms. Salzman's justification for refusing to pay the money is hollow. "Net proceeds" under the Settlement Agreement clearly and indisputably does not permit a deduction for capital gains tax—even though it does permit such a deduction for another category of tax, "real estate transfer tax[]." *See* Ex. A § B(8) (enumerating allowable deductions and including no category that could arguably be construed to include capital gains taxes). And the Settlement Agreement includes an ironclad integration clause that confirms that the agreement expressed therein "supersedes all prior and contemporaneous" representations and "understandings" and "may not be modified or amended except in writing." *Id.* § D(20). Ms. Salzman has produced no writing that purports to modify or amend the Settlement Agreement, and none exists.

Plaintiffs are loath to respond to Ms. Salzman's breach of the Settlement Agreement by reviving their claims against her and by seeking entry of a default judgment. *See id* § A(4). But

they have little alternative. Plaintiffs thus respectfully ask the Court to order Ms. Salzman to comply with the Settlement Agreement or, alternatively, to address this issue at a Rule 16 conference. The Court has ample authority to conduct such a conference, *see* Fed. R. Civ. P. 16(a)(5), and such a conference would further the interests of justice and judicial economy, especially given the complexity of this case. *See also* Dispute Resolution Procedures § IV, United States District Court for the Eastern District of New York ("Settlement Conferences Conducted by a Judge").

Undersigned counsel has sent a copy of this correspondence to counsel for Ms. Salzman.


Sincerely,


Aitan Goelman


cc:  David Stern, dstern@rssslaw.com, Counsel for Nancy Salzman

# Exhibit A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SARAH EDMONDSON; TONI NATALIE; JESSICA
JOAN SALAZAR; SOUKIANA MEHDAOUI;
NICOLE; DANIELA; CAMILA; INDIA
OXENBERG; BONNIE PIESSE; TABITHA
CHAPMAN; ASHLEY MCLEAN; MARK VICENTE;
ANTHONY AMES; VERONICA JASPEADO;
PALOMA PENA; CHARLOTTE; RACHEL;
VALERIE; ADRIENNE STILES; LINDSAY
MACINNIS; JENNIFER KOBELT; MARGOT
LEVITON; ISABELLA CONSTANTINO; CARYSSA
COTTRELL; DEANNE BRUNELLE; KARLA DIAZ
CANO; PAMELA COOLEY; ROSALYN CUA;
BRIEANNA FIANDER; SHAYNA HOLMES;
POLLY GREEN; ANDREA HAMMOND; YAN
HUANG; TANYA HUBBARD; SARA LIM;
ARIELLA MENASHY; ELHAM MENHAJI; MAJA
MILJKOVIC; MICHELLE NEAL; SUSAN PRATT;
ALISON ROOD; KATIE SHAW; KRISTIN;
HANNAH VANDERHEYDEN; JULIANA
VICENTE; SUSAN PATRICIA VIETA; SUSAN
WYSOCKI;  KAYLA GROSSE; STEPHANIE FAIR-
LAYMAN; GABRIELLE GENDRON; SARAH
WALL; SCOTT STARR; PHILIP AKKA;
ALEJANDRO BALASSA; MADELINE CARRIER;
ROD CHRISTIANSEN; OWEN GIROUX; JEFFREY
GOLFMAN; ASHLEY HARVEY; REES ALAN
HAYNES; WARNE LIVESEY; NILS
MACQUARRIE; ANTHONY MADANI;  CHAD
WILLIAMS; CHRISTOPHER BLACK; ROBERT
GRAY; KEN KOZAK; ADRIAN; JANE DOE 8; and
JANE DOE 9,

        Plaintiffs,

    v.

KEITH RANIERE; NANCY SALZMAN; CLARE
BRONFMAN; SARA BRONFMAN;
LAUREN SALZMAN; ALLISON MACK; KATHY
RUSSELL; KAREN UNTERREINER;
DR. BRANDON PORTER; DR. DANIELLE
ROBERTS; NICKI CLYNE; NXIVM

CIVIL ACTION

NO. 20-CV-485

{00228551 }

CORPORATION; EXECUTIVE SUCCESS : 
PROGRAMS, INC.; ETHICAL SCIENCE :
FOUNDATION; and FIRST PRINCIPLES, :
                                   :
            Defendants.            :

-----------------------------------------------------------------x

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into by and between Nancy Salzman (the "Settling Defendant") and all Plaintiffs in the above-captioned action (the "Action").

