# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- :
SARAH EDMONDSON, et al.,                                 :
                                                         :
                    Plaintiffs,                          :
                                                         :
        v.                                               :    CIVIL ACTION NO. 20-CV-485
                                                         :
KEITH RANIERE, et al.,                                   :
                                                         :
                    Defendants.                          :
-------------------------------------------------------- :
```

## PLAINTIFFS' REVISED SCHEDULE A

Pursuant to the Court's order resolving certain Defendants' motions to dismiss the Third Amended Complaint (the "TAC"), *see* ECF No. 240 (the "Order"), Plaintiffs' hereby file this revised Schedule A to the TAC.

## PRELIMINARY STATEMENT

The Court has directed Plaintiffs to file a revised Schedule A that specifies how each Plaintiff asserting a RICO claim suffered injury to their business or property by relying on fraudulent statements. Order at 54–55, 102–03.[1] Those facts are alleged below. Plaintiffs also make the following allegations to provide further context regarding their revisions to Schedule A.

---

[1] The Order held that certain representations supporting Plaintiffs' RICO claims are not actionable under the mail and wire fraud statutes. Order at 55; see also id. at 39–41. The Order further instructed Plaintiffs to "take note" of that ruling when revising Schedule A. Id. at 55. Plaintiffs thus do not reallege here any fraudulent representations that they understand the Court to have ruled were non-actionable in the Order, see id. at 39–41, and reserve their appellate rights as to that ruling.

1.     Keith Raniere and Nancy Salzman developed NXIVM's curriculum and materials, which were repeatedly updated and republished during Clare and Sara Bronfman's tenure in the Inner Circle.[2]

2.     Clare and Sara Bronfman, who held positions of substantial authority in NXIVM's Inner Circle, knew of the contents of NXIVM's curriculum and materials, and expressly or tacitly approved of the representations made therein.

3.     Along with Raniere, Clare and Sara Bronfman intended to use NXIVM's curriculum and materials as part of a multi-level marketing scheme to amass a following of enrollees who would pay money and expend labor on behalf of NXIVM and the Inner Circle.

4.     The multi-level marketing scheme involved the combined use of written materials that were created by Raniere and the oral dissemination of false and misleading statements to accomplish the goals of Raniere, Clare and Sara Bronfman, and other members of the Inner Circle.

5.     For example, certain written materials distributed to enrollees reflected a chart (the "Courses Chart"), which showed the courses that enrollees would need to take to complete a subprogram called "Ethos," and which they would need to pay for with money or labor, to attain a higher status in NXIVM and become qualified to earn compensation. One clear implication of the Courses Chart was that the set of Ethos courses was limited, that each course had a name, and that the program culminated in the attainment of "Level 3 Certification," which was the completion of Ethos. The Courses Chart shows the name of each of the fifty courses that enrollees needed to take to reach the Level 3 Certification, which was necessary to become a Coach.

6.     The Courses Chart was false and misleading because new courses were added to the regime to extend the program, and the money and labor Plaintiffs would have to expend on it,

---

[2] Capitalized terms are defined in the TAC, which is incorporated herein by reference.

and because enrollees were required to repeatedly re-take courses. Examples of similar false and misleading representations as it relates to specific Plaintiffs are alleged below.

7.     Other written NXIVM materials included false or misleading statements. For example, one document promulgated to enrollees represented that "[w]e consider our coaches to be the highest-paid people in our organization" and that through the "ESP Coaching Program" enrollees would be "qualified to begin earning an income in an entirely new career." Those statements were false and misleading because even after enrollees attained the rank of Coach they were told, as alleged with greater specificity below, that they were not qualified to earn income based on labor that they would perform at that rank. Rather, they were told that they would need to become Proctors to earn income. In fact, very few individuals were ever made Proctors, and whether individuals were made Proctor was not based primarily on the successful completion of the NXIVM curriculum.

8.     NXIVM's multi-level marketing scheme also relied on false and misleading oral statements. The oral statements were devised by Raniere and intended by him, and upon information and belief, Clare and Sara Bronfman to be disseminated by NXIVM enrollees to others to effectuate the multi-level marketing scheme.

9.     For example, at one critical meeting, Raniere met with enrollees, including Plaintiffs Sarah Edmondson and Mark Vicente, to instruct them on how to disseminate statements that, unbeknownst to Edmondson and Vicente, were false or misleading and designed to persuade more people to enroll in NXIVM programs. Clare and Sara Bronfman attended that session. Other false and misleading statements were, as alleged below, disseminated directly by members of the Inner Circle, including Clare and Sara Bronfman.

10.     The written and oral statements described herein formed part of the NXIVM Inner Circle's scheme to defraud Plaintiffs of their money and labor.

**REVISED SCHEDULE A**[3]

| | Name | RICO Allegations |
|---|---|---|
| 1. | Sarah Edmondson | • Edmondson paid for Levels 1-5 of NXIVM EM Practitioner training ("EMP training") in reliance on the representations by Nancy Salzman, Lauren Salzman, and Daniella Padilla (a NXIVM Proctor), that, on completing that training, she would be authorized to offer EM sessions to clients for a fee and pursue a career as a Head Trainer. This representation was false, because after she paid for and attended the EMP training, Nancy Salzman, Lauren Salzman, and Padilla announced that all EMP students, no matter what level they had achieved, had to begin again at Level 1 because of newly announced changes to the curriculum, so Edmondson was not certified as an EMP, could not offer EM sessions to clients for a fee, and was unable to become a Head Trainer.<br><br>• Edmondson worked without compensation to enroll students in reliance on the representation by Clare Bronfman that, as a Field Trainer, Edmondson would be entitled to a commission of 20% of the training fees for every student she enrolled. The representation was false because after Edmondson enrolled students as a Field Trainer she received between 0% and 10% of her enrollees' training fees as commissions. |
| 2. | Jessica Joan Salazar | • Salazar incurred expenses moving to Albany, and worked without compensation to develop a business plan for a t-shirt company, in reliance on the representation by Raniere that she would be a co-owner of the business with him and have a share of the profits. This representation was false because after she relocated to Albany, Raniere did not start the business with her, and he never intended to do so, but rather made that representation so Salazar would move to Albany and become a part of the NXIVM community. |

---

[3] Plaintiffs Toni Natalie, Tanya Hubbard, Warne Livesy and Adrian do not reallege their substantive or conspiracy RICO claims (Counts I and II).

