UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH EDMONDSON, et al., : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> KEITH RANIERE, et al., : <br> : <br> Defendants. : <br> : | CIVIL ACTION: NO. 20-CV-485 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT DANIELLE ROBERTS' SECOND MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

**INTRODUCTION**

Danielle Roberts' second motion to dismiss, ECF No. 246, (the "Motion") is procedurally barred and wrong on the merits. It should be denied.

As to procedure, Roberts must comply with the Federal Rule of Civil Procedure—despite the solicitude afforded to *pro se* litigants—and those rules bar the Motion for two reasons. *First*, the Motion fails under Rule 12(b) because it was made *after* she filed an answer to the Third Amended Complaint (the "TAC"). The Motion also cannot be construed as a Rule 12(c) motion for judgment on the pleadings given that the pleadings have not "closed," as Plaintiffs have not yet filed an answer to Roberts' counterclaims and multiple Defendants have not yet filed answers to the TAC. *Second*, the Motion is barred by Rule 12(g)(2) because it is a successive motion to dismiss that raises only an argument that was available to Roberts when she filed her first motion to dismiss but which she omitted from that motion.

As to substance, Roberts fails because she cannot satisfy the high burden imposed on statute of limitations arguments made at the pleading stage. Roberts must—but cannot—establish

that Plaintiffs' battery claims are clearly barred from the face of the TAC, for two reasons. *First*, Roberts is wrong that Plaintiffs had to file their claims within a year of the brandings; Plaintiffs had until one year *from the termination of the related criminal proceedings* to sue under New York Civil Practice Law & Rules ("N.Y. C.P.L.R.") § 215(8)—and they did. *Second*, even if Roberts were correct that the operative statute of limitations was one year from the brandings, the Motion would still fail because she cannot demonstrate that the TAC forecloses the application of any equitable doctrine that would make Plaintiffs' claims timely. There are, at a minimum, multiple open fact questions that will determine whether the doctrine of equitable tolling and/or estoppel apply. Plaintiffs' battery claims cannot be dismissed on the pleadings.

## BACKGROUND

Plaintiffs Sarah Edmondson, Nicole, Paloma Pena, and India Oxenberg (hereafter, "Plaintiffs") first sued Roberts for battery on January 28, 2020. ECF No. 1 (Count VI). In March 2020, the case was stayed pending the final adjudication for the last defendant in *United States v. Raniere*, 1:18-cr-00204-NGG-VMS (the "Criminal Action"). ECF No. 51. An amended Complaint (the "FAC") was filed in August 2021, which added a Plaintiff. ECF No. 64. The stay was lifted in October 2021. ECF No. 92. Plaintiffs filed a Second Amended Complaint (the "SAC") in February 2022. ECF No. 159. The SAC reflected the voluntary dismissal of some Plaintiffs and conformed Plaintiff identification to the Court's protective order, but in all other respects was the same as the FAC.  Roberts filed a motion to dismiss the FAC/SAC and supporting brief in January 2022 (which was docketed in April 2022). ECF Nos. 170, 171. Roberts did not raise the statute of limitations in her motion.

Plaintiffs filed the TAC, alleging battery claims against Roberts, in June 2023. ECF No. 1 at ¶¶ 301-304.  Roberts moved to dismiss the TAC in July 2023. ECF No. 231. The Court granted

2

in part and denied in part that motion in September 2024, rejecting Roberts' arguments that Plaintiffs' battery cause of action failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 240 at 98–99. Roberts then filed an Answer that also asserted counterclaims on November 1, 2024. ECF No. 244.

Then, on November 6, 2024, Roberts filed a *second* motion to dismiss the TAC, in which she argues only that Plaintiffs fail to state a battery claim against her because the statute of limitations for that cause of action expired before Plaintiffs brought their claim. *See* Mot. at 2–5. Roberts did not raise that argument in her first motion to dismiss the TAC. *See* ECF No. 231.

