LAW OFFICES OF

# Aidala, Bertuna & Kamins, P.C.

ARTHUR L. AIDALA*
MARIANNE E. BERTUNA*
HON. BARRY KAMINS (RET.)
HON. JOHN M. LEVENTHAL (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON**
ANDREA M. ARRIGO*
MICHAEL F. DIBENEDETTO*
LINO J DE MASI
DAVID M. SCHWARTZ+

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN CONNECTICUT
+ALSO ADMITTED IN D.C.

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (917) 261-4832
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH
SIGURD SORENSON

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

December 13, 2024

Hon. Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
**VIA ECF**

Re: *Edmonson v. Raniere,* 20-cv-00485 (EK) (CLP)
    **Clare Bronfman's Response to Plaintiff's Revised Schedule A**

Dear Judge Komitee:

We represent Clare Bronfman ("Clare") and write to address the deficiencies in Plaintiffs' now fifth attempt to plead a RICO claim against her.[1]

This Court's September 27, 2024, Memorandum and Order ("Order," ECF No. 240) granted in part and denied in part Clare's motion to dismiss Plaintiffs' Third Amended Complaint ("TAC"). The Court dismissed all claims against her except for the TVPRA Beneficiary claim, the substantive RICO claim, and the RICO conspiracy claim; and it held that the latter two claims would survive only if each Plaintiff adequately pled RICO standing in a revised Schedule A.

Plaintiffs indeed filed a revised Schedule A ("Revised Schedule A," ECF No. 249). As discussed below, it fails to allege RICO standing with the particularity required by Rule 9(b). But Revised Schedule A also demonstrates that, regardless of whether RICO standing is well pled, the substantive RICO claim against Clare must be dismissed with prejudice because the claim no longer alleges that Clare committed the requisite two predicate acts. Finally, Revised Schedule A, through its withdrawal of allegations and otherwise, also demonstrates that Plaintiffs have not adequately pled a plausible RICO conspiracy claim against Clare.

**A. Plaintiffs Have Not Pled Substantive RICO Claim Against Clare.**

---

[1] Clare Bronfman joins and incorporates here by reference the arguments for dismissal made by Sara Bronfman.

To satisfy the pleading requirement that a defendant engaged in a "pattern of racketeering activity," a plaintiff must allege that each defendant personally committed two or more predicate acts of racketeering activity. Order at 15 (citing and quoting *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992)); *see also* 18 U.S.C. § 1961(5). The Court found that Plaintiffs' substantive RICO claim against Clare sufficiently pled the bare minimum of two predicate acts by her; namely, "one act of immigration fraud, and one act of mail and wire fraud." Order at 16.

But the only bases for Plaintiff's allegations of that one act of immigration fraud were the RICO allegations of Plaintiff Adrian, and he has withdrawn them. (Revised Schedule A at p. 5, fn. 3.) Thus, because only one predicate act is now alleged against Clare, the substantive RICO claim against her fails as a matter of law. 18 U.S.C. § 1961(5).

\*     \*     \*

Even if Plaintiffs had sufficiently pled two predicate acts, which they did not, the Plaintiffs have failed to establish RICO standing in connection with the mail and wire fraud predicate act in service of their RICO claim against Clare. "A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation, and only when his or her actual loss becomes clear and definite." Order at 49 (quoting *Denny v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). Hence, to prevail on a civil RICO claim, *each* Plaintiff is required to show against *each* Defendant (i) the commission of a substantive RICO violation under 18 U.S.C. § 1962, (ii) clear and definite injury to their business or property, and (iii) that such injury was by reason of the substantive RICO violation, meaning "each [P]laintiff must [have] allege[d] a direct relationship between the [P]laintiff's injury and the [D]efendant[s'] injurious conduct." Order at 50 (citing *DeFalco v. Bernas AG*, 244 F.3d 286, 329 (2d Cir. 2001)).

When a complaint is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, the substantive RICO allegations must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (2010). Rule 9(b)'s heightened pleading standard requires that "a party must state with particularity the circumstances constituting fraud[.]" *Id.* (quotations omitted). To satisfy Rule 9(b) in the RICO context, each plaintiff must allege: (1) the precise statements, documents, or misrepresentations made by the defendant; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Id.* The Second Circuit has stated that in the RICO context, where mail or wire fraud are the alleged predicate acts, a "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 185-186 (2018). Accordingly, this Court directed that, "each of the plaintiffs continuing to assert mail and wire fraud allegations against Clare must supplement his or her "Injury Type" information on Schedule A to describe fraud induced injuries with the "clear and definite" allegations that RICO standing demands." Order at 54. They have not done so.

