### KOHN, SWIFT & GRAF, P.C.

1600 MARKET STREET, SUITE 2500

PHILADELPHIA, PENNSYLVANIA 19103-7225

(215) 238-1700
TELECOPIER (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
WEB SITE: www.kohnswift.com
Sender's E-mail: ekohn@kohnswift.com

JOSEPH C. KOHN
ROBERT A. SWIFT
ROBERT J. LAROCCA †
DOUGLAS A. ABRAHAMS
WILLIAM E. HOESE
ZAHRA R. DEAN ✜
ELIAS A. KOHN

† ALSO ADMITTED IN NEW YORK
✜ ONLY ADMITTED IN NEW YORK

HAROLD E. KOHN
1914-1999
BAYARD M. GRAF
1926-2015

OF COUNSEL
GEORGE W. CRONER
CARY FLEISHER
LISA PALFY KOHN

**VIA ECF**
Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:    *Edmondson v. Raniere*, **20-CV-485 (EK) (CLP)**
          **Plaintiffs' Reply to Clare Bronfman's and Sara Bronfman's**
          <u>**Response to Revised Schedule A.**</u>

## I.    Introduction

       The Court, in its September 27 Memorandum and Order ("Order") on Defendants' motions to dismiss the Third Amended Complaint ("TAC"), held that the Plaintiffs had adequately alleged that Clare Bronfman ("CB") committed two RICO predicate acts: immigration fraud and mail and wire fraud, and that Sara Bronfman ("SB") committed two RICO predicate acts: witness tampering and mail and wire fraud. Order at 16, 46.[1] The Court also held that Plaintiffs had adequately alleged RICO conspiracy against CB and SB (pending the submission of a revised Schedule A). *Id*. at 58-59. The Court's conclusions in the Order are the law of the case.[2]

---

[1] CB and SB are sometimes referred to together herein as "Defendants."

[2] *E.g., Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 218 (2d Cir. 2002) ("The 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that 'a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'") (citing *In re Korean Air Lines Disaster*, 798 F. Supp. 755, 759 (E.D.N.Y. 1992)).

Further, at pages 37-39 of the Order, the Court concluded that the TAC "alleges a straightforward consumer fraud in the sale of NXIVM's educational program," "NXIVM is alleged to have run a Hotel California of personal improvement: a 'never-ending program' that 'trapped' participants in a 'circle of indebtedness and [uncompensated] labor,'" and that "plaintiffs plausibly allege that the NXIVM curriculum was a 'pyramid scheme[.]'" The Court, however, found that the Plaintiffs had not sufficiently pleaded RICO standing, *i.e.* injury to their business or property caused by the mail or wire fraud in connection with the NXIVM curriculum fraud scheme. *Id*. at 49-50. The Court directed Plaintiffs to file a revised Schedule A to remedy what the Court considered to be insufficient RICO standing allegations with respect to the curriculum fraud scheme. *Id.* at 50, 54-55.[3]

Plaintiffs filed their revised Schedule A on November 26, 2024, and Defendants served their objections on December 16. However, instead of confining themselves to addressing the allegations in revised Schedule A and RICO standing, Defendants, to a substantial degree, make both veiled and explicit motions for reconsideration of other holdings by the Court. Defendants'

---

[3] With respect to certain TVPRA claims, the Court held that Plaintiffs had adequately alleged beneficiary liability for CB and SB as follows: sex trafficking by DOS Plaintiffs Edmonson, Salazar, Oxenberg, Mehdaoui, Rachel, Nicole, Valerie, Jane Doe 8, Paloma Pena, Jane Doe 9, Kristin, Jaspeado, Charlotte against CB, *id*. at 69; sex trafficking by Daniella and Camila against CB, *id*. at 71; forced labor and human trafficking by DOS Plaintiffs Edmonson, Salazar, Oxenberg, Mehdaoui, Rachel, Nicole, Valerie, Jane Doe 8, Paloma Pena, Jane Doe 9, Kristin, Jaspeado, and Charlotte against CB, *id*. at 83; forced labor and human trafficking by Camila and Daniella against CB, *id*. at 86; and forced labor and human trafficking by Camila against SB, *id*. at 87. The Court also held that Sarah Edmondson, Nicole, Paloma Pena, and India Oxenberg had adequately pled a count of battery against Roberts. *Id.* at 99.

untimely and inappropriate reconsideration requests fail to comply with Local Civil Rule 6.3 as well as the applicable legal standards.[4]

As discussed below, Plaintiffs have met their burden with respect to pleading RICO standing, and the Court should reject the Defendants' attempts to relitigate other issues.

## II.   Revised Schedule A Provides no Basis for the Court to Reconsider its Conclusion That the TAC Sufficiently Alleges Clare and Sara Bronfman Committed Two Racketeering Acts and Violated RICO, §1962(c).

Both CB and SB start their briefs with arguments not about §1964(c) RICO standing, but instead about whether they committed two RICO predicate acts. Defendants want the Court to reconsider its decision that the TAC sufficiently alleges that each of them committed two RICO predicate acts and violated 18 U.S.C. §1962(c). Why should the Court revisit an issue it already decided? According to the Defendants, it is because Adrian did not reallege a RICO civil injury claim in revised Schedule A. CB Br. at 2, 6; SB Br. at 2, 3. But whether the Defendants committed a predicate racketeering act is a different question from whether Adrian suffered measurable damages from it.

The Court concluded that the TAC alleges that CB violated 8 U.S.C. §1324(a)(1)(A)(iv), a RICO predicate act, with respect to Adrian. Order at 19-21. The Court also found that the TAC alleges that SB violated 18 U.S.C. § 1512(b), a RICO predicate act, with respect to Adrian. *Id*. at 47-48. Addressing a separate question later in the Order, the Court found that Adrian did not suffer a RICO injury from the predicate acts. *Id*. at 52-53, 55. But as much as Defendants may wish it were so, the latter finding does not wipe the slate clean of these predicate acts. The TAC sufficiently alleges that CB and SB committed these racketeering acts regardless of whether Adrian is

---

[4] The standards for reconsideration in this District are discussed in Section VII, *infra*.

continuing to pursue a civil RICO injury claim under §1964(c). As the Court's Order reflects, commission of a predicate act and a civil RICO injury from a predicate act are two distinct issues. The Court neither overlooked something nor made a mistake in this regard. There is nothing to reconsider.

