**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARAH EDMONDSON, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| | :   CIVIL ACTION NO. 20-CV-485- EK-CLP |
| v. | : |
| | : |
| KEITH RANIERE, et al. | : |
| | : |
| Defendants. | : |

## [STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")

This Order Regarding the Production of Documents, Electronically Stored Information and Paper Documents ("ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties and their counsel of record (collectively, the "Parties") in the above captioned litigation (the "Matter").

## I.      GENERAL PROVISIONS

### A.      General

**1.**      Unless express set forth herein, nothing in this Order is intended to alter the scope of discovery permitted or required under the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or the "Rules"), the relevance of any discovery material or the admissibility of any material at trial or hearing on this matter.  This Order is intended solely to address the production of ESI.

**2.**      The procedures and protocols outlined in this Order govern the production of ESI by all Parties. The Parties will take reasonable steps to comply with this Order. The Parties agree to take reasonable steps to promptly alert all other Parties concerning any technical problems associated with complying with this Order and, to the extent that a Party believes that compliance

with this Order imposes an undue burden disproportionate to the needs of the case, the Party claiming such a burden shall inform all other Parties in writing of the asserted burden and the Parties shall thereafter meet and confer within a reasonable time in an effort to resolve the issue. All productions made pursuant to this Order are subject to any confidentiality, preservation, protective, and/or privilege orders entered in the Matter.

**B.    Definitions**

  **1.** "Custodian" shall mean any individual of a producing party that may have possession, custody, or control of potentially relevant ESI.

  **2.** "Discovery Material" is defined as all materials produced or adduced in the course of discovery, including but not limited to initial disclosures, documents and things produced in response to discovery requests, answers to interrogatories, answers to requests for admission, deposition testimony and exhibits, expert reports and disclosures, pretrial disclosures, and information derived directly therefrom..

  **3.** "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34 and includes ESI.

  **4.** "Email" means electronic messages drafted, sent or received asynchronously, including any documents incorporated as attachments, via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail or Lotus Notes.

  **5.** "Electronically Stored Information," "Electronic Data," or "ESI" means information stored or recorded in the form of electronic media (including information, files or databases stored on any digital or analog machine-readable device, computers, discs, networks or tapes), synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34.

6.      "Extracted Text" means the text extracted from a Document file and includes at least all header, footer and document body information when reasonably available.

7.      "Load File" means an electronic file that is used to import all required production information into a document database, including document images, extracted and/or OCR text, native files where required, and metadata, as well as information indicating document and page breaks, and document relationships such as those between an e-mail and its attachments and a document and information related to embedded content.

8.      "Matter" refers to the above-captioned lawsuit entitled *Edmondson v. Raniere*, Case No. No. 20-CV-485- EK-CLP, now pending in the Eastern District of New York.

9.      "Metadata" means structured information about ESI that is created by the file system or application, embedded in the document or email and sometimes modified through ordinary business use.  Metadata of the ESI describes, inter alia, the characteristics, origins, usage and validity of the collected ESI.

10.      "Native Format" means the format of ESI in the application in which such ESI was originally created and/or used by the producing party in the usual course of its business and in its regularly conducted activities.

11.      "Non-Party" means any individual or entity that is not a named Plaintiff or Defendant in this action.

12.      "OCR" means the optical character recognition technology used to read paper documents or electronic images of documents and output such documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

13.      "Party" means Plaintiffs and Defendants in the Matter.

14.    "Producing Party" means the Party that may be producing documents in response to the request of Requesting Party.

15.    "Requesting Party" means the Party requesting production of documents.

16.    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or documents.

## C.    Applicability

The production specifications in this Order apply to ESI that is produced in the first instance in the Matter. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions served in the Matter that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree in writing.

## D.    Deadlines

References to schedules and deadlines in this ESI Protocol shall comply with Rule 6.

## E.    Confidential Information

Nothing herein shall contradict the Parties' rights and obligations with respect to any protective order entered by the Court.

## F.    Encryption

To maximize the security of information in transit, any media on which Discovery Material is produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

### G.    Rolling Productions

Discovery Material that has been identified by a party for production shall be produced on a rolling basis at reasonable intervals.

## II.    SCOPE OF DISCOVERY

### A.    Preservation

Nothing in this Order shall alter the preservation duties imposed by the Rules or applicable law, and the Parties shall meet and confer regarding any issues that may arise with respect to such preservation obligations prior to bringing any disputes to the Court.

