```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

 SARAH EDMONDSON, et al.,

                    Plaintiffs,              **MEMORANDUM & ORDER**
                                             20-CV-485 (EK)(CLP)

           -against-


 KEITH RANIERE, et al.,

                    Defendants.

-----------------------------------x
```
ERIC KOMITEE, United States District Judge:

        This order supplements the Court's September 2024 order dismissing several claims in this long-running civil action. ECF No. 240. The plaintiffs seek civil damages for injuries caused by members of NXIVM, an Albany-based organization that held itself out as an educational enterprise with a unique approach to personal growth. Several members of that organization have been convicted of serious felonies, including serious sex crimes, and its leader — Keith Raniere — is serving a life sentence.

        In September 2024, the Court dismissed certain claims against two defendants — Clare and Sara Bronfman. At the same time, the Court reserved judgment on the civil RICO claims against the sisters, instead inviting the plaintiffs to assert

more detailed allegations concerning the injuries caused by the sisters' alleged racketeering activities.

Having reviewed those revised allegations, the Court now concludes that thirteen plaintiffs have failed to state a cognizable RICO injury.[1] Those plaintiffs' RICO claims against the Bronfman sisters are dismissed. The remaining plaintiffs' RICO claims may proceed.

## I. Background

The Court assumes the parties' familiarity with the factual and procedural background of this case. It therefore recites only the facts essential to this order.

In September 2024, the Court ruled on the Bronfman sisters' motion to dismiss the claims against them. *See generally* Dismissal Order, ECF No. 240. Among other rulings, the Court reserved judgment on the RICO conspiracy and substantive RICO claims against the Bronfmans. *Id.* at 54-55, 58-59. The Court held that the plaintiffs had adequately alleged each sister's involvement in two predicate racketeering activities, one of which was mail and wire fraud. *Id.* at 51, 55.

---

[1] Those plaintiffs are Jessica Salazar, Daniela, Camila, Valerie, Margot Leviton, Isabella Constantino, Carysa Cottrell, Rosalyn Cua, Susan Pratt, Juliana Vicente, Susan Wysocki, Gabrielle Gendron, Rees Alan Haynes, and Nils MacQuarrie.

2

More specifically, the plaintiffs had sufficiently alleged that the Bronfman sisters participated in a "curriculum-related fraud scheme." *Id.* at 54. As outlined in the complaint, the defendants used misleading marketing materials to "induce [p]laintiffs to purchase NXIVM curriculum they would not otherwise have purchased." Third Am. Compl. ¶ 212, ECF No. 215. These materials allegedly falsely stated, among other things, that NXIVM lessons could lead to "empirically measurable" improvements in mental health; that NXIVM courses were "needed for promotion in the NXIVM community"; and that "NXIVM's curriculum could be completed by the taking of courses." *Id.* ¶¶ 55, 211-12.

While the complaint plausibly alleged the Bronfman sisters' participation in this scheme, the plaintiffs had not sufficiently alleged their own "statutory" standing. To allege RICO standing, a plaintiff must allege (1) a predicate act, (2) a "clear and definite" injury to "business or property," and (3) causation. *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003).[2] Having concluded that the plaintiffs had not alleged a sufficiently clear and definite injury to business or property, the Court ordered them to file an updated "Schedule A" to their complaint, setting out in greater detail the injuries

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

3

that each plaintiff claims to have suffered because of the curriculum-related fraud scheme. *Id.* at 54-55.

The plaintiffs filed an updated Schedule A on November 26, 2024. ECF No. 249. But at oral argument on that updated Schedule, the Court noted that many of the newly alleged injuries did not stem from the alleged curriculum-related fraud. Oral Arg. Tr. 6:10-18, ECF No. 284. Instead, the plaintiffs asserted injuries flowing from *new fraud* predicates that did not appear in the original complaint. *Id.* The Court had only granted the plaintiffs permission to supplement their complaint regarding their *injuries* from the curriculum fraud they had previously alleged, not to plead new or broadened fraud allegations. So, the Court directed the plaintiffs to file a second updated Schedule A, *id.* at 26:11-22, which they did on February 21, 2025. *See generally* Amended Schedule A, ECF No. 269 (hereinafter "Schedule A"). That is the operative Schedule A now before the Court.

