April 21, 2026


The Honorable Peggy Cross-Goldenberg
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Edmondson et al. v. Raniere et al.,* C.A. No. 20-cv-00485

Dear Magistrate Judge Cross-Goldenberg:

      We write pursuant to this Court's orders dated March 11, 2026 and March 19, 2026, directing the parties to file a joint status report in advance of the April 28, 2026 status conference.

      As described by Judge Komitee, "[t]he plaintiffs seek civil damages for injuries caused by members of NXIVM, an Albany-based organization that held itself out as an educational enterprise with a unique approach to personal growth."  Order at 4, Dkt. No. 313 ("September 2025 Order").

      Nineteen (19) Plaintiffs assert claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Thirty-six (36) Plaintiffs assert only RICO claims for alleged injury to property, including money allegedly spent on NXIVM courses and unpaid labor ("RICO-Only Plaintiffs").  Four (4) Plaintiffs assert battery claims arising from the alleged branding of those Plaintiffs as part of DOS.

      After the Court's rulings and Plaintiffs' voluntary dismissals, the following claims remain:

      <u>Against Sara Bronfman ("S. Bronfman")</u>:  a civil RICO claim and a civil RICO conspiracy claim, each asserted by fifty-one (50) Plaintiffs, and a TVPRA claim asserted by a single Plaintiff.

      <u>Against Clare Bronfman ("C. Bronfman")</u>:  a civil RICO claim and a civil RICO conspiracy claim, each asserted by fifty-one (50) Plaintiffs, and a TVPRA claim asserted by nineteen (15) Plaintiffs.

      <u>Against Keith Raniere ("K. Raniere")</u>:  a civil RICO claim and a civil RICO conspiracy claim, each asserted by fifty-five (54) Plaintiffs, and a TVPRA claim asserted by nineteen (19) Plaintiffs.

      <u>Against Danielle Roberts ("D. Roberts")</u>:  battery claims asserted by four (4) Plaintiffs. D. Roberts asserts that one claim remains against D. Roberts. Battery survived D. Roberts' motion to dismiss only in order to allow any evidence that may illustrate the tolling of the statute of limitations (raised by the Plaintiffs) to be produced (ECF No. 298). Once fact discovery is complete, filing of partial summary judgement could resolve this dispute and release D. Roberts from this litigation. For this reason, and in the interest of judicial economy, the prior Magistrate Judge, in our conference on October 14th directed the Plaintiffs to expedite discovery related to D. Roberts' final claim.

      The TVPRA claims arise from allegations that certain Plaintiffs were subjected to forced labor, sex and human trafficking...

      The Court has held that the RICO claims are limited to a "curriculum-related fraud scheme." *See id.* at 2-3 (citing Dismissal Order, Dkt. No. 240).  In brief, Plaintiffs contend that they did not receive the value that they expected, based on alleged misrepresentations, from certain NXIVM curriculum, resulting in economic loss. *Id.* at 9-12 (describing Plaintiffs' RICO standing).

The Court allowed discovery to begin in March 2025 under the supervision of Magistrate Judge Pollack. Plaintiffs have served document requests on all Defendants and two sets of interrogatories on Keith Raniere, Clare Bronfman, and Sara Bronfman. Defendants have served document requests and interrogatories on Plaintiffs. The parties have served objections and responses to all the discovery requests and have met and conferred in good faith, including through written correspondence and conferences, in an effort to resolve disputes without Court intervention. Several disputes remain unresolved and are summarized below.

**Issue 1: Imaging and Searching of Rico-Only Plaintiffs' Devices.** This dispute concerns whether Plaintiffs must collect and produce ESI from the devices of RICO-Only Plaintiffs.

Plaintiffs state that, in light of the narrowed scope of the RICO claims and the associated vendor collection, processing, and review costs, imaging and searching these devices would be unduly burdensome and disproportionate.

Defendant S. Bronfman objects to this limitation and maintains that broader collection, including imaging and searching of those Plaintiffs' devices, is required. No resolution of the issue has been reached.

The last status conference in this matter was held on October 14, 2025, at which time Plaintiffs believed their position applied to approximately ten of the fifty-one RICO plaintiffs. Following the conference, Magistrate Judge Pollak directed the Plaintiffs to submit to S. Bronfman "a letter explaining what plaintiffs' attorneys are not producing for the 10 RICO plaintiffs discussed in the conference, and why." Minute Entry (Oct. 15, 2025).[1] Plaintiffs sent their first letter on October 17, 2025, and S. Bronfman challenged that position in a subsequent letter submission to the Court. *See* Dkt. No. 324. Plaintiffs filed a responsive letter on November 6, 2025. *See* Dkt. No. 326. The parties subsequently continued to correspond regarding their respective positions in an effort to resolve the dispute.

