**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| SARAH EDMONDSON, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-485 |
| | : | |
| KEITH RANIERE, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CONDUCT A BELLWETHER TRIAL

## **TABLE OF CONTENTS**

I.      Background ………………………………………………………...……...1

II.     Reasons For Conducting a Bellwether Trial …………….………………….....2

    A.  The Claims Against the Remaining Defendants Are
       Highly Unlikely to Settle ……………………………..………………….3

    B.  A Single Trial for All 55 Plaintiffs Will Be Burdensome
       for the Court and Jurors ………………………………………………..3

    C.  A Bellwether Trial Will Advance the Case and
       May Lead to Settlement …………………………………………...……..4

III.    Conclusion …………………...………………………………………….…5

## TABLE OF AUTHORITIES

**CASES**

*In re Sept. 11 Litig.,* No. 21 MC 97 (SDNY 2007) …………...….……………….………4

*Linde v. Arab Bank*, No. 04-2799 (EDNY) ……………….…………….…..…………4

**STATUTES**

8 U.S.C. 1324 …………….…………….…………………………………….……….2

18 U.S.C. 1028 …………….……………….……………………………….…   2

**RULES**

F.R.C.P. 42(b) …………….…………………………………………….……2, 5

**OTHER AUTHORITIES**

E. Fallon, "Bellwether Trials," UMKC L.Rev. Vol. 89, 951(2021) …………..………….4

Plaintiffs in this civil RICO and trafficking case have moved this Honorable Court to conduct a bellwether trial.[1] Bellwether trials are often conducted in civil actions where the number of individual plaintiffs is very large and the length of the trial would tax Court resources and jurors. This is such a case.

## I.    Background

NXIVM and the Individual Defendants comprised and operated a criminal enterprise and venture, which, among other things, harbored foreign nationals to exploit their labor, performed unauthorized experiments on human beings (including those already suffering from serious illness) without their informed consent, and sexually abused women through extortion and other crimes. NXIVM's leadership used Clare Bronfman's and Sara Bronfman's extraordinary wealth to silence critics and witnesses and potential critics and witnesses through (among other things) intimidation, threats, extortion, vexatious litigation, and the initiation of false criminal allegations to protect the enterprise.

Defendants Keith Raniere and Clare Bronfman, and former Defendants Mack and Russell were indicted and convicted in this District of myriad offenses, many of which constitute racketeering acts under RICO. The head of the enterprise, Raniere, was convicted on all counts against him—including racketeering, racketeering conspiracy, and human trafficking—after a six-week jury trial, and sentenced to 120-years' imprisonment. Clare Bronfman was sentenced to 81-months' imprisonment after she pled guilty to (1) conspiring to conceal, harbor, and shield from detection one or more aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and (2) unlawfully transferring and using a means of identification of another person with the intent to commit, and in connection with, attempted tax evasion, in violation of 18 U.S.C. §§ 1028(a)(7),

---

[1] Plaintiffs conferred with Defendants regarding the relief requested herein. Defendants oppose the requested bellwether procedure.

1028(b)(1)(D), and 1028(c)(3)(A). Raniere's conviction and sentence was affirmed by the United States Court of Appeals for the Second Circuit. Danielle Roberts, a physician, was specially commissioned by Raniere to use a cauterizing iron to brand members of DOS, a secret cult created by Raniere, in their pubic regions with his initials but without informed consent or anesthesia. Roberts continues to support Raniere and publicly promote DOS.

In 2020, numerous individual plaintiffs brought this damage action alleging that defendants violated federal and state law through, *inter alia*, a racketeering conspiracy, forced labor and trafficking. As a result of multiple Rule 12 motions, the Court dismissed certain claims and plaintiffs. The number of remaining plaintiffs is 55.

## II.    Reasons For Conducting a Bellwether Trial

The Court has discretion to order a bellwether trial based on "convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b). Here, a bellwether trial would accomplish all three objectives. This action involves 55 remaining Plaintiffs asserting overlapping but individualized claims arising from the same alleged racketeering enterprise and trafficking scheme. Although many common issues of fact and law exist, each Plaintiff also alleges individualized injuries, damages, and experiences within NXIVM. Trying all claims together would likely require a trial lasting several months, impose a substantial burden on the Court and jurors, and significantly delay ultimate resolution of the case.

A bellwether trial would provide the parties and the Court with valuable information regarding liability, damages, witnesses, experts, and trial management, while preserving the parties' jury trial rights and promoting the possibility of settlement.

### A. The Claims Against the Remaining Defendants Are Highly Unlikely to Settle

Plaintiffs settled with and dismissed claims against six (6) of the original defendants. Plaintiffs made settlement proposals to Defendants Keith Raniere, Clare Bronfman and Sara Bronfman, which were declined. A settlement with Defendant Danielle Roberts remains possible. At a status conference before the Magistrate Judge on April 28, 2026, all Defendants declined to participate in settlement discussions before a federal or private mediator.

Two other factors are relevant. At the outset of the criminal case, Clare Bronfman established a litigation defense fund of almost $14 million which has been used to pay counsel in both the criminal and civil actions. *See* Exhibit 1. During the criminal trial, there was compelling evidence that Clare Bronfman engaged in frivolous litigation on behalf of NXIVM and its entities which continued for years and years. *Id.*

### B. A Single Trial for All 55 Plaintiffs Will Be Burdensome for the Court and Jurors

This case is six (6) years old. Completion of discovery as to all parties may take at least another year. Currently the parties are engaged in the production of documents and responding to interrogatories. Depositions of the parties and other fact witnesses have yet to begin. Following fact discovery, expert reports will be exchanged before expert depositions are held. Discovery has already been very expensive, with Plaintiffs expending about $300,000 on outside vendors for ESI discovery.

