**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SARAH EDMONDSON, et al.,                          :
                                                  :
                          Plaintiffs,             :
                                                  :
          v.                                      :               1:20-cv-485-EK-PCG
                                                  :
KEITH RANIERE, et al.,                            :
                                                  :
                          Defendants.             :

**DEFENDANT SARA BRONFMAN, CLARE BRONFMAN, AND KEITH RANIERE'S**
**OPPOSITION TO PLAINTIFFS' MOTION TO CONDUCT**
**A BELLWETHER TRIAL**

Plaintiffs propose a bellwether trial of five (5) unidentified trafficking Plaintiffs.  Defendants

Keith Raniere, Clare Bronfman, and Sara Bronfman submit the following Response in Opposition to

Plaintiffs' Motion to Conduct a Bellwether Trial (ECF No. 370) dated May 29, 2026 (the "Motion").

The Motion should be denied.  First, Plaintiffs previously raised this issue before Judge

Cross-Goldenberg who denied the application following argument.  Second, the Motion is at best

premature.  Third, Plaintiffs have failed to establish that their proposal promotes judicial economy or

case efficiency and as such the Motion fails.

**ARGUMENT**

Plaintiffs make their motion pursuant to Fed. R. Civ. P. 42(b), which governs bifurcation.

The decision to bifurcate is "firmly within the discretion of the trial court." *Katsaros v. Cody*, 744

F.2d 270, 278 (2d Cir. 1984); *see also Falzon v. Johnson*, 2016 WL 11430072, at *1-2 (E.D.N.Y.

Oct. 24, 2016).  "In exercising that discretion, a court should begin its analysis with the Advisory

1

Committee's admonition that 'separation of issues for trial is not to be routinely ordered,'" and "[b]ifurcation is thus the exception, not the rule." *Lewis v. City of New York*, 689 F.Supp.2d 417, 428-29 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment). To justify bifurcation, the movant must demonstrate the "substantial benefits that it can be expected to produce." *Id*. Conversely, courts "should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Id.*; *see also Falzon*, 2016 2016 WL 11430072, at *1-2. Parties seeking a bellwether process should advance a "basis for the selection of the specific bellwether cases," "articulate what issues might be decided" by the bellwether cases, and "explain[] how proceeding in stages will produce efficiencies rather than delay." *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399-400 (S.D.N.Y. 2006). A trial involving a subset of trafficking plaintiffs does not advance the case as a whole and does not meet the standards governing bellwether trials.

## I.    PLAINTIFFS PREVIOUSLY ARGUED IN FAVOR OF A BELLWETHER TRIAL AND THERE IS NO BASIS TO REVISIT THE DENIAL OF THAT PRIOR APPLICATION

Plaintiffs previously raised the possibility of a bellwether trial in submissions to and in argument before Judge Cross-Goldenberg to whom this case has been assigned for pre-trial purposes. In this regard, Judge Cross-Goldenberg held a conference on April 28, 2026 and requested the parties make written submissions to her on outstanding pre-trial issues in advance of that date. The Plaintiffs raised the issue of a bellwether trial in their submission and at the outset of the conference the court established a five-point agenda, the second element of which was "the idea of a

bellwether group of Plaintiffs." (Ex. 1 ("Tr.") at 4:14-24).   The conference lasted approximately three (3) hours and a significant portion of that time was devoted to the question of whether a bellwether trial made sense. *See, e.g.*, Tr. at 6:16-7:6, 41:18-47:13.  The court ruled it did not. *See, e.g.*, Tr. at 46:25-47:13.  Judge Cross-Goldenberg held that it "would be premature to say that the case should proceed with a bellwether trial or even a bellwether motion for summary judgment." Tr. at 47:4-9.   Importantly, Judge Cross-Goldenberg reached this conclusion after an extensive evaluation of the case status and with knowledge of the background facts regarding the claims and the discovery needs associated with them.  Tr. at 41:18-47:13.

Plaintiffs' request should thus have been framed as an objection to a non-dispositive matter under Local Civil Rule 72.1(b).  Notably, under Judge Cross-Goldenberg's Individual Rules, all non-dispositive pretrial motions are generally made "as letter motions in compliance with Local Civil Rule 7.1(e)," and may subsequently be filed as a "formal motion" only after the Court reviews the letter and advises that such a motion may be filed.  Individual Rules at IV.A at 6.  Judge Cross-Goldenberg entertained the application after the submission of letters, heard argument at a three hour conference and did not invite the submission of formal motion practice.

