The Honorable Peggy Cross-Goldenberg
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:    ***Edmondson, et al. v. Raniere, et al.,*** **1:20-cv-00485 (E.D.N.Y.)**
>       **Letter request for an informal discovery conference**

Dear Judge Cross-Goldenberg:

The Parties jointly request an informal discovery conference pursuant to Section III.A.2 of the Court's Individual Practices and Local Civil Rule 37.2 concerning Defendant Danielle Roberts' refusal to produce records from the disciplinary proceeding that resulted in the revocation of her New York medical license. The Parties have conferred in good faith but remain at an impasse. *See* Fed. R. Civ. P. 37(a)(1).

The Fourth Amended Complaint ("FAC") asserts a New York battery claim against Roberts on behalf of Plaintiffs Sarah Edmondson, Nicole, Paloma Pena, and India Oxenberg (the "Battery Plaintiffs") arising from Roberts' admitted branding of those Plaintiffs during the DOS initiation ritual. Roberts denies liability and asserts that Plaintiffs consented.

As described in the FAC, after an evidentiary hearing before the New York State Board for Professional Medical Conduct (the "Board"), the Board revoked Roberts' New York medical license because of her branding of the Plaintiffs and other DOS members and the surrounding circumstances. The revocation was upheld on appeal. Because of the earlier proceeding into her DOS conduct, Plaintiffs' served Document Request No. 26, which seeks: "All Documents referring to the loss or suspension of Your license to practice medicine in any jurisdiction based in whole or in part on Your involvement in NXIVM or DOS." Roberts produced certain documents from the disciplinary proceeding, including the Statement of Charges and the Hearing Committee's Determination and Order, but not the underlying hearing record.

Beginning in mid-May 2026, after reviewing Roberts' document production, Plaintiffs asked Roberts if she possesses the Board proceeding's transcripts and exhibits and requested that she produce them as responsive to Request No. 26. Roberts confirmed that she possesses the transcripts but contends that the requested materials are irrelevant and disproportionate to the remaining battery claim. The Parties exchanged written positions, discussed the issue during their July 6, 2026 meet-and-confer, and identified the impasse in their July 10, 2026 joint status report. The relevant discovery request and response are attached as Exhibit A, and the Parties' correspondence is attached as Exhibit B.

**Plaintiffs' Position.** The Board developed an evidentiary record concerning the same actor, the same branding procedures, the circumstances surrounding the branding of at least one of the Plaintiffs, and the same disputed issues of consent, coercion, physical injury, and Roberts' knowledge that are central to Count IV of the FAC.

1

{00269837 }

This lawsuit was brought by women who suffered injury and damages at the hands of NXIVM and DOS people. Defendant Roberts was part of NXIVM and DOS, along with, among others, Defendant Keith Raniere and former Defendants Allison Mack, Lauren Salzman, and Nicki Clyne. Plaintiffs allege that Raniere created DOS as a means, among other things, to procure women for sex. After Plaintiffs provided "collateral" of a compromising nature and swore an oath of secrecy, they were branded—which was filmed and the video was provided to Raniere. As part of DOS, Roberts was commissioned by Raniere and Allison Mack to brand DOS "slaves" with Raniere's initials as part of a ritual created by him as the DOS "grandmaster." Roberts branded the Battery Plaintiffs (and others). The Plaintiffs are pursuing claims in this Court for injuries and damages they suffered at the hands of NXIVM and DOS—including the battery claim against Roberts for intentionally branding them with Raniere's initials without their consent. FAC ¶¶ 281-84.

The branding of the DOS women did not occur in a vacuum. The FAC describes the creation and operation of DOS (*id.* ¶¶ 106-37), including misrepresentations made to DOS recruits to induce them to provide collateral, join DOS, and "submit" to branding in the coercive master-slave environment. *Id.* ¶¶ 110, 112, 122. Indeed, the "collateral" requirements allowed Raniere and the DOS "masters" to exert power and control over their DOS "slaves." *Id.* ¶¶ 110-11, 113-15. "'Adequate' collateral included sexually explicit or embarrassing photographs and videos; written or videotaped confessions about the recruit or people close to her; legal title to valuable assets, including real and personal property; and bank account and credit card information." *Id.* ¶ 111. Recruits were required to provide adequate collateral to learn more about DOS as well as after they had become DOS slaves. *Id.* ¶¶ 110, 114. "DOS recruits understood, based on the express teachings of the First-Line [DOS] Masters regarding collateralization, that if they refused [to provide more collateral], the collateral they had already provided would be released." *Id.* ¶114.

Paragraph 118 of the FAC describes the creation of the branding procedure and Roberts' role as the brander. As a result of her branding DOS women without anesthesia or informed consent, the Board investigated Roberts and brought disciplinary charges against her. After several hearing sessions during which testimonial and documentary evidence was submitted by the Board and Roberts, the Board issued a detailed decision and findings based on the evidence presented revoking Roberts' medical license in New York (Wisconsin revoked her medical license on the basis of the New York Board's decision). FAC Paragraphs 119-121 summarize the New York Board's investigation and findings regarding the DOS brandings and the basis for its revocation decision. The revocation was upheld by the Appellate Division of the New York Supreme Court. FAC Paragraphs 122-125 allege that DOS women, including the Plaintiffs, were lied to about the branding and what the "small tattoo" represented, that Roberts knew that a painful medical procedure required voluntary, informed consent, and that such consent did not exist.