WHEREAS Plaintiffs allege that they were injured and suffered damages caused by illegal acts committed by Nancy Salzman and acts committed in furtherance of the alleged unlawful conspiracy and venture by other participants and members in the unlawful conspiracy and venture, as set forth in the Second Amended Complaint filed on February 25, 2022 (the "Complaint").

WHEREAS, the Settling Defendant denies Plaintiffs' allegations and would have asserted defenses to Plaintiffs' claims in the Action.

WHEREAS arm's-length settlement negotiations have taken place between Plaintiffs' counsel and attorneys for the Settling Defendant and the Settling Defendant, and this Settlement Agreement has been reached as a result of the negotiations.

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding the allegations against the Settling Defendant in the Action and have concluded that resolving the claims against the Settling Defendant according to the terms set forth below is in the best interest of Plaintiffs because of the Settling Defendant's agreement to cooperate with Plaintiffs, as set forth below, in connection with the litigation of their claims against the other Defendants in the Action and the payment of money in the future that the Settling Defendant has agreed to provide pursuant to this Settlement Agreement.

2

{00228551 }

WHEREAS this Settlement Agreement will resolve the claims of all Plaintiffs in the Action against the Settling Defendant.

WHEREAS, the Settling Defendant, despite her belief position that she is not liable for the claims asserted and that she has good defenses thereto, has nevertheless agreed to enter into this Settlement Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release included in this Settlement Agreement, putting to rest with finality all claims that have been or could have been asserted against the Settling Defendant in the Complaint in the Action.

NOW, THEREFORE, in consideration of the covenants, agreements, and release set forth herein and for other good and valuable consideration, and intending to be legally bound, it is agreed by and between the Settling Defendant and Plaintiffs that the Action be settled, compromised, and dismissed on the merits as to the Settling Defendant only on the following terms and conditions:

1. On the date this Settlement Agreement has been executed by both the Settling Defendant and Plaintiffs' counsel, Plaintiffs and the Settling Defendant shall be bound by its terms.

2. Neither this Settlement Agreement nor any negotiations or documents (or discussions associated with them) shall be deemed or construed to be an admission by the Settling Defendant or evidence of any violation of any statute or law or of any liability or wrongdoing by the Settling Defendant to the Plaintiffs.

A. **Release and Termination of Claims**

3. Given the valuable consideration of the Settling Defendant's cooperation with the Plaintiffs in connection with their litigation of the claims set forth in the Complaint, and the

{00228551 }

future payment of money as set forth below, the Settling Defendant shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action under any federal, state, or local law of any jurisdiction in the United States, that each of the Plaintiffs, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct or any act or omission of the Settling Defendant, prior to the date this Settlement Agreement is fully executed, that has been alleged in the Complaint filed in the Action.

4.     No later than three (3) business days after execution of this Settlement Agreement by counsel for Plaintiffs and Settling Defendant, Plaintiffs shall file with the Court a Notice of Termination of Claims against Settling Defendant without prejudice. Settling Defendant agrees that should she fail to comply with all of the terms of this Agreement, including any court order obtained by Plaintiffs compelling Settling Defendant to comply with the terms of this Agreement, Plaintiffs may revive their claims and seek entry of a default judgment. Settling Defendant further agrees to waive any affirmative defense based upon any statute of limitations that may otherwise expire during the period between the date on which the Notice of Termination of Claims without prejudice is filed and the date on which Settling Defendant has fully discharged her obligations under this Agreement.

**B.    Settlement Amount**

5.     The Settling Defendant has made representations and provided disclosure of her assets to Plaintiffs' counsel that demonstrate that she has limited financial means to pay more

4

than a nominal amount to settle the claims of the Plaintiffs asserted in the Complaint. In reliance on the Settling Defendant's representations and disclosure of assets, Plaintiffs agree that the Settling Defendant's compliance with the payment obligations set forth in Paragraph 5, below, shall fully satisfy the Settling Defendant's obligation with respect to payment of the Settlement Amount. Should Plaintiffs receive information or learn at any point in the future that the Settling Defendant has failed to fully disclose to Plaintiffs all assets, Plaintiffs shall have the right to declare the Settling Defendant in breach of this Agreement and to demand additional payment.