| 3. | Soukiana Mehdaoui | • Mehdaoui moved to Albany (and paid for flights, moving expenses, and train travel to and from New York City) in reliance on the representation by Allison Mack that she would be employed by The Source as a cinematographer and director and eventually help run its production company. This representation was false because after she relocated to Albany she did not receive employment as the cinematographer and director for The Source. |
|---|---|---|
| | | • Mehdaoui paid for and attended trainings in Albany, including SOP and SOP2, (whose costs she was told were necessary to advance in the organization and develop trust with key stakeholders and that would prepare her for the responsibilities the role would entail) in reliance on the representation by Mack that on completing the training she would have the opportunity to create films with Mack and lead video production for other NXIVM programs under Mark Vicente. This representation was false because after she completed the training, she was not employed to lead video production for other NXIVM programs under Mark Vicente. |
| | | • Mehdaoui also spent money on JNESS in Mexico City, and worked throughout the training by taking photos and videos in exchange for only a minimal discount on her training costs, in reliance on the promise by Mack that on completing the training, she would be authorized to lead media strategy for a new social media & branding agency ("Ubique") supporting NXIVM organizations. This representation was false because after she completed the training, she was not authorized to lead media strategy for a new social media & branding agency. |
| 4. | Nicole | • Nicole spent thousands of dollars on The Source curriculum, travel, and accommodations in Albany for the duration of the training, in reliance on the representations by Allison Mack and Mark Hildreth (a Proctor in ESP and founder of The Source) that on completing the curriculum, she would be paid to teach others the material, which was false because after she completed the curriculum, she was not paid to teach others the materials. Rather, Mack told her that before she could teach the curriculum, she needed to complete the material a second time and pay thousands of dollars more. Then, once she completed the material a second time, she taught the curriculum in multiple training sessions but was not paid for that labor. Mack then told her that she would be compensated through a teaching commission only if she recruited others to pay $6,000 for the program. |

| 5. | Daniela | • Daniela traveled from Mexico to Albany in reliance on the representations by Lauren Salzman, and Raniere that she would be employed as a computer programmer. Those representations were false because when Daniela arrived in Albany, Raniere and ESP did not sponsor her for a visa and did not employ her as a programmer. In order to support herself, Daniela accepted jobs doing data entry, administrative work, and housekeeping but was not compensated for this work.<br><br>• Daniela also forewent an education at an Ivy League university in reliance on the representation by Karen Unterreiner, and Keith Raniere that ESP and Raniere would provide her with education superior to an Ivy League university level education. |
|---|---|---|
| 6. | Camila | • Camila worked full time to develop and implement the programs and activities for children enrolled in RCG without compensation over a span of 10 years in reliance on representations by Raniere. First, Raniere told her that the education and experience she obtained in working for RCG would be transferable to businesses outside the NXIVM umbrella, which was false because the training was only applicable to the NXIVM system. Second, Raniere told her that when RCG was formed as a legal entity she would be an owner of the company, have decision-making powers and be paid for the work she had performed from the company's revenues. But when Raniere formed RCG as a company, he did not make Camila an owner or pay her for her work from the company's revenues and she had no authority in the company. Third, Raniere told her that RCG would be a legitimate company, and the curriculum would provide children with an education superior to other alternatives. This was false because RCG was never licensed as a school for children. In reliance on Raniere's false representations, Camila not only worked for the company without compensation, but she also forewent other compensable childcare work because Raniere told her that her work with RCG precluded her from working with children in any capacity outside RCG. |

| 7. | India Oxenberg | • Oxenberg spent money on, and performed labor staffing intensives for NXIVM, administrative work for Pamela Cafritz and Clare Bronfman, and data entry for Clare Bronfman and Brandon Porter, on exchange for numerous NXIVM programs (16-day intensive, annual Ethos membership for several years, Level 2 training, and coaching retreats) in reliance on the representations by Sarah Edmondson, Mark Vicente, and others that the NXIVM program was equivalent to a graduate degree or "practical MBA." Those representations reasonably implied to Oxenberg that the curriculum could be completed, that it included valuable professional training, and that one could graduate from the program. Those representations were false and misleading. NXIVM's program was not equivalent to a graduate degree or "practical MBA" because it could not be completed, it did not include professional training, and individuals could not graduate from it. NXIVM's leaders added new courses to the program, specifically so that it could not be completed, to extract money and labor from Oxenberg. |
| | | • Oxenberg also performed work hiring and training MDS and recruiting families to enroll their children in RCG without compensation for two years in reliance on the representation by Michel Chernitzsky that when RCG was formed as a legal entity she would be an owner of the company, and be paid from the company's revenues for the work she had performed. But when Raniere formed RCG as a company, he did not make Oxenberg an owner or pay her for her work from the company's revenues. |
| 8. | Bonnie Piesse | • Piesse paid for Ethos, 16 day intensive, Mobius, Jness, Ethicist, Vweek, Coach Summits, and flights in reliance on the false representations by Lauren Salzman, Clare Bronfman, Sara Bronfman and Raniere who told her personally, or spoke at NXIVM events, and promised that if she paid for and attended the training, worked as a shadow coach without pay and attend coaching retreats to advance up NXIVM's stripe path, she would become a Proctor and make money from the students she enrolled and coached, and be paid to teach the training. Raniere personally asked Piesse what her monthly expenses were and assured her that once she became a Proctor her compensation would be much higher than her expenses. But after she paid for and attended the training and coaching retreats and became a Proctor, she was not paid the promised commissions for the students she enrolled and she was not compensated for teaching the training. |
| | | • Piesse also attended EMP training because Siobhan Hoteling and Sarah Edmondson told her that as an EM Practitioner she would be able to offer EMs to NXIVM's students for a fee and make money. |

| | | |
|---|---|---|
| | | However, after she completed Level 1, the Defendants announced that all EMP students, no matter what level they had achieved, had to begin again at Level 1 because of alleged changes in the curriculum, so she ceased pursuing that career path. |
| | | • Piesse worked without compensation for up to 18 hours a day over six months to develop the training for The Source and over a two year period to develop exo/eso, in reliance on the promise by Raniere that she would receive a commission based on every student who enrolled, and that she would be entitled to a percentage of the income the company made from fees The Source and exo/eso charged students for teacher training. Those representations were false because when Raniere formed the company he named Allison Mack and Pam Cafritz as the owners of the respective companies and did not pay Piesse the promised commissions. |
| 9. | Tabitha Chapman | • Chapman spent money on NXIVM curriculum such as intensives and Ethos courses in reliance on the representations by Nancy Salzman, Keith Raniere, Karen Unterreiner, and others that the curriculum could be completed. Those representations were false because NXIVM's leaders continuously added new courses to the program, specifically so that it could not be completed, to extract money and labor from Chapman. |
| | | • Chapman also suffered financial injury in reliance on false statements made about progression through the curriculum. For example, she paid for and took NXIVM curriculum based on the representation by Nancy Salzman and others that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid and worked for the 16 day and Level 2a, Level 2b and worked without pay coaching intensives, mentoring students, and organizing events, in reliance on the representation by Lauren Salzman, Nancy Salzman, Allison Mack, Nicki Clyne and others that on completing the training she would be promoted to Proctor and would be paid to teach the training. Those representations were false because she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). After she completed those courses, she was forced to retake the courses (and pay for them again) if she wanted to move up the stripe path and earn money from teaching courses and taking EMs. Chapman eventually took the courses a second time. |

| | | |
|---|---|---|
| | | • Chapman also worked on website development without compensation in exchange for Mobius training whose costs Ben Meyers and Karen Unterreiner told her were necessary for her to get more work as a web developer. She worked to pay for the Mobius training, and a short time after the training, Ben Myers severed her work agreement and did not provide her with further web development work, leaving her in debt for the training.<br><br>• In 2010, Nicki Clyne and others told her that if she paid to attend V week, she would be promoted at V week so she retook Ethos classes and Certification exams and attended V Week, but she was not promoted at V week.<br><br>• Chapman spent money on a move to Albany because she was promised by Unterreiner and Ben Myers that she would be able to work on the Jness website. That representation was false because after she moved to Albany, she was not employed to work on the website. |