## ARGUMENT

### A. Roberts' Motion is procedurally barred.

Although *pro se* litigants' filings must be construed liberally, they "must still comply with the relevant rules of procedural and substantive law." *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005). That "limit[]" on the "special solicitude" given to *pro se* litigants means that they must comply with the federal procedural rules promulgated under the Rules Enabling Act. *See Jones v. City of New York*, 22-CV-3686 (LDH), 2024 WL 1659909, at *2 (E.D.N.Y. Apr. 15, 2024) (quotation omitted) (*pro se* litigant must comply with Federal Rules of Civil Procedure); *see also Houghtaling v. Eaton*, 2023 WL 113840, at *2 (2d Cir. 2023) (same as to Federal Rules of Appellate Procedure). The Federal Rules of Civil Procedure bar Roberts' motion to dismiss for two independent reasons.

1. **The Motion fails under Rule 12(b) because it follows Roberts' Answer and cannot be treated as a Rule 12(c) motion.**

A motion to dismiss under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). That requirement was not met here because Roberts filed the Motion *after* she had already answered the TAC. *Supra* at 3; *see also Moore v. Shahine*,

3

18 Civ. 463 (AT) (KNF), 2019 WL 948349, at *2 (S.D.N.Y. Feb. 27, 2019) (concluding that "[o]nce" the defendant filed his answer, "any subsequent motion to dismiss was untimely" because "[u]nder the unambiguous, mandatory language of Rule 12(b), a motion to dismiss for failure to state a claim must be made before an answer is filed"); *see also In re Livent Securities Litig.*, 193 F. Supp. 2d 750, 752 (S.D.N.Y. 2002) (similar).

To be sure, it is sometimes appropriate for courts to construe an untimely Rule 12(b) motion as a Rule 12(c) motion for judgment on the pleadings. *See In re Livent Securities Litig.*, 193 F. Supp. 2d at 753. But the Court cannot do that here. A motion for judgment on the pleadings cannot be made until "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). And the pleadings in this case have not closed: When a defendant files counterclaims—as Roberts has done here—the pleadings are not closed until the plaintiff answers those counterclaims. *See Kraus USA, Inc. v. Magarik*, 17 Civ. 6541 (ER), 2018 WL 4682016, at *12 (S.D.N.Y. Sept. 28, 2018) (concluding that defendants were "too late to move to dismiss, but too early to move for judgment on the pleadings" because the plaintiff had not filed an answer to the defendants' counterclaims); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d ed. 2024) (explaining that for purposes of Rule 12(c) "the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), *unless a counterclaim . . . is interposed, in which event the filing of an answer to [the] counterclaim . . . normally will mark the close of the pleadings*") (emphasis added). Moreover, the pleadings also are not closed because multiple defendants have not yet filed answers to the complaint. *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 94 (2d Cir. 2006) (concluding that it "would be impossible" to treat a motion as one for judgment on the pleadings because "the [defendant] ha[d] not filed an answer and the pleadings therefore [were] not closed.").

Put simply, the Motion is barred under Rule 12(b), and the Court cannot construe it as a Rule 12(c) motion because the prerequisites to Rule 12(c) are not satisfied. *See In re Livent Securities Litig.*, 193 F. Supp. 2d at 753 (explaining that it would be improper to treat a Rule 12(b) motion as one under Rule 12(c) if the motion fails to satisfy Rule 12(c)'s prerequisites).

### 2. The Motion also fails because it is a successive motion to dismiss that is barred by Rule 12(g).

Under Rule 12(g), a party that has moved to dismiss under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." That bar on successive Rule 12 motions is fatal here. The Motion's sole argument is that Plaintiffs' state-law battery claims fail because the statute of limitations expired before Plaintiffs filed their claims. *See* Mot. at 2–5. But that argument was available to her when she first moved to dismiss the TAC, and she did not make it then. *Supra* at 3.