- 2 -

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM

Initially, Revised Schedule A improperly attempts to cure pleading deficiencies in the TAC by making further allegations in a so-called "Preliminary Statement." But the Court permitted only that Plaintiffs supplement their types of injury. Order at 54. For this reason, the Court should disregard Preliminary Statement allegations. Even if the Court were to accept the supplemental pleadings in the Preliminary Statement, which it should not, those additional pleadings do not cure the deficiencies in the individual allegations made by the Plaintiffs in their Schedule A. For example, no Plaintiff relies on "Courses Charts" or any other curriculum materials or connects such materials to any alleged injury.

In another allegation in the Preliminary Statement, Plaintiffs allege only that Clare was present when Plaintiffs Edmonson and Vicente were instructed by Raniere on "how to disseminate false statements." Revised Schedule A at 3, ¶ 9. As to the Revised Schedule A itself, 22 Plaintiffs allege misrepresentations made by either lead Plaintiff Sarah Edmonson[2] or by Plaintiff Mark Vicente.[3] These statements cannot be attributed to Clare on the mere allegation that she was present at a meeting. Nor do conclusory allegations concerning Clare's "position of substantial authority in NXIVM's Inner Circle" change this result. *See* Revised Schedule A ¶¶ 3-9.

Indeed, of the 66 Plaintiffs making allegations in Revised Schedule A, just 14 identify Clare in their attempt to establish RICO standing.[4] And as to the remaining 52 Plaintiffs, *none* alleges any representations by Clare. Thus, the RICO claims of these 52 against Clare must be dismissed for this reason alone.

As with the previous versions of Plaintiffs' Schedule A, the allegations of the individual Plaintiffs continue to fall short in many respects. All Plaintiffs have failed to identify the time and place of the alleged misrepresentations, and none allege that they would not have purchased curriculum or expended money or performed services had it not been for the misrepresentation. In this respect, they still fall far short of the detail required by Rule 9(b).

In addition, none of these Plaintiffs have adequately alleged a RICO injury caused by Clare. At the outset, many references to Clare are untethered to either a misrepresentation or an injury, much less any connection between the two. Oxenberg merely alleges that she worked for Clare and attributes alleged misrepresentations to others; Mclean that Clare owned the Knife; Vincente that Clare partially owned a private jet on which he traveled with others; Jaspaedo that Clare tried to persuade her to pay for training in Fiji and that she declined; and MacInnis that Clare was made owner of Exo/Eso.

---

[2] Namely, Oxenberg, Piesse, Charlotte, Jennifer Kobelt, Deanne Brunelle, Polly Green, Sara Lim, Katie Shaw, Hannah Vanderheyden, Susan Patricia Vieta, Madeleine Carrier, Jeffrey Golfman, Chad Williams, Stephanie Fair-Layman, Christopher Black, Robert Gray, Jane Doe 9, and Stephanie Fair-Layman.

[3] Namely, Soukiana Mehdaoui, India Oxenberg, Anthony Ames (invited by Mark to shoot film), Rachel, Alison Rood, Katie Shaw, Susan Patricia Vieta, Stephanie Fair-Layman, Chad Williams, Robert Gray, and Ken Kozak.

[4] Namely, Sarah Edmondson (No. 1), India Oxenberg (No. 7), Bonnie Piesse (No. 8), Ashley McLean (No. 10), Mark Vicente (No. 11), Anthony Ames (No. 12), Charlotte (No. 15), Veronica Jaspeado (No. 13), Adrienne Stiles (No. 18), Lindsay MacInnis (No. 19), Pamela Cooley (No. 26), Scott Starr (No. 50), Chad Williams (No. 61), and Robert Gray (No. 63).

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM

Some representations characterized by Plaintiffs as false are the kind of puffery specifically precluded from consideration by this Court and others. *See* Order at 40 and 41. *See also Byrne v. Nezhat*, 261 F.3d 1075, 1111 (11th Cir. 2001) (noting that claims of surgical success in medical journals "seem more akin to puffing than actionable misrepresentations," in dismissing a civil RICO complaint alleging violations of section 1962(c) predicated on acts of mail fraud)." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1292. For example, statements that NXIVM programs were a "practical MBA" (e.g., Oxenberg, Charlotte and Stiles) could not possibly have been understood by a reasonable consumer to mean that they would receive an MBA or be guaranteed success. Similarly, Plaintiffs' opinions as to whether the curriculum provided practical or professional skills in business administration, leadership training, or opportunities, is a qualitative and conclusory opinion that is not actionable as fraud. Were it otherwise, disgruntled consumers of educational opportunities could sue all types of educational institutions simply because they were dissatisfied with the content of the curriculum or disappointed with their own accomplishments.