### III. Plaintiffs Have Sufficiently Alleged RICO Standing.

Plaintiffs have sufficiently alleged that they were injured in their business or property by RICO predicate acts.

#### A. RICO Standing Does not Require Each Plaintiff to Allege Reliance on a Misrepresentation Made Directly by CB or SB Because Plaintiffs Have Adequately Alleged the Defendants were Part of a Fraudulent Scheme and RICO Conspiracy.

With respect to RICO standing, Defendants first argue that Plaintiffs are required to allege that they relied on a first-person misrepresentation by Defendants that was the proximate and "but for" cause of each Plaintiff's injury. CB Br. at 2-5; SB Br. at 3-6. This is incorrect. Indeed, the U.S. Supreme Court called that very argument "flawed" when it held that a "plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 655, 661 (2008). Instead, "[o]ne can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation." *Id.* at 649. The Court further explained that "the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action." *Id.* at 659 (citation omitted). "Proximate cause" is, accordingly, "a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case." *Id.* at 654 (citing *Holmes v. Sec.*

*Investor Prot. Corp.*, 503 U.S. 258 at 272 n. 20 (1992)).[5] The inquiry is whether there is "some direct relation between the injury asserted and the injurious conduct alleged." *Bridge*, 553 U.S. at 654.

In *Bd. of Managers of Trump Tower at City Ctr. Condo. By Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 461 (S.D.N.Y. 2018) (internal citations omitted), the court did not apply a first-person misrepresentation and causation rule, as CB and SB urge, and found that the complaint "plausibly alleges that each Defendant directly participated in the scheme, and because the scheme involved multiple communications with individuals outside of New York, each participant could reasonably foresee that mails and interstate wires would be used in furtherance of the scheme." (internal citations omitted). In this case, the Court has already found that Plaintiffs sufficiently alleged that Defendants were running a pyramid scheme and were part of a RICO conspiracy. Order at 37-39, 55-58. As the Court explained, Plaintiffs do not have to allege the Defendants themselves mailed or wired anything, and that "[a]llegations that [CB] 'controlled' the enterprise and 'caused false statements to be made in the name of' NXIVM is sufficient." Order at 38.

The TAC and revised Schedule A plausibly allege that the NXIVM Inner Circle, including Defendants, was a RICO enterprise that perpetuated the NXIVM fraudulent curriculum scheme,[6]

---

[5] *See also Paroline v. United States*, 572 U.S. 434, 444 (2014) ("proximate cause, as distinct from actual cause or cause in fact, defies easy summary. It is "a flexible concept."); *Wallace v. Midwest Fin. & Mortg. Servs.*, 714 F.3d 414, 419-20 (6th Cir. 2013) ("Despite its flexibility, the proximate-cause requirement tends to invite confusion in cases involving mail and wire fraud as the predicate acts…Strict application of traditional proximate-cause considerations might be seen as mandating first-person reliance on the mailing itself. However, the Supreme Court recently held that a plaintiff need not show that she relied on any allegedly fraudulent misrepresentations to state a claim…").

[6] For example, TAC ¶ 23 alleges that: "NXIVM was another pyramid operation designed to induce enrollees (so-called Nxians) to recruit others and form downstream sales organizations within NXIVM. Enrollees were told they would benefit financially from selling curricula and other NXIVM products and recruiting others to do the same, and that, through sales and recruiting, they

that Plaintiffs relied on misrepresentations developed by Defendants who were part of the Inner

Circle of the enterprise,[7] and that reliance on these fraudulent representations about the curriculum

proximately caused the injuries described in revised Schedule A.[8] The TAC alleges that Defendants

were leaders and chief financiers of NXIVM,[9] part of the Inner Circle, NXIVM Coaches and

---

would climb a hierarchy known as "The Stripe Path." TAC ¶¶ 25-26 alleges that NXIVM curriculum was designed to "defraud Nxians out of substantial sums of money", that this fraud was NXIVM's "principal revenue generating activity" and that the curriculum sales continued until the U.S. government seized ownership of certain NXIVM copyrights. TAC ¶ 55 alleges that the Inner circle "us[ed] the pyramid scheme to collect revenue…". The TAC also explains how the NXIVM curriculum pyramid scheme was similar to a previous Keith Raniere Ponzi scheme. *Id.* at ¶ 23 ("Before forming NXIVM, Raniere operated a multi-level marketing scheme through a company named Consumers Buyline, Inc. ("CBI"). In the mid-1990's CBI was investigated as an unlawful pyramid scheme by 25 Attorneys General. It was shuttered by the New York Attorney General on September 3, 1996").

[7] *E.g.* TAC ¶ 38 (Alleging that CB and SB knew of the curriculum and were Proctors and that "both Clare and Sara Bronfman, as leaders and chief financiers of NXIVM, had knowledge of and influence and control over the content of NXIVM's doctrines, curricula, sales materials, and practices."); TAC ¶ 43-53 (detailing the intention and premise of the misrepresentations and providing specific examples, and alleging that all plaintiffs relied on Ranier and the Bronfmans' false statements when they purchased NXIVM curriculum and performed uncompensated labor for Raniere and the Inner Circle.).

[8] The TAC also includes allegations of Plaintiffs' specific injuries. *E.g.* TAC ¶ 37 ("NXIVM operated by pressuring members to purchase expensive courses, recruit new members, and perform uncompensated 'coaching' services for junior members to unlock ever-increasing 'goal levels' within NXIVM."); TAC ¶ 41 (detailing the conditions and losses to business and property that enrollees were encouraged to provide); TAC ¶ 57 (detailing specific financial injuries due to the fraud regarding "NXIVM's curricula and the possibility of completing NXIVM's never-ending program" that trapped Plaintiffs "in a circle of indebtedness and labor").