### B.    Documents Produced in Other Matters

To the extent any Party is required or agrees to produce Discovery Material in this Matter that was originally collected or produced in other civil cases or investigations, such documents shall be identified and produced to the extent possible in accordance with the production format described herein. Such Discovery Material will bear the original Bates numbers assigned to them in those other proceedings and the Bates stamp required in this Matter.

### C.    Third Party Subpoenas and the Processing of Non-Party Documents

A Requesting Party issuing a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the Non-Party produce documents in accordance with the specifications of this Order relating to form of production.   The Issuing Party is responsible for producing to all other Parties any productions obtained in the same form in which the Discovery Material was produced by the Non-Party. Such Non-Party productions should be served by the Issuing Party to all other Parties within fourteen (14) calendar days of the Non-Party's production to the Issuing Party.  If any such Non-Party productions are not Bates numbered by the non-party producer, prior to any Party reproducing the Non-Party documents, the Parties

will meet and confer to agree upon a format for designating the Discovery Material with a unique Bates number prefix.  For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

## III.    GENERAL PRODUCTION FORMAT PROTOCOLS

### A.    Appendices

Appendices A and B contain the technical specifications for the production of ESI. If there is any conflict between the body of this document and the Appendices, the text of the body of this document shall control.

### B.    Form of Production

Productions of Discovery Material should take the following file types and format.

**1.**    Emails, PDF files, and word processing (e.g. Microsoft Word) files shall be produced as TIFF files.  If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.  The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of e-mail messages should include the BCC line.  If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, annotations, and/or other hidden text, and no redaction is applied, the document shall be produced as a native file with a TIFF placeholder image.

**2.**    All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced as native files with TIFF placeholder images.

3.      All presentation files (e.g., PowerPoint) shall be produced as TIFF files with speaker note view visible except for files that contain hidden slides, comments, and/or notes (including speaker's notes), and no redaction is applied, in which case the document shall be produced as a native file with a TIFF placeholder image.

4.      All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images.

5.      Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

6.      The Parties will meet and confer on the production of other file types, including, but not limited to, CAD drawings, GIS data, materials and prototypes testing, data from messaging applications (e.g., Teams, Slack, Google Chat, et al.), CRM or ERP platforms, (SAP, Salesforce, et al.) etc., including with respect to non-standard metadata fields not already listed in Appendix B, below.

### C.      Text Files

Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set forth below. All text files shall be provided as a single document-level text file for each item, not one text file per page. Each text file shall be named using the Bates number of the first page of the corresponding production item.

1.      **Extracted Text.** All email, unredacted ESI, and redacted spreadsheets produced as native files, should be provided with document-level extracted text files. Extracted text shall include all comments, revisions, track changes, speaker's notes, and text from documents with comments or track changes, and hidden worksheets, slides, columns, and rows. Text extracted

from emails shall include header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"); (2) the author of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the date and time of the email, and (6) the names of any attachments.

        **2.**     **OCR.** In the event a document, other than spreadsheets (e.g., Excel files), contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any unredacted portions of the documents. Document-level OCR text files shall also be provided for hard-copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). The Parties will meet and confer regarding OCR capabilities for documents in foreign languages or skewed/rotated documents.

### D.     Redactions

        **1.**     No redactions for relevance may be made within produced Discovery Material. The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated. Each redaction on a document shall be completed using white or colored boxes that contain the word "Redacted" at the point of each redaction on each page of the redacted document. The redacted image file should be produced along with OCR text of the redacted file. If metadata displayed in the imaged document was redacted, then that metadata should be excluded from the load file.

2.     All metadata fields shall be provided, unless redaction of those fields is necessary to protect the asserted privilege. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format so long as the original document is also preserved in an unredacted form. The Parties shall meet and confer regarding the format of any native redactions.

### E.     Bates Numbering

All images must be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant prefix across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) use a unique text prefix. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. If a document is reproduced for any reason, it shall be reproduced under the same Bates number as the original production. If additional pages are needed beyond those allocated to it during the initial production, they shall be assigned additional number following a period (e.g., "ABC-000001.001")

### F.     Color

Documents containing color need not be produced in color. The Producing Party will promptly produce a color image of a document upon request if the original document contains color and the color conveys meaningful information.

### G.     Hard-Copy Documents

Collected and/or potentially responsive documents that exist in hard copy will be scanned to TIFF image format and produced in accordance with the specifications set forth in this Order.