## II. Discussion

To establish RICO standing, a plaintiff must allege that "[1] he has been injured in his business or property [2] by the conduct constituting the RICO violation, and only when [3] his or her actual loss becomes clear and definite." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). RICO standing requires both but-for and proximate causation. *Holmes*

4

*v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 267-68 (1992). This means the plaintiff must allege a "direct relationship between the plaintiff's injury and the defendant's injurious conduct." *DeFalco v. Bernas*, 244 F.3d 286, 329 (2d Cir. 2001).

**A.   Ten Plaintiffs Impermissibly Allege New Fraud Predicates**

Ten plaintiffs fail to allege definite injuries stemming from the "conduct constituting the RICO violation" — that is, the alleged curriculum fraud. Instead, they assert injuries caused by allegedly fraudulent representations pertaining to subjects *other than* NXIVM's curriculum. In so doing, they improperly allege new fraud predicates that do not appear in the complaint.

- **Jessica Salazar** alleges that she incurred relocation expenses in reliance on the representation that she would co-own a t-shirt business with Keith Raniere. Schedule A, at 11-12.

- **Daniela** alleges that she incurred relocation expenses in reliance on the representation that she would be employed as a computer programmer at a NXIVM entity. *Id.* at 17-18.

- **Camila** alleges that she worked without compensation to develop a child-care program in reliance on the representation that this experience would be transferable to other NXIVM businesses.[3] *Id.* at 18-19.

---

[3] Daniela and Camila also concede that they did not rely on the Bronfman sisters' alleged misstatements when they purchased NXIVM curricula. *See* Third Am. Compl. ¶ 53, ECF No. 215. As the Court noted in its dismissal order, "RICO standing effectively injects a reliance element into mail and wire fraud predicates." *See* Dismissal Order 53 (citing *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015)). This provides an independent basis for dismissing their curriculum fraud allegations.

- **Valerie** alleges that she performed administrative work in reliance on the false representation that she would be compensated for doing so. *Id.* at 34-35.

- **Margot Leviton** alleges that she incurred relocation expenses in reliance on the representation that NXIVM had developed a new treatment for obsessive-compulsive disorder. *Id.* at 40-42.

- **Isabella Constantino** and **Carysa Cottrell** allege that they incurred relocation expenses in reliance on the representation that NXIVM had developed a new treatment for Tourette's syndrome. *Id.* at 42-43.

- **Rosalyn Cua** alleges that she worked without compensation to develop a training program called OneAsian in reliance on the representation that she would be compensated. *Id.* at 47-48.

- **Juliana Vicente** alleges that she incurred relocation expenses in reliance on the false promise of a job with a NXIVM entity.[4] *Id.* at 62.

- **Nils MacQuarrie** alleges that he incurred relocation expenses and worked without pay to develop trainings in reliance on the representation that he would be able to teach them.[5] *Id.* at 77.

None of these plaintiffs allege that they purchased the NXIVM curriculum because of misrepresentations about what that curriculum would offer. Instead, they incurred other expenses (*e.g.*, relocation expenses), in some cases based on promises

---

[4] Juliana Vicente also alleges that she paid for NXIVM curriculum based on the representation that the courses were necessary to continue working at a NXIVM entity. Schedule A, at 62. But she does not appear to allege that this representation was false.

[5] Crucially, MacQuarrie's allegations concern *developing* courses, not *paying for and taking* those courses. Schedule A, at 77. The same logic applies to Rosalyn Cua's allegations about developing a training program called OneAsian. *Id.* at 47.

6

unrelated to the content of the curriculum (*e.g.*, the promise of starting a t-shirt business). They therefore allege injuries not caused by the alleged NXIVM curriculum fraud scheme.

At oral argument about the operative Schedule A, plaintiffs suggested that the alleged fraud scheme went beyond misrepresentations about the curriculum, and included any representation designed to "bring people to Albany" for exploitation by NXIVM members. Oral Arg. Tr. 18:23-19:5, ECF No. 290. But plaintiffs could identify nothing in the complaint alleging a scheme of this breadth, apart from the extremely general, introductory statement that NXIVM's "central purpose was to enrich its leadership." *Id.* at 18:11-19:5; *see also* Third Am. Compl. 6.