In an April 10, 2026 letter, Plaintiffs advised S. Bronfman of their current position: Plaintiffs intend to collect, search, and produce ESI for RICO-Only Plaintiffs from email accounts, along with responsive financial records and curriculum-related materials, but not from devices more broadly. Plaintiffs further advised that this collection limitation applies to all RICO-Only Plaintiffs. *See* Ex. A (Pls.' Apr. 10 Letter).

**Issue 2: Case Management & Discovery Schedule.** This dispute concerns the structure and sequencing of discovery.

Plaintiffs proposed, by letter dated April 10, 2026, a "bellwether approach" pursuant to which the trafficking claims and curriculum fraud claims would be bifurcated. *Id.* Plaintiffs suggest that the trafficking claims (and battery claims, where applicable) of five (5) plaintiffs proceed through discovery and to trial in advance of any continued litigation relating to the RICO plaintiffs.

Defendants S. Bronfman, C. Bronfman, and K. Raniere object to this proposal and seek a case-wide schedule. D. Roberts also objects and has requested bifurcation and expedited discovery limited to the single battery claim asserted against her, along with a stay of her counterclaims until that claim is resolved. *See* Ex. B (D. Roberts Letter (Apr. 14, 2026)). The parties have met and conferred and exchanged correspondence on the issue, but have not reached agreement on the bellwether approach.

**Issue 3: HIPAA Authorization Forms.** C. Bronfman and K. Raniere have repeatedly requested copies of duly executed HIPAA authorization forms for full and complete medical records of all Plaintiffs who are pursuing trafficking claims against them. Defendant Roberts has separately requested limited HIPAA authorizations for the four Plaintiffs asserting battery claims against her.

---

[1] There is no transcript of the October 14th conference.

Plaintiffs object on the grounds that such authorizations are not required, would be overbroad and disproportionate, and would create inefficiencies and unnecessary intrusion into sensitive medical information, particularly where Plaintiffs' counsel has already been collecting, reviewing, and producing relevant records. *See, e.g.*, Ex. C (Pls.' Resp. and Obj. to Defendants Raniere's and Bronfman's 1st Set of Reqs. for Prod. at RFPs Nos. 1-4) (June 26, 2025)); Ex. A (Pls.' Apr. 10 Letter). That issue remains unresolved.

**Issue 4: Discovery Requests by D. Roberts.** There are four additional disputes regarding discovery requests issued by D. Roberts and Plaintiffs' responses and productions. Plaintiffs and D. Roberts have met and conferred five times — October 19, 2025, and four times between March 25, 2026 and April 20, 2026 — in addition to exchanging email and letter negotiations. These efforts have not resolved these disputes.

4a. Roberts' RFP No. 5 (Knowledge of Criminal Charges). RFP No. 5 seeks "documents and communications reflecting whether the battery Plaintiffs knew or did not know that the Defendant had not been charged criminally from the time of the alleged battery until the civil claim was filed." *See* Ex. D (Pls.' Resp. and Obj. to D. Roberts' Am. 2d Set of RFPs (Dec. 18, 2025)).

Plaintiffs have refused to produce any uniquely responsive documents and stand on their objections that the request is overbroad, unduly burdensome, and not proportional under Rule 26(b)(1). *Id.* They further assert that Plaintiffs' knowledge of criminal charging decisions has "no bearing on statutory tolling under New York law." *Id.* D. Roberts asserts that Plaintiffs themselves have repeatedly relied on tolling arguments to oppose dismissal of the battery claim (Dkt. No. 250), and having placed the timing of the criminal case and Plaintiffs' knowledge of it at the center of their tolling defense, they cannot now withhold documents that directly bear on those very facts.

4b. Number of Interrogatories. D. Roberts originally submitted fifty interrogatories to the Plaintiffs. *See* Ex. E (D. Roberts' Am. Req. for Pls. to Answer Interrogs (Nov. 10, 2025)). Some were duplicative or unpointed due to the Defendants *pro se* status and learning of this process for the first time. Plaintiffs responded to twenty-five, citing the numerical limit under Fed. R. Civ. P. 33(a)(1). D. Roberts subsequently narrowed her requests and asserted that the requests specified her reasonable and proportional needs directly related to the claim at hand, and requested for Plaintiffs' stipulation for leave to serve up to 50 interrogatories total pursuant to Fed. R. Civ. P. 33(a)(1) and 26(b)(1), asserting that additional interrogatories are necessary and proportional to the needs of the case. Plaintiffs have continued to deny this request.