It is highly unlikely Defendants will prevail on summary judgment. In the Court's rulings on multiple motions to dismiss, the Court already addressed most of the legal issues in the case. This is a fact intensive case preceded by a lengthy criminal case in which Judge Garaufis and the

jury made numerous findings including that NXIVM was a racketeering enterprise operated by some of the defendants herein.

A jury trial for all 55 plaintiffs, or even a few less, will tax the Court's resources. The Court will need to use the ceremonial courtroom to accommodate all plaintiffs, defendants and the public. The trial will take four to six months. This will materially impact the Court's caseload. It will be difficult to find jurors willing to put their own lives and careers on hold for this length of time.

### C.  A Bellwether Trial Will Advance the Case and May Lead to Settlement

Federal courts throughout the country have used bellwether jury trials in cases where a single jury trial for large numbers of individual plaintiffs would be burdensome or unmanageable. A "bellwether" sheep is one that leads a flock with a bell affixed to its neck. A bellwether trial is one which preserves the right to a jury trial, assists in valuing damages, and encourages settlement. It adapts the jury trial to twenty-first century group justice. The advantages of a bellwether trial in a case with a large number of individual plaintiffs were described in Judge Eldon Fallon's article *"Bellwether Trials,"* UMKC Law Review: Vol. 89, at 951-52 (2021):

> [T]he primary purpose of conducting bellwether trials is not to resolve the thousands of related cases pending in an MDL by one representative proceeding, but instead to provide meaningful information, experience, and data to allow the parties to make an intelligent and informed decision as to the future course of the litigation. The type of information and data spawned by the bellwether process includes such things as informing the parties as to the economic costs of a trial, the effective use of jury questionnaires in selecting a jury, the time it takes for a trial, the performance of the witnesses during a trial, the appropriate exhibits for a trial and the most effective method of using and displaying them, the testing of various theories of liability or defenses in a trial setting, and, finally, the result or verdict rendered by the jury. This information and data can play an important role in informing the parties as to whether the litigation can be completely resolved either by a global settlement or some other global dispute resolution process. Even if a global resolution is not immediately available, the bellwether process makes future trials more efficient and less expensive. The bellwether process allows the parties to compile what is known as a "trial package," which usually includes video

4

depositions, pleadings, expert reports, a copy of the jury questionnaire used in the bellwether trial, copies of the significant exhibits, in limine rulings in the bellwether trial, jury charges, and other material that can be of assistance in future trials in similar cases.

A bellwether trial has been utilized in many cases in the Eastern and Southern Districts of New York. A well-known example is the *September 11 Litigation* for 41 plaintiffs before Judge Alvin Hellerstein. *See* Op. Supp. Order to Sever Issues of Damages and Liability in Selected Cases, and to Schedule Trial of Issues of Damages, *In re Sept. 11 Litig.*, No. 21 MC 97 (SDNY 2007) (Hellerstein, J.) Additionally, in 2011, Judge Brian Cogan of this Court conducted a bellwether trial in *Linde v. Arab Bank*, No. 04-2799 (EDNY). The more than 50 plaintiffs in that case alleged that Arab Bank was the paymaster for the families of suicide bombers who killed and maimed Americans in Israel during the Second Intifada (2001-2004). Faced with the Bank's adamant refusal to settle the Anti-Terrorism Act claims (which position the Kingdom of Jordan, a 30% shareholder of the Bank, supported), Judge Cogan held a jury trial for five plaintiffs which resulted in a finding of liability. The case settled while on appeal.

The configuration of a bellwether trial is in the discretion of this Court. *See* Fed. R. Civ. P. 42(b). Plaintiffs propose a trial for five (5) of the Plaintiffs with trafficking claims as to both liability and damages. Fact and expert discovery as to the five (5) Plaintiffs will be expedited, as will any summary judgment motion. Discovery as to the remaining Plaintiffs will still continue. The bellwether trial, including jury selection, should take no more than two (2) weeks. A trial of this duration will minimize the burden on the Court's caseload and ease the inconvenience to jurors.

### III.    Conclusion

For all the foregoing reasons, Plaintiffs request that the Court conduct a bellwether trial for five (5) of the Plaintiffs with trafficking claims and expedite discovery as to them.

Dated:  May 29, 2026

Respectfully submitted,

/s/Robert A. Swift
Robert A. Swift
William E. Hoese
Zahra R. Dean
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
rswift@kohnswift.com
whoese@kohnswift.com
zdean@kohnswift.com

Adam M. Prom
DICELLO LEVITT LLP
10 North Dearborn Street, Sixth Floor
Chicago, IL 60602
(312) 214-7900
aprom@dicellolevitt.com

Greg G. Gutzler
Emma Bruder
DICELLO LEVITT LLP
485 Lexington Avenue, 10th Floor
New York, NY 10017
(646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Agnieszka M. Fryszman
Brendan R. Schneiderman
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

6

Manuel John Dominguez
COHEN MILSTEIN SELLERS
  & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
jdominguez@cohenmilstein.com

*Attorneys for Plaintiffs*

7

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATION**

I, Robert A. Swift, hereby certify pursuant to Local Civil Rule 7.1 of the Joint Local Civil Rules of the Eastern and Southern Districts of New York that this Memorandum of Law complies with the applicable word-count limitations. This Memorandum of Law was prepared using Microsoft Word word-processing software. The word count of the Memorandum of Law, excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates and this Certificate of Compliance, is 1598 words.

Date:  May 29, 2026                                    /s/Robert A. Swift
                                                       *Attorney for Plaintiffs*