## II.    PLAINTIFFS' MOTION IS, AT BEST, PREMATURE AND SHOULD BE DENIED

Plaintiffs observe that this action is "fact intensive."  ECF No. 370-1 ("Mot.") at 3. Development of the factual record is thus essential to a proper evaluation of the case and, as Plaintiffs further note, the remaining Plaintiffs purport to assert individualized claims based on allegedly individualized experiences within NXIVM. *Id.* at 2.  Building the underlying factual record is thus key to any determination of case assessment or a proper approach to resolution.  Judge

Cross-Goldenberg is overseeing the development of that record.  Under her supervision, discovery is proceeding, but it remains in its early stages.  The parties are producing documents, but Plaintiffs have yet to respond to Defendants' emails on ESI search terms.  *See* Ex. 2.  That is a precursor to document review and production of electronic material.  Judge Cross-Goldenberg directed that Plaintiffs provide basic information about their device preservation, which they only recently did.[1]  Plaintiffs recently made available 22 terabytes of video material, which could comprise up to 5,500 hours of high-definition video or over 5 million high-resolution photos.  *See* ECF No. 373 at 2. This production was not accompanied by any index or other indication of what is to be found in these materials.  Defendants are presently trying to determine an efficient system of review.  There is no dispute about the early stage of the case.  Indeed, the Motion acknowledges that "[c]ompletion of discovery as to all parties may take at least another year," "[d]epositions of parties and other fact witnesses have yet to begin," and "[c]urrently the parties are engaged in the production of documents and responding to interrogatories."  Mot. at 3.  There has been no expert work on either liability or damages.

Bellwether trials may make sense in certain circumstances, but courts "should proceed with a bellwether process only when they have sufficient information to appropriately identify the categories of cases through which a bellwether trial process could meaningfully proceed," and "should be wary of premature decision-making regarding the bellwether process." *Adams v. Deva Concepts, LLC*, 2023 WL 6518771, at *3 (S.D.N.Y. Oct. 4, 2023).  Several cases have held that bifurcation is not appropriate where the application is made prematurely, early in the discovery

---

[1]    Plaintiffs served ESI preservation disclosures on June 18, 2026.

process and at a time when the parties' understanding of the claims and potential groupings of claims or parties may still change. *See*, *e.g., id.* at *4, *8 (denying motion for bellwether discovery because "prior to the commencement of discovery" the court lacked "sufficient information . . . to proceed" and specifically to "ascertain representative categories of claimants")*; In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 4415204, at *11 (C.D. Cal. July 2, 2024) (denying bellwether trial because "sufficient discovery should be conducted prior to selecting bellwethers"); *Zito*, 233 F.R.D. at 399-400 (denying bellwether proposal because "whether there is some rational basis for deciding how to group the cases for trial is a matter best deferred until the close of discovery."); *In re 2004 DuPont Litig.*, 2006 WL 5097316, at *2, *4 (E.D. Ky. Mar. 8, 2006) ("[A]t least until additional discovery is obtained by defendants, the 'bellwether' approach is not appropriate.'").

Judge Cross-Goldenberg's ruling was grounded in these principles. She explained her ruling as follows: "I think it would be premature to say that the case should proceed with a bellwether trial or even a bellwether motion for summary judgment …. A bellwether of five doesn't seem to me to fit any whole category of claims or Plaintiffs in this case." Tr. at 47:4-13. Notably, Judge Cross-Goldenberg *did* order the expedition of discovery as to the battery claims, because—unlike the trafficking and RICO claims—the battery claims are of one type and are asserted against only one defendant. Tr. at 47:13-18.

The prematurity of bifurcation is further underscored by Plaintiffs' lack of specificity about their proposal; they suggest "a trial for five (5) of the Plaintiffs with trafficking claims as to both liability and damages." Mot. at 5. They neither identify the proposed bellwether Plaintiffs nor do they suggest any methodology for the Court to use in choosing those five Plaintiffs, and do not