Roberts and Plaintiff Sarah Edmondson (among other fact and expert witnesses) testified at the Board hearing about the brandings. A list of witnesses who testified and the exhibits introduced at the hearing is attached as Exhibit C. Yet, Roberts refuses to produce the transcripts.

Based on the allegations in the FAC and the elements of a battery claim, the hearing record clearly contains relevant and discoverable information. A fact is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401. Fed. R. Civ. 26(b)(1) in turn provides that "[u]nless

2

{00269837 }

otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Defendant Roberts' current relevance position is also inconsistent with her earlier production, which to date has consisted almost entirely of documents related to the investigation, proceedings, and determination by New York and Wisconsin to revoke her medical license in those states because of her branding of DOS members, such as the Statement of Charges, New York State Department of Health, State Board for Professional Medical Conduct, *In the Matter of Danielle Roberts, D.O.*, dated March 5, 2020, attached as Exhibit D and the Determination and Order, New York State Department of Health, State Board for Professional Medical Conduct, *In the Matter of Danielle Roberts, D.O.*, dated September 27, 2021 and Appendix I, Amended Statement of Charges *In the Matter of Danielle Roberts, D.O.* (the D&E''), attached as Exhibit E.

The Board's hearing record in the possession of Roberts contains relevant, discoverable information about DOS and Roberts branding the Plaintiffs. For example, the Board found, *inter alia*, that Roberts knowingly branded Keith Raniere's initials into the bodies of Plaintiffs and others without disclosing either what the symbol actually represented or its true size (see D&E, ¶¶11, 22 and p. 25), the brandings were done only after acceptable collateral was submitted, which "coerced the women into keeping DOS secret and maintaining their commitment and was subject to public release if the women breached these requirements" (*id.* at ¶6), the women were coerced into and lied to about the branding (*id.* at pp. 23-25), Roberts never obtained voluntary informed consent from any of the women she branded (*id.* at ¶23), and Roberts' testimony was considered evasive, defiant, and inconsistent on various points at issue (*id.* at pp. 10-11). Because the Board record contains information directly related to the battery claim, Plaintiffs respectfully ask the Court to order Roberts to immediately produce it to Plaintiffs.

**Defendant's Position.** Defendant Danielle Roberts respectfully requests that the Court deny Plaintiffs' demand for the full record of her New York State Board for Professional Medical Conduct (OPMC) proceeding. Only a single battery claim remains against Defendant (Count IV), limited to four plaintiffs. All RICO, trafficking, and broader conspiracy claims against her were dismissed (ECF No. 240), and the Court ordered language regarding her alleged knowledge of a broader conspiracy stricken (ECF No. 341). *The sole remaining issue is whether those four plaintiffs gave contemporaneous consent to the physical act of branding.*

Plaintiffs quote Fed. R. Evid. 401 and Fed. R. Civ. P. 26(b)(1), but those rules do not expand discovery to every document that might touch on the same general subject matter. Relevance under Rule 401 requires that the evidence have a tendency to make a fact of consequence more or less probable. After the Court's dismissal and strike orders, *the only fact of consequence is contemporaneous consent to the touching itself.* Discovery must be proportional to the needs of the case as it currently stands, not as it once was. Fed.R.Civ.P. 26(b)(1); 2015 Advisory Committee Notes.

The OPMC proceeding decided an entirely different legal question under different standards: whether branding constituted the "practice of medicine" under the Education Law for professional licensing discipline. Whether the Board correctly or incorrectly reached that conclusion is irrelevant to the battery claim. The issues are not identical, and collateral estoppel does not apply. See Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500–01 (1984).

Civil battery requires an intentional offensive touching without consent. Consent is a complete defense and turns on actual consent to the touching itself. See Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 129 (1914). New York law draws a sharp distinction between battery and lack of informed consent. Battery occurs only when the patient provided *no consent at all* to the procedure. If the patient agreed to the procedure, even generally, the claim is *not* battery. See VanBrocklen v. Erie County Med. Ctr., 96 A.D.3d 1394, 1394 (4th Dep't 2012); Mitchell v. Lam, 186 A.D.3d 1072, 1073 (4th Dep't 2020); Messina v. Matarasso, 284 A.D.2d 32 (1st Dep't 2001); Oates v. New York Hospital, 131 A.D.2d 368 (1st Dep't 1987). By contrast, when consent to the procedure was given but the physician allegedly failed to disclose risks, benefits, alternatives, or other information, the claim is *lack of informed consent* under Public Health Law § 2805-d — a statutory medical-malpractice theory, not battery. *That statute does not convert a consented-to act into a battery.*

The Board's findings, including its discussion of "voluntary informed consent" (Finding 24), applied a medical-licensing and informed-consent standard. Those findings do not adjudicate, and are not controlling on, whether the Battery Plaintiffs contemporaneously consented to the physical act of branding under New York common-law battery principles. The Board's regulatory classification of the conduct *does not change the legal standard that governs the last claim*, nor does it make the hearing transcripts relevant or proportional under Rule 26(b)(1).