6.      Settling Defendant represents that she holds title, free and clear of all liens and claims, to the following real properties: 203 Yorktown Drive, NY 12065; 3 Hale Drive, Clifton Park, NY 12065; and 9 Hale Drive, Clifton Park, NY 12065 (the "Properties"). Plaintiffs shall engage the services of a real estate agent or broker ("Agent") for the purpose of listing and selling the Properties on behalf of Settling Defendant. Plaintiffs shall have sole discretion to determine and approve the sales price, and no sale of the Properties shall be agreed to absent prior written authorization by Plaintiffs. Settling Defendant shall fully cooperate with this process, including providing timely information, executing documents and, if required, authorizing Plaintiffs or Plaintiffs' designee to grant access to each said Property. Should Settling Defendant's incarceration prevent her from timely cooperation with this process, she shall designate an agent to be granted power of attorney to facilitate the sales of the Properties (including termination of leases).

7.      With respect to each Property, Settling Defendant shall be responsible for giving notice to tenants, if any, that their leases for such Properties shall not be renewed and that such tenants shall be required to vacate such Properties on or before the end date of their lease. Should a tenant refuse to timely vacate a Property, it shall be Settling Defendant's sole

responsibility to secure such tenant's eviction. After tenants vacate a Property, Plaintiffs or their designated agent shall inspect such Property and inform Settling Defendant if any expenditures for repairs or cleaning are required that may be deducted from such tenant or lessee's security deposit pursuant to applicable laws or regulations, and Settling Defendant shall be responsible for payment of such expenditures and deduction from the tenant's security deposit. Should a tenant challenge the deduction of such expenditures from the tenant's security deposition, it shall be the sole responsibility of Settling Defendant, at her expense, to resolve such dispute in order to prevent the imposition of any lien against title to such Property or claim to any proceeds of the sale of such Property.

8.      Upon the sale of each Property, Settling Defendant shall cause the net proceeds of such sale to be transmitted to counsel for Plaintiffs or their designated agent by cashier's check or wire transfer pursuant to instructions given by counsel for Plaintiffs. Net proceeds shall consist of the sale price paid by the purchaser less real estate agent commissions, closing costs, real estate transfer taxes and reimbursement to Settling Defendant of security deposits returned or due to be returned to the tenants or lessees of the property sold (less costs for repairs and cleaning to the extent such deductions are permitted under applicable laws and regulations).

9.      Plaintiffs acknowledge and agree that Settling Defendant has made no promises, assurances or representations to Plaintiffs as to how much each Property will sell for, and Plaintiffs agree that transfer of the net proceeds of the sales of the three aforementioned properties shall constitute payment in full of the Settlement Amount.

### C.  Cooperation

10.     In return for the release of Plaintiffs' claims against the Settling Defendant provided herein, the Settling Defendant also agrees to exercise her best efforts to provide

{00228551 }

satisfactory and timely cooperation as set forth in this Settlement Agreement, until the entry of final judgment or judgments with respect to all the remaining Defendants in the Action or dismissal with prejudice of those Defendants and when such judgments or dismissals become final because all appeals have been exhausted or the time period to appeal has expired.

11.     Cooperation will take place consistent with the timing set forth below. Cooperation shall not impose undue burden and expense on Settling Defendant to the extent practicable.

12.     <u>Documents.</u> The Settling Defendant will use her best efforts to provide to Plaintiffs, within sixty (60) days of the full execution of this Settlement Agreement, all documents (as defined in Federal Rule of Civil Procedure 34(a)) in her possession, custody, or control that relate in any way either to any of the allegations in the Complaint or NXIVM. Nothing herein shall be construed to require Settling Defendant to produce any privileged communications with her defense counsel in connection with the criminal matter of *U.S. v. Raniere* or this action, except that a log of all such documents shall be prepared and provided to Plaintiffs. If any documents are subject to any restriction barring the Settling Defendant from producing them to Plaintiffs, Settling Defendant shall produce an index or log to Plaintiffs describing each such document and the reason production is restricted, and Settling Defendant shall cooperate with Plaintiffs to attempt to eliminate or overcome such restriction. To the extent the Settling Defendant is restricted from producing any such documents because of the terms of the Protective Order entered in *U.S. v. Raniere*, the Settling Defendant shall request consent of the United States to seek from the district court in *US v. Raniere* relief from the terms of the protective order to enable the Settling Defendant to produce such documents to Plaintiffs. Plaintiffs shall communicate with the United States and, if required, to the district court, to

7

inform them that Plaintiffs shall agree in writing to be subject to such terms or restrictions as the United States and/or the district court may request or require, including without limitation executing a copy of a Protective Order.