| 10. | Ashley Mclean | • McLean spent money on the Ethos annual membership, and the Knife in reliance on the representations by Allison Mack that the curriculum could be completed, that she would graduate from the curriculum, and that the curriculum would include professional training that was transferrable to other businesses (outside the NXIVM umbrella). These representations were false because NXIVM's program did not include professional training, and individuals could not graduate from it. NXIVM's leaders continuously added new courses to the program, specifically so that it could not be completed, to extract money from Mclean.<br><br>• McLean was also deceived about the career path that the Knife, a company owned by Clare Bronfman, could provide in the media/publishing industry. She paid for the Knife training, flights to Albany, and rent while she lived in Albany in reliance on the representation by Mack and Nicki Clyne that if she moved to Albany and completed the training offered by the Knife, she would receive professional training to work in the media/publishing industry and be paid for her work doing data analysis for the Knife. This representation was false because after she moved to Albany and completed the training, she did not receive any professional training and she was not paid for her work. After she provided work as a data analyst, Nicki Clyne and Jens Erickson also told McLean that she needed to continue to be a member of the Knife and pay fees for membership as a condition of being eligible to be paid for |

| | | |
|---|---|---|
| | | her work. Clyne and Erickson told McLean that the directive came from Raniere and Clare Bronfman. |
| 11. | Mark Vicente | • Mark Vicente paid for a flight and relocation costs to move to Albany and took NXIVM curriculum in reliance on representations by Nancy Salzman and Sara Bronfman (made on a private jet owned by Clare and Sara Bronfman) that if he relocated to Albany and took the curriculum, NXIVM would finance the films that he wanted to produce and help him get the films made. Those representations were false because after Vicente relocated to Albany and completed the curriculum, Sara Bronfman told him that she would finance only the production of films approved by Raniere.<br><br>• Vicente also paid for EMP training levels 1-5, because he was told by Lauren and Nancy Salzman that this would enhance his ability to work with NXIVM students and increase his income; specifically, they told Vicente that once he reached Level 5 he would be able to charge an hourly fee for providing EMs. Those representations were false. Once Vicente reached Level 5, the goalposts were moved: all EMP students, no matter what level they had achieved, had to begin again at Level 1 because of supposed changes in the curriculum. |
| 12. | Anthony Ames | • Mark Vicente, at Raniere's direction, invited Ames to shoot a film and encouraged him to move from California to New York to work on the film. Clare Bronfman and Nancy Salzman personally assured him that he would be compensated for that work. When he arrived in New York, Vicente and Nancy Salzman informed him that to participate in the film he would need to take NXIVM-related courses and training that cost money. Ames paid for some of the courses with cash and worked to facilitate other training sessions for NXIVM without pay in exchange for other courses. By the time Lauren and Nancy Salzman informed him that he would need to pay to take courses to shoot the film, he had already uprooted his life by moving to New York and had incurred costs doing so.<br><br>• Lauren Salzman told Ames that if he became an EM Practitioner he would be able to earn money by offering EMs to paying clients. Ames relied on that representation when he paid to take EM Levels 1–3. But after he completed those levels, Lauren Salzman told him that he had to retake the training to requalify, which would cost more money. Ames would not have taken the initial Level 3 courses if he had known that he would just be told to pay more money to take the course again.<br><br>• Lauren Salzman told Ames that to become a Head Trainer he would |

| | | need to complete the training to become a Coach and Proctor and meet the recruiting requirements. In reliance on that representation, Ames paid for training to become a Coach and Proctor and worked on recruitment. But after he completed the courses and recruited the new members, he was not promoted to Head Trainer and Lauren Salzman told him that he had to take additional training, which would cost more money. Ames would not have taken the training if he had known that he would just be told to pay more money to take additional training. |
|---|---|---|
| 13. | Veronica Jaspeado | • Jaspeado paid for Anatomy of Mind and Body, Mobius and Characterization (3 times); Human Pain Ethicist 1-2 (twice); and Breaches of ethics, Ascension, Family Values, JNESS 1-8, SOP 1-2, Ethicist III, Reverence, The World Ethical Foundation Consortium, coach summits, V-week (nine times); EMP training; and flights to Albany and accommodations. She also taught Ethos classes twice a week, worked on committees, provided one on one coaching sessions to students, and assisted Proctors during training, for around 7 years without compensation, in reliance on representations by Keith Raniere, Clare Bronfman, Nancy Salman, Lauren Salzman, Emiliano Salinas, Alex Bettancourt, and Barbara Jeske (Proctor) that if she completed the training and unpaid work she would be promoted to Proctor and be authorized to open a NXIVM center in Mexico and make money. She also worked as a Coach in Universidad Iberoamericana de México without compensation in reliance on the representation by Nancy Salzman that this work would enable her promotion to Proctor. Those representations were false because after she paid for and completed the courses and performed the work, she was not promoted to Proctor. <br><br> • Jaspeado paid for the Knife of Aristotle training (twice) in reliance on representations by Rosa Laura Junco, Nicki Clyne and Jens Gould that on completing the training she would be paid to analyze articles. These representations were false because although she worked for The Knife analyzing articles for two years she was not compensated. <br><br> • Jaspeado paid for The Source training (twice) and Trainers in Training for The Source in reliance on the promise by Allison Mack that on completing the training she would be paid to teach the training and coach students. This representation was false because although she taught the training and coached students she was not compensated. <br><br> • Clare Bronfman personally attempted to persuade Jaspeado to |

| | | attend a NXIVM training in Fiji that cost $20,000. Clare Bronfman told Jaspeado in writing that Clare saw the training "as an investment in a business . . . for people who want to support or open this in their area and make a lot of money!" And Clare Bronfman reiterated later that it was "a training for people who we believe will want to be involved in the Company and help grow and make a lot of money!" Jaspeado did not take the training in Fiji because she could not afford it. But in part based on Clare Bronfman's representations to her about her likelihood of making money in NXIVM, Jaspeado spent money to go to Albany for six months to take training. |
|---|---|---|
| 14. | Paloma Pena | • Pena spent money on courses, coach summits, EMs, flights, and hotels in reliance on the representations by Edgar Boone and Jimena Garza (heads of the NXIVM center in Monterrey, Mexico) that if she attended training and coach summits, and worked without compensation, she would become a Coach and Proctor and be certified to get paid to teach the NXIVM curriculum. Those representations were false because after she paid for and completed the training and performed the required work, Boone and Garza told her she could not be promoted to Proctor unless she took additional training, provided additional work assisting coaches without compensation, and enrolled new members. |
| 15. | Charlotte | • Charlotte paid for Ethos classes to complete the training to be promoted to Coach in reliance on the false representations by Sarah Edmondson, Keith Raniere, Nancy Salzman, Lucas Roberts, Wendy Rosen-Brooks, Di Goodman, and Charmel Bowden (Proctors) that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for Origins training, V-Weeks and Coach Summits in Albany, worked without pay coaching intensives, mentoring students, and organizing events, and incurred travel expenses for mandatory trips to New York and other locations over the next 7 years in reliance on the representation by Sarah Edmondson, Keith Raniere, Clare Bronfman, Nancy Salzman, Lauren Salzman, Lucas Roberts, Leah Mottishaw, Wendy Rosen-Brooks, Crystal Rosen-Brooks, Di Goodman, Shawn Goodman, and Charmel Bowden (Proctors) that taking the training and performing the work was "a practical MBA" and that on completing the training she would be promoted to Proctor and would be paid to teach the training. Those representations were false because the program was not equivalent to a "practical MBA" and she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or |

| | | |
|---|---|---|
| | | rejected by their coach). In reliance on Sarah Edmondson's representations, Charlotte not only worked for the company without compensation, but she resigned from her employment that generated over $2,000 CAD a month because Edmondson told her that working as a Salesperson for ESP precluded her from working as a Salesperson for any other entity. |
| 16. | Rachel | • Rachel spent money on the 5 day, the 16 day, Mobius, flights, and accommodations, in reliance on the representations by India Oxenberg, Bonnie Piesse, Mark Vicente, and Michel Chernitzky that NXIVM had a specific technology that would allow her to overcome emotional distress, particularly anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM had no such technology. <br><br> • Rachel spent money Level 1 training (multiple times) Mobius, and Ethos and flights, and accommodations, in reliance on the representations by India Oxenberg, Michele Chernitzky, Brian Elliot and Mark Elliot that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for Mobius and performed administrative and housekeeping work without compensation for ESP in reliance on the representations by India Oxenberg, Michele Chernitzky, Brian Elliot and Mark Elliot that that on completing the training and performing this work, she would be promoted to Proctor and would be paid to teach the training. Those representations were false and she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). Instead Brian Elliot told her that she needed to pay for and take additional training, which would cost more money. In reliance on those representations, Rachel not only worked for the company without compensation, she resigned from her employment promoting skincare products because they told her that working as a Salesperson for ESP precluded her from working as a Salesperson for any other entity. |
| 17. | Valerie | • Valerie performed administrative work for Delegates (a NXIVM company) in reliance on the promise by Mack that she would be compensated on an hourly basis, which was false because she was never compensated for any work that she performed for Delegates. |
| 18. | Adrienne Stiles | • Stiles paid for monthly SOP and Jness memberships, and Ethos and |

| | | |
|---|---|---|