Roberts may contend that the Court's dismissal of Plaintiffs' RICO claims against her changed the operative statute of limitations and thereby excuses her failure to raise her statute of limitations argument in her first motion to dismiss the TAC. *See* Mot. at 10 (accusing Plaintiffs of "wrongfully" alleging RICO claims against her to "increase the one-year statute of limitations for battery to four years"). But that contention would be wrong. The claims at issue—Plaintiffs' battery claims against Roberts brought under New York law—are (and have always been) governed by New York law, not federal RICO law. *See Conn. General Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 136–37 (2d Cir. 2021); *see also* N.Y. Civ. Prac. Law & Rules ("N.Y. C.P.L.R.") § 215. And even if the Court's motion-to-dismiss ruling did alter which statute of limitations rule applies to Plaintiffs' battery claims (which it did not) that still would not mean that Roberts' newly-made argument was not "available" when she first moved to dismiss. Fed. R. Civ P. 12(g)(2).

5

The Motion is barred under the Federal Rules of Civil Procedure.

**B. Roberts' Motion also fails on the merits.**

The Motion would warrant rejection even if it were not procedurally defective. Roberts' pleading-stage statute of limitations argument faces a high bar that she cannot clear. "[T]he statute of limitations is an affirmative defense under Rule 8(c)" that a plaintiff's complaint "need not . . . anticipate[]." *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999). Surviving a statute of limitations argument at the pleading stage "requires only allegations consistent with a claim that would not be time-barred." *Id.* at 251. Thus, when a defendant raises this affirmative defense in a motion to dismiss, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Id.* at 250. Roberts has failed to show that Plaintiffs' battery claims are clearly out of time for at least two reasons.

*First*, Roberts is wrong that Plaintiffs had to file their claims within a year of their brandings; their claims are timely under N.Y. C.P.L.R. § 215(8), which extends the time to file certain civil actions that overlap with criminal proceedings. *Second*, even if Roberts were correct that a one-year statute of limitations applies, she has not conclusively demonstrated that no equitable doctrine permits Plaintiffs' claims.

    **1. Roberts cannot satisfy her burden to show that Plaintiffs' battery claims are time-barred because the claims are timely under N.Y. C.P.L.R. § 215(8).**

State law provides the controlling statute of limitations for claims brought under state law in federal court. *Conn. General*, 988 F.3d at 136–37. Under New York law, there is a one-year statute of limitations for battery claims. N.Y. C.P.L.R. § 215(3). But under Section 215(8), when a criminal action related to the same "event or occurrence" as the civil action has been commenced against the "same defendant," a plaintiff has "one year from the termination of the criminal action"

6

to "commence the civil action." N.Y. C.P.L.R. § 215(8). "[T]ermination" under the statute is "the imposition of sentence or some other final disposition in a criminal court of the last accusatory instrument filed in the case." N.Y. Crim. Proc. Law § 1.20(16); *see also* N.Y. C.P.L.R. § 215(8).[1]

Plaintiffs' battery claims against Roberts are timely under Section 215(8). The battery claims against Roberts for the brandings were brought in the first iteration of the complaint on January 28, 2020—well before one year from the termination of the criminal proceedings against Raniere, Clare Bronfman, and other leaders of NXIVM. *See* ECF No. 946, Criminal Action (judgment and sentence as to Clare Bronfman issued on October 7, 2020); *see also* ECF No. 969, Criminal Action (same as to Raniere issued on October 30, 2020). The Criminal Action against Raniere (and other defendants in this case) concerned the same "event or occurrence" as Plaintiffs' battery claims against Raniere and Roberts for the DOS brandings. *See, e.g.*, *United States v. Raniere*, 55 F.4th 354, 358 (2d Cir. 2022) (affirming Raniere's sex trafficking convictions and describing the DOS branding ceremony, as well as its use of collateral). And Plaintiffs' battery claims against Roberts seeks redress for the same conduct as Plaintiffs' battery claims against Raniere. *See* TAC ¶¶ 301–07 (Count V alleging a battery claim against Roberts for the brandings; Count VI alleging a battery claim against Raniere for aiding and abetting and conspiring with Roberts to commit those batteries).