Plaintiffs were required to plead "clear and definite" injuries proximately caused by the curriculum-related fraud scheme. As the Court noted, "[e]ach Plaintiff bears the burden of alleging not only that they paid tuition and membership fees, but also that they did so because of the fraud (or would not have, apart from the fraud). Order at 54 (citing *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003). Plaintiffs have not done so. And, although they have attempted to respond to the Court's discussion of the necessity of pleading reliance, they nevertheless fail to allege that they would not have acted in the same way (e.g., taking courses) but for the alleged misrepresentations. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015). After all, merely pleading "reliance" is not quite the same as pleading with particularity that you would not have purchased curriculum had the misrepresentation not been made. *See Motorola, supra,* 322 F.3d at 135 ("[A RICO] plaintiff must demonstrate . . . causation of the injury by the violation.").

The following Plaintiffs' recitals illustrate the kinds of deficiencies prevalent throughout the revised Schedule A:

Starr claims that he was told that the children's program was a "language immersion." He claims this characterization was false simply because the teachers were not "assessed" and because they had no "training." Again, these claims are qualitative assessments, not allegations of curriculum fraud. Notably, Star does not allege that he was told that what he now deems are prerequisites to a "language immersion" program were actually promised. And Starr's other claims are not actionable. His claim that he participated and assisted with certain activities at V-Week for *three years* in reliance on Clare's promise that he would receive a discount for attending fails on its own weight to establish materiality and reliance, as he continued to attend without, by his own admission, receiving any discount. And his assistance with activities does not allege injury to business or property as is required. His remaining claim that representations made that he would receive certain professional training also fail because, like his claims around RCG, his claim that he received no professional training in his coursework is purely qualitative.

Williams alleges that he was told he could operate and teach in an Exo/Eso center once trained but was then told that the curriculum for the program was not completed; that he would

- 4 -

have to move to Albany to help complete it; and that he did so. This does not make out any injury to business or property caused by Clare, that any statements were false, or that he acted in reliance on them and would not have done so but for the statements. And Gray makes sweeping claims that he relied on false statements made by other Plaintiffs, including Edmonson and Vicente, to pay for coaching curriculum. He then claims that Clare, nonparties, and other Plaintiffs promised him coaching curriculum if he paid for and attended V-Week and coach summits and that he did not receive curriculum at those events. Notably, Gray *was* a coach, and his allegations amount to complaints that are not material to his decision-making or even false, and certainly not attributable to Clare with the specificity required by Rule 9(b).

Similarly, the substantive RICO claims of the fifty-two Plaintiffs who do not attribute any conduct to Clare lack the basic requirement that Clare's conduct be the cause of the injuries they allege, much less do they allege RICO injury to business or property with the specificity required. Indeed, many Plaintiffs fail to plead recoverable injuries at all.[5] *See Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp 2d 317, 329-30 (E.D.N.Y. 2012) (diminished educational, vocational and career opportunities and accomplishments and diminished wages and salaries not cognizable injuries under RICO).

### B. The Complaint Does Not Plausibly Allege RICO Conspiracy Claims Against Clare

As the Court explained concerning RICO conspiracy, "the only question (prior to the standing analysis) is whether 'the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme,' i.e. the enterprise purpose." Order at 56 (citing and quoting *United States v. Arlington,* 941 F.3d 24, 36-37 (2d Cir. 2019)). Here, the RICO enterprise is alleged to have had three purposes: to accumulate money and unpaid labor through NXIVM's fraudulent curriculum scheme; to "cultivate a pool of foreign laborers to support" NXIVM; and to "groom women for sexual conduct with and for Raniere." Order at 56 (quoting TAC ¶ 199).

The Court found that Plaintiffs "adequately allege that Clare agreed to join the charged conspiracy." The Court identified four reasons to support its finding that Clare knowingly joined the scheme. They are (1) "accumulating a suite of positions in the Enterprise that allowed her de facto power to operate and control various important aspects of the Enterprise;" (2)"encouraging a sham marriage to facilitate the violation of immigration law;" (3)"pressuring witnesses and victims to retain counsel that she would pay for;" and (4) "commit[ing] predicate acts of immigration fraud and mail and wire fraud." The Court considered the "full set of allegations," but conceded that many were conclusory and that it did not rely on conclusory allegations to support its finding.

The Court should reevaluate its finding that the Plaintiffs have adequately alleged that Clare knowingly joined this scheme for the following reasons:

---

[5]See e.g., allegations of Chapman, Vicente, Ames, Stiles, MacInnis, Kobelt, Brunelle, Cooley, Holmes, Menhaji, Milljkovic, Rood, Hannah, Fair-Lyman, Starr, Balassa, Carrier, Christiansen, MacQuarrie, Gray, Kozak, Daniela, Camila, Charlotte, Rachel, and Jane Does 8 and 9.