[9] *E.g.* TAC ¶ 30 (alleging the Bronfmans "funnel[ed] massive amounts of money in NXIVM. They had privileged positions, were given authority and control over NXIVM and its organizations and enjoyed numerous high-ranking ownership, leadership, and management positions within NXIVM…"); TAC ¶ 32 (alleging the Bronfmans provided over $100 million to NXIVM); TAC ¶ 36 ("Sara and Clare Bronfman were Defendant Raniere's primary backers and funders and his most trusted advisors and confidants. They were tied to nearly every aspect of the NXIVM operation and worked closely with Defendant Raniere and other Inner Circle members to perpetuate and cover up NXIVM's crimes"); TAC ¶ 49 (alleging that CB held accounting oversight of NXIVM's operations); TAC ¶ 132 (demonstrating CB's knowledge and leadership role where Mack sent emails to CB regarding collateral); TAC ¶ 30 ("Sara Bronfman was a member if NXIVM's Executive Board, Senior Executive of ESP, Co-Founder of Defendant ESP;

Proctors, and had knowledge of and influence and control over the content of NXIVM's doctrines, curricula, sales materials, and practices. TAC ¶ 38. Defendants' positions in NXIVM conferred *de facto* power to operate and control various aspects of the enterprise. *Id.* at ¶¶ 240-241. Defendants' participation and leadership in the enterprise, as well as their own direct use of the mail and wires (TAC ¶ 212) plausibly shows that Defendants could reasonably foresee that the mails and wires would be used in furtherance of the scheme. *See United States v. Amico*, 486 F.3d 764, 781 (2d Cir. 2007) ("To prove that a defendant caused a mailing, it is sufficient to prove that he could have reasonably foreseen that the mailing would take place").[10]

Further, the Court's allowing Plaintiffs to proceed with the RICO conspiracy claim is also fatal to Defendants' argument. The Court has already found that Plaintiffs' allegations were sufficient to overcome the motions to dismiss the RICO conspiracy counts against them. Order at 58-59. Accordingly, each RICO conspirator is responsible for the acts and harm caused by the

---

head of Defendant RCG…Founder of NXIVM's so-called VIP Programs, which recruited powerful individuals with financial, social, and political capital to appear at NXIVM events"). Sara Bronfman also described herself as a "one of the company's [NXIVM's] top-ranked international trainers" who oversaw the company's activities and worked closely with Keith Raniere); TAC ¶ 31 ("Testimony adduced at Raniere's trial established that Clare Bronfman directed and ran virtually every aspect of the NXIVM operation, including overseeing its financial, legal, administrative, and accounting operations").

[10] S*ee Baisch v. Gallina*, 346 F.3d 366, 369 (2d Cir. 2003) (reasoning that plaintiff had standing against the defendant even if defendant never mailed a fraudulent letter because the plaintiff sufficiently alleged that the defendant acted with knowledge that the use of the mails will follow in the ordinary course of business and that the use of mail could have been reasonably foreseen.). The Second Circuit in *Gallina* notably used a Ponzi scheme as a paradigmatic example where a racketeer does not necessarily "intend to harm the specific victim" and instead "intend no more than to create a substantial risk of injury to the victim." *Id.* at 376. *See also SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp.2d 68, 76 (E.D.N.Y. 2006) (noting that even "[t]he fact that a third party may have caused the use of the mails does not render the pleading defective, so long as the defendants could reasonably have foreseen that the third-party would use the mails in the ordinary course of business as a result of defendants' act") (internal quotation marks omitted).

Kohn, Swift & Graf, P.C.
Page 8
January 6, 2025

others, and Plaintiffs do not need to show direct first-party reliance between each Plaintiff and each Defendant. *E.g.*, *Salinas v. United States*, 522 U.S. 52 (1997) ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators"); *Pinkerton* v. *United States,* 328 U.S. 640, 646 (1946) ("And so long as the partnership in crime continues, the partners act for each other in carrying it forward"); *United States v. Holte*, 236 U.S. 140 (1915) ("Plainly a person may conspire for the commission of a crime by a third person"); *Allstate Insurance Co. v. Yehudian*, 2018 WL 1767873, at *18 (E.D.N.Y Feb. 15, 2018) ("Courts in this district 'routinely find defendants jointly and severally liable in relation to civil RICO claims.'") (citation omitted), adopted in full, 2018 WL 1686106 (E.D.N.Y. May 31, 2018).

The Second Circuit has clearly explained that "the requirements for RICO's conspiracy charges under § 1962(d) are less demanding" and that plaintiffs alleging a RICO conspiracy must only allege that the defendant "knew about and agreed to facilitate the scheme," which Plaintiffs here have done. *Baisch v. Gallina*, 346 F.3d at 376.[11]

---

[11] *United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000) ("the district court properly instructed the jury that the government did not have to prove 'full knowledge of all the details of the conspiracy' but only that each defendant 'was aware of the general nature of the conspiracy and that the conspiracy extended beyond the defendant's individual role'"); *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) ("a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts that are elements of a substantive count to be found guilty of the racketeering conspiracy, for 'it suffices that he adopted the goal of furthering or facilitating the criminal endeavor'"). Further, a defendant "may be liable for conspiracy even though he was incapable of committing the substantive offense." *Salinas*, 522 U.S. at 64; *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000) (RICO conspiracy provision, § 1962(d), is not "superfluous" because "a plaintiff [can], through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962."); *United States v. Zemlyansky*, 908 F.3d 1, 9-10 (2d Cir. 2018); *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, Case No. 20-CV-5428 (JMF), 2022 WL 4448621, at *18 (S.D.N.Y. Sept. 23, 2022).

Plaintiffs allege that the acts of the NXIVM *enterprise*, not just Defendants individually, proximately caused Plaintiffs' injuries, which include paying for the fraudulent curriculum in reliance on the false promise of future employment. Revised Schedule A.[12] Defendants' direct reliance argument conflicts with law in this Circuit, because a plaintiff may instead "demonstrate 'that an enterprise's acts of racketeering were a substantial factor in the sequence of responsible causation' and that the plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence." *BC Liquidating, LLC v. Weinstein*, 519 B.R. 394, 426 (Bank. E.D.N.Y. 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)). This means that misrepresentations disseminated by the Defendants' alleged co-conspirators, including Keith Raniere, Nancy Salzman, Allison Mack, and other members of the Inner Circle, that proximately caused a Plaintiff's injury are misrepresentations and attendant injuries that Defendants are liable for causing.

Relatedly, Defendants also ask that the Court "disregard" the Preliminary Statement of revised Schedule A as a "supplemental pleading." It is not. The Preliminary Statement is part of and applies to each Plaintiffs' subsection in the revised Schedule A, and was used because it covers all the Plaintiffs in a way that did not burden the Court by including the entire Preliminary Statement in each of the individual Plaintiff's RICO mail and wire fraud standing allegations.

### B.     Defendants' Cases Are Distinguishable

Defendants rely on *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d, 71, 87 (2d Cir. 2015) and *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135

---

[12] The TAC contains additional similar allegations. *E.g.* TAC ¶¶ 23, 25, 27, 31-39, 41-47, 55-57.

(2d Cir. 2003) to support their contention that Plaintiffs fail to adequately allege proximate causation. SB Br. at 3, CB Br. at 4. Those cases are distinguishable. Here, Plaintiffs already expended money and labor on tuition and membership fees and suffered RICO injuries, unlike the *Motorola* plaintiffs who lacked standing to recover for *third parties'* failure to pay loans and actions to dilute the value of stock securing such loans because they had not yet foreclosed on those loans. Further, unlike the plaintiffs in *Sergeants* who tried to draw a correlation between disclosure of health risks of a drug and decline in sales of a drug, each Plaintiff here has alleged in Schedule A exactly which false representations they relied on when they expended money or labor.

SB relies on *Cummins v. Select Portfolio Serv., Inc.,* 2016 WL 11395016, at *4 (E.D.N.Y. Aug. 23, 2016) report and recommendation adopted, 2016 WL 4766237 (E.D.N.Y. Sept. 13, 2016), to contend that Plaintiffs failed to plead that fraudulent documents were linked to their injury. SB Br. at 3. This is not so. Plaintiffs pled that they relied on written NXIVM materials and were tricked into paying or providing labor to purchase and complete certain NXIVM course materials to be promoted, that promotion depended on completing NXIVM courses, and that NXIVM curriculum could be completed by taking certain courses. TAC ¶¶ 43-44, 211.

### C.     Plaintiffs Complied with Fed. R. Civ. P. 9(b).

The Court ordered the submission of a revised Schedule A to supplement the mail and wire fraud injury allegations regarding reliance and causation. Order at 53-55. Defendants, however, relying on distinguishable and non-precedential decisions, reargue the applicability of Fed. R. Civ. P. 9(b). Defendants erroneously state that Fed. R. Civ. P. 9(b) requires Plaintiffs to plead each

element of the fraud with greater particularity than they have.[13] But "[i]n complex civil RICO actions involving multiple defendants...Rule 9(b) does not require that the temporal geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo,* 346 F. Supp. 3d at 460–61; *Dennis v. JPMorgan Chase & Co*., 343 F. Supp. 3d 122, 186 (S.D.N.Y. 2018) (same); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 146 (S.D.N.Y. 2014) ("Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme").

Plaintiffs' revised Schedule A and the TAC have delineated with the requisite particularity the specific circumstances forming the overall fraudulent scheme to satisfy the Fed. R. Civ. P. 9(b) standard for complex civil cases involving multiple defendants. *See Angermeir,* 14 F. Supp. 3d at 146. For example, the court in *K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 538 (S.D.N.Y. 2014), rejected the argument CB and SB repeat here:

> [D]efendants argue that the plaintiffs' allegations fail to satisfy the particularity requirement because they do not provide the exact time and location of the statements or the identity of the speaker. However, the particularity requirement is not a mechanical formula demanding exacting precision but must instead be applied in view of its express purposes and the facts of each case. (citing *Gelles v. TDA Indus., Inc*., No. 90 Civ. 5133, 1991 WL 39673, at *6 (S.D.N.Y. Mar. 18, 1991) ("Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map.")

Furthermore, it is "sufficient under Rule 9(b) if plaintiffs provide an adequate basis for their allegations and give defendants enough information to put them on notice of the nature of the

---

[13] CB Br. at 2-7 (citing *Byrne v. Nezhat*, 261 F. 3d 1075, 1111 (11th Cir. 2001) and *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1288 (11th Cir. 2010); SB Brief at 3-6. Both Defendants raise the Fed. R. Civ. P. 9(b) argument generally as well as specifically to individual Plaintiffs.

claim," which Plaintiffs have more than done. *M&T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 561 (E.D.N.Y. 2010).[14]

The opinion in *Moy v. Adelphi Inst.*, 866 F. Supp. 696, 701 (E.D.N.Y. 1994), further undermines the Defendants' arguments that Plaintiffs have not sufficiently pled their mail and wire fraud allegations. In *Adelphi*, plaintiffs alleged that defendant did not provide the vocational training and placement services promised to enroll students. Defendants in *Adelphi* contended, as do CB and SB, that plaintiffs did not plead mail and wire fraud under RICO with the specificity Rule 9(b) requires. The court in *Adelphi* found that the students adequately pled a cause of action for mail and wire fraud because the plaintiffs specified the nature and operation of a "scheme to defraud" and used the "mail system to further the scheme." *Id.* at 703. *Adelphi* rejected the argument that plaintiffs must plead exacting details before discovery and explained that the "failure to describe particular telephone calls or to identify the exact speaker is not fatal to the Complaint as it amply details the existence of a scheme to defraud students, and it also reveals that harm and injury to Plaintiffs was contemplated by the Defendants' plan." *Id.* (citing *United States v. Winans*, 612 F. Supp. 827, 845 (S.D.N.Y. 1985) and *United States v. London*, 753 F.2d 202, 206 (2d Cir. 1985)).

---

[14] Before discovery, Plaintiffs need not, and cannot, plead the precise contours or scope of the curriculum scheme and the Defendants' involvement, or of their and their co-conspirators' use of the mails and wires to carry out the enterprise's fraudulent scheme because such information is within the defendants' exclusive control. *See Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 44 L. Ed. 2d 467, 95 S. Ct. 1976 (1975); *Rich-Taubman Associates v. Stamford Restaurant Operating Company*, 587 F. Supp. 875, 880 (S.D.N.Y. 1984) (holding that Rule 9(b)'s standards are further "relaxed as to matters particularly within the opposing party's knowledge."). Plaintiffs also note that, "any uncertainty regarding inferences that may be drawn from a complaint's contentions must be determined in the light most favorable to the plaintiff." *See, e.g., Moy v. Adelphi Inst.* 866 F. Supp. 696, 703 (E.D.N.Y. 1994); *Bd. of Managers of Trump Tower*, 346 F. Supp. 3d at 460–61.

The decision in *Beth Israel Medical Ctr. v. Smith*, 576 F. Supp. 1061 (S.D.N.Y. 1983), also undermines the Defendant's 9(b) argument. In *Beth Israel*, the court rejected the contention that mail and wire fraud were not pled with sufficient particularity, finding that the complaint described "what the alleged fraud consists of specifically[.]" *Id.* at 1071. The defendants in *Beth Israel* also argued that the federal mail and wire fraud claims were inadequately pled because the complaint only stated that the mail and wire fraud statutes were violated in the course of the conspiracy, without specifying the dates or contents of specific mailings or telephone calls. *Id.* But the court held that "the failure to describe particular letters or telephone calls is not fatal to the complaint" in view of "the complaint's detailed description of the defendants' scheme[.]" *Id.* at 1071. Similarly, here, Defendants seek to defeat the claims due to a lack of details like the exact day of a conversation.[15] Plaintiffs have provided sufficient information about the Defendants' alleged multi-faceted fraudulent  scheme that spanned multiple years, and each Plaintiff in revised Schedule A provided specific accounts of the alleged injury and reliance on misrepresentations. Plaintiffs have satisfied Rule 9(b).

## IV. Revised Schedule A Alleges Concrete, Specific, and Measurable Misrepresentations That Are Actionable.

Defendants want to reargue puffery instead of the issue at hand—RICO standing for mail and wire fraud violations by Defendants. In any event, revised Schedule A alleges specific, factual, misrepresentations that the Defendants mischaracterizes as mere "puffery," "speculative," "too

---

[15] CB Br. at 3 and 7 complains that all Plaintiffs did not identify the "time and place" or the "where and when" of every allegation.

vague," and not actionable. But the statements in revised Schedule A are specific, measurable, and false, and are therefore actionable misrepresentations.[16]

Revised Schedule A provides, among other specific allegations, that Defendants misrepresented that the NXIVM curriculum: (1) could be completed, (2) could lead to graduation, (3) would enable enrollees to earn an income by teaching courses once they complete the curriculum, and (4) would provide a set of professional skills similar to that of a Master of Business Administration degree. Plaintiffs allege that the curriculum could not be completed and students could not graduate because the NXIVM leaders added new courses to continually "extract money and labor" from Plaintiffs. *E.g.* TAC at ¶ 57; Order 37-39. Similarly, Plaintiffs allege that paying for and completing curriculum did not lead to employment and income from teaching the curriculum and the curriculum did not include professional training, as one would receive through a Master of Business Administration or similar program, but instead was just a typical "pyramid scheme" where advancement was based on recruitment and sales, rather than upon completion of an academic curriculum. TAC ¶ 23, 37, 40-43. *See* Order at 38, citing TAC ¶ 40. Revised Schedule A therefore articulates "concrete, specific, or measurable indicia of compliance," and cannot be dismissed as mere "puffery." *See Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 417 (S.D.N.Y. 2022).

Contrary to Defendants' contention, revised Schedule A provides numerous examples where enrollees were promised economic benefits in exchange for paying for course curriculum, such as the promise that enrollees would be authorized to teach courses for payment after

---

[16] *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statements that inventory situation was "in good shape" or "under control" were actionable); *Basquiat ex rel. Estate of Basquiat v. Sakura Int'l*, No. 04 Civ. 1369, 2005 WL 1639413, at *5 (S.D.N.Y. July 5, 2005) (statements were not puffery where they included specific detail and were alleged to be knowingly false).

completing the "curriculum".[17] These promises are objectively measurable and were false.[18] These allegations of future payments after the initial investments, alleged by nearly every Plaintiff, constitute the crux of the Ponzi scheme that CB and SB participated in and benefited from. This rebuts the Defendants' erroneous "first person" reliance argument addressed *supra*.

Instead of addressing the Ponzi scheme allegations head on, CB instead belittles Plaintiffs as "disgruntled consumers of education opportunities" who cannot sue because they are just "dissatisfied with the content of the curriculum or disappointed with their own accomplishments." CB Br. at 4. This attempt to frame Plaintiffs as merely disgruntled or unsuccessful students is unpersuasive considering that courts have repeatedly found promotional statements by actual legitimate educational institutions, not just Ponzi schemes type rackets, actionable based on representations that are less specific and less measurable than the statements here, such as a

---

[17] *E.g.,* Revised Schedule A at 11 ("Nicole spent thousands of dollars on The Source curriculum, travel, and accommodations in Albany for the duration of the training, in reliance on the representations by Allison Mack and Mark Hildreth (a Proctor in ESP and founder of The Source) that on completing the curriculum, she would be paid to teach others the material, which was false because after she completed the curriculum, she was not paid to teach others the materials"). The TAC, which must be read in conjunction with revised Schedule A, provides additional specific allegations of Plaintiffs' injuries. *E.g.,* TAC ¶ 57 (addressing twenty-nine of the Plaintiffs' injuries); TAC ¶¶ 127, 130, 133 (alleging Nicole's injuries including uncompensated labor); TAC ¶¶ 135, 138 (alleging India Oxenberg's injuries including uncompensated labor); TAC ¶ 139-140 (alleging Soukaina Mehdaoui's injuries including uncompensated labor and relocation expenses); TAC ¶¶ 142-144 (alleging Jessica Joan Salazar suffered financial injuries based on loss of future employment, relocation expenses, and uncompensated labor,); TAC ¶¶ 146-147 (alleging Plaintiff Rachel suffered financial harm from uncompensated labor); TAC ¶¶ 148-149 (alleging Plaintiff Valerie suffered financial harm from uncompensated labor).

[18] The TAC at ¶ 48 also alleges that CB and SB knew statements regarding the business and financial success of the founder of the curriculum were false, which is analogous to the Court's reasoning in *Cohen v. Trump*, No. 13-CV-2519-GPC WVG, Dkt. No. 9 , at *2, 10-11 (S.D. Cal. June 9, 2015), where the court rejected defendant's argument that the educational program's advertisements were mere puffery that was not actionable under RICO.

plaintiff "could graduate", "curriculum could be completed," and a plaintiff "would be paid to

teach curriculum."[19]

## V. Plaintiffs' Have Alleged RICO Injuries.

CB contends that multiple Plaintiffs[20] fail to allege cognizable RICO injuries to business

or property because "diminished educational, vocation and career opportunities and

accomplishments and diminished wages and salaries [are] not cognizable injuries under RICO."

CB Br. at 5 (citing *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp 2d 317, 329-30

---

[19] *See Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 414, 417 (S.D.N.Y. 2022) (holding that the educational provider's advertisement that the program would be "full time, on-campus for a duration of two years" adequately alleged an actionable promise, rather than mere puffery); *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 414 (N.D.N.Y. 2020) (finding that educational program's promotional catalogs had made actionable misrepresentations when advertising in-person instruction and on-campus services); *Bergeron v. Rochester Inst. of Tech.*, No. 20-cv-6283, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) (finding that promises of access to the "finest laboratories, technology and computing facilities" constituted a statement specific enough to survive a motion to dismiss"); *Ansari v. N.Y. Univ.*, 1997 WL 257473 at *3-5 (S.D.N.Y. May 12, 1997) (rejecting defendants motion to dismiss a breach of contract claim, reasoning that plaintiffs are not requiring the court "to review discretionary academic decisions" but rather "plaintiff's claim requires an evaluation of whether defendants promised to provide services and failed to do so"); *Brittain v. Trs. of Columbia Univ.*, No. 20-CV-9194 (PKC), 2021 WL 3539664, at *18-19 (S.D.N.Y. Aug. 11, 2021) (finding misrepresentation actionable for breach of contract claim); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180 (S.D.N.Y 2021) (declining to dismiss a breach of contract claim based on the specific promise to provide in-person instruction); *Cohen v. Trump*, No. 13-CV-2519-GPC WVG, Dkt. No. 9 , at *2, 10-11 (S.D. Cal. June 9, 2015) (rejecting defendant's motion to dismiss plaintiff's mail and wire fraud claim and rejecting defendant's argument that the educational program's advertisements were mere puffery that was not actionable under RICO); *Johnson v. Walden Univ.*, 839 F. Supp. 2d 518, 530 (D. Conn. 2011) (denying defendant Waldon University's motion for summary judgment reasoning the statement that student "would be qualified to practice psychology upon successful completion" could constitute a fraudulent misrepresentation); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000) (finding that broad statements of "Drive your Dream Car for Free" and "earn a substantial income" violated Section 5 of the FTC Act, and was therefore not "mere puffery").

[20] CB lists Vicente, Ames, Stiles, MacInnis, Kobelt, Brunelle, Cooley, Holmes, Menhaji, Eoos, Hannah, Fair-Lyman, Starr, Balassa, Carrier, Christiansen, MacQuarrie, Gray, Kozak, Daniele, Camila, Charlotte, Rachel, and Jane Does 8 and 9.

(E.D.N.Y. 2012). In doing so, CB misrepresents the allegations in revised Schedule A and misstates the law. First, each Plaintiff in revised Schedule A clearly states a cognizable harm to business or property that CB mischaracterizes as mere "diminished education opportunities."[21] Second, as to the law, Plaintiffs here seek to recover money they paid or for labor they provided without compensation in reliance on NXIVM's curriculum fraud scheme, unlike the plaintiffs in *Zimmerman* who sought to recover lost wages and out of pocket expenses that were allegedly caused by the personal injuries they incurred as a result of the defendants' misconduct.[22]

## VI. Defendants Repeat the Same Flawed Arguments when Discussing Specific Plaintiffs

CB and SB specifically target a handful of Plaintiffs by rehashing their arguments. SB specifically attacks the allegations of Bonnie Piesse, Mark Vicente, and Scott Starr, who each allege *direct* reliance on SB's misrepresentations. These arguments fail for the same reasons discussed above. Mark Vicente, for example, specifically pled injuries by paying for curriculum in reliance on the false promises that if he relocated and took courses then NXIVM would finance

---

[21] For example, Chapman clearly alleges financial injury including loss of money and labor, loss of employment, and debt due to misrepresentations about her business trainings. Vicente alleges loss of money paid for fraudulent curriculum as well as money to relocate and fly in exchange for promised business opportunities, and loss of employment opportunities. Ames lost money to the fraudulent Ponzi scheme curriculum. Stiles lost money paying for the fraudulent curriculum and provided uncompensated labor including 18 hours a day over two years relying on the misrepresentation that she would receive an ownership share in a business. *Id.* at 15. MacInnis lost money and suffered injuries from uncompensated labor including 18 hours a day for one year relying on the misrepresentation she would receive a future commission-based earnings. *Id.* Kobelt alleges lost money in reliance on the misrepresentation that she would receive a promotion enabling her to earn an income teaching courses. *Id.* at 16.

[22] Even if Plaintiffs were to seek economic injuries stemming from personal injuries, *Zimmerman* is not dispositive. *See Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 330 ("The Second Circuit has not addressed the issue[.]"). *See also Horn v. Med. Marijuana, Inc.*, 80 F. 4th 130, 135 (2d Cir. 2023) (holding that loss of wages from a predicate act is a RICO injury under §1964(c)).

his films, and he would be able to charge an hourly fee for providing "EMs." These representations were false. After Vicente relocated and paid for courses, the conditions and the "goal posts" of the Ponzi scheme were moved.[23] Starr, similarly, alleges he suffered financial injuries paying for NXIVM tuition via the Rainbow Cultural Garden due to false representations that SB and others made. *Id.* at 27.

CB selects Scott Starr, Chad Williams, and Robert Gray as examples of Plaintiffs' "deficiencies" in revised Schedule A. CB claims that Starr's assistance providing activities does not allege any injury to business or property and that Williams has not adequately pled an injury to business or property. CB Brief at 4. This is wrong. Financial loss and lack of compensation that Starr and the other Plaintiffs suffered from the mail and wire fraud are RICO injuries, just as Williams suffered RICO injury by performing uncompensated labor developing and teaching curriculum and spending money on travel, accommodations, and an 8-week exo/eso training program. Revised Schedule A at 27, 33.[24] Additionally, as Section IV, *supra*, explains, the law in

---

[23] This Court has already found that "the plaintiffs plausibly allege that the NXIVM curriculum was a 'pyramid scheme,' *id.* ¶ 4 — a well-established type of fraud in which upfront payments are demanded of enrollees, goal posts are regularly moved, and (among other things) promised rewards turn out to be conditioned on recruiting other participants into the program." *See also, e.g.*, *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 478-79, 481 (6th Cir. 1999) (describing the mechanics of pyramid schemes)." Order at 38.

[24] *E.g.*, *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) (finding money is property); *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc*., 271 F.3d 374, 382 (2d Cir. 2001) (finding RICO injury satisfied because, "[i]f plaintiffs can substantiate their claims, the plaintiffs may well show that they lost contracts directly because of the cost savings defendant realized through its scheme to employ illegal workers"); *Kriss v. Bayrock Group, LLC*, 2016 WL 7046816, at *19-20 (S.D.N.Y 2016) ("a plaintiff can adequately plead RICO damages by alleging lost contracts or lost wages."); *Oak-Jin Oh v. Soo Bok Choi*, 2016 WL 11430442, at *1-2, 8 (E.D.N.Y. 2016) (addressing unpaid wages). *See also Diaz v. Gates*, 420 F.3d 897, 898-903 (9th Cir. 2005) (finding that lost employment opportunities were injuries to property or business under RICO); *Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007) (recognizing that alleged victims of trafficking violations had RICO standing for claims of denied wages and reaching the question of whether

the Second Circuit rebuts the argument that false statements regarding educational curriculum are inactionable qualitative assessments.

CB next argues that Williams does not identify a false statement or that he acted in reliance on the statements by Raniere and CB. But Williams clearly alleges that Raniere and CB told him that upon completing the training, he would be authorized to own an exo/eso center and teach the training certification program to paying trainees. This representation was false because, after he completed the training and incurred losses, he was not authorized to open a center and teach the training certification program for payment. Revised Schedule A at 33. CB's arguments addressing Robert Gray similarly ignore Gray's allegations that, in addition to paying for curriculum to become a Coach, he worked without compensation and paid for additional training in reliance on the false representations that on performing this work and completing the training he would be promoted to Proctor and would be paid to teach the training. Revised Schedule A at 34. These representations were material and false and emblematic of a classic Ponzi scheme.

**VII.    Revised Schedule A Provides no Basis for The Court to Reconsider Its Conclusion That The TAC Sufficiently Alleges Clare And Sara Bronfman Were Part of a RICO Conspiracy, §1962(d).**

Using revised Schedule A as a pretext, Defendants make both explicit[25] and veiled requests for reconsideration that do not comply with either Local Civil Rule 6.3 or the applicable law

---

RICO allegations based on alleged trafficking were sufficiently pled); *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 690–91 (S.D. Tex. 2009) (finding that reduction in promised wages, compelled fees paid to defendants, and being prevented from obtaining alternative employment constitute financial loss under RICO).

[25] CB urges the Court to "reevaluate" and "reconsider" its decision. CB Br. at 5, 7. (ECF No. 256).

governing motions for reconsideration.[26] The Court, after painstakingly reviewing the TAC and the multiple briefs submitted by the parties, entertaining oral argument, and then drafting a 103 page opinion granting in part and denying in part Defendants' motions to dismiss, concluded that the TAC plausibly alleges that both CB and SB were part of a RICO conspiracy. Nevertheless, dissatisfied with the Court's decision, the Defendants spend half of their briefs rearguing this point. But the Court has already decided the issue and the Court's ordering submission of a revised Schedule A was not an invitation to reargue the RICO conspiracy issue.

Initially, Defendants fail to meet the rigorous standards for a reconsideration motion. It is black letter law that "[r]econsideration 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (citations omitted).'" *Hofeffner v. D'Amato*, 664 S. Supp. 3d 269, 271-72 (E.D.N.Y. 2023). It is likewise well-established that a reconsideration motion is not "'a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.' *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up), as amended (July 13, 2012).'" *Id*. A strict standard is used when considering such motions, and success requires the moving party to identify "'controlling decisions or data'" the court "'overlooked'" that "'might reasonably be expected to alter the conclusion reached by the Court.'" *Hoeffner*, 664 F. Supp. 3d at 272 (quoting *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (citations omitted)). To obtain relief on a motion for reconsideration, a party must show that there has been an intervening change in

---

[26] Rule 6.3 requires service of a reconsideration motion within fourteen days after entry of the challenged order along with a memorandum that concisely describes the "matters or controlling decisions which counsel believes the court has overlooked."

controlling law, new evidence has become available, or the court can correct a clear error or avoid manifest injustice. *Id*. Here, Defendants fail on all counts.

First, Defendants do not cite an intervening change in controlling law. Second, the Court did not "overlook" any allegations that might change the Court's decision. Indeed, CB acknowledges that the "Court considered the 'full set of allegations,' [and] did not rely on conclusory allegations to support its finding" that "Plaintiffs 'adequately allege that Clare agreed to join the charged conspiracy.'" CB Brief at 5 (quoting the Order). Third, the Court's evaluation of the RICO conspiracy claim was not clearly mistaken.

### A.      Clare Bronfman

CB makes a number of assertions regarding the Court's analysis of the TAC and its conclusions in the Order. One is that the Court—regardless of its statement that it considered all the TAC's allegations but did not rely on those it considered conclusory—may have actually relied on a conclusory allegation after all. CB Br. at 6. From this premise, CB argues that the Court should start over, review the allegations again, and reach a different conclusion. CB provides in support what she claims are two instances of the Court improperly relying on an allegation.

She first claims that the Court improperly relied on allegations that CB encouraged a sham marriage to facilitate an immigration law violation. *Id*. CB also insinuates that the Court also erred by misconstruing the allegations about her pressuring witnesses and victims to retain counsel, and subconsciously considering Toni Natalie's dismissed claims. *Id*. But even assuming for the sake of argument what CB alleges is true, it has no bearing on the RICO conspiracy ruling. The Court did conclude that the TAC's allegations regarding the predicate act of harboring with respect to Ms. Miljkovic were inadequately pleaded as were the witness tampering claim involving Camila and

Toni Natalie's malicious prosecution and abuse of process claims. On a separate issue, however, the Court concluded that the allegations in the TAC were adequate to state a RICO conspiracy cause of action against CB. These are not inconsistent, and there was no mistake made by the Court in so deciding. The issues are separate from one another.[27]

CB also claims that the number of allegations about misleading or fraudulent statements she made *directly* to Plaintiffs (set forth in revised Schedule A) somehow undercuts the plausible inference that she knowingly joined the conspiracy (and is therefore liable for the injurious acts of her co-conspirators, even if she committed no predicate acts, as discussed supra). This argument holds no water because the Court ruled on the RICO conspiracy claim before revised Schedule A was filed and as discussed above, a co-conspirator is responsible for the injuries caused not only by her acts but also those of her co-conspirators.

Finally, CB argues that, once the Court on reconsideration credits all her arguments (both new and old) about which allegations the Court should not consider, the TAC's allegations as to her positions within NXIVM (including as a member of the Inner Circle and her management roles in the NXIVM enterprise) are inadequate by themselves to create a plausible inference that CB joined the conspiracy.

CB's lofty and powerful positions, and her management activities within NXIVM, are not all the Plaintiffs alleged, and not all the Court, relied upon, although they are substantial enough on their own. The Court found that the TAC sufficiently alleges that NXIVM's Inner Circle

---

[27] Another of CB's claims is that if the Court accepts her request to reconsider its decision on the RICO conspiracy claim, then it cannot consider Adrian's allegations in the TAC because he did not reallege his RICO claims in revised Schedule A. *Id*. As explained at pp. 2, 22, whether Adrian is pursuing a civil RICO damages claim is independent of whether CB committed a RICO predicate act.

constitutes a RICO enterprise. Order at 12-14. The Court cited the Second Circuit's holding in *United States v. Raniere*, 2022 WL 17544087, *4 (2d Cir. Dec. 9, 2022), that the Inner Circle was a RICO enterprise with a common purpose. *Id*. at 14, n.7. CB was a member of the Inner Circle and served in significant high level roles within the NXIVM enterprise. In concluding CB was part of the conspiracy, the Court drew the plausible and reasonable inferences from those and other allegations.

Finally, CB suggests that she should not be required to defend against the RICO claims because NXIVM existed prior to her ascendancy in the organization, and the TAC doesn't pinpoint when she joined the Inner Circle. CB Br. at 6-7. The Court has already rejected this argument. Citing *United States v. Gershman*, 31 F.4th 80, 98-99 (2d Cir. 2022), the Court explained that "[i]t is not required that all members of a RICO enterprise became members at its inception; they can join the enterprise along the way." Order at 14, n.8.

**B.      Sara Bronfman**.

SB, ignoring the rest of the TAC, also claims that the revised Schedule A allegations do not satisfactorily allege she joined the conspiracy. SB Br. at 6-7. She starts with the incorrect premise that revised Schedule A removes allegations about witness tampering and that therefore it is as if they no longer exist. SB then argues that since those allegations were at the core of the Court's finding a plausible inference of an agreement by SB to join the conspiracy, the Court should now ignore the allegations in the TAC and on reconsideration find that the TAC does not adequately allege she joined the conspiracy. SB's arguments, which echo those of CB (or vice versa), do not meet the requirements for reconsideration.

As explained above, the Court found that the TAC alleges SB violated 18 U.S.C. § 1512(b), a RICO predicate act, with respect to Adrian. *Id*. at 47-48. Later in the Order, the Court separately found that Adrian did not suffer a RICO injury from the predicate acts. *Id*. at 52-53, 55. The Court's finding that the TAC sufficiently alleges that SB committed witness tampering is not dependent on Adrian sustaining a cognizable civil RICO injury claim under §1964(c). As the Court recognized, commission of a predicate act and suffering a distinct RICO injury are independent.

SB also asserts that her role in RCG no longer supports a claim for aiding/abetting immigration fraud and "weakens" the inference SB joined a RICO conspiracy. *Id*. at 7. However, the Court considered the TAC's allegations in its Order, and nothing has changed.

Finally, like CB, SB argues that if the Court agrees with her arguments, all Plaintiffs have left to support an inference that SB was part of the conspiracy is that she held certain positions within the NXIVM enterprise. *Id*. Of course, as with CB, SB's high positions and significant activities within NXIVM are not all Plaintiffs alleged, or the Court relied upon. SB was a member of the Inner Circle and served in significant roles within the NXIVM enterprise, and helped bankroll and promote NXIVM. Those allegations were appropriately considered by the Court when it ruled the TAC adequately pleads SB was part of the NXIVM conspiracy.

## VIII.   Conclusion

For all the foregoing reasons, the TAC supplemented by revised Schedule A plausibly alleges that Plaintiffs were injured in their business or property by reason of the curriculum fraud scheme.

Dated:   January 7, 2025                    Respectfully submitted,

                                            _/s/ Elias A. Kohn_____
                                            Robert A. Swift
                                            William E. Hoese
                                            Zahra R. Dean
                                            Elias A. Kohn
                                            **KOHN, SWIFT & GRAF, P.C.**
                                            1600 Market Street, Suite 2500
                                            Philadelphia, PA 19103
                                            (215) 238-1700