A Party's hard-copy documents that are not text-searchable shall be made searchable by OCR prior to production at that Party's cost. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields (i.e., the "BegBates," "EndBates," "BegAttach," and "EndAttach" fields). The Parties will make reasonable efforts to unitize the documents correctly. Within 14 calendar days (or as otherwise agreed) after notice from a Requesting Party that a document appears to have been unitized incorrectly, the Producing Party shall either explain why the unitization is correct or produce a correctly unitized replacement if possible. If any original hard-copy document has any note or attachment affixed to it, the Producing Party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard-copy document, the Producing Party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

### H.    Family Relationships

Family relationships (e.g., the association between an attachment and its parent document, or between embedded documents, or linked internal or non-public documents and their parents) shall be preserved. A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents all constitute family groups.

Attachments should be consecutively produced with their parent such that the Bates numbers for the attachment(s) is/are directly subsequent to the parent document.

### I.    Complete Family Groups/Relationships

If any member of a family group is produced, all members of that group must also be produced or else logged as privileged/work-product without breaking the grouping of these documents. To the extent members of a family are withheld, the Producing Party shall include a slipsheet reflecting each document within the group withheld and the basis for withholding those documents.

### J.    Hyperlinks

To the extent possible, a Producing Party will use available technology to match hyperlinked documents, including those utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms, with the email or parent document to which the documents were attached. Documents extracted from embedded files or hyperlinks shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship. If documents cannot be extracted from links at the time of collection, the Parties agree to meet and confer to discuss alternative methods of collection and production. Upon request by the Receiving Party, the Producing Party will produce hyperlinked documents that were not otherwise produced and that are within the Producing Party's possession, custody, or control and are hyperlinked within the Producing Party's production. A reasonable request for hyperlinks should include a list of hyperlinks and corresponding Bates numbers. The Parties acknowledge that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent and also that hyperlinks may no longer be active or available. The parties also acknowledge that the metadata for hyperlinked documents produced under this

section may not reflect the metadata for those documents at the time the documents were hyperlinked. The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents.

## IV.    ESI METADATA FORMAT AND PROCESSING

### A.    System Files

ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

### B.    De-duplication

A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages or SHA-256 hash values. The Parties shall make reasonable efforts to avoid the production of Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Custodians, the Producing Party shall attempt to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails. Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When Duplicate ESI exists in the files of multiple custodians, the names of all custodians who were in possession of a document prior to de-duplication will be populated in the All Custodians field identified in Appendix B.

### C.    Embedded Files

Embedded files, except for images embedded in emails, are to be produced with family relationships preserved. Embedded files should be assigned Bates numbers that directly follow the

Bates numbers on the documents within which they are embedded and values in the "BegAttach" and "EndAttach" fields to indicate their family. Images embedded in emails shall not be separately produced in the first instance, but shall be produced upon reasonable request by the Receiving Party. A Producing Party is not required to review or produce extracted embedded OLE documents if the document they were extracted from will be produced in native format. Likewise, the File Path that would have been provided for each version of the document that was not produced due to de-duplication shall be populated in the All File Paths field.

### D.    Zero-byte Files

The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.

### E.    Hidden Text

ESI items processed after the execution date of this ESI Protocol shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

### F.    Compressed Files

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

### G.    Password-Protected or Encrypted Files

To the extent practicable, a Producing Party shall provide passwords to access any produced ESI items that are password protected upon request by a Receiving Party.  The Parties shall meet and confer to resolve any disputes over passwords to encrypted or password-protected ESI items.

H.     **Messages, Chats, and Enterprise Messaging**

The Parties will meet and confer to discuss the use of and relevance of message or chat ESI, including enterprise messaging (e.g., Slack, MS Teams, Zoom, WhatsApp, Sametime, Skype, Telegram, etc.) and message, chat and collaboration software ESI (e.g., Microsoft Teams, OneDrive, Slack, Facebook Messenger, Signal, or WhatsApp).  The Parties will further meet and confer regarding the processing and production format for relevant communications prior to any production of message or chat ESI.

## V.     SEARCH METHODOLOGY

A.     **Use of Search Methodologies**

1.     The Parties shall meet and confer regarding search methods, if any, used to identify responsive documents and ESI. The fact that a document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive documents and ESI shall not prevent any Party from withholding such file from production on the grounds that the file is protected from disclosure by applicable privilege or work-product protection.

2.     The use of a search methodology does not relieve a party from its obligations under the Rules to produce responsive documents, and accordingly documents or ESI known to be responsive to a discovery request or otherwise subject to production or relevant to the claims or defenses shall be produced without regard to whether it was returned by any search methodology used in accordance with this Order or otherwise agreed upon by the parties unless there is a claim of privilege. Prior to a Party using a search methodology (if any) to identify documents for production, the search terms, keywords, date limitations, and custodians applied to the data searched will be disclosed by the Producing Party to the Requesting Party. Within fourteen

(14) calendar days of such disclosure, the Parties must meet and confer regarding such terms, custodians, and date culling per paragraph V.B ("Search Terms") below.

        3.      Should a Party choose to use a search methodology, the party will specify what custodial and non-custodial sources that the search methodology will be run against. Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, hard-copy documents, or certain foreign language documents where the Parties do not have suitable search terms in such language, must be reviewed without search methodologies that rely primarily on text.

        4.      At meet and confers where the topic is the validity of search methodologies to identify documents subject to production, the Producing Party shall provide search terms hit reports pursuant to paragraph V.C ("Hit Reports") below, or other data points available to provide insight into the validity of the method used.

        5.      Should a Producing Party wish to use any method or methodology not specifically addressed by this Order to exclude documents from any review or production, notice to the Receiving Party must be made prior to the use of any such method or methodology.

    **B.**    **Search Terms**

        1.      Where the Parties agree that potentially responsive ESI should be searched using search terms, the Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application. Specifically, the Parties will meet and confer to provide reasonable assurances to the Requesting Party that the Producing Party's search terms and methodology used to apply them are reasonably calculated to identify responsive documents and ESI. Prior to or during such meet and confer, the Producing Party will provide the information required by this Order.

15

2.      If, after disclosure of the Producing Party's proposed search method, search
parameters, and search terms, and after a reasonable meet-and-confer process, a Requesting Party
believes in good faith that the Producing Party's proposals regarding search, retrieval, and
production would result in deficiencies in production, the Requesting Party may object to the
proposal and make requests for different or additional search methods, parameters, or search terms.
Such requests shall only be made after the Parties have met and conferred as to the alleged
deficiencies identified by the Requesting Party. If the issue is not resolved within fourteen (14)
calendar days after the objection, either Party may thereafter submit the dispute to the Court or its
designee for resolution.

### C.      Hit reports

A hit report shall contain, for each custodian or data source in the document collection
where the terms were applied, or as otherwise agreed, the following with respect to each proposed
or modified search term in the collection:

1.      The number of documents with hits for that term;

2.      The number of unique documents for that term and no other term; and

3.      The number of family members requiring review in connection with all
documents with hits.

## VI.    PRIVILEGE LOGS

### A.      Requirement and Timing

Any document falling within the scope of a request for production that is withheld or
redacted on the basis of a claim of attorney-client privilege, work product doctrine, or any other
claim of privilege from discovery (collectively referred to hereinafter as "privilege") should be
identified by the Producing Party in a privilege log.  The Parties agree to make reasonable efforts
to produce privilege logs on a rolling basis and agree that a  final privilege log should be produced

within 30 days of the completion of document production. Each entry on the privilege log shall include sufficient information for a party or the Court to determine whether the document is privileged.

**B.    Format**

Privilege logs will be produced in an Excel format, or other agreed-upon format, which allows the Receiving Party to search and sort any and all columns and entries of the privilege log.

**C.    Fields**

**1.    Metadata**

A log of the documents withheld or redacted for privilege will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronically stored information:

- Author
- Subject
- Title
- Attachment Name
- File Name
- File Path(s)
- Last Saved/Edited By
- Custodian(s)
- Sender/From
- Recipient/To
- CC
- BCC
- Sent Date/Time
- Created Date/Time
- Date/Time Last Modified
- Family relationship (e.g., identifying parent emails and attachments)
- File Extension
- Attachment Count
- Hash Value
- Conversation ID or Thread ID

Parties may substitute an alternative description of the content within the identified metadata field(s) where the content of the metadata field reveals privileged information. The

Producing Party shall identify each instance in which it has modified the content of the field and the basis for the modification.

2.    **Identifying Attorneys and Third Parties**. The privilege logs will clearly identify any attorneys on the privilege log using an asterisk or other agreed-upon method and any third party, along with the name of the third-party business, and the job title and/or role of the third-party identified in a log entry or entries. To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information regarding which attorney(s) requested or were involved in the preparation of the document that is claimed to be privileged.

3.    **Other contents.** Parties will also include on the privilege log fields containing:

- a unique document ID or Bates number;
- the log production date;
- information sufficient to understand the family relationship of withheld or redacted documents;
- the privilege asserted (*e.g.*, attorney-client, work product); and
- a description of the nature of the withheld or redacted document or communication in a manner that, without revealing information claimed privileged, will enable a party to assess the privilege claim.

4.    **Treatment of Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

If the document is the parent or child of a family of documents, some of which have been produced and others withheld, the log should identify the Bates numbers of the first document (i.e., the parent, or if the parent is withheld the first attachment) produced from the family in which the logged document was withheld.

D.    **Listservs**

18

To the extent that Listserv or group email addresses are identified on the privilege log, the Designating Party shall work in good faith to identify individuals and/or groups of individuals and/or groups of individuals who make up such Listserv or group email.

### E.    Hard Copy

To the extent a Producing Party seeks to withhold or redact any hard-copy documents or documents lacking sufficient metadata, the Producing Party shall log – if known – the following information for such documents consistent the Rules:

- a statement of the ground(s) alleged for withholding all or part of such document;
- the date the document was prepared;
- the date the document was distributed;
- the identity of the document's author;
- the identity of all recipients of the document;
- an indication of all authors or recipients of the document who are attorneys;
- an indication of all authors or recipients of the document who are third parties and the nature of each third-party relationship;
- a description of the nature of the withheld or redacted document in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the privilege claim; and
- a unique document ID or Bates number.

### F.    Redactions

Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself.

### G.    Communications following the Complaint

Privilege log identification is not required for privileged communications exchanged after the filing of the Complaint between the Producing Party and their counsel.

### H.    No Categorical Logging

Absent agreement in writing by the Parties, documents withheld or redacted on the basis of privilege may not be logged categorically. In other words, each description of the withheld or

redacted document required in this section shall be created from an assessment of the individual document.

**O.**      When the deposition of a custodian is scheduled for a date following substantial completion of a production of their custodial file, the parties shall provide privilege logs involving documents from the deponent's custodial file no fewer than fourteen (14) days prior to the deposition, unless otherwise negotiated and agreed to between counsel.

## VII. CHALLENGING PRIVILEGE

Should a Receiving Party have a good-faith reason to believe a particular entry or portion of the entry log is not accurate or does not provide adequate information, the Receiving Party may request additional information, which will be provided to the Receiving Party upon reasonable request within fourteen days (14) in a supplemental privilege log consistent with the Rules.

**A.**      A Receiving Party may challenge a Producing Party's claims of privilege or work product protection at any time.

**B.**      The Receiving Party shall set forth in writing their challenges and the Producing Party shall have fourteen (14) calendar days to respond. Failure to respond timely will be presumed to terminate the meet and confer process.

**C.**      Within seven (7) calendar days of the Producing Party's response or such other time as may reasonably be agreed by the Parties, the Parties shall meet and confer to attempt to resolve the challenge.

**D.**      Once Receiving Party initiates a written challenge pursuant to paragraph A herein, the meet and confer process shall be presumed concluded no later than thirty (30) calendar days later or such other time as may reasonably be agreed by the Parties, inclusive of the response times in paragraphs B and C.

E.    If the Receiving Party lodges a challenge to a withheld or redacted document, the Parties agree to meet and confer regarding the claim of privilege pursuant to the guidelines herein. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court.

DATED THIS _____ Day of _____, 2025

_____
Honorable Eric R. Komitee
Chief Magistrate Cheryl L. Pollak
United States District Court
Eastern District of New York

WE SO MOVE

And agree to abide by the terms of this Order

William E. Hoese
Robert A. Swift
Zahra R. Dean
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
whoese@kohnswift.com
rswift@kohnswift.com
zdean@kohnswift.com

*Attorneys for Plaintiffs*

Adam M. Prom
DICELLO LEVITT LLP
10 North Dearborn Street, Sixth Floor
Chicago, IL 60602
(312) 214-7900
aprom@dicellolevitt.com

Robin A. Henry
Anne S. Aufhauser
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 859-8000
robin.henry@friedfrank.com
anne.aufhauser@friedfrank.com

*Attorneys for Sara Bronfman*

Aaron M. Goldsmith
225 Broadway, Suite 715
New York, NY 10007
(914) 588-2679
aarongoldsmithlaw@gmail.com

*Attorney for Keith Raniere and Clare Bronfman*

21

Greg G. Gutzler
Emma Bruder
DICELLO LEVITT LLP
485 Lexington Avenue, 10th Floor
New York, NY 10017
(646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

*Attorneys for Plaintiffs*

Agnieszka M. Fryszman
Brendan R. Schneiderman
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

Manuel John Dominguez
COHEN MILSTEIN SELLERS
  & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
jdominguez@cohenmilstein.com

*Attorneys for Plaintiffs*

Danielle Roberts
575 Easton Ave
Apt. 18 S
Somerset, NJ 08873
(516) 480-1700
danielle@drdanielleroberts.com

*Appearing pro se*

**<u>APPENDIX A</u>**

**TECHNICAL SPECIFICATIONS**
**<u>AND REQUIRED METADATA FIELDS</u>**

**IMAGES:**

- o Produce documents as single page, black and white, Group IV, TIFF files.

- o Image Resolution 300 DPI.

- o File Naming Convention: Match Bates Number of the page.

- o Insert placeholder image for files produced in Native Format.

- o Original document orientation shall be retained.

**SPECIAL FILE TYPE INSTRUCTIONS:**

- o Certain documents shall be produced in Native Format as required by Section III of this Protocol.

**FULL TEXT EXTRACTION/OCR:**

- o Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content.

- o Produce OCR text for any hard-copy document.

- o Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).

- o Produce OCR text for any redacted document.

- o Production format: Single text file for each document, not one text file per page.

- o File Naming Convention: Match BegBates Number.

**LOAD FILES**

**Data Load File**

- o The data load file should use standard Concordance delimiters:

- o Comma - ¶ (ASCII 20)

- o Quote - þ (ASCII 254)

- o  Newline-® (ASCII174)

- o  The first record should contain the field names in the order of the data

- o  All date fields should be produced in mm/dd/yyyy format

- o  Use carriage-return line-feed to indicate the start of the next record

- o  Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered

- o  The name of the data load file should mirror the name of the delivery volume, and should have a DAT extension (i.e., ABC00l.DAT)

- o  The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.)

**Image Load File**

- o  The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.OPT)

- o  The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- o  There should be one row in the Load File per TIFF image.

- o  Every image in the delivery volume should be contained in the image load file.

- o  The image key should be named the same as Bates Number of the page.

- o  Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

- o  The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

# APPENDIX B

## METADATA FIELDS

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Production Number Begin [ProdBeg] | Document Starting Bates # | x | x | x |
| Production Number End [ProdEnd] | Document Ending Bates # | x | x | x |
| Attachment Begin [ProdBegAttach] | Beginning Bates of attachment range | x | x | x |
| Attachment End [ProdEndAttach] | Ending Bates of attachment range | x | x | x |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| Source | This is the source from which non-custodial data was collected | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | x |
| File Name | File name of document (Original including Extension) | x | x | |
| File Extension | File extension of original document | x | x | |
| Email Outlook Type | Type of Outlook item (e.g., email, calendar item, note, task) | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | x |
| Author | Document author of a non-Email document. | | x | x |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Email Subject | Subject of email | x | | |
| From | Email author | x | | |
| To | Email recipients | x | | |
| CC | Email copyees | x | | |
| BCC | Email blind copyees | x | | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| File Path | File path of the location where the item was located during the normal course of business. | x | x | |
| All File Paths | File path that would have been provided for each version of the document that was not produced due to de-duplication. | x | x | |
| Filesize | Size or volume of individual file | x | x | |
| HasHiddenContent | Y if hidden content, otherwise N or empty | | x | |
| Physical Location | The actual location where the Document is stored or preserved | | | x |
| Box Number or unique identifier | The box number associated with archived documents. | | | x |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Production Volume | Production volume name, including a volume number and a prefix | x | x | x |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| | which indicates the Producing Party | | | |
| Confidentiality | Confidentiality designation pursuant to the Protective Order, if any | x | x | x |
| Redacted | Descriptor for documents that have been redacted, yes or y if document contains redactions, otherwise n or blank | x | x | x |
| Redaction Reason | This field should be populated by the basis for the redactions on this document. Multiple entries shall be separated by semicolons | x | x | x |
| Native Link | Path to produced native file used for linking | x | x | x |
| Family Date | Date of the parent email associated with child documents | x | x | |
| Family Time | Time of the parent email associated with child documents | x | x | |
| Text Link | Path to produced text file used for database linking | x | x | x |
| Other Legal Matter/ Regulatory/Related Productions BegAttach | Beginning Bates number of the first document in an attachment range used when produced in the other legal matter | x | x | x |
| Other Legal Matter/Regulatory/Related Productions EndAttach | Ending Bates number of the last document in attachment range used when produced in the other legal matter | x | x | x |