Moreover, the plaintiffs have never asked the Court to reconsider its prior conclusion that the alleged curriculum fraud (and not some other, more generalized fraud scheme) was one of the predicate acts underpinning the civil RICO claims. Dismissal Order 37 ("The complaint alleges a straightforward consumer fraud in the sale of NXIVM's educational program."). The Court therefore declines, under the law-of-the-case doctrine, to deviate from that conclusion here. *See In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) ("The law of the case doctrine, although not binding, counsels a court against

7

revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons" to do so).

**B. Three Plaintiffs Challenge Non-Actionable Statements**

Three other plaintiffs allege injuries based on statements that, while related to the NXIVM curriculum, are not actionable in a fraud claim. More specifically:

- **Susan Pratt** alleges that she purchased NXIVM courses based on representations that they would "boost her confidence and success in investing in stocks." Schedule A, at 57.

- **Susan Wysocki** alleges that she purchased NXIVM courses based on the representation that they would "help with her career." *Id.* at 63.

- **Rees Alan Haynes** alleges that he purchased NXIVM courses based on the representation that he would "earn more income in his business." *Id.* at 76.

The statement that Pratt challenges will not support a fraud claim. A plaintiff may not base a fraud claim on "subjective claims about products, which cannot be proven either true or false." *Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006, 2015 WL 3540836, at *9 (S.D.N.Y. June 5, 2015) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007)). And the claim that NXIVM classes would "boost [Pratt's] confidence and success" cannot be falsified, because Pratt's level of confidence is entirely subjective. *E.g.*, *Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d Cir. 1976) ("What one man

8

would call a success another might not; there is no certain objective standard to which reference is impliedly made.").

The statements that Haynes and Wyosocki challenge are non-actionable for the same reason. A generic statement that a product will "help" or "improve" a plaintiff's business or financial prospects is a subjective claim that cannot be challenged in a fraud case. *See, e.g.*, *Goureau v. Lemonis*, No. 20-CV-4691, 2021 WL 3931897, at *4 (S.D.N.Y. Sept. 2, 2021) (claim that defendants' products would "help grow [the plaintiffs'] business" was non-actionable); *Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) (statement that plaintiffs would "make good money" with broker was non-actionable).

In sum, Pratt, Wysocki, and Haynes do not identify a clear and definite injury flowing from conduct constituting a RICO violation (*i.e.*, fraud). They therefore cannot establish RICO standing, and their claims must be dismissed.

**C. The Remaining Plaintiffs Have RICO Standing**

The remaining plaintiffs allege a direct injury flowing from actionable statements about the content of the NXIVM curriculum, and therefore have RICO standing.

Most of challenged misstatements concern whether, after paying for the NXIVM curriculum, a plaintiff would graduate and get (1) a paid job with an organization under the

9

NXIVM umbrella or (2) a NXIVM certification or authorization permitting the plaintiff to start a NXIVM-related business. Dozens of plaintiffs allege that they spent money on courses in reliance on this representation, only to later be denied the promised opportunity.[6] *See generally* Schedule A. These allegations are sufficient to establish RICO standing at this stage. Each plaintiff suffered a clear and direct injury to their property (i.e., loss of money). *Bascuñán v. Elsaca*, 874 F.3d 806, 820 (2d Cir. 2017) (money is property under RICO). And those injuries flowed directly from statements that were actionable in a curriculum fraud case. *E.g.*, *Moy v. Adelphi Inst., Inc.*, 866 F. Supp. 696, 706 (E.D.N.Y. 1994) (plaintiffs who bought classes based on allegedly false promises of material benefits, such as placement services and access to state and federal grants, adequately alleged a fraud predicate under RICO).

Similar logic applies, at least at this stage, to plaintiffs who paid for NXIVM curricula based on the representation that NXIVM classes offered business training or

---

[6] These plaintiffs include Sarah Edmondson, Soukiana Mehdaoui, Nicole, Bonnie Piesse, Tabitha Chapman, Ashley Mclean, Mark Vicente, Anthony Ames, Veronica Jaspeado, Paloma Pena, Charlotte, Rachel, Lindsay MacInnis, Jennifer Kobelt, Deanne Brunelle, Karla Diaz Cano, Pamela Cooley, Shayna Holmes, Andrea Hammond, Yan Huang, Sara Lim, Ariella Menashy, Elham Menhaji, Maja Miljkovic, Michelle Neal, Alison Rood, Katie Shaw, Kristin, Hannah Vanderheyden, Kayla Grosse, Stephanie Fair-Layman, Scott Starr, Alejandro Balassa, Madeleine Carrier, Rod Christiansen, Chad Williams, Robert Gray, Ken Kozak, Jane Doe 8, and Jane Doe 9.

were "equivalent to a graduate degree or practical MBA."[7] *See, e.g.*, Schedule A, at 21. These plaintiffs lost money based on the representation that NXIVM classes would provide sufficient business training to prepare them for jobs within and without NXIVM. Those representations are actionable in a fraud cause, so these plaintiffs have alleged RICO standing. *See Moy*, 866 F. Supp at 706 (statement that curriculum would "prepare students for graduate equivalency diploma examination" was actionable as curriculum fraud).

Finally, a handful of plaintiffs allege that they paid money based on the representation that they would receive access to the NXIVM curriculum, but eventually received no curriculum or a different curriculum than the one promised.[8] *See, e.g.*, Schedule A, at 73-74. Again, these plaintiffs have alleged a direct injury to property. *Bascuñán*, 874 F.3d at 820. And that injury flows from alleged misrepresentations that are actionable in a fraud case. *Moy*, 866 F. Supp. at 706 (statements about "various curricula available to enrolling students" were actionable where plaintiffs allegedly never received access to

---

[7] These plaintiffs include India Oxenberg, Ashley Mclean, Adrienne Stiles, Brienna Fiander, Shayna Holmes, Katie Shaw, Sarah Wall, Philip Akka, Ashley Harvey, and Anthony Madani.

[8] These plaintiffs include Andrea Hammond, Katie Shaw, Owen Giroux, Polly Green, Susan Patricia Vieta, Jeffrey Golfman, Anthony Madani, Gabrielle Gendron, and Christopher Black.

11

the "specific courses . . . promised"). So, these plaintiffs have alleged RICO standing too.

### III. Conclusion

For the foregoing reasons, the Court concludes that Jessica Salazar, Daniela, Camila, Valerie, Margot Leviton, Isabella Constantino, Carysa Cottrell, Rosalyn Cua, Susan Pratt, Juliana Vicente, Susan Wysocki, Rees Alan Haynes, and Nils MacQuarrie have failed to adequately allege RICO standing. Their RICO claims against the Bronfman sisters are therefore dismissed with prejudice. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 357 F. Supp. 2d 712, 720 (S.D.N.Y. 2005), *aff'd*, 493 F.3d 87 (2d Cir. 2007) ("As plaintiff has already had an opportunity to amend, dismissal is with prejudice."). The remaining RICO claims against the Bronfman sisters may proceed.[9]

---

[9] Defendant Roberts has moved to strike any reference in the revised Schedule A to representations she allegedly made to the plaintiffs. *See* ECF No. 281. Her primary argument is that these references are irrelevant, because they do not relate to the sole remaining claim against her, which is for battery. *Id.* at 1. But when a RICO plaintiff alleges a mail or wire fraud predicate, she need not allege that a given defendant made the challenged misstatement, so long as she alleges sufficient facts showing that defendant's "knowing or intentional participation" in a scheme to defraud. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *accord Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 492 (S.D.N.Y. 2020). Thus, statements made by co-defendants like Roberts, whom plaintiffs allege was part of the RICO enterprise, *see* Third Am. Compl. ¶ 237, may be relevant to the RICO claims against the Bronfman sisters. Roberts' motion to strike is denied.

SO ORDERED.

                                           /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge

Dated:    September 8, 2025
            Brooklyn, New York