4c. Sharing of Plaintiff Pena's Interrog. Responses. D. Roberts has requested to share Plaintiff Pena's interrogatory responses (which are designated Highly Confidential) with Jimena Garza to refresh her recollection of the event in order for Roberts to prepare her defense. Plaintiffs have declined this request based on the Stipulated Protective Order, which provides that Highly Confidential Information may be disclosed only to persons to whom the designating party agrees in advance of disclosure. *See* Ordered Stip. Protective Order § 4(C)(vii), Dkt. No. 307. D. Roberts asserts that Garza directly witnessed Paloma's branding process and has direct knowledge as to the truth or falsehood of Paloma's statements so disclosure is essential for Roberts' consent defense, directly related to the elements of battery.

4d. Roberts' ROGs Nos. 1-2 and 6 (Witness Identification). D. Roberts requested the names and addresses of all individuals with knowledge related to the battery claims, as well as summaries of the substance of that knowledge. *See* Ex. E (D. Roberts' Am. Req. for Pls. to Answer Interrogs (Nov. 10, 2025)).

Plaintiffs have agreed to provide address information for responding Plaintiffs and, to the extent reasonably available, for already identified witnesses, which are percipient witnesses only, sufficient to facilitate service of process. Plaintiffs do not agree to provide summaries of witness knowledge or to identify all individuals who may have knowledge beyond those already identified.

If Plaintiffs bring other witnesses, besides the ones provided, before the court, Roberts brings it to the Court's attention now that they should be precluded from testifying.

3

#### A.  <u>Plaintiffs' Position</u>

**Issues 1 & 3: RICO-Only Plaintiffs' ESI Collection and HIPAA Authorizations / Medical Records**

Plaintiffs' approach to ESI collection for RICO-Only Plaintiffs is reasonable and proportional under Rule 26(b)(1). In light of the limited scope of the RICO claims, broad device imaging and review across thirty-six (36) RICO-Only Plaintiffs would impose substantial burden and cost with minimal incremental relevance.

Plaintiffs have instead proposed a targeted approach: collection, search, and production of ESI from email accounts for all RICO-Only Plaintiffs, together with responsive financial records and curriculum-related materials. Plaintiffs have already produced 3,182 responsive documents to Defendants S. Bronfman, C. Bronfman, and K. Raniere, including relevant financial records, NXIVM curriculum materials, and emails from former Defendant Kathy Russell. This approach focuses on the sources most likely to contain relevant information while avoiding the substantial costs associated with full device imaging, processing, and review. Plaintiffs have already incurred significant vendor costs, exceeding $270,000, and, based on their investigation, do not believe that Defendants' demand for full device collection and production for RICO-Only Plaintiffs would be proportionate to the needs of the case.

Defendants' requests for blanket HIPAA authorizations are likewise overbroad and not required under the Federal Rules. There is no inherent right to obtain medical records directly from providers through authorizations, particularly as here, where the requests are overly broad and Plaintiffs are already collecting and producing relevant records from multiple providers, some located outside the United States. *See Connolly v. Peerless Ins. Co.*, 2011 WL 13305348, at *5-6 (E.D.N.Y. Apr. 22, 2011). Plaintiffs have already produced 55 documents of medical records, totaling 1,448 pages from 12 of the 19 TVPRA Plaintiffs,[2] and continue to supplement. Defendants' request for unrestricted access to Plaintiffs' medical providers would create inefficiency, risk disclosure of irrelevant private information, and undermine the orderly discovery process. Plaintiffs' targeted production of relevant medical records is consistent with Rule 26 and should be permitted to continue.

In comparison, to date, Defendants S. Bronfman, C. Bronfman, and K. Raniere have not produced any documents. Raniere has not searched his own devices or accounts and has not provided consent necessary for Plaintiffs to obtain and search certain communications. S. Bronfman has represented that she cannot meaningfully engage on her own ESI obligations until Plaintiffs provide updated hit reports, while Plaintiffs have been engaged in a months-long transition to a new ESI vendor due to technical limitations of the prior platform arising from the volume and complexity of the ESI at issue. Plaintiffs have also made settlement proposal to C. Bronfman, S. Bronfman, and D. Roberts. C. Bronfman rejected the settlement proposal, and S. Bronfman and D. Roberts have not yet responded to the proposals.

**Issue 2: Case Management and Discovery Structure**

Plaintiffs' proposed bellwether approach is the most efficient and practical way to manage this case. The action involves multiple categories of claims asserted by numerous plaintiffs against multiple defendants. Proceeding with full, case-wide discovery at this stage would impose substantial and unnecessary burden on the parties and the Court.

Plaintiffs' proposal—to proceed first with a limited set of claims involving five plaintiffs through discovery, summary judgment, and trial on an expedited schedule—will allow the parties and the Court to test key factual and legal issues in a structured and efficient manner. Defendants' proposal for full, case-wide discovery disregards proportionality and would significantly increase costs and complexity without

---

[2] Plaintiffs acknowledge that the portion of their April 10 letter on this issue contained a typo, indicating that there are only 16 Plaintiffs with TVPRA claims.

corresponding benefit. Defendant Roberts' request for a separate expedited track and stay of her counterclaims would similarly create inefficiencies and fragmentation. Plaintiffs' proposal strikes the appropriate balance and should be adopted.

### Issue 4: Defendant Roberts' Discovery Requests

RFP No. 5 (Tolling / Knowledge of Criminal Charges). Plaintiffs' objections to RFP No. 5 are well-founded. The request is overbroad and seeks information not relevant to the applicable legal standards governing statutory tolling. Plaintiffs have identified the basis for their tolling arguments in their pleadings and prior filings. Defendant Roberts is not entitled to expansive discovery into speculative or irrelevant factual scenarios, and the request would require burdensome searches for marginally relevant information, if any.

Number of Interrogatories.  Plaintiffs have complied with Rule 33(a)(1) by responding to twenty-five interrogatories. Defendant Roberts' request to expand that limit is not warranted. This case involves a single battery claim as to Defendant Roberts, and she has had ample opportunity to obtain discovery. Additional interrogatories are not necessary and would impose undue burden.

Sharing of Plaintiff Pena's Interrogatory Responses.  Plaintiffs have declined to permit Defendant Roberts to share Plaintiff Pena's interrogatory responses, which are designated Highly Confidential, with Ms. Garza, a third-party witness. Plaintiffs have advised that Defendant Roberts may question Ms. Garza regarding the underlying events and her recollection of the alleged battery without disclosing the interrogatory responses themselves. Plaintiffs maintain that disclosure of the responses is not necessary for that purpose and is not permitted under the Protective Order.

Witness Identification (ROGs Nos. 1–2 and 6).  Plaintiffs have complied with their discovery obligations by identifying witnesses with firsthand knowledge of the alleged battery and agreeing to provide address information sufficient to facilitate service of process. D. Roberts seeks identification of all individuals with "any knowledge" of the events at issue, as well as summaries of the substance of that knowledge. Plaintiffs object that such requests exceed what is required under the Federal Rules and seek premature disclosure of trial strategy. Further disclosures will be governed by the Court's scheduling orders and Rule 26(a).

### B.  S. Bronfman's Position

For months, S. Bronfman has sought basic information regarding the scope of Plaintiffs' document collection and production.[3]  S. Bronfman seeks the following information for each Plaintiff: (i) a list of the electronic

---

[3] By letter dated April 10, 2026 Plaintiffs announced that they would collect only email for the RICO-only Plaintiffs.  *See* Ex. A (P. April 10, 2026 Letter).  Plaintiffs previously said that they would not be collecting information from electronic devices based on their determination that the devices "contain no unique or relevant ESI."  Ex. J (P. Dec. 5, 2025 letter); *see also* Ex. H (P. Oct. 17, 2025 letter) (certain plaintiffs "have represented to counsel . . . that they do not possess any responsive materials on their devices"); Ex. G (P. Oct. 9, 2025 letter) (imaging of devices is "unlikely to result in the discovery of relevant documents.").  Similarly, Plaintiffs' statement that they will only collect data from cloud-based email accounts is at odds with prior representations that they would collect social media and messaging data as well.  *See, e.g.*, Dkt. No. 326 (letter to Court explaining that "[e]-mails **and social media posts** can all be searched via cloud-based collections" and "**text messages can be collected remotely through the collection of the iCloud backup.**") (emphasis added); Ex. G (P. Oct. 9, 2025 letter) ("Plaintiffs have instead proposed an appropriate and reasonable alternative: collection of email **and social media**.") (emphasis added); Ex. J (P. Dec. 5, 2025 letter) (identifying devices and social media accounts Plaintiffs would collect).

devices used during the relevant period that are **not** being imaged and will not be reviewed in discovery; (ii) a clear and complete explanation of how counsel determined not to image and review those devices, including whether counsel reviewed them; (iii) information about whether any device review was done after S. Bronfman served her document requests; (iv) identification of which electronic devices have been preserved; and (v) if any devices have been lost, destroyed, or erased, the circumstances under which that happened (Plaintiffs sought and obtained that information from S. Bronfman).

Notably, **Plaintiffs have at no time suggested that S. Bronfman, a non-voluntary participant in this litigation, should be permitted to limit her collection and imaging of devices** despite the fact that her only material involvement in these matters is the "limited" matters purportedly underlying the RICO claims. Ex. F (S. Bronfman September 29 Letter).[4]  Plaintiffs' unilaterally-imposed limitation on discovery is thus entirely one-sided.  S. Bronfman is entitled to the requested information and seeks this Court's direction that it be provided.

**First,** while Plaintiffs assert that information on devices has been captured on cloud-based email accounts and is thus potentially duplicative, they offer no proof to establish duplication and no basis on which S. Bronfman could reach or rely on that assertion for any, let alone every Plaintiff.  In *Thomas v City of NY*, defendants argued that collecting ESI from certain defendants would "yield no unique or non-duplicative information."  The Court compelled production, observing that "[t]o exclude any defendant from electronic information collection entirely would be the unusual course, and all defendants have offered to support their position is their view that the information to be obtained would be duplicative or redundant."  *Thomas v City of NY*, 336 FRD 1, 2 (EDNY 2020).

**Second,** to the extent Plaintiffs rely only on custodial interviews to conclude that an ESI source had no relevant information, such reliance "is strongly disfavored."  *Thomas*, 336 FRD at 1, 2 (Witness interviews are "likely to provide, **at best**, an incomplete picture of the content of relevant and discoverable ESI."); *Herman v. City of New York*, 334 F.R.D. 377, 386 (E.D.N.Y. 2020) ("It is not appropriate to take a client's self-collection of documents, assume it is complete, and not take steps to determine whether significant gaps exist.").  Plaintiffs have provided no indication that counsel has reviewed documents or analyzed the data at issue.

**Third,** Defendants are entitled to information about the nature and adequacy of preservation activities, and such information is not privileged.  *See, e.g., Roytlender v. D. Malek Realty, LLC*, 2022 WL 5245584, at *3 (E.D.N.Y. Oct. 6, 2022) (compelling Plaintiff to answer deposition questions whether document preservation efforts were made, despite privilege objections).

**In addition,** Plaintiffs' claims of burden (*See* Ex. I (P. Nov. 6, 2025 letter) and Ex. K (P. Dec. 15, 2025 letter), Ex. A (P. April 10, 2026 letter)) are unpersuasive.  Plaintiffs represent that their aggregate collection and hosting costs have exceeded $260,000.  Ex. A (P. April 10, 2026 letter).  These charges encompass discovery for <u>named</u> Plaintiffs in this action.  (Ex. H (P. Oct. 17 letter)).  *See Thomas*, 336 FRD at 4 (case where discovery charges exceeded $400,000 for *additional* custodians did not demonstrate "exceptional costs" in reviewing discovery belonging to named defendants).  These costs do not rise to the level of undue burden, particularly inasmuch as S. Bronfman has agreed to image and search **all** of her devices (to the extent they are in her possession) and has otherwise provided all requested information.  For comparison, S. Bronfman **alone** has spent roughly $114,000 preserving her devices and hosting the data, a figure that does not include the costs of collection.  "Plaintiff cannot shift the expense of proving its case onto defendant by claiming it would experience a great burden otherwise."  *Union Com. Servs. Ltd. v. FCA Int'l Operations LLC*, 2018 WL 558760 ,

---

[4] S. Bronfman responded to Plaintiffs' interrogatories regarding electronic devices, including by providing details on the loss, destruction, and erasure of certain devices.  She has also collected data from every available electronic device for the agreed-upon relevant time period regardless of whether particular devices were likely to contain relevant material, and has incurred both the costs of collection and storage of that data.

at * 4 (E.D. Mich. Jan. 25, 2018).  Plaintiffs brought a sprawling case, maintained it for six years, requested over eight years of discovery from S. Bronfman, and now seek to limit their own discovery obligations.  *Id.*  That is not the law.

**Separately**, S. Bronfman opposes Plaintiffs' proposed "bellwether" bifurcation.  Plaintiffs assert only **one** non-RICO claim against S. Bronfman, which Judge Komitee held "barely" survived a motion to dismiss.  September 2024 Order at 87.  Bifurcation serves no legitimate purpose here and would be highly prejudicial to S. Bronfman.  There is no reason why S. Bronfman should be require to face two separate trials and discovery periods, while initially resolving only the claim that the court held barely survived dismissal.  Bifurcation "remains the exception rather than the rule," and is appropriately denied where, as here, the party seeking bifurcation has failed to "identify any pressing or unusual circumstances that warrant bifurcation." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001).  Plaintiffs brought these claims.  It is time to litigate them.

### C.  Raniere and C. Bronfman's Position

Defendants Clare Bronfman and Keith Raniere join Defendant Sara Bronfman's position(s) relevant to all defendants, in particular the refusal to provide electronic devices, and objection to bifurcating or "Bellweather" approach to discovery.  Plaintiffs fail to establish a cogent and material argument for same.  If anything, Counsel for Defendants C. Bronfman and Mr. Raniere believes the bifurcation of discovery will result in a delay in completing all discovery by allowing Plaintiffs to litigate the case in sequential order.

In addition, Defendants C. Bronfman and Mr. Raniere raise the issue for this Court that despite requests, Plaintiffs' Counsel have not provided duly executed HIPAA authorization forms for all Plaintiffs who are pursuing trafficking claims. In the discovery produced to date, medical records are scant, and wholly incomplete. The records primarily consist of bills for "talk therapy" sessions. At the same time, certain Plaintiffs have produced records for medical care and treatment wholly irrelevant to the facts at issue, including but not limited to breast cancer treatment and herniated discs. Of the Plaintiffs' records produced to date regarding mental health care, only a limited number of pages of actual therapists' notes are included. In frankness, it appears to Counsel as though Plaintiffs have produced only portions of records that were readily available at their homes.  This stark contrast between the severity of the allegations and the limited nature and volume of produced records underscores the need for the trafficking Plaintiffs to provide HIPAA compliant authorizations for all relevant care providers so that a full and accurate disclosure of any, if at all, conditions and care with a plausible causal relationship may be reviewed. At the same time, this will allow Defense Counsel to review only relevant records without intrusion of privacy on conditions outside of these claims.  Accordingly, the Court should Order all trafficking Plaintiffs to provide duly executed HIPAA compliant authorizations for all relevant providers forthwith.

Finally, quite recently Plaintiffs' Counsel has alerted Counsel for Defendants C. Bronfman and Mr. Raniere, that they intend to raise objection to the failure of these Defendants to obtain and produce contents of their criminal files from the attorneys who represented them in criminal court proceedings.  First, the majority of any such production would be privileged attorney-client matter and attorney work-product.  Second, any evidentiary materials in such files are prohibited from disclosure.  As Defense Counsel has remarked to Plaintiffs' Counsel on several occasions, a Protective Order, issued by Judge Garaufis, is still in place under 18 CR 204 (NGG)(EDNY).  Even if Ms. Bronfman and Mr. Raniere were in possession of their files from criminal counsel, such evidentiary materials are expressly prohibited from disclosure and dissemination.  No such disclosure of evidentiary material is legal without a modification of said Order by Judge Garaufis.

### D.  Roberts Position

**Issue 2:** As the *pro se* defendant against whom only a single battery claim remains (involving only 4 Plaintiffs and against whom no RICO or trafficking claims are asserted), I respectfully request that the Court **bifurcate discovery** under **Fed. R. Civ. P. 42(b)** so that fact discovery on this claim proceeds on a separate, expedited track. Requiring me to participate in the full proposed schedule for the remaining 61 Plaintiffs would be disproportionate and prejudicial under **Rule 26(b)(1)**. Discovery on this single claim has already been

ongoing for over one year (since March 2025), while I have spent more than six years defending against the original allegations, all of which have now been dismissed (ECF No. 240). The battery claim's survival depends entirely on the tolling issue raised by Plaintiffs (ECF No. 250) and left open by Judge Komitee in his June 25, 2025 order (ECF No. 298), which denied the motion to dismiss "without prejudice to renew at summary judgment" because "there is an inadequate factual record to determine whether equitable tolling is warranted here." Completing fact discovery expeditiously and permitting a prompt summary judgment motion is therefore the only equitable and just course that promotes judicial economy.

I suggest: Completion of fact discovery limited to the battery claim: **May 30, 2026.** Filing of summary judgment on the battery claim: **June 16, 2026.** Plaintiffs' opposition: **June 30, 2026.** My reply: **June 14, 2026.** I further request The Court **stay discovery** on my counterclaims until after the battery claim is resolved. It's inefficient to force expensive, broad counterclaim discovery (and expert discovery) before knowing whether the predicate battery claim for the malicious prosecution survives.

The Plaintiffs have asserted, "There are, at a minimum, multiple open fact questions that will determine whether the doctrine of equitable tolling and/or estoppel apply" (Doc 250). No problem. Show me. It has been six months since Magistrate Pollack directed the Plaintiffs to prioritize this discovery in our conference on Oct. 14th 2025 (Ex. 2). I have requested every possible fact or statement in my RFPs (Ex. 3 a, b) that could
justify their equitable tolling claim, and they have now had every opportunity to produce them.

Predictably, Plaintiffs stated that I possess broad "knowledge of the case" and therefore should be subjected to full discovery on the trafficking claims. This argument fails. The Court has already dismissed all RICO and trafficking claims against me (ECF No. 240) and found that I lacked knowledge of any RICO enterprise or intent to traffic. As such, there are no trafficking claims pending against me. Any attempt to depose me on those topics is an impermissible fishing expedition into matters that are not relevant to any claim or defense under **Rule 26(b)(1).** Additionally, I request The Court **stay the depositions** until after summary judgement which would remove a time-barred claim and rightly protect a pro se litigant's rights against Plaintiffs' prejudicial efforts, and undue time and expense burdens. Courts routinely stay or sequence depositions when a potentially dispositive motion is pending and the outcome could moot the need for the deposition. See, e.g., Hellstrom, Supra. (emphasizing proportionality and judicial economy in discovery sequencing); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250 n.5 (1986) (summary judgment should not be rushed before adequate discovery, but the reverse is also
true — discovery should not be rushed when summary judgment may resolve the claim). Additionally, this does not
prejudice the Plaintiffs, who can depose me as a witness for the other claims. This approach promotes judicial economy and avoids wasteful discovery while fully preserving Plaintiffs' rights if the battery claim survives. I respectfully request a **protective order** under **Fed. R. Civ. P. 26(c)** limiting the scope of any deposition of me solely to matters directly relevant to the single remaining battery claim against me if it survives.

Additional points: (1). This proposal avoids the inefficiency of proceeding to expert discovery and trial on the battery claim only to later learn that the claim is time-barred (judicial economy). (2). If the battery claim is dismissed, all claims against me will have been resolved, which directly strengthens my malicious prosecution counterclaim and eliminates the need for further expert discovery or trial preparation on that claim (judicial economy). (3) It renders broad counterclaim discovery premature and wasteful, as the fate of the battery claim directly impacts my counterclaims, specifically malicious prosecution, and its discovery needs. (4) The battery claim is narrow and discrete. Any offensive claims or consent issues are minimal: I was in the same second-line position as the Plaintiffs and given the same information by 1st line members, had no greater knowledge of any alleged RICO conspiracy (Doc 240), had no possession or control over collateral, and played no role in the invitation process. Plaintiffs' contemporaneous consent (later revoked on post-hoc claims of being misled) further limits overlap with the broader claims. (5) Bifurcation promotes judicial economy and proportionality. Courts routinely bifurcate discovery when one defendant faces a single narrow

8

claim amid a larger multi-plaintiff action. *See, e.g., In re Telescopes Antitrust Litig.*, 5:20-cv-03642 (N.D. Cal. Feb. 7, 2024) (permit
limited discovery tracks in complex multi-claim cases); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 46 F.4th 60, 66–67 (2d Cir. 2022).

Lastly and respectfully, I request that Judge Komitee **decide** this issue, as his prior ruling is central to the dispute and this matter is occurring at a critical juncture in the proceeding.

**Dispute 4a: RFPs 5–6 (Statutory Tolling)** Plaintiffs objection is without merit. Plaintiffs themselves have relied on tolling arguments to oppose dismissal of the battery claim. Stating "Under **Section 215(8)**, when a criminal action related to the same "event or occurrence" as the civil action has been commenced against the "same defendant," a plaintiff has "one year from the termination of the criminal action" to "commence the civil action" (ECF 250). Having placed the timing of the criminal case and Plaintiffs' knowledge of it at the center of their tolling defense, they cannot now withhold documents that directly bear on those very facts. Whether they *knew or did not know* is not what I'm getting at here. I'm giving them the opportunity to present anything that would support or substantiate their assertion that this criminal trial tolls their time clock, which has been expressly relayed to the Plaintiffs in our meetings (Ex 1). The requested documents are plainly relevant to a claim or defense under **Rule 26(b)(1)**. Statutory tolling, equitable tolling, and fraudulent concealment are central issues in the battery claim. Courts in this Circuit routinely compel production of documents relevant to statute-of-limitations and tolling defenses. *See, e.g., Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (facts bearing on when a claim should have been discovered are highly relevant); *In re Fosamax Products Liability Litigation*, 2009 WL 2871185, at *3 (S.D.N.Y. 2009) (compelling discovery on tolling issues). Plaintiffs' refusal to produce is particularly troubling because they are simultaneously using the criminal proceedings to argue tolling in their opposition to dismissal of the battery claim. They cannot have it both ways. Defendant therefore requests that the Court **compel** production of documents responsive to RFPs 5 and 6 (or a refined version of these RFPs). If Plaintiffs continue to withhold these materials, the Court should **strike** the tolling-related allegations and defenses from the FAC as they relate to the battery claim against Roberts.

**Dipute 4b: No. of Interrogatories:** I respectfully request to serve up to 50 interrogatories total pursuant to Fed. R. Civ. P. 33(a)(1) and 26(b)(1). Of the 25 the Plaintiffs answered, several were premature, contained multipart questions, or were "interrogatories improperly styled as a request for production" as a result of my pro se learning curve. (i.e., Ex 3b - Request No. 10) The additional interrogatories are narrowly tailored, relevant to the battery claim and my defenses, and proportional to the needs of the case. As a pro se litigant facing a complex set of allegations, I require these questions to adequately prepare my defense. Courts routinely grant modest increases to 40–50 interrogatories when justified by the complexity of the claims and the proportionality factors of **Rule 26(b)(1).** See, e.g., In re Telescopes Antitrust Litig., 5:20-cv-03642 (N.D. Cal. Feb. 7, 2024) (permitting up to 50 interrogatories); Commonwealth of Pennsylvania v. Eagle Rock Resort Co., No. 25-00059 (M.D. Pa.) (allowing 50 per side). I therefore request the Court **grant leave** to submit up to 50 interrogatories if needed.

**Dispute 4c: Sharing ROG responses:** I requested to share Paloma's interrogatory with Jimena Garza, in accordance with the protective order to refresh her recollection of the event for my question. This sharing is expressly permitted under the Protective Order and is a standard, legitimate litigation practice. Courts routinely allow discovery materials to be shared with witnesses to refresh recollection. *See Lubrano v. Royal Bank of Canada*, 2019 WL 4727834, at *3 (S.D.N.Y. Sept. 26, 2019); Fed. R. Evid. 612. This is necessary for my defense and will not prejudice Plaintiffs. Please **compel** this action or **strike** the battery allegation made by Paloma.

**Dispute 4d: ROGs 1, 2, and 6 (Addresses / Witnesses)** Defendant requested addresses in numbers: 1, 2, 6 – these are necessary to subpoena or depose any possible witnesses. Plaintiffs agree to provide addresses for already identified witnesses sufficient to facilitate lawful process. I request Plaintiffs state the *nature of their knowledge* and identify every individual with knowledge (not just percipient witnesses): if not, and an individual appears in court or signs any legal documentation, Roberts asks the Court's to **preclude** them from testifying.

9

Dated: April 21, 2026

/s/ *Zahra R. Dean*
Robert A. Swift
William E. Hoese
Zahra R. Dean
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

Adam M. Prom
DICELLO LEVITT LLP
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
aprom@dicellolevitt.com

Greg G. Gutzler
Emma Bruder
DICELLO LEVITT LLP
485 Lexington Avenue, 10th Floor
New York, NY 10017
(646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Agnieszka M. Fryszman
Brendan R. Schneiderman
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

Manuel John Dominguez
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
jdominguez@cohenmilstein.com

*Attorneys for Plaintiffs*

10

Danielle Roberts
575 Easton Ave
Apt. 18 S
Somerset, NJ 08873
516.480.1700

*Defendant Pro Se*

AARON M. GOLDSMITH, ESQ. (AG4773)
225 Broadway, Suite 715
New York, NY 10007
(914) 588-2679
(914) 462-3912 (fax)
aarongoldsmithlaw@gmail.com

*Attorney for Defendants, Keith Raniere and Clare Bronfman*

Robin A. Henry
Anne S. Aufhauser
Danielle L. Leavy
FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON
LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
robin.henry@friedfrank.com
anne.aufhauser@friedfrank.com
danielle.leavy@friedfrank.com

*Attorneys for Defendant Sara Bronfman*

11