explain which legal or factual issues might be resolved by trying certain Plaintiffs' claims before others.[2]  Plaintiffs also offer no guidance as to how expert work would factor into their proposal.  It makes no sense for experts to bifurcate their work.  Such an approach increases cost and decreases efficiency.  More fundamentally, experts require the facts in order to do their work and fact development requires discovery.  Similarly vague bellwether proposals have been rejected.  *See, e.g.*, *Zito*, 233 F.R.D. at 399-400 (denying motion for bellwether trial where plaintiffs "advanced no basis for the selection of the specific bellwether cases," failed to  "articulate what issues might be decided preclusively on the basis of the bellwether cases," and did not explain "how proceeding in stages will produce efficiencies rather than delay."); *Adams*, 2023 WL 6518771, at *4, *8 (declining to proceed with bellwether discovery where "the structure of any potential bellwether trials remains uncertain"); *Miller v. Arab Bank, PLC*, 2022 WL 5264899, at *1, *2 (E.D.N.Y. Sep. 26, 2022) (denying bellwether proposal where "[t]he contours of Plaintiffs' bifurcation proposal seem opaque" and noting that "developments in discovery will no doubt help the Court to consider the potential efficiencies and evidentiary difficulties presented by a joint trial") (citations and quotation marks omitted).  At this stage, the parties should be prioritizing pre-trial discovery so that the case can move forward to dispositive motion practice.  If and when it comes time to try the case, the parties can discuss an approach to trial against the backdrop of the factual and expert record, but at present there is no record against which to have that conversation let alone make decisions.

---

[2]    Plaintiffs acknowledge that this case is fact dependent and that the facts differ by and between plaintiffs.  They write that while "many common issues of fact and law exist, each Plaintiff also alleges individualized injuries, damages, and experiences within NXIVM."  Mot. at 2. Bellwether Plaintiffs selected now, therefore, could advance theories and facts that have no bearing whatsoever on other Plaintiffs' claims.  *See Zito*, 233 F.R.D. at 399-400 (rejecting "largely

### III.    PLAINTIFFS HAVE FAILED TO SHOW THAT A BELLWETHER TRIAL WOULD FURTHER JUDICIAL ECONOMY

Plaintiffs hypothesize that the bellwether process they propose "may lead to settlement." (Mot. at 4).  As a threshold matter, Plaintiffs' assertion is ungrounded.  Indeed, Plaintiffs fail to explain why a bellwether process today is at all likely to facilitate global settlement.  This ungrounded assertion provides no basis for the relief sought.  *See Lewis*, 689 F. Supp. 2d at 428-29 (movant "must justify bifurcation on the basis of the substantial benefits that it can be expected to produce.").

For example, Plaintiffs do not explain why their proposed bellwether process focused on the trafficking claims as opposed to the RICO claims would be useful.  It is not apparent from the face of the operative complaint: 19 Plaintiffs assert trafficking and RICO claims, while 36 Plaintiffs assert RICO-only claims.  Thus, the vast majority of Plaintiffs' claims relate to the allegations of "curriculum fraud" and have nothing to do with trafficking.  And, as to Sara Bronfman, only one trafficking claim survived the motion to dismiss and this Court held that it only "barely" survived. *Edmondson v. Raniere,* 751 F. Supp. 3d 136, 188 (E.D.N.Y. 2024).  There is no reason why Sara Bronfman should be required to face separate trials and discovery periods, while resolving only one claim with no relation to the bulk of the claims against her.  *See Adams*, 2023 WL 6518771, at *5-6 (bifurcation not efficient where the Court "lacks sufficient information to determine whether [categories of plaintiffs] adequately enable the parties and the Court to assess the *general causation* question" and "do not adequately enable Defendant to test some of its key arguments") (emphasis in original).

---

incoherent" bellwether proposal).

7

Resolving select trafficking claims would not inform or promote settlement where, as here, Plaintiffs admit that "each Plaintiff [] alleges individualized injuries, damages, and experiences within NXIVM." Mot. at 2. As defense counsel explained at the April 28, 2026 conference, while they remain open to dialogue with Plaintiffs, discovery on all claims would inform settlement discussions.[3] *See, e.g.*, Tr. at 89:14-16 (counsel to Keither Raniere and Clare Bronfman explaining that while he will "remain open throughout the process . . . it's just a little too premature [to discuss settlement] where we are in discovery right now."), 90:23-91:12 (counsel for Sara Bronfman explaining that, without discovery, writing a mediation statement which "ought to summarize the evidence in the case, what the claims are, what you think your exposure is" is challenging because "I've seen no evidence").

In support of their Motion, Plaintiffs cite two terrorism cases. Neither is relevant here. In the *September 11th* case, Judge Hellerstein ordered a discrete trial on *damages only* after he had "invited several of the parties to conduct settlement negotiations in my courtroom" and "met with a selected few of the surviving relatives" asserting claims. *In re September 11th Litig.*, 2007 WL 1965559, at *2 (S.D.N.Y. July 5, 2007). Those meetings informed his view that a portion of the plaintiffs had been "unable to settle because of the disparity in perceived values," and he separated liability and damages because the negligence at issue, *i.e.*, liability, had "no relation to the amount of compensatory damages that Plaintiffs would recover." *Id*. He selected the cases "with advice and counsel of the parties," "on the basis of liaison counsel's recommendations as to their willingness to

---

[3]    Indeed, while Plaintiffs suggest that one value of a bellwether approach is to aid "valuing damages" (Mot. at 4), they simultaneously assert that each Plaintiff's claims are individualized both in terms of liability and damages (Mot. at 2).

have their issues of damages tried early and separately," and "for their representative quality, such that the jury's verdict may have applicability for others." *Id.* at \*3.  The facts here are different.  There has not yet been any meaningful exchange of information and while Plaintiffs are of course free to make whatever settlement demands they like, such demands are untethered to any factual record in the case.  Conversely, while a defendant in the *Linde v. Arab Bank* case expressed "adamant refusal" about settling certain claims (*see* Mot. at 5), here the defendants have taken no such position.[4]  Rather, they have all expressed a willingness to engage in discussions, with the caveat that those discussions be informed by discovery.

In addition, Plaintiffs themselves have rejected the notion that a bellwether trial would dictate resolution of the remaining claims.  During the April 28, 2026 conference, Plaintiffs' counsel responded to inquiry from the court as follows:

> COURT: If we went forward with a bellwether approach and the Defendants win a motion for summary judgment or win at trial, would it be your intention to dismiss the claims of the remaining Plaintiffs?
>
> MR. SWIFT: ***No. It would not, Your Honor***. But experience suggests that after a bellwether trial, the parties have a much better idea as to how a jury is likely to respond to all the claims.

---

[4]    Defense counsel has been unable to locate a decision or transcript reflecting Judge Cogan's considerations in holding a bellwether trial in the *Linde v. Arab Bank* case, and the Motion does not cite a specific decision or docket entry.  The above discussion, therefore, relies on Plaintiffs' recitation of the facts for the sake of argument.  *See* Mot. at 5.

Tr. at 42:3-7.  Plaintiffs' own statements and authority do not support a bellwether process at this stage.[5]

Finally, Plaintiffs' burden argument is unavailing.  Plaintiffs continue to argue the cost of litigation as a burden they are being forced to bear and, at times, have argued that the costs of litigation are disproportionate to the value of their claims.  They pressed this argument before Judge Cross-Goldenberg in the April 28, 2026 discovery conference, but continue to ignore the simple and obvious fact that they commenced this litigation and that comes with discovery obligations and therefore cost.  Conversely, Defendants have borne substantial costs at Plaintiffs' insistence. Plaintiffs' claims that the size and scope of the litigation are prejudicial to them should carry no weight.  *See Adams*, 2023 WL 6518771, at *7-8 (where plaintiffs "chose to litigate their case individually . . . the Court is not persuaded by the complaint that the litigation imposes some burden on Plaintiffs: it is the burden they elected.").

---

[5]    Plaintiffs' inflammatory statements regarding a legal fund for the criminal and prior civil cases established by Defendant Clare Bronfman  are inappropriate and irrelevant.  *See* Mot. at 3. Plaintiffs clearly see Defendants Clare Bronfman and Sara Bronfman as "deep pockets" who they must grasp at any fashion to tie to the alleged activity which is the subject of Defendant Keith Raniere's criminal convictions

## CONCLUSION

WHEREFORE, it is respectfully requested that this Court issue an Order denying Plaintiffs' Motion for Bifurcation (Doc. 370) in its entirety; and for such other and further relief as this Court deems just and proper.

Dated: New York, NY
       June 26, 2026

_s/ Aaron M. Goldsmith_____
AARON M. GOLDSMITH, ESQ. (AG4773)
Attorney for Defendants
KEITH RANIERE and CLARE BRONFMAN
225 Broadway, Suite 715
New York, NY 10007
(914) 588-2679
_aarongoldsmithlaw@gmail.com_


_s/ Robin A. Henry_____
Robin A. Henry
Anne S. Aufhauser
Danielle L. Leavy
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
robin.henry@friedfrank.com
anne.aufhauser@friedfrank.com
danielle.leavy@friedfrank.com

_Attorneys for Defendant Sara Bronfman_

11

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1, I hereby certify that the foregoing document was prepared in Microsoft Word, and that the total word count of this document, exclusive of the caption and signature blocks but including footnotes, as calculated by Microsoft Word, is 2870 words.

Dated:  June 26, 2026

*/s Robin A. Henry*

Robin A. Henry

81467915