Plaintiffs rely heavily on the Board's findings regarding the meaning of the brand, alleged non-disclosure, collateral, and coercion. Those findings must be read carefully. The Board itself found that the initial explanations of the symbol's meaning were given by *the women's masters – not the Defendant* (Finding 22). The Board further adopted one contested interpretation—that the initials signified possession—largely drawn from the testimony of one witness. Defendant has contemporaneous evidence that first-line members described other intended meanings. Any reference communicated to Defendant *by the first-line women* about Keith Raniere's initials was framed as a tribute to tools he provided for personal growth, not possession. The size of the symbol was visible and confirmed when the stencil was placed; the women actively participated in choosing placement. That is evidence of contemporaneous consent, not its absence. The OPMC proceeding was not the proper forum to adjudicate the private symbolism, or process of a non-medical ritual. Its proper focus was *whether branding constituted the practice of medicine*. Its findings on that contested point are irrelevant, should not be imported into this action and would be prejudicial.

Moreover, the Board's findings concerning coercion through collateral are directed at the actions *of others who collected and held collateral—not at the Defendant, who neither collected nor held any collateral.* As described by the Board itself, the collateral related to secrecy and lifelong commitment to the organization (finding 6), not to the branding process. There were women who chose not to receive the brand and faced no consequence. *Importing these findings, along with the Board's character assessments of Defendant's testimony, would reintroduce the broader-conspiracy allegations the Court has already dismissed and*

4

*ordered stricken* (ECF Nos. 240, 341). That material is both irrelevant and unfairly prejudicial under Fed. R. Evid. 403.

Defendant previously produced certain Board documents (inc. the Statement of Charges and the D&O) while her counterclaims remained pending, to illustrate damages from the loss of her medical licenses. The counterclaims have since been dismissed. That limited prior production does not waive her current objections to wholesale production of the medical hearing transcripts.

Production of the hearing record would be disproportionate (Rule 26(b)(1)). The transcripts contain extensive material on regulatory issues, other individuals, character findings, and contested interpretations of private symbolism far beyond the four Battery Plaintiffs, and a *non-medical battery claim*. The prejudice outweighs any marginal benefit, particularly given the substantial discovery already produced on contemporaneous consent – *including consent admissions.*

If the Court is inclined to permit any limited discovery from the Board record, Defendant requests that such production be strictly limited as follows: (1) only discrete, non-privileged excerpts that directly address contemporaneous consent by the four Battery Plaintiffs (Edmondson, Oxenberg, Isbell, and Pena); (2) designated Highly Confidential under the existing Stipulation and Protective Order (ECF No. 307); and (3) produced solely for use in this action and not for any other purpose. Defendant further requests that the Court prohibit wholesale production of the hearing transcripts, exhibits, or other Board materials that concern regulatory findings, other individuals, or matters unrelated to the remaining battery claim.

The procedural history of this action underscores why wholesale production is neither relevant nor proportional. Plaintiffs were permitted multiple opportunities to amend their complaint. After the Court dismissed all RICO, trafficking, and broader conspiracy claims (ECF No. 240) and ordered language regarding Defendant's alleged knowledge of a broader conspiracy stricken (ECF No. 341), only a single battery claim remains. Discovery on that narrow claim has already continued for more than a year. Expanding it to include the full administrative record of a separate professional licensing proceeding—with its contested findings on symbolism, character assessments, and third-party conduct—would reopen issues the Court has already resolved and further delay resolution of the remaining claim.

For these reasons, Defendant respectfully requests that the Court deny Plaintiffs' demand for the OPMC hearing transcripts and exhibits.

{00269837 }

Dated:  August 6, 2026

Respectfully submitted,

/s/Emma Bruder
Greg G. Gutzler
Emma Bruder
DICELLO LEVITT LLP
485 Lexington Avenue, 10th Floor
New York, NY 10017
(646) 933-1000
ggutzler@dicellolevitt.com
ebruder@dicellolevitt.com

Robert A. Swift
Zahra R. Dean
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
rswift@kohnswift.com
zdean@kohnswift.com

Adam M. Prom
DICELLO LEVITT LLP
10 North Dearborn Street, Sixth Floor
Chicago, IL 60602
(312) 214-7900
aprom@dicellolevitt.com

Agnieszka M. Fryszman
COHEN MILSTEIN SELLERS
   & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Manuel John Dominguez
COHEN MILSTEIN SELLERS
   & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
jdominguez@cohenmilstein.com

Attorneys for Plaintiffs

6

{00269837 }

/s/Danielle Roberts
Danielle Roberts, pro se

7

{00269837 }