13. <u>Interviews, Depositions, Declarations, Affidavits, and Trial Testimony.</u>

(a)  Settling Defendant will use her best efforts to make herself available for interviews and depositions as required by Plaintiffs. Plaintiffs acknowledge that Settling Defendant's availability for such interviews and depositions, and the timing and location of such interviews and depositions, may be subject to approval, conditions or restrictions imposed by the Bureau of Prisons during her term of incarceration. Further, if requested by Plaintiffs, Settling Defendant will also provide declarations or affidavits and, subject to permissions or restrictions imposed by the Bureau of Prisons, use best efforts to make herself available to testify at trial if such trial occurs during her time of incarceration. Should such trial occur after Settling Defendant's release from incarceration, if she is subject to any travel restrictions imposed by a court, Bureau of Prisons, Probation Services or any other governmental agency, Settling Defendant shall request permission to travel for the purpose of preparing for and testifying at such trial.

(b)  The number of interview or deposition hours shall not be limited overall, except (i) as restricted by Bureau of Prisons, and (ii) that no interview or deposition will be conducted for more than seven (7) hours a day (in the case of depositions, seven hours "on the record") without agreement of the Settling Defendant and Plaintiffs' counsel.

14. Plaintiffs and their counsel agree they will not use the information, documents, or other cooperation materials provided by the Settling Defendant or her representatives under this Settlement Agreement for any purpose other than the prosecution of the claims in this Action,

8

and will use the information, documents, and other cooperation materials consistent with the terms of any Protective Order entered in the Action, and will not use the information, documents, or other cooperation materials beyond the prosecution of their claims in the Action. All information, documents, and other cooperation materials provided pursuant to this Settlement Agreement shall be governed by the terms of any Protective Order, as if they had been produced in response to discovery requests under the Federal Rules of Civil Procedure.

15. The Settling Defendant's obligations to provide cooperation shall not be affected by the release set forth in this Settlement Agreement. The Settling Defendant's obligations to provide cooperation under this Settlement Agreement shall continue until terminated as set forth in Paragraph 10 above. Plaintiffs are not relinquishing any rights to pursue discovery pursuant to the Federal Rules of Civil Procedure against the Settling Defendant in the event that the Settling Defendant has not complied with her cooperation obligations under any material provision herein or in the event that Plaintiffs receive new information regarding the existence of discoverable evidence.

16. If Plaintiffs' counsel believe that the Settling Defendant has failed to cooperate under the terms of this Agreement, or if the Settling Defendant believes that Plaintiffs' counsel are seeking information beyond what is provided for in this Settlement Agreement, either Plaintiffs' counsel or the Settling Defendant may seek an order from a court of competent jurisdiction compelling or limiting cooperation. Nothing in this provision shall limit in any way Plaintiffs' counsel's or the Settling Defendant's ability to defend the level of cooperation either requested or provided or to defend compliance with the terms of the cooperation provisions in this Settlement Agreement.

{00228551 }

17.     This Settlement Agreement shall be construed and interpreted to effectuate the intent of the parties to it, which is to provide, through this Settlement Agreement, for a complete resolution of the Plaintiffs' claims in the Action with respect to the Settling Defendant as provided in this Settlement Agreement in exchange for cooperation in the Action by the Settling Defendant and the monetary payment by the Settling Defendant set forth above.

**D.     Miscellaneous**

18.     This Settlement Agreement does not settle or compromise any claim by any of the Plaintiffs asserted in the Complaint in this Action or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than the Settling Defendant. All rights against the other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs.

19.     This Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

20.     This Agreement constitutes the entire, complete, and integrated agreement between each of the Plaintiffs and the Settling Defendant pertaining to the settlement of this Action against the Settling Defendant, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and the Settling Defendant in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs' counsel and the Settling Defendant.

21.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and the Settling Defendant.

22.     This Agreement may be executed in counterparts by Plaintiffs and the Settling

10

Defendant, and a facsimile or other electronic signature shall be deemed an original signature for purposes of executing this Agreement.

23.     Neither Plaintiffs nor the Settling Defendant shall be considered the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

Dated: May 4, 2022

Neil L. Glazer
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

Aitan D. Goelman
ZUCKERMAN SPAEDER
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

Attorneys for Plaintiffs

Dated: 9/20, 2022

/s/
Attorneys for Nancy Salzman

{00228551 }

# Exhibit B

**From:** David Stern <dstern@rssslaw.com>
**Sent:** Thursday, May 30, 2024 2:28 PM
**To:** Zahra R. Dean <zdean@kohnswift.com>
**Subject:** RE: NXIVM matter

This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

It is our position that "net proceeds" includes capital gains.

**From:** Zahra R. Dean [mailto:zdean@kohnswift.com]
**Sent:** Thursday, May 30, 2024 2:24 PM
**To:** David Stern <dstern@rssslaw.com>
**Subject:** RE: NXIVM matter

Mr. Stern,
Please see the attached letter.

Zahra R. Dean
Attorney
T: 215.238.1700
F: 215.238.1968
zdean@kohnswift.com
www.kohnswift.com



1600 Market Street, Suite 2500
Philadelphia, PA 19103

**From:** David Stern <dstern@rssslaw.com>
**Sent:** Wednesday, May 29, 2024 2:36 PM
**To:** Zahra R. Dean <zdean@kohnswift.com>
**Subject:** RE: NXIVM matter

This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I will not direct them to do so. The understanding between us and Mr. Glaser was that the plaintiff's would receive the profit from the sales. The profit should not be understood to exempt capital gains, nor should Ms. Salzman be expected to lose not only the three properties, which she of course agreed to, but and additional amount to cover the taxes. Such a result would be unfair and a breach of the spirit of the agreement.

David Stern, Esq.
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
212-571-5500

Fax 212-571-5507

This Electronic Message contains information from the law firm of Rothman, Schneider, Soloway, & Stern, LLP and may be privileged, confidential, or contain attorney work-product. This information is intended for the use of the addressee only. If you are not the addressee, please note that any disclosure, copying, distribution, or other use of the contents of this message is prohibited.

**From:** Zahra R. Dean [mailto:zdean@kohnswift.com]
**Sent:** Wednesday, May 29, 2024 2:30 PM
**To:** David Stern <dstern@rsslaw.com>
**Subject:** NXIVM matter

Mr. Stern,
Please see the attached letter.

Zahra R. Dean
Attorney
T: 215.238.1700
F: 215.238.1968
zdean@kohnswift.com
www.kohnswift.com



1600 Market Street, Suite 2500
Philadelphia, PA 19103

---

***Privilege and Confidentiality Notice***

The information contained in this e-mail message is attorney-client privileged and/or confidential information intended for the use of the named recipient only. You are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic e-mail or call us at 215-238-1700.
Thank you.

---

***Privilege and Confidentiality Notice***

The information contained in this e-mail message is attorney-client privileged and/or confidential information intended for the use of the named recipient only. You are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic e-mail or call us at 215-238-1700.
Thank you.

---

**\*\*\*Privilege and Confidentiality Notice\*\*\***

**The information contained in this e-mail message is attorney-client privileged and/or confidential information intended for the use of the named recipient only. You are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic e-mail or call us at 215-238-1700. Thank you.**

# Kohn, Swift & Graf, P.C.

### 1600 Market Street, Suite 2500

### Philadelphia, Pennsylvania 19103-7225

(215) 238-1700
Telecopier (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
Web Site: www.kohnswift.com

Sender's E-mail: zdean@kohnswift.com

JOSEPH C. KOHN
ROBERT A. SWIFT
ROBERT J. LAROCCA †
DOUGLAS A. ABRAHAMS
WILLIAM E. HOESE
NEIL L. GLAZER †
ZAHRA R. DEAN ✛
ELIAS A. KOHN

† ALSO ADMITTED IN NEW YORK
✛ ONLY ADMITTED IN NEW YORK

HAROLD E. KOHN
1914-1999
BAYARD M. GRAF
1926-2015

OF COUNSEL
GEORGE W. CRONER
CARY FLEISHER
LISA PALFY KOHN

May 29, 2024

David Stern, Esq.
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013

**Re: NXIVM Matter**

Dear Mr. Stern:

We received an email dated April 24, 2024, from Messina & Cahill stating that Nancy Salzman would like to be reimbursed for capital gains tax (per the statement of sale, amounting to $116,189.19) on the three properties referenced in paragraph 6 of the agreement entered into between plaintiffs and Nancy Salzman on September 20, 2023, ("Settlement Agreement") and unpaid property management fees (amounting to $18,874.39).

In our response to Mr. Cahill on May 22, 2024, Plaintiffs sought to know on what basis Messina & Cahill is withholding the proceeds from the sale. Pursuant to paragraph 8 of the Settlement Agreement, Nancy Salzman is required to transmit the Net Proceeds of the sales of the three properties to counsel for plaintiffs. Net proceeds are defined therein as "the sale price paid by the purchaser less real estate agent commissions, closing costs, real estate transfer taxes and reimbursement to Settling Defendant of security deposits returned or due to be returned to the tenants or lessees of the property sold (less costs for repairs and cleaning to the extent such deductions are permitted under applicable laws and regulations)."

As an accommodation and even though it was not required under the Settlement Agreement, we agreed to reimburse Nancy Salzman $6,450 for the expenses reasonably related to the upkeep and maintenance of property located at 3 Hale Drive. We are prepared to make a similar accommodation and allow reimbursement of property management fees in the amount of $18,874.39 for the property located at 9 Hale Drive. However, Plaintiffs are not responsible for and do not consent to the reimbursement of capital gains taxes.

   Please direct Messina & Cahill to release the proceeds from the sale to Plaintiffs without any withholding of the purported capital gains tax amounts. Plaintiffs are prepared to take all action necessary to enforce the Settlement Agreement, though we hope it shall not be necessary.

          Sincerely,

          *Zahra R. Dean*

          Zahra R. Dean

ZRD/yr

KOHN, SWIFT & GRAF, P.C.

1600 MARKET STREET, SUITE 2500

PHILADELPHIA, PENNSYLVANIA 19103-7225

(215) 238-1700
TELECOPIER (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
WEB SITE: www.kohnswift.com
Sender's E-mail: zdean@kohnswift.com

JOSEPH C. KOHN
ROBERT A. SWIFT
ROBERT J. LAROCCA †
DOUGLAS A. ABRAHAMS
WILLIAM E. HOESE
NEIL L. GLAZER †
ZAHRA R. DEAN ✦
ELIAS A. KOHN

† ALSO ADMITTED IN NEW YORK
✦ ONLY ADMITTED IN NEW YORK

HAROLD E. KOHN
1914-1999
BAYARD M. GRAF
1926-2015

OF COUNSEL
GEORGE W. CRONER
CARY FLEISHER
LISA PALFY KOHN

May 30, 2024

David Stern, Esq.
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013

> Re: **Settlement Agreement between Nancy Salzman and Plaintiffs in**
> ***Edmondson et. al. v Raniere et. al. 20-cv-485***

Dear Mr. Stern:

Your position as set forth in your email of 5/29/2024 on withholding $116,189.19 of the "net proceeds" of the sale of the properties at 203 Yorktown Drive, NY 12065, 3 Hale Drive, Clifton Park, NY 12065 and 9 Hale Drive, Clifton Park, NY 12065 as "capital gains tax" without any support in the parties' Settlement Agreement and is improper and wrong. As stated in our letter of the same date, there is no basis for the settlement clerk to withhold these amounts. Paragraph 8 of the agreement entered into between Plaintiffs and Nancy Salzman on September 20, 2023, ("Settlement Agreement") provides as follows:

> 8. Upon the sale of each Property, Settling Defendant shall cause the net proceeds of such sale to be transmitted to counsel for Plaintiffs or their designated agent by cashier's check or wire transfer pursuant to instructions given by counsel for Plaintiffs. Net proceeds shall consist of the sale price paid by the purchaser less real estate agent commissions, closing costs, real estate transfer taxes and reimbursement to Settling Defendant of security deposits returned or due to be returned to the tenants or lessees of the property sold (less costs for repairs and cleaning to the extent such deductions are permitted under applicable laws and regulations).

The Settlement Agreement contains an iron clad integration clause in paragraph 20 which provides that the Settlement Agreement constitutes the complete agreement between Plaintiffs and Nancy Salzman and supersedes all prior communications between Plaintiffs and Nancy Salzman in connection therewith.

   We again request that you immediately instruct the settlement clerk to release the proceeds from the sale to Plaintiffs without any withholding of the purported capital gains tax amounts. If you do not do so by the end of the day tomorrow May 31, Plaintiffs will withdraw their accommodation to allow reimbursement for the property management fees in the amount of $18,874.39 for the property located at 9 Hale Drive and seek to enforce the Settlement Agreement in court.

              Sincerely,

              Zahra R. Dean

ZRD/yr