| | | performed graphic design work, office administration, and prepared transcriptions without compensation in exchange for the 5 day intensive, 10 day intensive, and Jness Track, in reliance on the representations by Clare Bronfman, Lauren Salzman and Jim DelNegro, that the curriculum could be completed, that she would graduate from the curriculum, and that the curriculum was akin to a graduate program or "practical MBA" that would include professional training. Lauren Salzman and Jim DelNegro also told her that the curriculum included entrepreneurship and leadership training, that would be transferable to businesses outside the NXIVM umbrella. Those representations were false and misleading. NXIVM's program was not equivalent to a graduate degree or "practical MBA" because it could not be completed, it did not include professional training, and individuals could not graduate from it. NXIVM's leaders continuously added new courses to the program, specifically so that it could not be completed, to extract money and labor from Stiles and others. Clare Bronfman and Keith Raniere told Stiles that she would need to complete Jness Tracks (eight intensives), SOP training, and Mobius so she paid or worked without compensation for this curriculum. |
| | | • Stiles worked up for up to 18 hours a day over two years to develop and run exo/eso, in reliance on the representation by Raniere that if she did so, then she would receive an ownership interest in exo/eso and be entitled to a percentage of the revenue the company made from fees it charged students for teacher training. That representation was false because when Raniere formed the company he named Pam Cafritz as the owner and Stiles received no ownership interest and only partial compensation. Stiles also paid for Ethicist, whose costs Clare Bronfman told her were necessary to advance in the organization and that would prepare her for the responsibilities the role would entail. |
| 19. | Lindsay MacInnis | • Raniere invited MacInnis to be a member of NXIVM's Ultima committee tasked with developing the curriculum for programs including exo/eso, and The Source. MacInnis paid for SOP, Ethicist and Jness training (whose costs she was told were necessary to advance in the organization and develop trust with key stakeholders and that would prepare her for the responsibilities the role would entail) and worked for up to 18 hours a day for a year to develop the training for exo/eso, in reliance on the promise by Keith Raniere that she would receive a commission based on every student who enrolled in and be entitled to a percentage of the income company made from fees exo/eso charged students for teacher training. This representation was false because when Raniere formed the company he named Clare Bronfman as the owner and |

| | | |
|---|---|---|
| | | MacInnis had no ownership interest. |
| 20. | Jennifer Kobelt | • Kobelt spent money on the coaching training and Jness in reliance on the representations by Raniere, Nancy Salzman, Lauren Salzman, Karen Unterriner and Wendy Rosenbrooks (Proctors) that if she completed the training to become a Proctor and met specified recruiting requirements, then she would be promoted to Proctor and authorized to earn money through teaching. But after she completed the courses and recruited the new members, she was not promoted to Proctor or authorized to earn money through teaching and Sarah Edmondson, Wendy Rosenbrooks and Allison Mack told her that she had to take additional training, which would cost more money.<br><br>• Kobelt also spent money on The Source in reliance on the representations by Allison Mack that if she took The Source training and The Source teacher training then she would be paid to teach The Source. That representation was false because after Kobelt paid for and completed the training, she was not authorized to receive payment for teaching The Source. |
| 21. | Margot J. Leviton | • Leviton suffered financial injury, including payment to travel to Albany and money for lodging in Albany, when she moved from Vancouver to Albany in reliance on representations made to her by Nancy Salzman that NXIVM had a treatment for OCD that would obviate the need for her to continue taking the medication she was on and eliminate her obsessive compulsive disorder tendencies. Those representations were false because NXIVM's leadership, including Nancy Salzman, knew they possessed no such treatment for OCD and made that representation for the purpose of having Leviton to rely on it, so that she would serve as a test subject in NXIVM's experiments, which were designed to cast NXIVM and its leadership in a favorable light. |

| 22. | Isabella Constantino | • | Constantino spent money on transport and accommodations and worked for NXIVM's Girl's School without pay in reliance on the representation by Rosa Laura Junco that she would have the opportunity to work with Keith Raniere and be paid for this work. This representation was false because after traveling to Clifton Park almost every weekend for the three and a half months, working on assignments and participating in telephonic meetings, Constantino was not compensated. Instead, Junco told her that if she wanted to be compensated, she would need to move to Albany to help grow the program. |
| | | • | Constantino participated as a subject in the Tourette's study (she participated in screening interviews, on-camera interviews before and after each day of the 16 day training, took the 16 day curriculum and participated in EMs with Nancy Salzman) without compensation in reliance on representations by Nancy Salzman that NXIVM had a treatment for Tourette's that would obviate the need for her to continue taking the medication she was on and eliminate her tics. Those representations were false because NXIVM's leadership, including Nancy Salzman, knew they possessed no such treatment for Tourette's and made that representation for the purpose of having Constantino rely on it, so that she would serve as a test subject in NXIVM's experiments, which were designed to cast NXIVM and its leadership in a favorable light. |
| 23. | Carysa Cottrell | • | Cottrell participated as a subject in the Tourette's study (she participated in screening interviews, on-camera interviews before and after each day of the 16 day training, took the 16 day curriculum and participated in EMs with Nancy Salzman) without compensation in reliance on representations by Nancy Salzman that NXIVM had a treatment for Tourette's that would obviate the need for her to continue taking the medication she was on and eliminate her tics. Those representations were false because NXIVM's leadership, including Nancy Salzman, knew they possessed no such treatment for Tourette's and made that representation for the purpose of having Cottrell rely on it, so that she would serve as a test subject in NXIVM's experiments, which were designed to cast NXIVM and its leadership in a favorable light. |
| 24. | Deanne Brunelle | • | Brunelle spent money on an Ethos membership in reliance on the representation by Lucas Roberts that network marketing (or "multi-level") marketing enterprises were unethical and that NXIVM was not a network marketing enterprise. That representation was false because a primary manner of advancing in the NXIVM program was through enrollment. Brunelle did not know that recruitment was part of Ethos when she spent money on the program. Nor did she |

| | | know that her recruitment into the program led to the promotion of the individual who recruited her. |
|---|---|---|
| | | • Brunelle spent money on a 5 day and the Ethos membership in reliance on representations by Sarah Edmondson, Lucas Roberts, and Shayna Holmes that taking those programs would improve her finances, including by allowing her to become a Coach and ultimately a Proctor, and that the programs would offer her professional development. Those representations were false because the NXIVM programming did not improve her finances or offer her professional development. |
| 25. | Karla Diaz Cano | • Cano paid for the 16-day, Ethos, flights and accommodations in reliance on the representation by Michel Chernitzky, Marc Elliott, Cedric, Edgar Boone, India Oxenberg, Nancy Salzman that on becoming a Coach, she would be promoted up the stripe path. On becoming a Coach, she paid for Jness and Level 2 curriculum (Mobius, Human Pain), Jness and SOP. But after she completed the training and was promoted to Coach she was invited to DOS and, after providing collateral, decided to abandon the coaching path. |
| | | • Cano also paid for exo/eso training and incurred relocation costs moving to Albany because she relied on the representation by Danielle Roberts, Keith Raniere (in a forum), Eduardo Asunsolo, and others that if she moved to Albany and took exo/eso training, then she would be provided with materials and be authorized to start her own center. But after she completed the training, she was not provided with materials to start her own center or authorized to do so. Rather, Danielle Roberts told her that she needed to continue to work for exo/eso without pay. |
| 26. | Pamela Cooley | • Cooley paid for EM training Levels 1-4 and spent money on travel and accommodations in Tacoma and Albany in reliance on the representations by Clare Bronfman, Nancy Salzman, and Lauren Salzman that upon completion of the training, she would be certified as an EM Practitioner and authorized to earn money by offering EMs to clients. These representations were false because after she completed the training, Lauren Salzman, Karen Unterreiner, Nancy Salzman and Keith Raniere told her that she had to retake the training to requalify, which would cost more money. |
| | | • Cooley paid for Ethicist 1-3, flights and accommodations from Vancouver to Albany in reliance on the representations by Clare Bronfman, Lauren Salzman, Nancy Salzman, Karen Unterreiner, Pam Cafritz, Barbara Jeske, Alex Betancourt, Allison Mack, Esther |

| | | |
|---|---|---|
| | | Chiapponne, Emiliano Salinas that on completing the curriculum she would be certified position as an "Ethicist" a highly paid position as a "consultant" in ESP companies and companies outside the ESP umbrella. This representation was false because on completing the training, ESP did not employ her as an Ethicist. |
| 27. | Rosalyn Cua | • Cua performed work without compensation over an 18-month period to create a training called OneAsian for Asian women in reliance on representations by Raniere that she would be paid for developing the training program and that it would be a viable business. But after she worked to develop, promote and operate the One Asian training program she was never paid. |
| 28. | Brieanna Fiander | • Fiander paid for training and worked without compensation as a Coach in reliance on the representations by Wendy Rosenbrooks and Diane Goodman that the training was akin to a graduate program or "practical MBA" that would include professional training. Those representations were false because she did not receive any professional training. |
| 29. | Shayna Holmes | • Holmes spent money on an Ethos membership, Jness training, V week, and flights and accommodations to attend V week, in reliance on the representations by Wendy Rosenbrooks and Lucas Roberts (Proctors) that curriculum could be completed, that she could graduate from the curriculum, that the curriculum was akin to a graduate program or "practical MBA" and that it would include professional business development training that would lead to more income in her business. These statements were false because NXIVM continued to add modules to the courses and the courses did not provide any professional business development training.

• Holmes also paid money for training based on the representations by Lucas Roberts that if she completed the training to become a Proctor she would be promoted to Proctor and paid to teach the NXIVM curriculum. That representation was false because promotions were not based on any metrics and were based on arbitrary decisions by a student's Coach (the student was required to draft a statement about their "life issue" and how they would overcome it that would be either accepted or rejected by their Coach).

• Holmes relied on claims made by Nancy Salzman that NXIVM curriculum was based on a scientific technology that could produce measurable results and would succeed at curing emotional distress where psychology had failed. That representation was false because NXIVM had no such technology. |

| | | |
|---|---|---|
| 30. | Polly Green | • Green spent money on an Ethos membership for two years for herself and her partner in reliance on the representations by Sarah Edmondson that NXIVM had a specific technology that would allow her to overcome emotional distress, particularly her social anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. That representation was false because NXIVM had no such technology. |
| 31. | Andrea Hammond | • Hammond spent money on a monthly SOP membership for five years in reliance on the representations by SOP leaders and Natalia Gaviria that if she paid for this membership, she would receive SOP-specific curriculum, but after paying money she never got any SOP-specific curriculum. |
| 32. | Yan Huang | • Yan Huang spent money on the 5-day intensive, One Asian curriculum, flights, and hotels in reliance on the representations by Alice Chen that the curriculum could be completed and that she would graduate from the curriculum. These representations were false because NXIVM's program could not be completed, and individuals could not graduate from it. NXIVM's leaders continuously added new courses to the program, specifically so that it could not be completed, to extract money and labor from Huang and others. |
| 33. | Sara Lim | • Lim paid for and attended the Ethos training three times in reliance on the false representations by Sarah Edmondson, Rebecca Davis, Diane Goodman, that the curriculum could be completed, that she would graduate from the curriculum, and that the curriculum was akin to a graduate program or "practical MBA" that would include professional training. Vancouver coaches also told her that the curriculum included entrepreneurship and leadership training, that would be transferable to businesses outside the NXIVM umbrella which was false because the training was only applicable to the NXIVM coaching system.<br><br>• Lim also spent money on EMs in reliance on the representations by Nancy Salzman and Vancouver coaches that NXIVM had a specific technology that would allow her to overcome emotional distress, particularly anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. That representation was false because NXIVM had no such technology.<br><br>• Lim spent money on exo/eso teacher training and relocation costs in |

| | | reliance on the representation by Peter Christie, Danielle Roberts, and other exo\|eso leaders that on completing the training she would be authorized to own an exo\|eso center and teach the training certification program to paying trainees. This representation was false because after she completed the training, she was not authorized to open a center and teach the training certification program for payment. Danielle Roberts told her that the development of the curriculum for the training was not complete, and that she needed certified trainers to stay in Albany and continue to work to develop the curriculum. Lim worked to develop and teach the curriculum without pay. |
|---|---|---|
| 34. | Ariella Menashy | • Menashy paid for EMP Levels 1 and 2 and worked by doing practice EMs in reliance on the representation by Nancy Salzman, Rosa Laura Junco and Wendy Rosen-Brooks that on completion of EMP Levels 1 and 2 she would be certified as an EM practitioner and be authorized to make money by offering EMs to paying clients. That representation was false because after she completed EMP Levels 1 and 2 Nancy Salzman and Wendy Rosen-Brooks told her that in order to be certified as an EMP, she would need to take Levels 3 and 4. Menashy paid for EMP Levels 3 and 4 but after she completed them Nancy Salzman told her that she would have to redo all four levels again to be certified.<br><br>• Menashy also worked without compensation to open a RCG center in Vancouver in reliance on the false representations by Loreta Garza that she would be compensated for this work. This representation was false because after she completed the work to start a center and signed up a paying client, Loreta Garza told her that she was not authorized to operate a center. |
| 35. | Elham Menhaji | • Menhaji paid for Ethos, to complete the training to be promoted to Coach in reliance on the representation by Cedric Fuat (her Coach) that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for the 16-day intensive, Ethos (twice), and level 2 curriculum (Origins, Human Pain and Mobius) recruited new members and worked without compensation as a shadow Coach in reliance on the representation by Fuat that on completing the training she would be promoted to Proctor and would be paid to teach the training. Those representations were false she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). |

| 36. | Maja Miljkovic | • | Maja Milijkovic paid for the 11 day intensive, Ethos membership, level 2 intensives, a flight, relocation costs to move to Albany, and accommodations, and worked to develop the training for the Ultima companies The Source and The Knife in reliance on the representations by Raniere that if she relocated to Albany and completed the training, she would be authorized to teach The Source and The Knife and be paid. Raniere also promised that he would make her a co-owner and she would receive a share of the revenue from those entities. This representation was false because after she completed the training, she was not paid for teaching the training and Raniere did not make her a co-owner of The Source and The Knife or pay her any share of the revenues of those entities. |
|-----|-----|-----|-----|
| 37. | Michelle Neal | • | Michelle Neal paid for Ethos classes to complete the training to be promoted to Coach in reliance on the representations by Raniere, Nancy Salzman, Lauren Salzman, Wendy Rosenbrooks and Lucas Roberts that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for Jness and V-Weeks and Coach Summits in Albany and worked without pay coaching intensives, mentoring students, and organizing events, alongside incurring travel expenses in reliance on the representation by Raniere, Nancy Salzman, Lauren Salzman, Wendy Rosenbrooks and Lucas Roberts that on completing the training she would be promoted to Proctor and would be paid to teach the training. Those representations were false because she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). |
| 38. | Susan Pratt | • | Pratt spent money on the 5-day intensive in reliance on the representations by Anthony Madani and Lucas Roberts that the curriculum would boost her confidence and success in investing in stocks. Those representations were false because the curriculum did not include any information on investing. |
| 39. | Alison Rood | • | Rood paid for training to become a coach and performed unpaid work without compensation running Ethos training participating in a committee and editing a newsletter in reliance on the representation by Mark Vicente, Michel Chernitzky, and Mark Hildreth that on completing the training and performing this work she was be promoted to Coach and she could take the training to become a Proctor and earn an income by teaching the NXVIM curriculum to students. This representation was false because after she completed the training, she was not promoted to coach and she |

| | | |
|---|---|---|
| | | was told that in addition to enrolling students, one of those students would also need to enroll someone. |
| 40. | Katie Shaw | • Shaw spent money on Level 1 and 2 intensives, Ethos curriculum, Jness intensive and groups, EM's, flights and accommodation on the representations by Mark Vicente and Sarah Edmondson that NXIVM would teach her business skills. That representation was false because NXIVM had no curriculum on business.<br><br>• Shaw also suffered this injury in reliance on the representations Mark Vicente and Sarah Edmondson that NXIVM had a specific technology that would allow her to overcome emotional distress, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. That representation was false because NXIVM had no such technology. |
| 41. | Kristin | • Kristin spent money on the 16 day, the 5 day (twice), and flights and accommodations in Los Angeles and Vancouver in reliance on the false representations by Wendy Rosenbrooks, Mark Elliott and Brian Elliott that NXIVM had a specific technology that would allow her to overcome emotional distress, particularly anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM had no such technology.<br><br>• Kristin paid for the 5 day intensive (twice) to complete the training to be promoted to Coach in reliance on the false representations by Mark Elliott, Brian Elliott and Christopher Pearson-Smith (her Coach) that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for an Ethos membership for two years, a level 2 intensive and flights and worked without pay coaching three 5-day intensives, mentoring students, and organizing events, in reliance on the representation by Mark Elliott, Brian Elliott and Christopher Pearson-Smith that on completing the training and this work, she would be promoted to Proctor and would be paid to teach the training. Those representations were false because on completing the training and work she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). |
| 42. | Hannah | • Vanderheyden spent money on an 11-day, Ethos classes, V-week, |

| | | |
|---|---|---|
| | Vanderheyden | flights, a 5-day intensive, to complete the training to be promoted to Coach in reliance on the false representations by Sarah Edmondson that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for Ethos classes, and the 11-day intensive, and worked without pay coaching intensives, mentoring students, and organizing events, in reliance on the representation by Sarah Edmondson and others that on completing the training and this work, she would be promoted to Proctor and would be paid to teach the training. Those representations were false because on completing the training and performing the work, she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach).<br><br>• Vanderheyden also spent money on exo/eso curriculum, flights, transportation and accommodations for two months in New York in reliance on the representation by Lindsay MacInnis that if she moved to Albany and took exo/eso training, then she would be provided with materials and be authorized to start her own center and be paid to teach the training. This representation was false because after she completed the training, she was not provided with materials to start her own center or authorized to do so or paid to teach the training. Rather, Roberts told her that she needed to continue to work for exo/eso without pay. |
| 43. | Juliana Vicente | • Juliana Vicente paid for a flight and the cost of shipping her belongings from the State of Washington to Albany in reliance on the representation by Nany Salzman that on relocating to Albany, she would be employed by ESP. This representation was false, because after Juliana relocated to Albany, Nancy Salzman denied having offered her employment with ESP and she was not employed by ESP. In order to support herself, Juliana later accepted jobs cleaning ESP members' residences for minimum wage.<br><br>• Later, when Juliana was employed by the accounting department at ESP, she paid for ESP curriculum, because Karen Abney and Karen Unterreiner told her that taking this curriculum was necessary if she wanted to continue to be employed by ESP. |
| 44. | Susan Patricia Vieta | • Susan Patricia Vieta spent money on courses, intensives, the Ethos program, and a trip to V-Week including flights, event activities, and other travel expenses in reliance on the false representations by Sarah Edmondson and Mark Vicente that NXIVM had a specific technology that would allow her to overcome emotional distress, |

| | | particularly anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. This representation was false because NXIVM had no such technology. |
|---|---|---|
| 45. | Susan Wysocki | • Susan Wysocki spent money on the 16-day, Jness and SOP programs, Mobius and V week in reliance on representations by Pamela Cafritz, Barbara Bouchey and others that the curriculum included professional training that would help with her career. Those representations were false because the curriculum did not include any professional training. |
| 46. | Kayla Grosse | • Grosse paid for a flight and relocation costs, including having her vehicle shipped to Albany, in reliance on the representations by Allison Mack, Pam Cafritz and Mariana (Jness leadership) that if she relocated to Albany she would be employed to manage the social media accounts for Jness. These representations were false because after she relocated to Albany, Pam Cafritz, Mariana and Esther Carlson (Proctor) told her that she would not be employed by Jness in that role until she paid for and attended Ethos. But after Grosse edited videos for several hours without compensation in exchange for the cost of the training, and attended the training, she was still refused the job of social media manager for Jness.

• Grosse paid for Human Pain (a course), and performed work editing videos for several hours without compensation or with only partial compensation in exchange for the Jness track multiple times in reliance on the representations by Pam, Marianna, and Esther Carlson, that if she took the course, she would be given editing jobs and be able to work for Jness. These representations were false because after she took the course, Pam, Marianna, and Esther Carlson told her that she needed to take more curriculum which would cost more money. |
| 47. | Stephanie Fair-Layman | • Fair-Layman worked without compensation selling NXIVM trainings in reliance on the representation by Sarah and Mark Vicente that if she enrolled new members who paid for NXIVM training, she would get a percentage of all training fees that they subsequently paid as a commission. This representation was false because after she enrolled new members and they paid for curriculum, she did not receive a percentage of those fees as a commission.

• Fair-Layman spent money on SOP weekends, and an ongoing monthly membership in reliance on the false representations by Damon Brink that if she paid money, she would receive curriculum, |

but instead of receiving the curriculum after paying money she was told that she would get the curriculum only if several people participated in "readiness drills." She was in SOP for over two years, but she never got any curriculum.

- Fair-Layman also spent money on the 16 day and Ethos in reliance on the representations by Nancy Salzman and others that, if she completed the training to become a Proctor and met the recruiting requirements, she could get paid to teach the NXIVM curriculum. These representations were false because after she completed the courses and satisfied the recruitment requirement, she was not promoted to Proctor and Michel Chernitzski, Edgar Boone and Mark Vicente told her that she had to take additional training, which would cost more money. Cedric Fuat and Nancy Salzman told Fair Layman that it was possible to complete the training and enrollment requirements and be promoted to Proctor in six months to a year. But despite completing the training and recruiting requirements, she was not promoted to Proctor. Instead, she was told to take additional curriculum which would cost more money. Additionally promotions were not based on any metrics and were based on arbitrary decisions by a student's coach (the student was required to pass an examination, but the Coaches administering the exam refused to tell her why she had not passed or permit her to re-take the test).

- Fair-Layman paid for Ethicist 1, flights and accommodations from New York City to Albany in reliance on the representations by Nancy Salzman that on completing the curriculum she would be certified as an "Ethicist" a highly paid position as a "consultant" in ESP companies and companies outside the ESP umbrella. This representation was false because on completing the training, ESP did not employ her as an Ethicist.

| 48. | Gabrielle Gendron | • Gendron spent money on 5 day intensives, flights and accommodations for herself and her family to attend V-Week in NY, flights and accommodations to attend Mobius in Albany, an Ethos membership for three years, as well as a Jness membership for two years in reliance on the false representations by Nancy and Lauren Salzman, Wendy Rosenbrook, Lucas Roberts, Jim Delnegro, and Diane Goodman that NXIVM had a specific technology that would allow her to overcome emotional distress, particularly her childhood trauma, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM had no such technology. |
| --- | --- | --- |

| 49. | Sarah Wall | • Wall spent money on taking the 5 day course multiple times, V week, completing the Ethos curriculum twice, and flights, accommodations and childcare expenses, in reliance on the false representations by Lauren Salzman, Nancy Salzman and Allison Mack that the curriculum could be completed, that she would graduate from the curriculum, and that the curriculum was akin to a graduate program or "practical MBA" that would include professional training transferable to businesses outside the NXIVM umbrella. These representations were false because NXIVM continued to add new modules to the curriculum, and the training was only applicable to the NXIVM coaching system.<br><br>• Wall spent money on EMs in reliance on the false representations by Nancy Salzman and Wendy Rosenbrooks (Proctor) that NXIVM had a specific technology that would allow her to overcome emotional distress, particularly anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM did not have any such technology. |
|-----|-----------|---|
| 50. | Scott Starr | • Starr paid tuition for two of his children to attend Rainbow Cultural Garden in reliance on the representations by Clare Bronfman, Sara Bronfman, and Loreta Garza that RCG provided a language immersion curriculum. These representations were false because the MDS who cared for the children were not assessed for proficiency in either English or any other language and did not have any background or experience in teaching or child development.<br><br>• Starr also spent money to relocate his family to Albany in reliance on the representations by Esther Carlson and Jim DelNegro that, if he completed the training to become a Proctor and met the recruiting requirements, he could get paid to teach the NXIVM curriculum. These representations were false because after he completed the courses and satisfied the recruitment requirement, he was not promoted to Proctor and he was told that he had to take additional training, which would cost more money. Jim DelNegro told Starr that it was possible to complete the training and enrollment requirements and be promoted to Proctor in six months to a year. But despite completing the training and recruiting requirements, he was not promoted to Coach until three years later. Instead, promotions were not based on any metrics and were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). |

| | | • Starr worked for over 480 hours organizing the triathlon race and awards ceremony at V-Week for three years without compensation in reliance on the representation by Clare Bronfman that he would receive a discount on the price of attendance at V-Week. This representation was false because after performing the work, he did not receive any discounts on V-Week attendance. |
|---|---|---|
| | | • Starr spent money on SOP weekends, courses and events in reliance on the false representations by Jim DelNegro that if he paid money, he would receive courses, but instead of receiving the courses after paying money he was told that he would get the curriculum only if several people participated in "readiness drills." He was in SOP for over two years, but he never got any curriculum. Jim DelNegro told Starr that he would be compensated for holding SOP events, so he organized and conducted SOP events in Austin and Atlanta and paid for flights, hotels and the venues where the events were held. That representation was false because he was not compensated. Only after the events were held was he told that he did not meet the minimum number of enrollees required to be compensated. |
| | | • Starr paid for the Knife training, in reliance on the representations by Clare Bronfman and Nicki Clyne that if he completed the training offered by the Knife, he would receive professional training to work in the media/publishing industry and be paid for his work doing data analysis for the Knife. These representations were false because he did not receive any professional training, and he was not paid for his work. After he completed the training, he was also told that he needed to continue to be a member of the Knife and pay fees for membership as a condition of being eligible to be paid for his work. |
| 51. | Philip Akka | • Akka spent money on the 16-day intensive, three Jness intensives, the 2A intensive, Mobius intensive, Human Pain intensive, an Ultima course and three V-Weeks, involving multiple train journeys to Albany and accommodation expenses on different occasions, in reliance on representations by Nancy Salzman, Lauren Salzman, Edgar Boone, Esther Chiappone, and Jim Del Negro (Proctors) that NXIVM had a specific technology that would allow him to overcome emotional distress, particularly his social anxiety and childhood trauma, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM had no such technology. |
| | | • Akka paid for a year membership of Ethos curriculum because Nancy Salzman and Edgar Boone told him that Ethos was akin to a |

| | | |
|---|---|---|
| | | "practical MBA" that would include professional training transferable to businesses outside the NXIVM umbrella. These representations were false because the Ethos training did not include professional training that was transferable to other businesses or valuable outside NXIVM, and was only applicable to the NXIVM coaching system. |
| | | • Akka spent money on SOP weekends and a monthly SOP membership in reliance on the representations by Jim DelNegro (one of the founders of SOP) that if he paid money he would receive curriculum, but instead of receiving the courses after paying money he was told that he would get the curriculum only if several people participated in "readiness drills." He was in SOP for almost two years but he never received any curriculum. |
| | | • Akka also paid for several SOP weekends and SOP Complete curriculum in reliance on the representation by Damon Brink (one of the founders of SOP) that SOP training was an opportunity to learn how to make hundreds of thousands of dollars per year from "the original founder" Keith Raniere who had "created over one hundred millionaires" and charged businesses $10,000/hour for consulting. This representation was false because Raniere never provided any entrepreneurship training in SOP. |
| 52. | Alejandro Balassa | • Balassa paid for the 15 day, Ethos, flights and accommodations, to be promoted to Coach in reliance on the representations by Nancy Salzman, other Proctors, on becoming a Coach, he would be promoted up the stripe path. Once made a Coach, he paid for Level 2 (Mobius, Human Pain, Origins, Family Values) SOP, and Jness training and worked as a coach during trainings, in reliance on the representations by Nancy Salzman, Emiliano Salinas and Alex Betancourt that on completing the training she would be promoted to Proctor and would be paid to teach the training, and would be able to earn money as a center owner, field trainer and EMP. Those representations were false because he was not promoted to Proctor or authorized to teach the trainings, open a center, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their Coach and Proctor). |
| 53. | Madeleine Carrier | • Carrier spent money on SOP curriculum and weekends in reliance on the false representations by Lucas Roberts and Sarah Edmondson that she would get curriculum and have a leadership role in the organization. These representations were false because after she satisfied the enrollment requirements, she was not promoted to a |

| | | leadership position. Lucas Roberts and Sarah Edmondson told her that she would get the curriculum only if several people participated in "readiness drills and she did not receive any curriculum." |
|---|---|---|
| 54. | Rod Christiansen | • Christiansen spent money on an Ethos membership, 5 day, V-week, travel, and accommodations to be promoted to Coach in reliance on the false representations by Nancy Salzman, Lauren Salzman, Charmel Bowden and Wendy Rosenbrooks that, on becoming a Coach, he would be promoted up the stripe path. Once made a Coach, he paid for annual Ethos training and worked as a Coach during trainings, in reliance on the representation by Nancy Salzman, Lauren Salzman, Charmel Bowden and Wendy Rosenbrooks that on completing the training he would be promoted to Proctor and would be paid to teach the training. Those representations were false because on completing the training and work he was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their Coach and Proctor). |
| 55. | Owen Giroux | • Giroux spent money on SOP weekend and ongoing monthly membership training in reliance on the representations by Nancy Salman and Raniere that if he paid money for the monthly membership he would receive SOP curriculum. These representations were false because instead of receiving the SOP curriculum after paying money Salzman and Raniere told him that he would get the additional curriculum only if several people participated in "readiness drills." He was in NXIVM for almost 2 years but never got any SOP additional curriculum. |
| 56. | Jeffrey Golfman | • Golfman spent money on the 16-day intensive, Jness Track, V week, flights, and hotels in reliance on the representations by Sarah Edmondson, Alex Bettancourt, Wendy Rosenbrooks, and Lauren Salzman that the curriculum could be completed and that he would graduate from the curriculum. These representations were false because NXIVM continued to add new modules to the curriculum and it could not be completed. |
| | | • Golfman also spent money on a monthly SOP membership in reliance on the representations by Damon Brink and Jim DelNegro (who were SOP leaders) that if he paid money he would receive additional curriculum, but instead of receiving any additional curriculum after paying money Brink and DelNegro told him that he would get the curriculum only if several people participated in |

| | | "readiness drills." He was in SOP for 2 years but he never got any additional curriculum. |
|---|---|---|
| | | • Golfman also spent money organizing an event in reliance on the representation by Brink, DelNegro and Emiliano Salinas that he would be compensated with commissions and profit shares for holding SOP events. This representation was false because after the events were held, he was not compensated. Only after the events were held was he told that he did not meet the minimum number of enrollees required to be compensated. |
| 57. | Ashley Harvey | • Harvey spent money on Ethos, multiple 5-day, 10-day and 16-day training programs, multiple flights to New York and accommodations on different occasions in reliance on false representations by Lucas Roberts, his employer at the time, Wendy Rosen-Brooks and Charmel Bowden that the curriculum was equivalent to a "practical MBA," and that the skills he obtained would be transferable to any entrepreneurial pursuit. These representations were false because the training did not provide any professional training and the curriculum had no application outside the NXIVM umbrella. |
| | | • Harvey also suffered this injury in reliance on the representations that NXIVM had a specific technology that would allow him to overcome emotional distress, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM had no such technology. |
| | | • Harvey also paid for SOP weekend programs and an intensive in reliance on the representation by Brink that SOP training was an opportunity to learn how to make hundreds of thousands of dollars per year from "the founder" Raniere who had "created over one thousand millionaires" and charged businesses $100,000/hour for consulting. This representation was false, including because Raniere never provided any entrepreneurship training in SOP and upon information and belief could not take responsibility for creating over one thousand millionaires. |
| 58. | Rees Alan Haynes | • Haynes spent money on the 5-day curriculum and travel to attend the NXIVM program in reliance on the false representations by Charmel Bowden (a Proctor) that he would be able to earn more income in his business. This representation was false because the course did not provide sales training. |

| 59. | Nils MacQuarrie | • | MacQuarrie paid for a flight and transportation to move to Albany and worked without compensation on developing the curriculum for both The Ethicist and The Source trainings, in reliance on the representation by Raniere that as a developer of the curriculum for these programs, he would be certified as an instructor of the programs and be paid to teach them, and receive a portion of the sales. This representation was false because after he completed development of the curriculum for The Source, he was told that he needed to pay a monthly fee for additional training and complete that training to be certified as an instructor and be paid to teach the curriculum. He was also not certified to teach Ethicist training and paid for his assistance during the training. Despite developing the curriculum for The Source and Ethicist, he did not receive the promised payment from sales. |
|---|---|---|---|
| 60. | Anthony Madani | • | Madani spent money on 16-day intensive training, in reliance on the representations by Nancy Salzman that the NXIVM program was equivalent to a graduate degree or "practical MBA." Those representations reasonably implied to Madani that the curriculum included valuable professional, sales, and/or leadership training. Those representations were false and misleading. NXIVM's program was not equivalent to a graduate degree or "practical MBA" because it did not include professional, sales and/or leadership training. |
| | | • | Madani also worked without compensation recruiting for NXIVM in reliance on the representation by Nancy Salzman that when he became a Coach he would get access to a series of valuable coaching videos that was a new line of curriculum. He was even showed a diagram reflecting that there were multiple videos that would be unlocked when he became a Coach. That representation was false because after he became a Coach he was never given access to the multiple videos he was promised and eventually given access to only one video on one day. |
| | | • | Madani spent money on SOP weekend 1 and performed administrative work in reliance on the representations by DelNegro that if he paid for the weekend and performed this work he would unlock further weekends and courses (more advanced programming in SOP). This representation was false because after he paid for the program and performed the work DelNegro told him that he would get the curriculum only if several people participated in "readiness drills." Madani was in SOP for years but he never received the further weekends and courses that he was promised. DelNegro also told him that he would be compensated for holding SOP events so he organized and conducted 15 SOP events. This representation was |

| | | |
|---|---|---|
| | | false because he was not compensated for holding the events. Only after the events were held did DelNegro tell him that he did not meet the minimum number of enrollees required to be compensated. |
| 61. | Chad Williams | • Williams spent money on an Ethos membership to be promoted to Coach in reliance on the representation by Wendy Rosenbrooks, Charmel Bowden (Proctors) Sarah Edmondson and Mark Vicente that on completing the training he would be promoted to Proctor and be authorized to get paid to teach the NXIVM curriculum. Once made a Coach, he paid for an Ethos membership in reliance on the representations by Wendy Rosenbrooks, Charmel Bowden (Proctors) Sarah Edmondson and Mark Vicente that on that it was possible to complete the training and enrollment requirements within a few months at each level and be promoted to Proctor and be paid to teach the training. Those representations were false because he was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their Coach and Proctor).<br><br>• Williams spent money to rent the venues where the events were held, and worked without pay to organize and conduct SOP intensive weekends and on-going membership meetings/events in Vancouver in reliance on the false representations by Raniere and DelNegro (SOP leadership) that he would be compensated for holding SOP events. This representation was false because he was not compensated. Only after the events were held did Raniere and DelNegro tell him that he did not meet the minimum number of enrollees required to be compensated.<br><br>• Williams spent money on travel, accommodations and paid for an 8-week exo/eso training program in Albany in reliance on the representations by Raniere and Clare Bronfman that on completing the training he would be authorized to own an exo\|eso center and teach the training certification program to paying trainees. This representation was false because after he completed the training he was not authorized to open a center and teach the training certification program for payment. Danielle Roberts told him that the curriculum for the training had not been completed and he needed to stay in Albany and continue to work to develop the curriculum. Williams worked to develop and teach the curriculum without pay. |
| 62. | Christopher | • Black spent money on multiple 5-day courses and EMs in reliance |

| | Black | on the false representations by Lauren Salzman that NXIVM had a specific technology that would allow him to overcome emotional distress, particularly anxiety, and that NXIVM owned and operated a particular form of science-based psychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM had no such technology. |
|---|---|---|
| | | • He also spent money on Entrepreneurs Goal Lab in reliance on the representations by Sarah Edmondson that the program was unique and different from the rational inquiry curriculum. This was false because the rational Inquiry and Goals Lab curriculum were identical. |
| 63. | Robert Gray | • Gray paid for a 10-day intensive and Ethos to be promoted to Coach in reliance on the false representations by Sarah Edmondson, Wendy Rosen-Brooks, and Mark Vicente that, on becoming a Coach, he would be promoted up the Stripe Path. Once made a Coach, he paid for training, and worked without compensation coaching several students each week, assisting Coaches and Proctors, and meeting with a committee each week in reliance on the representation by Megan Mumford and Sarah Edmondson that on completing the training he would be promoted to Proctor and would be paid to teach the training. Gray also spent money on travel to Albany, and accommodations there during the summer in reliance on the representation by Sarah Edmondson, Wendy Rosen-Brooks, and Mark Vicente that he would ascend the stripe path more quickly if he spent more time in Albany. Those representations were false because he was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their Coach and Proctor). Sarah Edmondson, Wendy Rosen-Brooks, and Mark Vicente told him that he needed to take additional training which would cost more money. Gray paid for and attended level 2 training (four intensives) but was still not promoted to Proctor. |
| | | • Gray paid for and attended V week and coach summits in reliance on the representation by Megan Mumford, Mark Vicente, Karen Unterreiner, Clare Bronfman, Lauren Salzman and Alex Bettancourt that he would receive coaching curriculum at the coach summits. This representation was false because he did not receive any curriculum. Instead Mark Vicente, Karen Unterreiner, Clare Bronfman, Lauren Salzman and Alex Bettancourt told him to write letters to NXIVM members who did not attend V week berating |

| | | |
|---|---|---|
| | | them for their absence at V week. |
| 64. | Ken Kozak | • Kozak paid for Level 2 curriculum in reliance on the representations by Nancy Salzman, and Lauren Salzman that if he completed this training and worked without compensation, he would become a Coach and, on taking additional training, be promoted to Proctor and be certified to get paid to teach the NXIVM curriculum. Those representations were false because after he paid for and completed the training and performed the required work, Nancy Salzman told him that he could not be promoted to Coach unless he enrolled new members. <br><br> • Kozak also spent money on a monthly SOP membership for two years in reliance on the representations by Mark Vicente, Damon Brink, Anthony Ames that if he paid for the membership he would receive weekly and monthly SOP workshops, but after paying money he no weekly or monthly workshops were held. |
| 65. | Jane Doe 8 | • Doe 8 paid for training to be promoted to Coach in reliance on representations by Nancy Salman and Lauren Salzman that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for the Ethos monthly membership and performed work assisting coaches without compensation and recruited new members in reliance on the representations by Nancy and Lauren Salzman that on completing the training she would be promoted to Proctor and would be paid to teach the training. Those representations were false because on completing the training she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). Proctors told her that she had to take additional training, which would cost more money. <br><br> • Jane Doe 8 also paid for and attended Level 1 of EM Practitioner training (twice) in reliance on the representations by Nancy and Lauren Salzman, that, on completing the training, she would be able to offer EM sessions to clients for a fee. This representation was false because, after she paid for and attended the EMP training, Nancy and Lauren Salzman announced that all EMP students, no matter what level they had achieved, had to begin again at Level 1 because of alleged changes in the curriculum, so Doe 8 was not certified as an EMP. |

| 66. | Jane Doe 9 | • Jane Doe 9 spent money on the 16 day, and Ethos (5 year membership) in reliance on the representations by Sarah Edmondson that the curriculum could be completed, that she would graduate from the curriculum, that the curriculum was akin to a graduate program or "practical MBA" that would include professional training. She was told by Edmondson that the curriculum included entrepreneurship and leadership training, that would be transferable to businesses outside the NXIVM umbrella. This representation was false because the training was only applicable to the NXIVM coaching system. |
| | | • She also spent money on EMs in reliance on the false representations by Wendy Rosen-Brooks (Proctor) that NXIVM had a specific technology that would allow her to overcome emotional distress,particularly anxiety, and that NXIVM owned and operated a particular form of science-basedpsychoanalysis that would succeed at curing emotional distress where psychology had failed. These representations were false because NXIVM did not have any such technology. |
| | | • Doe 9 paid for the 16 day to complete the training to be promoted to Coach in reliance on the false representations by Sarah Edmondson that, on becoming a Coach, she would be promoted up the stripe path. Once made a Coach, she paid for Ethos (five years) and Jness monthly membership, worked without pay coaching intensives, mentoring students, and organizing events, and enrolled students in programs in reliance on the representation by Sarah Edmondson that on completing the training she would be promoted to Proctor and would be paid to teach the training. Those representations were false because on completing the training and performing the work, she was not promoted to Proctor or authorized to teach the trainings, including because promotions were based on arbitrary decisions by a student's coach (the student was required to draft a statement about their "life issue" and how they would overcome it, that would be either accepted or rejected by their coach). Sarah Edmondson told her that she had to take additional training to be promoted to Proctor, which would cost more money. |
| | | • Jane Doe 9 spent money on SOP (weeklong course + ongoing membership for three years) in reliance on the false representations by Del Negro that if she paid money she would receive additional curriculum. But after ongoing monthly payment, SOP admin told her that she would get the curriculum only if several people participated in "readiness drills." She was in SOP for three years but she never got any additional curriculum. |

| | | • Jane Doe 9 spent money on relocating to Albany in reliance on the representation by Danielle Roberts that if she moved to Albany and took the training to become a teacher in exo/eso, exo/eso she would be authorized to teach exo/eso to paying students. This representation was false because after she completed the training, Roberts told her that the training was not ready yet so she would need to continue to develop the training. |
|---|---|---|

Dated:   November 26, 2024

/s/ Zahra R. Dean_____
William E. Hoese
Zahra R. Dean
Elias A. Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

Aitan D. Goelman
Bryan M. Reines
ZUCKERMAN SPAEDER
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2024, I electronically filed the foregoing Plaintiffs'

Revised Schedule A with the Clerk of the Court using the CM/ECF system, which will

automatically send e-mail notification of such filing to all counsel of record.

To the best of my knowledge, there are no other attorneys or parties who require service

by U.S. Mail.

*/s/ Zahra R. Dean*
Zahra R. Dean