---

[1] N.Y. C.P.L.R. § 215(8)(a) states in full: "Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, the plaintiff shall have at least one year from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action, notwithstanding that the time in which to commence such action has already expired or has less than a year remaining."

7

Roberts may argue that because she was not a party to the Criminal Action the "same defendant" requirement of Section 215(8) has not been satisfied and thus that the provision does not control. But that argument fails for two reasons.

*First*, Section 215(8), by its terms, extends the time to "commence" entire "*civil action[s]*" when the statute's prerequisites are met; it does not extend the life of only particular *claims*. N.Y. C.P.L.R. § 215(8) (emphasis added). *Second*, as numerous courts have recognized, Section 215(8) extends the statute of limitations for claims against a defendant (like Roberts) who was *not* a defendant in the related criminal proceeding when other defendants in the civil action (like Raniere and Clare Bronfman) *were* defendants in the related criminal proceeding.

In *LaRocca v. Collen IP, Intell. Prop. L.*, P.C., No. 08 CIV. 6274 SCR, 2009 WL 10435869, at *1–3 (S.D.N.Y. May 6, 2009), for example, the court held that Section 215(8) rendered timely a claim brought against a civil defendant who was *not* a defendant in the related criminal action. The plaintiff sued a law firm partner and the law firm itself for various torts, after criminal charges had been filed against the partner for the same conduct. *LaRocca*, 2009 WL 10435869, at *1–3. Thus, there was no question that Section 215(8) extended the time to sue the partner. *Id.* at *1. The law firm, however, contended that "because the criminal action was filed only against [the partner]," Section 215(8) did not apply to the plaintiff's claims against the firm. *Id.* at *1. The court rejected that argument, including because it would frustrate the purpose of Section 215(8)—which is to "reliev[e] the victim of the burden of participating in simultaneous legal proceedings based on the same alleged harm"—to require her "to litigate her emotional distress claim against [the law firm] concurrently with the pending [criminal] action against [the partner]." *Id.* at *2.

Several courts have applied Section 215(8) to the same end. *See e.g. Alford v. St. Nicholas Holding Corp.*, 218 A.D. 2d 622, 622 (N.Y. App. Ct. 1995) ("In this action for assault against both

8

the wrongdoer and the wrongdoer's alleged employee brought within a year after the dismissal of criminal proceedings against the wrongdoer, we hold that [Section] 215(8) applies to extend the Statute of Limitations against the employer as well as the wrongdoer."); *see also Sneider v. AB Green Gansevoort, LLC*, 46 Misc. 2d 1216(A), at *2 (similar); *Clemons v. Nealon*, 202 A.D.2d 747, 748–49 (N.Y. App. Ct. 1994) (explaining that Section 215(8) applied based on "a criminal action against *certain of the defendants*") (emphasis added).

There is, moreover, particularly good reason to apply Section 215(8) in cases where the civil defendants (some of whom *were* and some of whom *were not* parties to the criminal proceeding) formed an agency relationship. *See LaRocca*, 2009 WL 10435869, at *2 (highlighting the partner's relationship to the law firm); *Alford*, 218 A.D. 2d at 622 (highlighting that the defendants were in an agency relationship). That reason has force here because Plaintiffs contend that Roberts and Raniere were co-conspirators and thus responsible for one another's tortious conduct. *See Cohen Brothers Realty Corp.*, 181 A.D. 3d 401, 404 (N.Y. App. Ct. 2020); *see also* TAC ¶¶ 119–126 (alleging that Raniere devised the branding ceremony that Roberts executed; Roberts knew DOS members were not told about the brand when they were recruited into DOS; and that Roberts admitted she never obtained informed consent for the branding).[2]

Applying Section 215(8) here thus accords with statutory text, precedent, the purposes undergirding the provision, and the canon of construction firmly rooted in New York law that

---

[2] Although the Court concluded that Plaintiffs failed to satisfy their burden to plausibly allege a RICO conspiracy claim against Roberts, ECF No. 240 at 60–62, that does not mean that Roberts has satisfied *her burden* to show that Plaintiffs' allegations are *inconsistent* with Raniere and Roberts' performing the branding as part of a conspiracy. *See Harris*, 186 F.3d at 251. The Court cannot rule before any discovery has been taken that Raniere and Roberts were not co-conspirators as to the branding scheme. *See* New York State Dep't. of Health, Determination and Order at 10–11, *Re: In the Matter of Danielle Roberts, D.O.* (Sept. 29, 2021) (New York Health Department's Office of Professional Medical Conduct describing the inconsistent positions that Roberts has taken as to the branding plan and Raniere's role in it) (attached hereto as Exhibit A).

9

"remedial" statutes should be liberally construed in favor of the intended beneficiaries" and to diminish "the mischief sought to be remedied." *LaRocca*, 2009 WL 10435869, at *2; *see also Coakley v. Jaffe*, 49 F. Supp. 2d 615, 623 (S.D.N.Y. 1999) ("[T]he purpose of [Section 215(8)] is to prevent victims of crime from being forced to undergo the vicissitudes of civil proceedings before the parallel criminal proceedings are completed."). And it would be illogical to hold that Plaintiffs had to bring their battery claim against Roberts years before they remained entitled to bring their battery claim against Raniere—*for the same conduct*. Such a rule would waste judicial resources and increase the risk of inconsistent judgments.[3]

### 2. Roberts has not proven that Plaintiffs' battery claims would be untimely, even if the one-year statute of limitations did apply.

Even if Roberts were correct that the one-year statute of limitations applied to Plaintiffs' battery claims, the Motion would fail because Plaintiffs' allegations are at least "consistent with" facts that would support equitable tolling and estoppel as defenses to the statute of limitations. *See Harris*, 186 F.3d at 251. "When a plaintiff raises an equitable tolling argument in response to a motion to dismiss on statute of limitations grounds, the motion to dismiss should be denied 'unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled.'" *Stensrud v. Rochester Genesee Reg'l Transportation Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020) (quoting *Franco v. Diaz*, 51 F. Supp. 3d 235, 248 (E.D.N.Y. 2014) (rejecting pleading-stage statute of limitations argument based upon equitable

---

[3] Plaintiffs acknowledge that some courts have concluded that Section 215(8) *does not* apply unless the civil defendant was a party to the related criminal proceeding, and that the New York Court of Appeals has not resolved the split. *See LaRocca*, 2009 WL 10435869, at *1–2 (discussing split). But such cases are unpersuasive. They are based primarily on the view that the phrase "same defendant" in Section 215(8)'s text is "clear." *See, e.g., Jordan v. Britton*, 128 A.D. 2d 315, 320 (N.Y. App. Ct. 1987). The critical issue, however, is not the isolated meaning of the phrase "same defendant," but the effect of that language when the civil action includes the same claims brought against multiple defendants, some of whom *were* and some of whom *were not* parties to the related criminal proceeding.

tolling)); *see also Bensky v. Indyke*, No. 24-CV-1204 (AS), 2024 WL 3676819, at *11 (S.D.N.Y. Aug. 5, 2024) ("These equitable doctrines are inherently fact-bound and are rarely fit for a motion to dismiss).

Under New York law, "[t]he doctrine of equitable estoppel is generally applied when 'it would be unjust to allow a defendant to assert a statute of limitations defense." *Receivable Collection Servs., LLC v. Nassau Cnty.*, 227 A.D. 3d 834, 835 (N.Y. App. Ct. 2024) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (N.Y. 2006)). It requires the plaintiff to ultimately prove "affirmative misconduct by the defendant," such as deception, misrepresentations, or fraud that "kept [the plaintiff] from timely bringing suit." *Id.* (quotation omitted). Equitable tolling allows a a plaintiff to avoid a statute of limitations bar if (i) she has "pursu[ed] [her] rights diligently", and (ii) "some extraordinary circumstance stood in [her] way." *Stensrud*, 507 F. Supp. 3d at 453.

Roberts has not demonstrated that it is clear from the face of the TAC that Plaintiffs will be unable to show that *either* of these doctrines applies. The Motion does not identify which allegations of the TAC preclude Plaintiffs from prevailing on these equitable doctrines; instead, it relies improperly on factual assertions made by Roberts that are unsworn and have not been subject to cross-examination. Mot. at 3 (asserting that she "did not deceive the Plaintiffs as to the meaning of the brand;" that "[s]he was not accurately informed of the meanings of the brand herself;" and that she was not "aware of any coercive threats against Plaintiffs when she provided the brands"). And many of these facts are inconsistent with those alleged in the TAC and found by the New York Health Department's Office of Processional Medical Conduct ("OPMC"). *See* TAC ¶¶ 122–26 (alleging that Roberts knew the brand represented Raniere's initials when she purchased the branding device; intentionally concealed facts about the branding from Plaintiffs, including that the brand represented Raniere's initials; and knew that DOS members were not told they would be

11

branded when they were recruited into DOS and turned over collateral). Roberts can tell her story through discovery and renew her fact-bound arguments at summary judgment and trial, but facts she has injected through her brief are no basis to dismiss the TAC at the pleading stage.[4]

Moreover, Plaintiffs have alleged facts that affirmatively support the application of equitable tolling doctrines, even though they were not required to do so. *See Stensrud*, 507 F. Supp. 3d at 453. For example, Plaintiffs have alleged that (i) they were deceived about the nature of the procedure, even after they were branded; (ii) their assent to the procedure did not constitute consent because they operated "under the threat of the release of their collateral;" (iii) footage of the batteries was created and used to further extort them and keep their silence; and (iv) they had reason to fear that their collateral would be released if they came forward against DOS and Raniere. *See, e.g.*, TAC ¶¶ 121, 124–26, 128–29, 134–37.

Finally, Plaintiffs "have diligently pursued their rights," and Roberts has not demonstrated that once all relevant facts are uncovered equity will not favor permitting Plaintiffs' claims to proceed. *Stensrud*, 507 F. Supp. 3d at 453. Plaintiffs Nicole, Sarah Edmondson, India Oxenberg, and Paloma Pena each participated in the criminal restitution process, and as part of the Criminal Action the Court (J. Garaufis) found that each was a "crime victim." ECF No. 1073 at 2, 7, 11, Criminal Action. Plaintiffs, moreover, first asserted their battery claims against Roberts in January 2020—more than a year before the OPMC issued its findings about the brandings (which were not affirmed until April 2023) and long before this action was allowed to proceed under federal law.

---

[4] Roberts' fact assertions are not only legally irrelevant at this stage, they are also suspect. The publicly available OPMC ruling cited in the TAC, ¶ 141 n. 48, went out of its way to note that Roberts' "evasiveness, defiance, and inconsistencies on various points . . . significantly diminished [her] credibility." *See* Ex. A at 10–11. The issues on which Roberts was evasive, defiant, and inconsistent are the very topics at issue here. *Id.*

12

*See* ECF No. 51 (Court ruling in March 2020 that this action was subject to a "mandatory stay" under 18 U.S.C. § 1595); *see also* ECF No. 92 (stay lifted on October 15, 2021).

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion.

Dated: December 3, 2024

/s/ Zahra R. Dean
William E. Hoese
Zahra R. Dean
Elias Kohn
**KOHN, SWIFT & GRAF, P.C**.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

Aitan D. Goelman
Bryan M. Reines
**ZUCKERMAN SPAEDER**
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

*Attorneys for Plaintiffs*

13