- 5 -

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM

*First*, the Court's findings concerning the adequacy of the allegations against Clare assumed that allegations of the predicate act of immigration fraud were well pled. But as shown above, the TAC as supplemented by Revised Schedule A now fails to plead that Clare committed immigration fraud and has therefore failed to plead a substantive RICO claim against Clare.

*Second*, since Adrian's pleadings have been dismissed altogether, "the full set of allegations" that this Court previously considered has now been diminished and altered. Not only have Plaintiffs now failed to plead a substantive RICO claim against Clare, but Adrian's allegations also cannot be used in any assessment of whether there is a plausible inference that Clare knowingly joined the conspiracy. This is true for Toni Natale, as well, whose allegations failed to support a separate claim for malicious prosecution but can now no longer be considered in assessing whether the Plaintiffs have raised a plausible inference that Clare knew about or intended to join the conspiracy as alleged by Plaintiffs.

*Third*, as the Court noted, the TAC is so riddled with conclusory allegations and, in its "sprawling" presentation, so confusing, that it "required the Court to engage in painstaking efforts to identify the facts alleged in support of each claim, often hundreds of paragraphs apart from each other." Order at 7, fn. 3. Not surprisingly, therefore, the Court may have inadvertently considered conclusory allegations in its assessment of whether the TAC plausibly alleged that Clare knowingly joined the conspiracy. For example, the Court relied in part on the allegation that Clare encouraged a sham marriage to facilitate the violation of immigration law in its finding. But when assessing that allegation on its own merits, the Court found that "the complaint sets forth insufficient factual content to support the inference that Miljkovic's marriage was a sham and that Clare knew as much." Order at 24. This allegation was according to the Court one of the "many conclusory allegations against Clare." Order at 58. The Court also explicitly refers to Clare pressuring witnesses and victims to retain counsel. But the TAC does not allege that Clare pressured Camila to retain counsel; rather, the TAC alleges that "Clare Bronfman arranged for Camila to hire an attorney" from a list provided, who would be paid by Clare. TAC ¶ 179. *See also* Order at 33. And the Court specifically found that there was no allegation that Clare directed Camila's lawyer to do anything. *See* Order at 34 ("plaintiffs fail to allege that Clare herself engaged in obstructive conduct, or even that she directed the attorney she allegedly paid for to do so").

*Fourth*, as the Court also noted, much of the Complaint involves conclusory allegations of knowledge and intent by Clare that were insufficient to support other claims. Moreover, Toni Natalie's allegations against Clare are also no longer a part of the TAC and the dearth of allegations against Clare in the revised Schedule A underscores the deficiencies in the TAC as to Clare's knowledge and intent, generally. *See Nasik Breeding & Rsch. Farm Ltd. V. Merck & Co.*, 165 F.Supp. 2d 514, 541 (S.D.N.Y. 2001)(no agreement to join conspiracy despite allegations that the defendants "authorized, directed, and/or supervised fraudulent activities" of other defendants).

*Fifth*, allegations that Clare held positions in NXIVM at an unspecified time, without more, are insufficient to support a plausible inference that Clare agreed to join a conspiracy.

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM

Accordingly, the Court should reconsider whether the surviving allegations, such as they are, sufficiently allege that Clare knew about and agreed to the purposes of the alleged enterprise.

c. **All Plaintiffs, Including The 52 Plaintiffs Who Allege Misrepresentations, not by Clare, But By Other Plaintiffs, Non-parties, and Defendants, Fail to Plead RICO Standing**

As explained above, none of the Plaintiffs have satisfied Rule 9(b)'s heightened pleading requirements. None of these Plaintiffs have specified when and where alleged statements were made. Given that, according to Plaintiffs' Complaint, NXIVM existed for six years before Clare allegedly joined and even longer before Clare assumed any role on the Board or any other executive responsibility, these omissions alone are fatal.

*   *   *

For all the aforementioned reasons, we respectfully request that the Court dismiss all substantive and conspiracy RICO claims against Clare with prejudice for failure to state a claim.

Dated: New York, NY
December 13, 2024

Respectfully,
Aidala, Bertuna & Kamins, P.C.

*/s/ Diana Fabi*

Diana Fabi, Esq.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011

- 7 -

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM

## CERTIFICATE OF COMPLIANCE

I certify under penalty of perjury pursuant to 28 U.S.C Section 1746 that on December 13, 2024, I served upon parties of record, by ECF filing, and caused to be served upon Dr. Danielle Roberts, by email at Danielle@drdanielleroberts.com, respectively, a true copy of the foregoing letter.

Dated: New York, NY
December 13, 2024

/s/ Diana Fabi
_____
Diana Fabi

- 8 -

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM